579.    As a direct and foreseeable result of defendants' conduct, the plaintiffs suffered injuries including irreparable reputational harm, severe emotional distress, economic injuries, and loss of educational and athletic opportunities.

580.    The actions of defendants in breaching this duty were performed in the scope of employment.  Duke's officers, directors, trustees, and/or managers participated in, ratified, and condoned this breach of duty.

581.    The breach of this duty was committed through intentional actions.  It was fraudulent, willful and wanton, and malicious.

## COUNT FIFTEEN

### BREACH OF CONTRACT
(Against Defendant Duke University)

582.    Plaintiffs incorporate the allegations in Paragraphs 1 through 581 above as if set forth fully herein.

583.    According to defendant Duke University's 2005-06 Undergraduate Bulletin ("Bulletin"), "[e]ach student is subject to the rules and regulations of the university currently in effect, or which are put into effect from time to time by the appropriate authorities of the university."

584.    The Bulletin sets forth an anti-harassment policy, which states: "Harassment of any individual for any reason is not acceptable at Duke University...." The Bulletin defines harassment as "verbal or physical conduct—which may or may not be sexual in nature—that, because of its severity and/or persistence, interferes significantly with an individual's work or education, or adversely affects an individual's

Dockets.Justia.com

living conditions." According to the Bulletin, "[t]he conduct alleged to constitute harassment under this policy shall be evaluated from the perspective of a reasonable person similarly situated to the complainant and in consideration of the context of the behavior."

585.    Duke University faculty and staff are subject to Duke University's anti-harassment policy, and are subject to the same standards of behavior as students.

586.    Plaintiffs applied to and enrolled in Duke University, and paid tuition and/or other fees and expenses to Duke University in reliance on the understanding and expectation that Duke University would implement and enforce these and other promises and policies made in its Bulletin, Faculty Handbook, and other relevant documents, including those not mentioned in this Complaint.

587.    A contract, which is express or in the alternative implied, was therefore formed between defendant Duke University and the plaintiffs and their parents.

588.    Defendant Duke University materially breached its contract with the plaintiffs (as well as an implied covenant of good faith and fair dealing). This breach was committed through conduct by Duke officers, managers, and employees acting in the scope of employment, and by Duke professors, employees, and students acting under the supervision and control of defendants. The breach of contract includes but is not limited to the following:

589.    *Breach of anti-harassment policy.* The actions and statements of Duke University officials, professors, employees, and students as alleged in this Complaint

violated Duke University's anti-harassment policy. These acts and statements include but are not limited to: myriad public and private statements by Duke officials, professors, employees, and students condemning and vilifying the plaintiffs, falsely impugning their integrity, and falsely implying and/or explicitly stating that they were guilty of committing, aiding, abetting, and/or concealing a gang rape; the "Group of 88 ad" placed in *The Chronicle* and other group and individual statements by the Duke Professors; harassing protests on campus and in front of the plaintiffs' residences, which were conducted and/or organized in part by Duke professors and employees; the Wanted Poster, Vigilante Poster, and other posters distributed and posted throughout campus because of the acts and/or omissions of Duke University and its agents; in-class condemnations of plaintiffs by Duke professors; and the failure of Duke administrators and other officials to take action to prevent, stop, and sanction these acts of harassment.

590.    These statements and actions constituted harassment in violation of Duke's contractual promises through its anti-harassment policy, to provide campus and learning environment free of harassment against students. They constitute words and conduct that, because of their severity and/or persistence, interfered significantly with the plaintiffs' work, athletic activity, and education, and adversely affected the plaintiffs' living conditions and learning environment. Any reasonable person in the plaintiffs' position would experience the humiliation, shame, and public contempt that these acts and statements brought upon the plaintiffs. In context, these actions and statements amounted to a material breach of contract between defendant Duke University and

plaintiffs, causing plaintiffs severe mental, emotional, reputational, educational, and pecuniary harm, and denying them the benefit of their bargain.

591. *Cancellation of the lacrosse season.* Plaintiffs applied to and enrolled in Duke University, and paid tuition and other fees and expenses, in reliance on the understanding that they would have the opportunity to play lacrosse, to compete for the ACC and national championships, and to play lacrosse for Coach Pressler. Plaintiffs were recruited to enroll at Duke University on that basis. Plaintiffs further relied on the implied understanding that the season would not be canceled, and Coach Pressler would not have been forced to resign, in bad faith for invalid and illegitimate reasons. Nevertheless, on April 5, 2006, after already forcing the lacrosse team to forfeit two games for the March 13 party, defendants canceled the remainder of the lacrosse season without valid and legitimate justification. Regarding the cancellation, Board Chairman Robert Steel said: "We had to stop those pictures [of the players practicing]. It doesn't mean that it's fair, but we had to stop it. It doesn't necessarily mean I think it was right— it just had to be done." On the same day, defendants also forced Coach Pressler to resign, also without valid and legitimate justification.

592. By unjustifiably cancelling the lacrosse season and forcing Coach Pressler to resign, defendants materially breached an express and/or implied contract with the plaintiffs, including an implied covenant of good faith and fair dealing, denying them the benefit of their bargain, and causing them to suffer emotional, educational, reputational, and other harm.

593.  *Violation of procedural rights.*  The Bulletin guarantees various rights to students accused of a violation. For example, at pages 35-36, the Bulletin guarantees that "[a]ccused students can expect a presumption of innocence throughout the disciplinary process unless found responsible through a fair and impartial hearing, and will be treated with respect throughout the process." Through numerous actions and omissions described above in this Complaint, defendant substantially breached this contractual term.

594.  The plaintiffs applied to and accepted Duke University's offer of admission, and paid tuition and other fees and expenses, in reliance on the understanding that Duke would fulfill its contractual obligations as set forth above. As a result of the actions and omissions of defendants, plaintiffs were denied the benefit of their bargain.

595.  As a direct and foreseeable consequence of these breaches, plaintiffs suffered injuries including invasion of privacy, dislocation from their homes, emotional distress, loss of educational and athletic opportunities, economic injuries, as well as enhancement of injuries caused by other actors.

596.  Plaintiffs are entitled to recover damages for injuries caused by defendant Duke University's breach of the express and/or implied contractual obligations described above.

## COUNT SIXTEEN

### TORTIOUS BREACH OF CONTRACT
(Against Defendant Duke University)

597.  Plaintiffs incorporate the allegations in Paragraphs 1 through 596 above, as if set forth fully herein.

598. As related in Count Fifteen, defendant Duke University materially breached its contract obligations to plaintiffs.

599. In addition, these material breaches were accompanied by aggravating and bad-faith actions (including but not limited to conspiracy, fraud, and/or misrepresentation as described above) by Duke officials, professors, employees, and students sufficient to constitute tortious breach of contract.

600. These actions were committed in the scope of employment and were ratified by officers, trustees, and managers of Duke University, as alleged herein. Also as alleged herein, these actions were fraudulent, willful and wanton, and malicious.

601. As a direct and foreseeable consequence of defendants' actions, plaintiffs suffered the injuries described above.

## COUNT SEVENTEEN

### PROMISSORY ESTOPPEL
(Against Defendant Duke University)

602. Plaintiffs incorporate the allegations in Paragraphs 1 through 601 above.

603. As described above, the Bulletin and other official Duke documents constitute promises that Duke University and its officers, employees, and agents should have reasonably expected to induce action or forbearance on the part of plaintiffs. Defendant Duke University did or should have expected the plaintiffs to accept its offer of admission and to incur expenses of tuition and related expenses (and to choose not to attend other schools) based on its express and implied promises that Duke would not

tolerate, and plaintiffs would not suffer, harassment by Duke officers, professors, employees, and students; would not cancel the lacrosse season and/or fire the lacrosse coach for no valid and legitimate reason; and would not deny plaintiffs procedural rights should they be accused of a violation of Duke policies and/or rules.

604.    Plaintiffs relied to their detriment on these express and implied promises and representations made by defendant.

605.    Injustice can be avoided only by estopping defendant Duke University from denying its express and implied obligations, and by awarding plaintiffs damages for injuries caused by defendants' breach of those obligations.

## COUNT EIGHTEEN

### INTRUSION UPON SECLUSION, SOLITUDE, AND PRIVATE AFFAIRS
(Against Defendants Duke University, Richard Brodhead,
Tallman Trask, Peter Lange, John Burness, Larry Moneta,

606.    Plaintiffs incorporate the allegations in Paragraphs 1 through 605 above as if set forth fully herein.

607.    Defendant Duke University, through the actions and failures to act of its officers, professors, employees, and students, intentionally intruded upon, and caused intrusions upon, both physically and otherwise, the solitude or seclusion of plaintiffs and on plaintiffs' private affairs or concerns.

608.    The intrusions that were inflicted and/or caused to be inflicted on plaintiffs' solitude, seclusion, and private affairs are alleged in detail in this Complaint and include, by way of example:  physical invasions and incitements of physical invasions on the

plaintiffs' homes and private residences; participation in and incitement of loud, obstreperous, threatening, and humiliating protests at plaintiffs' residences and on campus; subjecting plaintiffs to physical harassment in their homes and on campus by media reporters, camera crews, and protestors; subjecting plaintiffs to public harassment, humiliation, and obloquy in their classes and on campus; subjecting plaintiffs to uncounseled, surprise interrogations by the Durham Investigators in their private residences and dorms; and other highly offensive intrusions.

609. These intentional intrusions were highly offensive to plaintiffs and would be to any reasonable person.

610. As a direct and foreseeable consequence of these intrusions, plaintiffs suffered injuries including invasion of privacy, dislocation from their homes, emotional distress, loss of educational and athletic opportunities, economic injuries, as well as enhancement of injuries caused by other actors.

611. These actions and failures to act were performed in the scope of employment of Duke's officers, professors, employees, and/or managers. Duke's officers, directors, and trustees participated in, ratified, and condoned these intrusions upon the plaintiffs' seclusion and solitude.

612. The breach of this duty was committed through intentional actions. It was willful and wanton, and malicious.

# COUNT NINETEEN

**NEGLIGENT SUPERVISION OF DUKE PROFESSORS AND EMPLOYEES**
(Against Defendants Duke University, Richard Brodhead,
Larry Moneta, Peter Lange, Tallman Trask)

613.    Plaintiffs incorporate the allegations in Paragraphs 1 through 612 above as if set forth fully herein.

614.    The Duke Officers, professors and employees referenced herein were employees of Duke University during the relevant time periods.

615.    As alleged above and below, these employees of Duke University committed tortious acts resulting in injuries to the plaintiffs.

616.    The above-named defendants knew or had reason to know of these employees' propensity to engage in tortious acts of fraud, intentional and negligent infliction of emotional distress, harassment, nuisance, intrusion upon seclusion, defamation and other torts against plaintiffs.  These defendants were advised of the Duke employees' ongoing tortious conduct and they took no action to stop, prevent, or sanction them, but rather condoned, approved, and ratified the incidents of tortious conduct.

617.    The defendants' negligent failure to supervise these Duke employees' directly and foreseeably caused injuries to the plaintiffs, including irreparable reputational harm, severe emotional distress, economic injuries, and loss of educational and athletic opportunities, as well as enhancing injuries caused by other actors.

618.   Defendants' breach of this duty to supervise was committed through knowing and intentional actions, taken in their scope of employment. It was willful and wanton, and malicious.

## COUNT TWENTY

### VIOLATION OF AND CONSPIRACY TO VIOLATE FOURTH AMENDMENT RIGHTS UNDER 42 U.S.C. § 1983 -- KEY CARD REPORTS
(Against Defendants Duke University, Kate Hendricks, Matthew Drummond, the Duke Police, the Durham Investigators, City of Durham)

619.   Plaintiffs incorporate the allegations in Paragraphs 1 through 618.

620.   Plaintiffs had a reasonable expectation of privacy in the electronic records of their comings, goings, purchases, and other card-swipe transactions on the Duke campus. This expectation was supported by, among other things, federal privacy laws and Duke's own privacy policies.

621.   As alleged in Count Eight, the above-named Duke defendants' illegal disclosure of the key card reports and the defendant Durham Investigators' use of the key card information, and the fraudulent conspiracy and abuse of judicial process designed to conceal that disclosure and use, violated plaintiffs' rights under federal law and the Fourth Amendment of the U.S. Constitution.

622.   This violation of plaintiffs' Fourth Amendment rights was perpetrated by the above-named Duke Defendants acting in concert with the defendant Durham Investigators. The defendant Duke Police and defendant Durham Investigators were acting under color of state law within the meaning of 42 U.S.C. § 1983. Duke University and its officials, employees, and agents were willing participants in this joint activity.

There was also an agreement and meeting of the minds between these Duke defendants and the defendant Durham Investigators to deprive plaintiffs of their protected rights. There was also an agreement and meeting of the minds between these Duke defendants and the Durham Investigators to fraudulently conceal the violation of those protected rights.

623. Defendants' actions, individually and jointly, were malicious and evidenced a callous and reckless disregard for, and deliberate indifference to, plaintiffs' constitutional rights.

624. As a direct and foreseeable consequence of defendants' conduct, plaintiffs suffered injuries, including invasion of constitutionally protected privacy, economic damages, prolonged subjection to the ordeal of the rape investigation and consequent public obloquy and humiliation, and other harms. In addition, the violation of plaintiffs' Fourth Amendment rights aggravated the injuries due to other actors.

625. The actions of defendants, individually and jointly, were performed in the scope of employment, and were ratified and condoned by Duke University's officers and directors and by the Durham Supervisors.

626. For the reasons stated in Count Twenty-six, the defendant City of Durham is liable for the Durham Investigators' actions under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1977).

## COUNT TWENTY-ONE

### VIOLATION OF AND CONSPIRACY TO VIOLATE FOURTH AMENDMENT RIGHTS UNDER 42 U.S.C. § 1983 -- DNA SAMPLES
(Against Defendants Duke University, DUHS, Theresa Arico, Tara Levicy, the Durham Investigators, City of Durham)

627.    Plaintiffs incorporate the allegations in Paragraphs 1-626.

628.    Plaintiffs had a reasonable expectation of bodily privacy, protected by the Fourth Amendment to the U.S. Constitution, in the provision of DNA samples to the defendant Durham Investigators in connection with the rape hoax investigation.

629.    DNA samples were compelled from the plaintiffs pursuant to a false and overbroad application for a non-testimonial identification order that violated their Fourth Amendment rights.  The overbroad NTO application was prepared by the Durham Investigators, who knowingly premised it, on information and belief, on false and misleading information knowingly provided by Duke Hospital and defendant Levicy.

630.    This violation of plaintiffs' Fourth Amendment rights was perpetrated through the actions of defendant Levicy, acting in concert with the Durham Investigators, who were persons acting under color of state law within the meaning of 42 U.S.C. § 1983.  The above-named defendants were willing participants in this joint activity.  There was an agreement and meeting of the minds between defendant Levicy and the defendant Durham Investigators, to deprive plaintiffs of protected rights.

631.    Defendants' actions, individually and jointly, were malicious and evidenced a callous and reckless disregard for, and deliberate indifference to, plaintiffs' constitutional rights.

632. As a direct and foreseeable consequence of defendants' conduct, plaintiffs suffered injuries, including invasion of constitutionally protected privacy, economic damages, prolonged subjection to the ordeal of the rape investigation and consequent public obloquy and humiliation, and other harms. In addition, the violation of plaintiffs' Fourth Amendment rights aggravated the injuries inflicted by other causes.

633. The actions of defendant Levicy and defendant Durham Investigators, individually and jointly, were performed in the scope of employment, and were ratified and condoned by DUHS and Duke Hospital, through defendant Arico, and by the Durham Supervisors.

634. For the reasons stated in Count Twenty-six, the defendant City of Durham is liable for the Durham Investigators' actions under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1977)

## COUNT TWENTY-TWO

### VIOLATION OF AND CONSPIRACY TO VIOLATE FOURTEENTH AMENDMENT RIGHTS UNDER 42 U.S.C. § 1983 -- MALICIOUS INVESTIGATION
(Against All Defendants)

635. Plaintiffs incorporate the allegations in Paragraphs 1 through 634.

636. As alleged herein, the defendants were willing participants in a joint course of conduct, together with the Durham Investigators and Duke Police who were acting under color of law, to instigate, promote, facilitate, and prolong a malicious, bad faith criminal investigation of plaintiffs. This malicious investigation was highly outrageous, undertaken in bad faith, caused by malicious motives, and involved conduct that shocks

the conscience. It violated plaintiffs' due process rights under the Fourteenth Amendment of the U.S. Constitution.

637. Among defendants' malicious actions that shock the conscience, the Durham defendants knowingly disseminated false information and made false public statements; retaliated against plaintiffs for the exercise of constitutional rights; conspired with other defendants to violate plaintiffs' Fourth Amendment and other constitutional rights; suppressed exculpatory evidence; tampered with and coerced witnesses; manufactured false evidence; violated canons of legal ethics; made public statements falsely asserting plaintiffs' guilt; deliberately inflamed community passions against the plaintiffs, and vigorously pursued a criminal investigation of highly sensational allegations that they knew to be wholly unwarranted and baseless.

638. The Duke defendants willfully participated in this joint course of conduct by, among other things, willfully providing false information to investigators; failing to correct government officials' public assertions of false information; making, acquiescing in, and ratifying false and inflammatory public statements maligning and defaming plaintiffs; conspiring to violate plaintiffs' privacy rights protected by federal law and the Fourth Amendment; conspiring to conceal the violation of those privacy rights; suppressing exculpatory evidence; and conspiring to suppress and discredit exculpatory evidence. There was an agreement and meeting of the minds among the Duke and Durham defendants to engage in a course of conduct that violated plaintiffs' substantive due process rights.

639. As a direct and foreseeable consequence of defendants' conduct, plaintiffs suffered injuries including violation of constitutional rights, reputational injury and public humiliation and obloquy, severe emotional distress, economic damages, educational harm and other harms.

640. Defendants' actions, individually and jointly, were malicious and evidenced a callous and reckless disregard for, and deliberate indifference to, plaintiffs' constitutional rights.

641. Defendants' actions, individually and jointly, were performed in the scope of employment and in the scope of official duties. Duke's officers, directors, trustees and/or managers, and the Durham Supervisors, participated in, ratified, and condoned the conspiracy.

642. For the reasons stated in Count Twenty-six, the defendant City of Durham is liable for the Durham defendants' actions under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1977).

## COUNT TWENTY-THREE

### OBSTRUCTION OF AND CONSPIRACY TO OBSTRUCT PUBLIC JUSTICE
(Against All Defendants)

643. Plaintiffs incorporate the allegations in Paragraphs 1 through 642.

644. As related above, the defendants, acting individually and in concert, engaged in acts that attempted to and did prevent, obstruct, impede, and hinder public and legal justice in the State of North Carolina.

645. Defendants, acting individually and in concert, engaged in this obstruction of justice by initiating, pursuing, and prolonging in bad faith a malicious criminal investigation of plaintiffs; making and acceding to false statements that injured plaintiffs' reputations; fraudulently concealing illegal key card disclosures; abusing judicial process to conceal illegal key card disclosures; eliciting an order for non-testimonial identification that invaded plaintiffs' bodily privacy without constitutional justification, based on false and misleading information; suppressing exculpatory evidence; making public statements and actions that excited community passions against the plaintiffs and subjected them to intense public obloquy, humiliation, and ostracism; subjecting plaintiffs to public harassment and protests designed to humiliate them and to interfere and influence criminal and legal proceedings against them; and other actions.

646. As a direct and foreseeable consequence of defendants' actions, plaintiffs suffered injuries including reputational harms, invasion of seclusion and constitutionally protected privacy, severe emotional distress, loss of educational and athletic opportunities, lost professional opportunities, economic damages, and other harms, as well as enhancement of injuries from other sources.

647. Defendants actions' in perpetrating this obstruction of public justice were performed in the scope of employment. Duke's officers, directors, and/or managers and the Durham Supervisors participated in, ratified, and condoned these actions.

648. Defendants' actions in obstructing justice were fraudulent, willful and wanton, and malicious.

## COUNT TWENTY-FOUR

### DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS OF LAW
### IN VIOLATION OF 42 U.S.C. § 1983
(Against Durham Investigators, Durham Supervisors, City of Durham)

649.   Plaintiffs incorporate the allegations in Paragraphs 1 through 648.

650.   Acting under color of law and in bad faith, the Durham Investigators instigated, promoted, and executed a malicious criminal investigation of plaintiffs that was calculated to inflict maximum injury on plaintiffs' reputations. This malicious investigation was highly outrageous, undertaken in bad faith, caused by malicious motives, and involved conduct that shocks the conscience. As alleged above, this conduct included dissemination of knowingly false information, false public statements, deliberate inflammation of community and university passions against the plaintiffs, deliberate arousal of race, class, and gender-based hostility against the plaintiffs, and other actions that caused the plaintiffs grave reputational injuries.

651.   Defendants' actions were malicious and evidenced a callous and reckless disregard for, and deliberate indifference to, plaintiffs' constitutional rights.

652.   As a direct and foreseeable consequence of these actions inflaming community and university passions against the plaintiffs, plaintiffs suffered the loss of liberty and/or property interests, without due process of law. These losses include reputational injury and lost educational opportunities, including the loss of the unique athletic opportunity to participate in the 2006 Division I men's lacrosse season, including the ability to compete for the 2006 ACC Championship and the NCAA Division I

National Championship—a goal for which many had aspired and trained for much of their lives.

653. For the reasons stated on Count Twenty-Six, the City of Durham is liable for the Durham Investigators' actions under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1977).

## COUNT TWENTY-FIVE

### FALSE PUBLIC STATEMENTS IN VIOLATION OF 42 U.S.C. § 1983
(Against the Durham Investigators, David Addison, City of Durham)

654. Plaintiffs incorporate the allegations in Paragraphs 1 through 653.

655. As alleged above, acting under color of law, the Durham Investigators and Addison made multiple public statements that were knowingly false relating to their criminal investigation of plaintiffs.

656. In their public statements, Nifong and Addison falsely asserted, among other things, that three members of the lacrosse team had perpetrated a brutal, racially motivated gang rape; that the lacrosse players had refused to cooperate with the police in the investigation, instead putting up a "stone wall of silence"; that the physical and medical evidence indicated that a rape had occurred; that other members of the lacrosse team had aided and abetted in the alleged rape; and that condoms had likely been used in the alleged rape.

657. These false statements were published through local, national, and international media, conveying them to a worldwide audience of untold millions of people.

658.    These false statements were intended to inflame the community against the plaintiffs in order to prolong the investigation and compromise the fairness of subsequent proceedings against the lacrosse team.

659.    In making these knowingly false statements, defendants' actions were malicious and evidenced a callous and reckless disregard for, and deliberate indifference to, plaintiffs' constitutional rights.

660.    As a result of these false public statements, plaintiffs continued to be subjected to a malicious investigation in violation of their Fourteenth Amendment rights.

661.    As a result of these false public statements, plaintiffs suffered deprivation of property interests without due process of law, including for certain plaintiffs lost economic and job opportunities, due to the reputational injury inflicted by the false public statements.

662.    As a result of defendants' unconstitutional actions, plaintiffs suffered the deprivation of their liberty and/or property interest in the athletic opportunity to complete the 2006 NCAA Division I lacrosse season, without due process of law.

663.    As a direct and foreseeable consequence of these false statements, plaintiffs suffered injuries, including reputational injury, emotional harm, economic losses, prolonged subjection to the ordeal of criminal investigation, and other harms.

664.    For the reasons stated in Count Twenty-six, the City of Durham is liable for Nifong's and Addison's actions under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1977).

# COUNT TWENTY-SIX

**VIOLATIONS OF 42 U.S.C. § 1983 UNDER *MONELL v. DEP'T OF SOC. SERVS.***
(Against the City of Durham; Durham Investigators in their official capacities;
Durham Supervisors in their official capacities)

665.   Plaintiffs incorporate Paragraphs 1 through 664 above.

666.   As alleged above, the Durham Investigators violated several of plaintiffs'

constitutional rights in violation of 42 U.S.C. § 1983.

### A.   While Exercising Delegated Final Policymaking Authority For The City Of Durham, Nifong Implemented Policies That Violated Plaintiffs' Constitutional Rights.

667.   On or around March 24, the Durham Supervisors and other officials with

final policymaking authority for the City of Durham voluntarily delegated final

policymaking authority over the criminal investigation of Mangum's claims to Nifong.

They agreed that Nifong would have full responsibility and authority for that

investigation.

668.   Among other actions, Defendant Lamb instructed Gottlieb and Himan to

take direction directly from Nifong regarding the investigation, placing them outside the

ordinary Durham Police chain of command.

669.   On information and belief, in his capacity as an official exercising

delegated final policymaking authority, Nifong implemented the previously described

policies and actions occurring on or after March 24 that violated plaintiffs' constitutional

rights.  Nifong implemented these policies and actions with knowledge of and deliberate

indifference to the violations of the constitutional rights of plaintiffs.

670. On information and belief, the Durham Supervisors and other officials in the City of Durham and the Durham Police ratified these unconstitutional policies and actions of the Nifong investigation.

671. As a direct and foreseeable consequence of these policies and actions, plaintiffs were deprived of their constitutional rights and suffered other injuries.

**B. Durham Officials With Final Policymaking Authority Approved And Ratified The Unconstitutional Conduct Of Their Subordinates.**

672. On information and belief, the Durham Supervisors and other Durham officials with final policymaking authority for the City of Durham and Durham Police had contemporaneous knowledge of the violations of plaintiffs' constitutional rights perpetrated by the Durham Investigators.

673. It would have been plainly obvious to a reasonable policymaker that these actions would lead to violations of plaintiffs' constitutional rights.

674. On information and belief, the Durham Supervisors and other Durham officials agreed to, approved, and ratified this unconstitutional conduct by Nifong and their subordinates in the Durham Police.

675. As a direct and foreseeable consequence of these policy decisions, plaintiffs were deprived of their constitutional rights.

**C. Durham Officials With Final Policymaking Authority Failed To Exercise Adequate Supervisory Authority Over Nifong.**

676.    As alleged above, the Durham Supervisors and other Durham officials knowingly and voluntarily delegated final policymaking authority to Nifong with respect to the criminal investigation of the Duke lacrosse team.

677.    On information and belief, the Durham Supervisors and other officials with final policymaking authority had actual or constructive knowledge that Nifong did not have adequate experience to direct a criminal investigation, that he was subject to a conflict of interest arising out of his hotly contested re-election campaign, that he had a history of explosive and irrational behavior, that his desire to direct the investigation was motivated by political ambition, and that he had made public statements announcing the lacrosse players' guilt throughout the investigation.

678.    In these circumstances, it would have been obvious to a reasonable policymaker that delegating authority to Nifong to direct the investigation would lead to deprivations of plaintiffs' constitutional rights.  Nevertheless, the Durham Supervisors and other officials knowingly ceded control of the investigation to Nifong with knowledge of or deliberate indifference to the violation of plaintiffs' constitutional rights.

679.    After Nifong assumed control of the investigation, the Durham Supervisors and other officials with final policymaking authority in the City of Durham and the Durham Police had actual or constructive knowledge that Nifong had authorized and/or personally engaged in decisions from which it would have been plainly obvious to a reasonable supervisory official that violations of Plaintiffs' constitutional rights

inevitably would occur. Nevertheless, the Durham Supervisors and other officials in the City of Durham and the Durham Police took no corrective action and instead continued to recognize Nifong's authority with respect to the rape investigation and continued to direct Durham Police to report to Nifong, knowing or with reckless disregard or deliberate indifference to the likelihood that their decision would result in further violations of plaintiffs' constitutional rights.

680. As a direct and foreseeable consequence of these policy decisions, Plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

### D. Durham Officials With Final Policymaking Authority Failed To Exercise Adequate Supervisory Authority Over Gottlieb.

681. On information and belief, as of March 13, 2006, defendant Mark Gottlieb had a documented history of selective and malicious prosecution, excessive use of force, manufacturing of false evidence, and filing of false police reports in his dealings with Duke University students.

682. The Durham Supervisors and other officials in the City of Durham and the Durham Police Department consistently failed to take adequate or meaningful steps to discipline Gottlieb, correct his behavior, or terminate his employment.

683. By these omissions, these officials endorsed and ratified Gottlieb's unconstitutional conduct, established a custom or practice of targeting Duke University students for harsh or disproportionate treatment, or established a custom and practice of failing to correct the unconstitutional conduct of Durham Police officers.

684. In these circumstances, it would have been plainly obvious to a reasonable policymaker that the decision to place Gottlieb in a lead position on this investigation would lead to deprivations of plaintiffs' constitutional rights.

685. Despite this evidence, the Durham Supervisors and other officials in the City of Durham and the Durham Police, assigned Gottlieb to a leadership role in the rape investigation knowing, or with deliberate indifference to the likelihood, that their decision would result in violations of plaintiffs' constitutional rights.

686. As a direct and foreseeable consequence of this official action, plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

### E. Durham Police Had An Established Policy Or Custom Of Targeting Duke Students For Harassment Through Selective And Improper Criminal Law Enforcement.

687. On information and belief, the Durham Supervisors and other officials in the City of Durham and the Durham Police established a policy or custom encouraging Durham Police officers to target Duke University students for selective enforcement of the criminal laws.

688. It would have been plainly obvious to a reasonable policymaker that such conduct would lead to deprivations of plaintiffs' constitutional rights. In fact, the Durham Supervisors had actual or constructive knowledge that Gottlieb had attempted to effectuate this policy by engaging in selective and malicious prosecution, excessive use of force, manufacturing of false evidence, and filing of false police reports against Duke

University students, yet they consistently failed to take adequate or meaningful steps to discipline Gottlieb, correct his behavior, or terminate his employment.

689. As a direct and foreseeable consequence of this policy decision, plaintiffs were deprived of their constitutional rights.

### F. Durham Police Had An Established Policy Or Custom Of Prematurely Publishing Conclusions Of Criminality Or Guilt.

690. Defendant Addison, acting in his official capacity as spokesman of the Durham Police, pursuant to established custom or policy, and with the acquiescence or approval of the Durham Supervisors, made a series of public statements expressing the Department's official conclusion that Mangum had been raped, sexually assaulted, and kidnapped by members of the Duke lacrosse team. Similar, and even more inflammatory statements, were made by Nifong, who was exercising delegated supervisory and policymaking authority on behalf of the City of Durham.

691. In addition, defendants Addison and Nifong repeatedly expressed Durham's official view that Plaintiffs and other members of the Duke lacrosse team were obstructing justice by failing to confess their knowledge of, or involvement in, the alleged assault.

692. Addison, acting pursuant to established customs or policies of the City of Durham and the Durham Police, with the acquiescence or approval of the Durham Supervisors and other policymaking officials in the Durham Police, and in his official capacity as coordinator of Durham Crimestoppers, caused the publication of a series of

"Wanted" posters that contained inflammatory and conclusory allegations of rape, sexual assault, and kidnapping against members of the Duke lacrosse team

693. Defendant Hodge, in his capacity as Deputy Chief of Police and the second-highest-ranking official in the Durham Police, stated publicly that the Durham Police had a strong case against members of the Duke lacrosse team.

694. As a direct and foreseeable consequence of the custom or policy allowing Durham Police officials to publish premature official conclusions of criminality and guilt, plaintiffs were deprived of their constitutional rights.

* * * * *

695. As a direct and foreseeable consequence of the foregoing constitutional violations caused by the policymaking officials, customs and practices, and policies of the City of Durham and the Durham Police, plaintiffs suffered injuries, including deprivation of constitutional rights, reputational injury, emotional harm, economic losses, prolonged subjection to the ordeal of criminal investigation, loss of educational and economic opportunities, and other harms.

## COUNT TWENTY-SEVEN

### NEGLIGENT SUPERVISION OF THE DURHAM INVESTIGATORS IN VIOLATION OF 42 U.S.C. § 1983
(Against the Durham Supervisors)

696. Plaintiffs incorporate the allegations in Paragraphs 1 through 695.

## A. The Durham Supervisors' Failure To Supervise The Investigation Resulted In Violations Of Plaintiffs' Constitutional Rights.

697. On or about March 24, 2006, Nifong, with the acquiescence or approval of the Durham Supervisors, was given responsibility to direct or help direct the police investigation into allegations of rape, sexual assault, and kidnapping made by Crystal Mangum.

698. On or about March 24, the Durham Supervisors ordered defendants Gottlieb, Himan and other officers involved in the investigation to report to Nifong, but required that they continue to provide information about the investigation to their chain of command.

699. On information and belief, on or around March 29, the Durham Supervisors ordered Himan and Gottlieb to expedite the identifications and arrests of white Duke lacrosse players, notwithstanding the evidence demonstrating plaintiffs' innocence, in order to calm and to satisfy a Durham community that had been inflamed and misled by the defendants' false and inflammatory statements into believing Mangum's false charges that three white Duke lacrosse players had committed a violent and racially-motivated gang rape.

700. During the course of the investigation, the Durham Investigators, acting individually and in concert, engaged in a number of investigative abuses, including intimidation of witnesses, manufacturing of false evidence, suppression of exculpatory evidence, and manipulation of witness identification procedures.

701.   The Durham Supervisors knew, or should have known, about these abuses and failed to take meaningful preventative or remedial action.

702.   The Durham Supervisors' actions evidenced a reckless and callous disregard for, and deliberate indifference to, plaintiffs' constitutional rights.

703.   As a direct and foreseeable consequence of these acts and omissions, plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

704.   As a direct and foreseeable consequence of these deprivations, plaintiffs have suffered economic loss, emotional trauma, loss of privacy, loss of educational, athletic, and economic opportunities, and irreparable harm to their reputations.

**B.     The Durham Supervisors' Failure To Control And Supervise Gottlieb Resulted In Violations Of Plaintiffs' Constitutional Rights.**

705.   By March 2006, defendant Gottlieb had a demonstrated history of bias against Duke students, marked by numerous incidents of excessive use of force, malicious prosecution, and manufacturing of evidence.

706.   The Durham Supervisors knew or should have known about Gottlieb's history, but failed to take meaningful remedial action.

707.   In light of Gottlieb's history, the Durham Supervisors acted recklessly or with deliberate indifference when they put him in a position to lead the investigation into Mangum's allegations.

708. The Durham Supervisors' actions evidenced a reckless and callous disregard for, and deliberate indifference to, Plaintiffs' constitutional rights.

709. As a direct and foreseeable consequence of these acts and omissions, plaintiffs were deprived of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.

710. As a direct and foreseeable consequence of these deprivations, plaintiffs have suffered economic loss, emotional trauma, loss of liberty, loss of privacy, loss of educational, athletic, and economic opportunities, and irreparable harm to their reputations.

### C. The Durham Supervisors' Failure To Train, Control, And Supervise Addison Resulted In Violations Of Plaintiffs' Constitutional Rights.

711. In March 2006, defendant Addison was the official spokesperson of the Durham Police Department and the coordinator of the Durham Crimestoppers program.

712. Prior to placing him in this role, and during the pendency of his tenure in that role, the Durham Supervisors demonstrated reckless or callous indifference to the rights of potential criminal suspects by failing to provide Addison with adequate training regarding the legal and constitutional dimensions of his position.

713. During his tenure as spokesperson and Crimestoppers' coordinator, Addison demonstrated a consistent pattern of publishing premature declarations of guilt and illegality.

714. The Durham Supervisors demonstrated reckless or callous indifference to the rights of potential criminal suspects by failing to take meaningful action to correct this conduct.

715. In March and April 2006, Addison, acting in his role as spokesman for the Durham Police Department and as coordinator of Durham Crimestoppers, published a series of inflammatory statements expressing the Department's official conclusion that Crystal Mangum had been raped, sodomized, sexually assaulted, and kidnapped by members of the Duke lacrosse team. In addition, Addison repeatedly expressed the Department's official view that plaintiffs were obstructing justice by failing to confess their knowledge of or involvement in the alleged assault on Crystal Mangum.

716. The Durham Supervisors knew or should have known about these statements, but demonstrated reckless disregard or deliberate indifference by failing to take prompt and meaningful preventative or remedial action.

717. To the contrary, defendant Hodge publicly stated that Durham Police had a strong case against members of the Duke lacrosse team at a time when he knew or should have known that such a statement was false.

718. The Durham Supervisors' actions evidenced a reckless and callous disregard for, and deliberate indifference to, plaintiffs' constitutional rights.

719. As a direct and foreseeable consequence of the Durham Supervisors' failures to train and supervise defendant Addison, plaintiffs were deprived of their rights under the Fourteenth Amendment to the United States Constitution.

720.    As a direct and foreseeable consequence of these deprivations, plaintiffs have suffered economic loss, emotional trauma, loss of liberty, loss of privacy, loss of educational, athletic, and economic opportunities, and irreparable harm to their reputations.

## COUNT TWENTY-EIGHT

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS -- III
(Against Durham Investigators, Durham Supervisors, City of Durham)

721.    Plaintiffs incorporate the allegations in Paragraphs 1 through 720 above.

722.    The course of conduct adopted by the Durham Investigators, the Durham Supervisors, and the City of Durham throughout the rape investigation was extreme and outrageous.  It was beyond all bounds of decency tolerated in society.  It was intended to cause, and did cause, severe emotional distress to the plaintiffs.

723.    The above-named Defendants' course of conduct throughout the rape hoax crisis was malicious, willful and wanton.  It involved fraud, duplicity, deceit, and conscience-shocking breaches of public trust and abuses of public authority.

724.    As alleged above, this course of conduct included, but was not limited to, instigating, pursuing, and prolonging a malicious criminal investigation against plaintiffs in the face of overwhelming exculpatory evidence; knowingly making false public statements condemning the plaintiffs for committing rape and hiding behind a conspiracy of silence; suppressing exculpatory evidence and fabricating false inculpatory evidence; maliciously conspiring among themselves and with Duke officials; fraudulently abusing

legal process; and betraying the public trust vested in them by virtue of their positions of public authority.

725.    Defendants performed these actions with intentional or reckless disregard for the emotional state of the plaintiffs.

726.    This extreme and outrageous conduct was intended to and did cause plaintiffs mental anguish and severe emotional distress, as well as other injuries including reputational harm, economic damages, dislocation from homes and disruption of lives, lost educational opportunities, and other injuries.

727.    This outrageous conduct was performed in the scope of employment.  The Durham Supervisors participated in, ratified, and condoned this outrageous course of conduct.

728.    This course of conduct was fraudulent, willful and wanton, and malicious.

## COUNT TWENTY-NINE

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS – III
(Against Durham Supervisors, Durham Investigators, City of Durham)

729.    Plaintiffs incorporate the allegations in Paragraphs 1 through 728 above.

730.    The conduct described above involved numerous repeated breaches of the defendants' identified duties of due care.  These breaches, in addition to being intentional, were grossly negligent and reckless with respect to the duties owed to the plaintiffs and with respect to the plaintiffs' emotional state.  Moreover, taken together, defendants' breaches of duty constituted a reprehensible course of conduct that was reckless and grossly negligent with respect to the duties owed to the plaintiffs.

731. It was reasonably foreseeable that these breaches of duty would cause the plaintiffs mental anguish and severe emotional distress.

732. These breaches of duty did in fact cause the plaintiffs severe emotional distress, as well as reputational harm, economic damages, dislocation from homes and disruption of lives, lost educational opportunities, and other injuries. The repeated breaches of duty committed through these actions were malicious, willful and wanton.

733. The actions of the Durham Investigators were performed in the scope of employment. The Durham Supervisors participated in, ratified, and condoned these actions.

## COUNT THIRTY

### NEGLIGENCE BY DURHAM POLICE
(Against Durham Investigators, Durham Supervisors, City of Durham)

734. Plaintiffs incorporate the allegations in Paragraphs 1 through 733 above.

735. The Durham Investigators owed plaintiffs a duty to use due care with respect to public statements concerning the investigation of Mangum's rape allegations.

736. The Durham Investigators also owed plaintiffs a duty to use due care with respect to the conduct of their investigation of Mangum's allegations.

737. The public statements made by the Durham Investigators and defendant Addison were false and inflammatory and violated this duty of due care.

738. The acts and omissions detailed above, perpetrated by the Durham Investigators in their investigation of plaintiffs, knowingly violated or departed from the duty of due care owed to plaintiffs, as shown in part by their departure from established

norms of professional conduct, violation of constitutional rights, and violation of Durham Police Department policies.

739. In committing these statements, acts, and omissions, the Durham Investigators negligently breached said duties to use due care, which directly and proximately resulted in the injuries and damages to the Plaintiffs as alleged herein.

740. The Durham Investigators' actions in perpetrating this obstruction of public justice were performed in the scope of employment. The Durham Supervisors participated in, ratified, and condoned these actions.

741. Defendants' actions in obstructing justice were fraudulent, willful and wanton, and malicious.

## COUNT THIRTY-ONE

### NEGLIGENT HIRING, TRAINING, SUPERVISION, RETENTION, AND DISCIPLINE BY DURHAM POLICE
(Against Durham Supervisors, City of Durham)

742. Plaintiffs incorporate the allegations in Paragraphs 1 through 741 above.

743. The Durham Supervisors and the City of Durham owed plaintiffs a duty under North Carolina law to use due care in the hiring, training, supervision, discipline, and retention of Durham Police personnel, including the Durham Investigators and other personnel involved in the investigation of Mangum's rape allegations.

744. The Durham Supervisors negligently breached this duty of due care with respect to defendants Gottlieb, Himan, and Addison through the act and omissions described above, which are incorporated by reference herein.

745. The Durham Supervisors negligently supervised Defendant Himan by assigning him to the police investigation into Mangum's allegations, notwithstanding Himan's lack of prior experience in major felony investigations.

746. The Durham Supervisors' negligent breach of this duty to use due care directly and proximately resulted in the injuries and damages to Plaintiffs as alleged herein.

## PRAYER FOR RELIEF

747. Wherefore, Plaintiffs pray for the following relief:

a. damages, in an amount to be established at trial, as compensation for injuries to reputation, emotional suffering, past and future economic losses, invasion of privacy, constitutional deprivations, loss of educational and athletic opportunities, loss of future career prospects, legal and other expenses, and other injuries proximately caused and enhanced by defendants' wrongful conduct;

b. damages, in an amount to be established at trial, to punish defendants for fraudulent, willful and wanton, and malicious conduct; to punish defendants for outrageous conduct pursued with actual malice that recklessly and callously disregarded plaintiffs' physical and emotional well-being and constitutional rights; to discourage defendants from engaging in similar conduct in the future; and to deter others similarly situated from engaging in similar wrongful conduct;

c. an award of attorneys' fees and costs, including attorneys' fees pursuant to 42 U.S.C. § 1988;

d.      an award for reasonable and customary costs, expenses, and interest incurred in pursuit of this action;

e.      any other relief deemed just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby request a trial by jury on all claims so triable.

February 21, 2008                    Respectfully submitted,

                                     **COOPER & KIRK, PLLC**


                                     By: _/s/ Nicole Jo Moss_____
                                             Charles J. Cooper*
                                             David H. Thompson*
                                             Brian S. Koukoutchos*
                                             Nicole Jo Moss (N.C. Bar # 31958)
                                             1523 New Hampshire Avenue, NW
                                             Washington, DC  20036
                                             Tel. (202) 220-9600
                                             Email ccooper@cooperkirk.com
                                             Email nmoss@cooperkirk.com

                                     *Attorneys for Plaintiffs*

                                             (* motion for special appearance
                                              to be filed forthwith)

                                                     -and-

                                     **THOMAS, FERGUSON & MULLINS, L.L.P.**

                                     By: _/s/ William J. Thomas_____
                                             William J. Thomas, II (N.C. Bar # 9004)
                                             119 East Main Street
                                             Durham, NC  27701
                                             Tel. (919) 682-5648
                                             Email thomas@tfmattorneys.com