# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

## No. 1:08-cv-119

| | |
|---|---|
| EDWARD CARRINGTON, CASEY J. CARROLL, MICHAEL P. CATALINO, GALE CATALINO, THOMAS V. CLUTE, KEVIN COLEMAN, JOSHUA R. COVELESKI, EDWARD J. CROTTY, EDWARD S. DOUGLAS, KYLE DOWD, PATRICIA DOWD, DANIEL FLANNERY, RICHARD GIBBS FOGARTY, ZACHARY GREER, IRENE GREER, ERIK S. HENKELMAN, STEVEN W. HENKELMAN, JOHN E. JENNISON, BEN KOESTERER, MARK KOESTERER, JOYCE KOESTERER, FRED KROM, PETER J. LAMADE, ADAM LANGLEY, CHRISTOPHER LOFTUS, DANIEL LOFTUS, BARBARA LOFTUS, ANTHONY MCDEVITT, GLENN NICK, NICHOLAS O'HARA, LYNNDA O'HARA, DANIEL OPPENDISANO, SAM PAYTON, JOHN BRADLEY ROSS, KENNETH SAUER, III, STEVE SCHOEFFEL, ROBERT SCHROEDER, DEVON SHERWOOD, DANIEL THEODORIDUS, BRET THOMPSON, CHRISTOPHER TKAC, TRACY TKAC, JOHN WALSH, JR., MICHAEL WARD, ROBERT H. WELLINGTON, IV, WILLIAM WOLCOTT, MICHAEL YOUNG, <br><br> Plaintiffs, <br><br> v. <br><br> DUKE UNIVERSITY, DUKE UNIVERSITY HEALTH SYSTEM, INC., RICHARD BRODHEAD, PETER | **Memorandum in Support of the Duke Defendants' Motion Regarding Attorney-Initiated and Attorney-Sanctioned Contact with the Media** <br><br> **EXPEDITED REVIEW REQUESTED** |

| | |
|---|---|
| LANGE, LARRY MONETA, JOHN | ) |
| BURNESS, TALLMAN TRASK, | ) |
| SUZANNE WASIOLEK, MATTHEW | ) |
| DRUMMOND, AARON GRAVES, | ) |
| ROBERT DEAN, TARA LEVICY, | ) |
| THERESA ARICO, J. WESLEY | ) |
| COVINGTON, KATE HENDRICKS, | ) |
| VICTOR DZAU, CITY OF DURHAM, | ) |
| LINWOOD WILSON, MARK | ) |
| GOTTLIEB BENJAMIN HIMAN, | ) |
| PATRICK BAKER, STEVEN | ) |
| CHALMERS, RONALD HODGE, LEE | ) |
| RUSS, STEPHEN MIHAICH, BEVERLY | ) |
| COUNCIL, JEFF LAMB, MICHAEL | ) |
| RIPBERGER, AND DAVID ADDISON, | ) |
| | ) |
| Defendants. | ) |

## NATURE OF THE MATTER BEFORE THE COURT

Pursuant to Local Rules 83.1(d) and 83.10i and this Court's inherent authority to ensure compliance with its Local Rules, Defendants Duke University, Richard Brodhead, Peter Lange, Larry Moneta, John Burness, Tallman Trask, Suzanne Wasiolek, Matthew Drummond, Aaron Graves, Robert Dean, Kate Hendricks, and Victor Dzau, as well as Defendants Duke University Health System, Inc., Tara Levicy and Theresa Arico (hereinafter the "Duke Defendants") file this memorandum in support of their motion regarding attorney-initiated and attorney-sanctioned contact with the media. For the reasons stated herein, the Duke Defendants request that this Court issue an order finding

2

that the Plaintiffs and their counsel have violated Local Rule 83.10e(b) and further clarifying the manner in which that rule will apply as this litigation moves forward.[1]

## SUMMARY OF THE ARGUMENT

Rule 3.6 of the North Carolina Rules of Professional Conduct prohibits an attorney who is participating in a case from making "an extrajudicial statement that the lawyer knows . . . will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter." The "substantial likelihood" test is aimed at "two principal evils: (1) comments that are likely to influence the actual outcome of the trial, and (2) comments that are likely to prejudice the jury venire, even if an untainted panel can ultimately be found." Gentile v. State Bar of Nev., 501 U.S. 1030, 1075 (1991); see also In re Morrissey, 168 F.3d 134, 140 (4th Cir. 1999).

In this case, in which a jury trial has been demanded, statements have been made by the Plaintiffs' attorney and his agents that appear calculated to "influence the actual outcome of the trial" and "prejudice the jury venire." Specifically, Plaintiffs' counsel, one of the Plaintiffs, and the Plaintiffs' publicist conducted a press conference at the National Press Club in Washington, DC, on 21 February 2008, which lasted for almost an hour. Plaintiffs' counsel directed those listening to the press conference to a website developed by the Plaintiffs and described as "the official source of information" about the

---

[1] As discussed herein, this motion is limited to attorney-initiated statements, whether made by the attorney or through a third-party, that will likely be disseminated by means of public communication and statements. The motion is not addressed toward any other media coverage or website discussion of this case or the underlying events of this case.

lawsuit. (Ex. 2 at 1.) Plaintiff also issued a press release on 21 February 2008 regarding the lawsuit and again directing readers to the website. The website, the press conference and statements, and the press release violate the letter and spirit of Local Rule 83.10e(b) and Rule 3.6 of the North Carolina Rules of Professional Conduct and have a substantial likelihood of prejudicing the Duke Defendants.

## STATEMENT OF FACTS

This action was filed shortly after 1:00 pm on Thursday, February 21, 2008. (Docket No. 1.) Counsel for the Duke Defendants learned that the suit would be filed from a "media alert" issued by the Plaintiffs' counsel, Cooper & Kirk PLLC, and its publicist on February 20, 2008, at or before 3:08 pm. That media alert invited members of the press to a media event at the National Press Club in Washington, DC, to announce the filing of this lawsuit.[2] (Ex. 1 at 1.) Cooper & Kirk also issued "For Immediate Release" a 2-page press statement that, among other things, directed readers interested in "more information about th[e] lawsuit . . . and other materials about the case" to a website. (Ex. 4 at 2.) That website – www.dukelawsuit.com – proclaims itself to be "the official source of information about their lawsuit."[3] (Ex. 2 at 1.) It promises that "[i]t

---

[2] When the Plaintiffs and their counsel announced the press conference, counsel for the Duke Defendants, Jamie Gorelick, emailed Charles J. Cooper, of Cooper & Kirk, notifying him that "according to our local counsel, the judges of the Middle District of North Carolina have a very strict practice forbidding lawyers from discussing their litigation with the press." (Ex. 3 at 2.) Mr. Cooper replied "[w]e will, of course, comply with all court rules and procedures." (Id. at 1.)

[3] The website also includes the media alert, links to the press statement, a five-page case summary, the full transcript of the press conference, video streams of several news

4

will be updated as regularly as the case progresses," and users are urged to "[c]heck back for updates." (Id.)

The following day, the previously announced press conference was held at the National Press Club in Washington, DC. Robert Bork, Jr., the Plaintiffs' publicist, began the proceeding by welcoming members of the media "on behalf of the 38 members of the Duke lacrosse team and their parents, who are filing this lawsuit today." (Ex. 6 at 1.) Mr. Cooper then introduced himself as Plaintiffs' attorney and noted that he would be working with William J. Thomas, II, an attorney at Thomas, Ferguson & Mullins,[4] of Durham, North Carolina. After his statement, Mr. Cooper introduced Plaintiff Steven Henkelman, the father of one of the unindicted lacrosse player-plaintiffs. Mr. Henkelman accused the Duke Defendants of, among other things, "coldly turn[ing] away and abandon[ing]" the lacrosse players and their families and a "willing[ness] to sacrifice" them "for the good of the institution." (Id. at 6, 7.) Mr. Cooper then took questions from the press. The press conference lasted almost an hour.[5] The press conference and website attracted widespread local and national media attention.[6] (Ex. 10.)

---

stories, and links to other websites and blogs that contain messages that are critical of the Duke Defendants and misrepresent the relevant facts. (Ex. 2 at 1.)

[4] Mr. Thomas, a member of the Bar of this Court, filed the Complaint. Mr. Cooper has not yet appeared in the lawsuit. His name is, however, included in the signature block of the Complaint, with a notation indicating that a motion for special appearance will be filed forthwith.

[5] The press conference, in its entirety, can be viewed on www.dukelawsuit.com as of the date of the filing of this Memorandum. For the Court's convenience, a transcript of the press conference is attached as Exhibit 6.

5

In the face of this publicity, and believing that a statement was required to protect the Duke Defendants from the substantial undue prejudicial effect of this publicity which was initiated by the Plaintiffs, the Duke Defendants limited their comments to a statement issued from the University during the Plaintiffs' press conference. The statement by Pamela Bernard, Vice President and General Counsel for Duke University, said:

> If these plaintiffs have a complaint it is with Mr. Nifong. Their legal strategy – attacking Duke – is misdirected and without merit.
>
> To help these families move on, Duke offered to cover the cost of any attorneys' fees or other out-of-pocket expenses, but they rejected this offer. We will vigorously defend the university against these claims.
>
> We do not think it is appropriate under the North Carolina federal court rules to make any further statements.

(Ex. 9 at 1.)

## QUESTIONS PRESENTED

I.  Whether the website, www.dukelawsuit.com, has a substantial likelihood of materially prejudicing an adjudicative proceeding of this matter such that it fails to

---

[6] For example, as one reporter from the News & Observer noted, "[t]he latest Duke lacrosse suit got off to a big start Thursday with publicists, lawyers of national renown, a media blitz at the National Press Club, and a lawsuit with its own website." Anne Blythe and Barbara Barrett, 38-Player Lacrosse Suit Gets Fanfare, News & Observer, Feb. 22, 2008 (available at <http://www.newsobserver.com/news/crime_safety/duke_lacrosse/v-print/story/958851.html>). That same reporter observed that the "[Plaintiffs' counsel] Cooper . . . issued what amounted to an opening argument." Id. Indeed, a basic internet search revealed countless online news articles and blog postings quoting or referencing Mr. Cooper or Mr. Bork in the course of discussing the litigation. (Ex. 10.)

comply with the Local Rules of this Court regarding statements that a lawyer knows or should know will be disseminated by means of public communication?

II.     Whether the 21 February 2008 press conference hosted by Mr. Bork, Mr. Henkelman, and Mr. Cooper had a substantial likelihood of materially prejudicing an adjudicative proceeding of this matter such that it failed to comply with the Local Rules of this Court regarding statements that a lawyer knows or should know will be disseminated by means of public communication?

III.    Whether the press release issued by the Plaintiffs has a substantial likelihood of materially prejudicing an adjudicative proceeding of this matter such that it fails to comply with the Local Rules of this Court regarding statements that a lawyer knows or should know will be disseminated by means of public communication?

## **ARGUMENT**

Local Rule 83.10e(b) adopts the North Carolina Rules of Professional Conduct.[7] Rule 3.6 of the North Carolina Rules of Professional Conduct prohibits a lawyer[8] "who is

---

[7] Rule 83.10e(b) refers to the "Code of Professional Responsibility adopted by the Supreme Court of North Carolina, as amended from time to time by that state court." In 1985, the Code of Professional Responsibility was replaced by the Rules of Professional Conduct. Since Rule 83.10e(b) refers to "as amended from time to time," it is assumed that Rule 83.10e(b) adopts the North Carolina Rules of Professional Conduct as its rule of conduct.

[8] All attorneys appearing before this Court, whether admitted to the bar of this Court or whether specially appearing under Local Rule 83.1(d), are bound by the Local Rules of this Court, which includes being bound by the North Carolina Rules of Professional Conduct. Further, under Local Rule 83.10i, attorneys specially appearing confer jurisdiction upon this Court for discipline for violations of these rules. That Mr. Cooper has not yet filed a notice of special appearance should not be a bar to this Court's action,

participating or has participated in the investigation or litigation of a matter" from making a statement that the "lawyer[9] knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."[10] Issuing press releases, holding a press conference or creating a website are "means of public communication," as contemplated by Rule 3.6.

Further, Rule 3.6(b) contains a non-exhaustive listing of topics upon which a lawyer may comment without running afoul of Rule 3.6. Included within Rule 3.6(b) are "(1) the claim, offense or defense involved and, except when prohibited by law, the identity of the persons involved; (2) the information contained in a public record; (3) that an investigation of a matter is in progress; [and] (4) the scheduling or result of any step in litigation." The underlying purpose of Rule 3.6 is to ensure that the court can provide a full, fair and impartial adjudication and to prevent litigants from trying their cases in the press or on the internet. See, e.g., Rule 3.6, Comment 1 ("Preserving the right of a fair trial necessarily entails some curtailment of the information that may be disseminated

---

as Mr. Cooper has represented himself as the Plaintiffs' attorney, has affixed his name to the Complaint, and has indicated that his notice of special appearance is forthcoming.

[9] 98 Formal Ethics Opinion 4 makes clear, if an attorney uses a third-party as a conduit to make statements that the attorney could not make, then the attorney violates Rule 3.6.

[10] The rule has an exception that provides that "a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client." Rule 3.6(c).

about a party prior to trial, particularly where trial by jury is involved.") Where, as here, a trial by jury has been demanded, the rules in question have particular applicability.[11]

The Duke Defendants seek an order directing that attorney-initiated and attorney-sanctioned statements such as the existing www.dukelawsuit.com, the press conference held on 21 February 2008, and the press release issued on 21 February 2008 are improper.

I.  The www.dukelawsuit.com website has a substantial likelihood of materially prejudicing an adjudicative proceeding of this matter.

Despite having no connection with this Court, the website, www.dukelawsuit.com, is described by the Plaintiffs as "the official source of information about their lawsuit." (Ex. 2 at 1.) The website is a manifestation of the goals as expressed on Mr. Bork's website. (Ex. 7.) As a review of www.dukelawsuit.com as a whole reveals (Ex. 2), the website is aimed at attacking the character, credibility, and reputation of the Duke Defendants. Such statements are prohibited by Rule 3.6. As comment 5 to Rule 3.6 of the North Carolina Rules of Professional Conduct provides, subjects relating to the "character, credibility, [and] reputation" of a party are "more likely than not to have a material prejudicial effect on a proceeding."

---

[11] Other jurisdictions have similar rules prohibiting such unsolicited media contacts. For example, a Pennsylvania ethics opinion states that lawyers may not give unsolicited statements to the press regarding the progress of a pending action. The opinion further states that, if a lawyer desires to make a statement regarding a filed or intended motion, the statement should not go beyond reciting the mere existence of the motion, and the date, time, and place of where the motion will be heard in open court. Stating anything more, the opinion holds, would violate Pennsylvania's Rule 3.6 (which is substantially similar to North Carolina's Rule 3.6). PA Eth. Op. 99-135 (1999 WL 33601704).

Further, in the context of Rule 3.6, websites pose a particular problem. Websites are available twenty-four hours a day, seven days a week. Websites are accessible anywhere in the world. Their content can be updated continuously, and the content can be removed at a moment's notice. Accordingly, it is not practical for the Duke Defendants to monitor the www.dukelawsuit.com website on a constant basis to see what comments are being posted on behalf of the Plaintiffs' attorney at any given time. Further, even though Rule 3.6(c) allows a lawyer "to make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client," a retort in the press cannot meaningfully rebut a website that continually changes and offers new and inappropriate information to the public.

It is not a defense that the website is apparently operated by Mr. Bork. As 98 Formal Ethics Opinion 4 makes clear, if an attorney uses someone else as a conduit to make statements that the attorney could not make, then the attorney violates Rule 3.6. The press conference, at which Mr. Cooper participated, directed listeners to www.dukelawsuit.com. Because this website has a substantial likelihood of materially prejudicing potential jurors in this case, it should not be allowed.

II. The 21 February 2008 press conference hosted by Mr. Bork, Mr. Henkelman, and Mr. Cooper had a substantial likelihood of materially prejudicing an adjudicative proceeding of this matter.

As would be expected when a press conference is held at the National Press Club, the press conference attracted widespread local and national media attention.[12] The very selection by Messrs. Bork and Cooper of the National Press Club in Washington, DC, as the venue for their press conference maximized this media sensation.

Mr. Bork's website, www.bork.com, makes clear that this coverage is just what was sought when the press conference was held: "Increasingly legal battles are being fought, and won, in the court of public opinion long before attorneys see the inside of a courtroom." (Ex. 8 at 4.) It continues: "When arguing your case in the court of public opinion, the rules of evidence don't matter." (Ex. 10, ¶ 4.) Mr. Bork's website emphasizes his intent to use public communications to influence public – and necessarily, potential jurors' – views on pending litigation:

> Bork Communication Group . . . helps . . . clients use the techniques of modern communication to . . . win litigation . . . . We pride ourselves on our ability to insert facts into the noise and confusion of a lawsuit, to establish corporate credibility, clarity of message and critical mass of opinion. We tell our client's story so that it is heard, understood and remembered.

(Ex. 7 at 1-2.)

Further, during the press conference, Mr. Henkelman spoke in detail about the damages he, his son, and the other Plaintiffs suffered. Mr. Henkelman accused the Duke

---

[12] To reiterate, the Duke Defendants' arguments are not directed toward any of the media coverage itself. Instead, their arguments are directed completely toward the conduct of the attorneys who initiated the contacts with the media that resulted in that coverage.

11

Defendants of, among other things, "coldly turn[ing] away and abandon[ing]" the lacrosse players and their families and a "willing[ness] to sacrifice" them "for the good of the institution." (Ex. 6 at 6, 7.) Mr. Henkelman's statement was presented in a manner calculated to engender sympathy in everyone watching the live feed on television, and anyone who reads what the reporters wrote about the statement, including potential jurors. Statements such as these, whether made directly by the attorney or whether made through the conduit of the attorney's client, have a substantial likelihood of materially prejudicing an adjudicative proceeding in this matter, and they should not be allowed.

III. The press releases issued by the Plaintiffs have a substantial likelihood of materially prejudicing an adjudicative proceeding of this matter.

The press release that was issued on 21 February 2008 cites Mr. Cooper's law firm, Cooper & Kirk, PLLC, as its source. The press release also quotes Mr. Cooper's remarks at the press conference, identifies Mr. Cooper as the Plaintiffs' attorney, and quotes from the Complaint filed in this Court. This press release paraphrases the Complaint as follows:

> The suit says that Brodhead and other Duke officials actively blinded themselves to and suppressed exculpatory evidence; discredited exculpatory evidence that had been publicly disclosed; stood passively while faculty and student protestors waged a campaign of abuse and harassment against the lacrosse team members; issued statements and imposed discipline on the team that signaled the players' guilt; and remained silent when an inexperienced nurse at its medical center falsely characterized a medical exam at Duke Hospital as indicating that a rape had taken place.

(Ex. 4 at 1.) It also says that Duke officials "'lent credibility to the rape allegations by capitulating to an angry mob's demands to condemn and punish the innocent players and their blameless coach.'" (Id. (quoting Compl.).)

Plaintiffs will almost certainly argue that these statements are fully permitted by Rule 3.6(b)(2), which allows an attorney to comment about "information contained in a public record." Many of these statements are direct quotes from the Complaint, while others are slight paraphrasings of the Complaint. (See, e.g., Compl. ¶¶ 3, 11(a), 11(b), 11(c).) When a complaint contains such incendiary language, an attorney should not be permitted to hide behind the language of the complaint and make a statement to the press that strings together paragraphs that are highly prejudicial. Such an action is contrary to the very intent of Rule 3.6, "materially prejudices an adjudicative proceeding," and should not be allowed.

In summary, the creation and aggressive promotion of a website purporting to be the "official source" of information about the lawsuit, the press conference at the National Press Club, and the above-referenced press release, make clear the Plaintiffs' intention to "use the techniques of modern communication . . . to win litigation," as presaged by comments on Mr. Bork's website. (Ex. 8 at 2.) If, as it appears, the pleadings, discovery and other facts and developments in this case are to be the topic of discussion on www.dukelawsuit.com, and the subject of scheduled press conferences, press releases and attorney-initiated or publicist-initiated media contacts, then the Duke Defendants need this Court's direction and guidance as to whether there are any limits on

such attorney-initiated media contact and the appropriate responses by the Duke Defendants to these contacts.

## **CONCLUSION**

Given the high-profile nature of the underlying allegations in the above-captioned lawsuit, and given the unusual level of attorney-initiated and attorney-sanctioned communication regarding the filing of this lawsuit, the Duke Defendants respectfully request that this Court enter an order declaring that the existing website, the press conference on 21 February 2008, and the press release issued on 21 February 2008, violate Rule 3.6 and giving such other relief as the Court deems appropriate.

Given the nature of this motion, the Duke Defendants further move for expedited review of this motion.

This 28th day of February 2008.

/s/ J. Donald Cowan, Jr.
J. DONALD COWAN, JR.
N.C. State Bar No. 0968
DIXIE T. WELLS
N.C. State Bar No. 26816
L. COOPER HARRELL
N.C. State Bar No. 27875
Smith Moore LLP
300 N. Greene Street,
Suite 1400
Greensboro, NC  27401
Telephone:  (336) 378-5200
Facsimile:  (336) 378-5400
Email: don.cowan@smithmoorelaw.com
Email: dixie.wells@smithmoorelaw.com
Email: cooper.harrell@smithmoorelaw.com

*Counsel for Defendants Duke University, Richard H. Brodhead, Peter Lange, Larry Moneta, John Burness, Tallman Trask, Suzanne Wasiolek, Matthew Drummond, Aaron Graves, Robert Dean, Kate Hendricks, and Victor J. Dzau*


/s/ Dan J. McLamb
DAN J. MCLAMB
N.C. State Bar No. 6272
Yates, McLamb & Weyher, L.L.P.
One Bank of America Plaza
421 Fayetteville Street, Suite 1200
Raleigh, North Carolina 27601
Telephone: (919) 835-0900
Facsimile: (919) 835-0910
Email: dmclamb@ymwlaw.com

*Counsel for Defendants Duke University Health System, Inc., Tara Levicy and Theresa Arico*

# CERTIFICATE OF SERVICE

I hereby certify that on 28 February 2008, I electronically filed the foregoing Memorandum in Support of the Duke Defendants' Motion Regarding Attorney-Initiated and Attorney-Sanctioned Contact with the Media with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel:

>*Counsel for the Plaintiffs*
>William J. Thomas, II (N.C. Bar # 9004)
>119 East Main Street
>Durham, NC 27701
>Email: thomas@tfmattorneys.com

As of the date of this filing, the following attorneys have not entered notices of appearance for this case, and they are being served by U.S. Mail:

>*Counsel for the Plaintiffs*
>Charles J. Cooper
>David H. Thompson
>Brian S. Doukoutchos
>Nicole Jo Moss (N.C. Bar # 31958)
>1523 New Hampshire Avenue, NW
>Washington, DC 20036
>Phone: (202) 220-9600

As of the date of this filing, no attorney has made an appearance on behalf of the following Defendants. Based on information and belief, the following Defendants are represented by counsel as indicated below and are being served by email:

*Counsel for Benjamin W. Himan*
Joel Miller Craig
4011 University Drive, Suite 300
Durham, North Carolina 27717-1579
Email: jcraig@kennoncraver.com
Phone: (919) 490-0500

*Counsel for David W. Addison*
James B. Maxwell
Maxwell, Freeman & Bowman, P.A.
PO Box 52396
Durham, NC 27717
Phone: (919) 493-6464
Email:  jmaxwell@mfbpa.com

*Counsel for Steven Chalmers, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, Lee Russ, and Patrick Baker*
Patricia P. Kerner
Troutman Sanders, LLP
POD 1389
Raleigh, NC 27602-1389
Phone: (919) 835-4117
Fax: 919-829-8714
Email: tricia.kerner@troutmansanders.com

*Counsel for City of Durham*
Reginald B. Gillespie, Jr.
Faison & Gillespie
POB 5517
Durham, NC 27717
919-489-9001
Fax: 919-489-5774
Email: rgillespie@faison-gillespie.com

>*Counsel for* Mark D. Gottlieb
>Edwin M. Speas, Jr., Esq.
>N.C. Bar No. 4112
>P.O. Box 10096
>Raleigh, North Carolina 27605-0096
>Phone: (919) 783-6400
>Fax:    (919) 783-1075
>Email: espeas@poynerspruill.com

As of the date of this filing, no attorney has made an appearance on behalf of any of the following Defendants. I hereby certify that I served the following Defendants by U.S. Mail:

>Linwood Wilson
>6910 Innesbrook Way
>Bahama, NC 27503-9700
>
>J. Wesley Covington
>Bryant, Patterson, Covington, Lewis, & Lindsley, P.A.
>103 W. Main Street
>Durham, NC 27702

This 28th day of February 2008.

>/s/ J. Donald Cowan, Jr.
>J. DONALD COWAN, JR.
>N.C. State Bar No. 0968
>Smith Moore LLP
>300 N. Greene Street,
>Suite 1400
>Greensboro, NC  27401
>Telephone:  (336) 378-5200
>Facsimile:  (336) 378-5400
>Email: don.cowan@smithmoorelaw.com
>
>Counsel for Defendants Duke University, Richard H. Brodhead, Peter Lange, Larry Moneta, John Burness, Tallman Trask, Suzanne Wasiolek, Matthew Drummond, Aaron Graves, Robert Dean, Kate Hendricks, and Victor J. Dzau