## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## No. 1:08-cv-119

EDWARD CARRINGTON, et al.,      )
                                            )
                        Plaintiffs,     )  **Plaintiffs' Response to Defendants'**
     v.                            )  **Motion Regarding Attorney-**
                                              )  **Initiated and Attorney-Sanctioned**
DUKE UNIVERSITY, et al.,        )  **Contact with the Media**
                                            )
                      Defendants.    )

### NATURE OF THE MATTER BEFORE THE COURT

Plaintiffs in this action, 38 members of the 2006 Duke University lacrosse team and several parents of certain members, hereby respectfully file this response to the Duke Defendants' "Motion Regarding Attorney-Initiated and Attorney-Sanctioned Contact with the Media" ("Duke Mot."). Duke's motion seeks entry of an order declaring that certain extrajudicial statements made by Plaintiffs' counsel and one of the Plaintiffs violated Rule 3.6 of the North Carolina Rules of Professional Conduct.

### STATEMENT OF FACTS

On February 21, 2008, Plaintiffs filed this civil action against Duke University, its medical affiliate, and several of its officials and employees (hereinafter "Duke"), and against the City of Durham and several of its officers, employees, and agents. This action arises out of the infamous Duke lacrosse rape hoax that saturated the local, state, and national media throughout most of 2006 and much of 2007. Prior to the filing of this suit, two similar lawsuits were filed in this Court, one brought by three other unindicted

Dockets.Justia.com

lacrosse players against a similar cast of Duke and Durham defendants, and one brought

by the three wrongfully indicted lacrosse players against Durham defendants only

(because they had reached an undisclosed settlement of their claims against Duke).

On February 20, the day before this action was filed, Plaintiffs' media advisor,

Robert H. Bork, Jr., of Bork Communication Group LLC, issued a media alert informing

the press that a press conference would be held the following day to announce the filing

of the suit.  Later that day, lead counsel for Duke, Jamie Gorelick, sent an email message

to lead counsel for Plaintiffs, Charles J. Cooper, advising:  "[A]ccording to our local

counsel, the judges of the Middle District of North Carolina have a very strict practice

forbidding lawyers from discussing their litigation with the press.  I assume that your

local counsel has advised you on this."  *See* Duke Mot., Exh. 3.  Given that neither of

Plaintiffs' local counsel, both of whom are experienced North Carolina practitioners,

were aware of any such practice, counsel for Plaintiffs made inquiry of other experienced

litigators in this Court, including one who has an unparalleled personal familiarity with

the practices and policies of the judges of the Middle District of North Carolina.  None of

the experienced practitioners contacted by counsel for Plaintiffs were aware of the

existence of any such local practice in *civil litigation*, and in fact they denied the

existence of any such practice.  To be sure, these local practitioners confirmed the general

applicability of the restrictions on extrajudicial attorney speech of Rule 3.6 of the North

Carolina Rules of Professional Conduct, but counsel for Plaintiffs were quite familiar, of

course, with Rule 3.6, and they had no intention, of course, of violating it in any way.

Accordingly, Mr. Cooper assured Ms. Gorelick that Plaintiffs would "comply with all court rules and procedures."  *See* Duke Mot., Exh. 3.

In the morning of February 21, a press release was issued to announce the filing of this action later that day.  The release had been carefully framed with Rule 3.6 in mind, and its description of the substance of the action either quoted or closely paraphrased the allegations of the Complaint itself.  *See* Duke Mot., Exh. 4.  At the press conference that afternoon, prepared statements were made by Mr. Cooper and Steve Henkelman, one of the Plaintiffs and father of Plaintiff Erik Henkelman.  Mr. Cooper's comments about the substance of the action were also carefully framed to track the allegations of the Complaint itself, either verbatim or in close paraphrase.  *See* Duke Mot., Exh. 6.

Plaintiffs have also established a website, www.dukelawsuit.com, that is operated by Mr. Bork and that posts pleadings and other filings in this case and provides links to the February 21 press release and press conference, certain media reports, and certain blogs that are operated by third parties.  *See* Duke Mot., Exh.2.

Duke's motion argues that Plaintiffs' press release, press conference, and website violate Rule 3.6's restrictions on extrajudicial attorney statements, and it seeks "an order finding that the Plaintiffs and their counsel have violated [Rule 3.6] and further clarifying the manner in which that rule will apply as this litigation moves forward."  Memorandum in Support of the Duke Defendant's Motion Regarding Attorney-Initiated and Attorney-Sanctioned Contact with the Media at 2-3 ("Duke Br.").  Duke's motion is wholly meritless, as we demonstrate below.

## QUESTION PRESENTED

The question presented by Duke's motion is whether Plaintiffs' press release, press conference, and website, or any of them, poses such a substantial likelihood of materially prejudicing an adjudicative proceeding of this matter that it violates Rule 3.6's restrictions regarding extrajudicial statements that a lawyer knows or should know will be disseminated by means of public communication? *See* Duke Br. 6-7.

## ARGUMENT

Duke's motion is extraordinary. Duke not only acknowledges that the specific extrajudicial attorney statements it challenges either directly quote or closely paraphrase the allegations of Plaintiffs' Complaint, it concedes that such statements are *expressly authorized* by Rule 3.6(b)(2)'s so-called "safe harbor" for attorney comments that relate "information in a public record." Duke argues, however, that these statements nonetheless run afoul of the rule because they were "incendiary" (a characterization which Plaintiffs reject). Even if this Court were empowered and inclined to adopt Duke's amendment to the rule, however, engrafting an "incendiary language" exception would plainly render the rule unconstitutionally vague under controlling Supreme Court precedent.

But Duke's motion is even more remarkable for what it does not say. Nowhere does Duke cite a single case in which a court, state or federal, has imposed sanctions or otherwise enforced the attorney speech restrictions of Rule 3.6 in *civil* litigation, and our research has turned up no such case. Duke's motion thus seeks a ruling from this Court

that appears to be without precedent in American jurisprudence. Nor does Duke cite *Hirschkop v. Snead*, 594 F.2d 356 (4th Cir. 1979) (*en banc*), which struck down Virginia's closely similar rule governing extrajudicial attorney speech and which casts a dark constitutional shadow over North Carolina's Rule 3.6 insofar as it restricts speech about civil litigation. Nor does Duke, finally, even refer to, let alone cite any evidence for, this Court's supposed "very strict practice forbidding lawyers from discussing their litigation with the press" in civil cases such as this. We assume that Duke's counsel had a good faith basis for making this representation to Plaintiff's counsel, notwithstanding their failure to provide any.

## I. DUKE'S MOTION IS DEFEATED BY THE UNAMBIGUOUS TERMS OF RULE 3.6 ITSELF.

### A. The Attorney Speech At Issue Here Is Expressly *Protected*, Not Prohibited, By Rule 3.6.

**1. The Press Release.** Duke objects to the press release issued on February 21, but the *only* statements in the press release that Duke identifies as violating Rule 3.6 are correctly acknowledged by Duke itself to be "direct quotes from" or "slight paraphrasings of the Complaint." Duke Br. 13. Duke's brief even helpfully provides specific citations to the paragraphs of the Complaint from which the statements of the press release were drawn. *Id.* And Duke also concedes that such statements are *expressly exempted* from Rule 3.6(a)'s general prohibition by the rule's so-called "safe-harbor" exceptions -- Rule 3.6(b)(1) and (2) -- which affirmatively authorize lawyers to state "the claim, offense or defense involved" and any "information contained in a public

record." Obviously, the Complaint is part of the public record. According to Duke, however, even though the statements in the press release are drawn almost verbatim from the Complaint, and are thus expressly permitted by the plain text of Rule 3.6(b), the statements should not be afforded the protection of the rule's "safe-harbor" provision because the Complaint itself uses "incendiary language." *Id.*

We note initially our disagreement with Duke's claim that the passages from the press release excerpted in Duke's brief are framed in "incendiary language." The excerpted passages simply summarize in plain, straightforward language the wrongful conduct by Duke that is alleged in the Complaint to have caused Plaintiffs great injury and to have given rise to their claims. Indeed, even now we are hard pressed to see how we might edit the statements to make them less embarrassing to Duke. The simple reality is that the intentional torts pleaded in the complaint -- *e.g.*, fraud, abuse of process, intentional infliction of emotional distress, obstruction of public justice -- cannot be alleged in terms that the Duke and Durham defendants will find pleasing, as demonstrated by the similar allegations contained in the two complaints previously filed in this Court by six other members of the 2006 Duke lacrosse team. If Duke had not so callously and deliberately violated its contractual and legal duties to its innocent students, it would not now be facing these historically unprecedented legal actions by what effectively amounts to its entire 2006 lacrosse team.

In any event, paragraph 3.6(b)(2)'s safe harbor is unqualified and unambiguous; it contains no exception for "information contained in a public record" that the opposing

party finds "incendiary." Duke Br. 13. Duke thus asks this Court to rewrite the rule. But even if the Court were empowered to amend Rule 3.6(b)'s safe harbor to include an exception for "incendiary" public records, as Duke urges, the Rule would be rendered unconstitutionally vague. The Supreme Court has squarely held that a judicial interpretation that effectively negated the safe-harbor provision of a materially identical rule rendered the rule unconstitutionally vague. *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1033-34 (1991) ("[T]he Rule's safe harbor provision appears to permit the speech in question, and [the court's] decision to discipline petitioner in spite of that provision raises concerns about vagueness and selective enforcement."). *See also id*. at 1048-49.

2. **The Press Conference.** Duke also contends that statements made during the February 21 press conference by Mr. Henkelman violate Rule 3.6. Duke Br. 5, 11-12. Mr. Henkelman's remarks are the *only statements* made during the press conference that Duke identifies as supposedly transgressing Rule 3.6. *See id.* But Rule 3.6 does not apply to parties—it is a professional rule that governs only the conduct of lawyers. *See* Rule 3.6(a) ("A lawyer … shall not make an extrajudicial statement"). If the rule's unambiguous terms left any lingering doubt about this, the North Carolina State Bar Council removed it by declaring that "Revised Rule 3.6 does not impinge upon the constitutional right of clients to make extrajudicial statements concerning their case." 98 Formal Ethics Opinion 4 (Jan. 15, 1998).

To be sure, an attorney would be responsible under Rule 3.6 if the extrajudicial statements were in fact his own and the client "was merely used as a conduit by the attorney to make prejudicial statements the attorney could not." *Id.* But Duke does not even *allege*—much less *prove*—that Mr. Henkelman was a mere conduit for his lawyers' speech. We deny any such act of ventriloquism; neither Mr. Cooper nor any other lawyer representing the Plaintiffs put any words in Mr. Henkelman's mouth, either directly or indirectly. And the proof is in Mr. Henkelman's remarks, which Duke itself describes as personal "detail[s] about the damages he, his son, and the other Plaintiffs suffered." Duke Br. 11. *See* Duke Mot, Exh. 6 at 6-8 (transcript of press conference). Duke accuses Mr. Henkelman of speaking "in a manner calculated to engender sympathy," Duke Br. 12, but no calculation or artifice is necessary to render sympathetic the prolonged anguish of a parent who has been forced to watch helplessly as his innocent child was falsely condemned by officials, professors, and students of the very institution that agreed to educate and care for him. Yes, Mr. Henkelman's words were indeed poignant and moving, and it is not surprising that Duke cringes with embarrassment to hear them. But that is hardly a reason to silence him.

3. **The Website.** Duke objects to Plaintiffs' website, www.dukelawsuit.com, on the ground that it supposedly "is aimed at attacking the character, credibility, and reputation of the Duke Defendants." Duke Br. 9. Duke plucks this catch-phrase from one of the comments to Rule 3.6, *see id.*, and slaps it as a label on Plaintiffs' website, without any elaboration. Duke does not cite even a single specific

8

comment or statement on the website as an example of such an impermissible character attack. Duke simply attaches a printout of the pages of the website (Duke Mot., Exh. 2) and nakedly asserts that it violates Rule 3.6 "as a whole." *Id.* But Exhibit 2 reveals (and Duke itself confirms, Duke Br. 4-5 n.3) that the website merely presents links to (i) the Complaint, Duke's motion, and other filings and materials in the public record of this case; (ii) the text of the press release, which merely echoes certain allegations of the Complaint; (iii) video and a transcript of the press conference, which likewise merely quote or paraphrase allegations of the Complaint (except for Mr. Henkelman's remarks); (iv) video streams of some media reports; and (v) several blogs "that are critical of the Duke Defendants," *id.* at 5 n.3, but that are operated and edited by third parties, not by Plaintiffs or their counsel. Thus Duke's argument that the website violates Rule 3.6 is piggybacked on its flawed arguments (answered above) that the press conference and press release violate that rule and that an attorney can be sanctioned for relating information that is already in the public record of the case.

> **B.** **Duke Cannot Demonstrate That The Challenged Extrajudicial Speech Poses A "Substantial Likelihood Of Materially Prejudicing An Adjudicative Proceeding" In This Civil Case.**

Rule 3.6(a) forbids extrajudicial statements only if they "will have a substantial likelihood of materially prejudicing an adjudicative proceeding." This is Duke's motion, and it is Duke's burden to prove a violation of the rule. *See, e.g., Gentile*, 501 U.S. at 1037-38 (plurality opinion of Kennedy, J.); *Doe v. Zeder*, 782 N.Y.S.2d 349, 355 (Sup. Ct. N.Y. 2004). Yet Duke offers no evidence -- indeed, no genuine argument -- in

support of its effort to staunch the flow of public information about this case, only unsupported assertions that parrot the rule and its commentary. *See, e.g.,* Duke Br. 9.

The standard for proving a Rule 3.6 violation is necessarily demanding even in a *criminal* case, given the First Amendment values at stake. The " 'formulation in Model Rule 3.6 incorporates a standard approximating clear and present danger by focusing on the likelihood of injury and its substantiality.' " *Gentile*, 501 U.S. at 1037 (plurality opinion of Kennedy, J.) (quoting ABA Annotated Model Rules of Professional Conduct 243 (1984)).[1] The standard "requires an assessment of proximity and degree of harm." *Gentile*, 501 U.S. at 1037 (plurality opinion of Kennedy, J.).

With respect to the first element -- proximity of harm -- "the timing of a statement [i]s crucial in the assessment of possible prejudice and the Rule's application." *Id.* at 1044. In *Gentile*, a plurality of the Court found that the proposition that "petitioner's abbreviated, general comments six months before trial created a 'substantial likelihood of materially prejudicing' the proceeding is, to say the least, most unconvincing." 501 U.S. at 1039. And although "[a] statement which reaches the attention of the venire on the eve of *voir dire* might require a continuance or cause difficulties in securing an impartial jury,

---

[1] Five members of the Court in *Gentile* concluded in separate opinions that the First Amendment does not "require a showing of 'clear and present danger' that a malfunction in the criminal justice system *will be caused* before a State may" discipline a lawyer representing a criminal defendant for making prohibited extrajudicial comments about the case. *See* 501 U.S. at 1069, 1071 (opinion of Rehnquist, C.J., for the Court) (emphasis added); *id.* at 1082 (O'Connor, J., concurring). But a different majority nonetheless struck down the Nevada Supreme Court's interpretation of Rule 3.6 as unconstitutionally vague and vacated the sanctions imposed on an attorney under that Rule. *See id.* at 1048-49 (opinion of Kennedy, J., for the Court); *id.* at 1082 (O'Connor, J., concurring).

… exposure to the same statement six months prior to trial would not result in prejudice, the content fading from memory long before the trial date." *Id.* at 1044. *See also In re Benton*, 238 S.W.3d 587, 599 (Tex. App. 2007) (denying gag order in criminal case because no substantial likelihood of prejudice where statements made six months before trial). Here, there is little prospect of a trial in this *civil* case for 18 months or more; it follows, then, that there is no imminent or proximate risk of prejudice, and Duke does not suggest otherwise.

Nor can Duke satisfy the second element of proving a Rule 3.6 violation -- degree of harm. The degree of any specific threat of prejudice that might be imagined here (for Duke identifies none) is far more remote than in *Gentile*. The plurality in *Gentile* found that the attorney's extrajudicial comments posed no substantial risk of prejudice to his client's criminal trial "[g]iven the size of the community from which any potential jury venire would be drawn." 501 U.S. at 1044. The population of Clark County, Nevada was 600,000 at the time. *Id.* The Middle District of North Carolina comprises *24 counties*, with a combined population (according to the U.S. Census Bureau) of over 2.6 million—more than four times that in *Gentile*. *A fortiori* any potential risk of prejudice to the trial in this civil case is diluted well below what Rule 3.6 could require. *See also In re Benton*, 238 S.W.3d at 600 (relying on size of jury pool to find insubstantial risk of prejudice).

## II. ACCEPTANCE OF DUKE'S ARGUMENT IN THIS CIVIL CASE WOULD RENDER RULE 3.6 UNCONSTITUTIONAL.

Duke nowhere mentions the most important consideration in interpreting and applying Rule 3.6 properly—namely, that this is a *civil*, rather than a criminal, proceeding, and therefore an even higher standard of proving a Rule 3.6 violation (assuming that Rule 3.6 can constitutionally be applied in a civil action) than that discussed in *Gentile* is required here. As the comments to the rule specifically recognize, "the likelihood of prejudice may be different depending on the type of proceeding." "Criminal jury trials will be most sensitive to extrajudicial speech. Civil trials may be less sensitive." Rule 3.6 cmt. 6. Indeed, as noted earlier, glaringly absent from Duke's motion is a citation to even a single case, state or federal, in which a court has enforced Rule 3.6 to sanction or otherwise restrict attorney speech in a civil case. Nor has our own research turned up a single such case.

This is not surprising, given that applying the speech restrictions of Rule 3.6 in a civil case raises serious constitutional issues. The *en banc* Fourth Circuit has specifically noted that

> many significant differences between criminal jury trials and civil cases must be considered in evaluating the constitutionality of a general rule limiting lawyers' speech concerning civil cases. Civil litigation is often more protracted than criminal prosecution because of broader civil discovery rules, the complexity of many civil controversies, and the priority given criminal cases. Thus, it is not unlikely that the rule could prohibit comment over a period of several years from the time investigation begins until the appellate proceedings are completed.

*Hirschkop v. Snead*, 594 F.2d 356, 373 (4th Cir. 1979) (*en banc*).[2]  Accordingly, the Court of Appeals struck down Virginia's rule regulating lawyer commentary in civil cases as unconstitutionally overbroad: "The dearth of evidence that lawyers' comments taint civil trials and the court's ability to protect confidential information establish that the rule's restrictions on freedom of speech are not essential to fair civil trials."  *Id.  See also id.* ("this record contains no empirical data that restrictions on lawyers' speech are needed to protect the fairness of civil trials").

Thus, it is not at all clear that Rule 3.6, even as written, can constitutionally be enforced in the context of civil rather than criminal litigation.  But Duke's proposed amendment to the rule -- barring attorney speech that merely quotes from a pleading or other "information contained in a public record" of a civil case -- would surely violate the First Amendment.  In any event, the outer constitutional perimeter of the State's power to censor attorney speech in civil trials need not concern this Court, because Duke has failed to make even the lesser showing that would be required in a criminal case.

---

[2] *Hirschkop* reviewed Virginia's disciplinary rule, which barred extrajudicial attorney speech if it "present[s] a reasonable likelihood that it will be prejudicial to the fair administration of justice."  594 F.2d at 362.  The Fourth Circuit reaffirmed *Hirschkop* in the wake of *Gentile*.  *See In re Morrissey*, 168 F.3d 134, 139-40 (4th Cir. 1999).

## III. PLAINTIFFS' PRESS COMMUNICATIONS, WEBSITE, AND USE OF A MEDIA ADVISOR ARE NOT UNUSUAL, AND CERTAINLY NOT NEFARIOUS.

### A. A Lawyer Is Not Required To Ignore Media Interest In A High-Profile Case, Particularly When The Client Has Already Been Victimized By A Torrent Of Highly Prejudicial Negative Publicity.

Duke discerns in the hiring of Bork Communication Group LLC ("Bork") a sinister plot to subvert this judicial proceeding, and it liberally quotes from Bork's marketing materials as though this commercial speech is somehow within (or otherwise relevant to) Rule 3.6's restrictions. Duke Br. 9, 11. Far from an abuse of an attorney's duty to represent his clients, employment of professional media advisors can be an important part of the fulfillment of that duty. Indeed, in some high-profile cases it might well verge on malpractice for a lawyer to ignore media interest in his client's case or to neglect the proper, ethical presentation of his client's case in the public forum. As Justice Kennedy noted in *Gentile*, "[a]n attorney's duties do not begin inside the courtroom door." *Gentile*, 501 U.S. at 1043.

Attorneys "hold unique qualifications as a source of information about pending cases. 'Since lawyers are considered credible in regard to pending litigation in which they are engaged and are in one of the most knowledgeable positions, they are a crucial source of information and opinion.' " *Gentile*, 501 U.S. at 1056 (plurality opinion of Kennedy, J.) (citation omitted). And as the Fourth Circuit, sitting *en banc*, has explained: "The lawyers involved in such [civil] cases can often enlighten public debate," and it is therefore "no answer to say that the comments can be made after the case is concluded,

for it is well established that the first amendment protects not only the content of speech but also its timeliness." *Hirschkop*, 594 F.2d at 373.

Indeed, the rule expressly protects extrajudicial attorney speech designed to "counter publicity already deemed prejudicial" or "to stop a wave of publicity … perceived as prejudicing potential jurors against his client and injuring his client's reputation in the community." *Gentile*, 501 U.S. at 1042-43 (plurality opinion of Kennedy, J.). Thus, Rule 3.6(c) provides that "a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client." *See Constand v. Cosby*, 229 F.R.D. 472, 476 (E.D. Pa. 2005) ("There may be circumstances where conscientious lawyers must act to defend against adverse publicity where their clients have been tried and convicted by the media long before trial, or where the opposing litigants—government or private—have blanketed the community with damaging publicity.").

It is difficult to imagine a case that falls more squarely within the policy embodied in Rule 3.6(c) than this one. Indeed, the media onslaught that followed public disclosure of the rape charge was so ferocious, so relentless, and so pervasively hostile to the innocent lacrosse players that the three players wrongfully indicted for the fictitious rape filed a compelling venue motion on the ground that a fair and impartial jury could not be impaneled in Durham County. *See* Motion to Change Venue, *North Carolina v. Seligmann, et al.*, Nos. 06 CRS 4334-36, 4331-33, 5581-83 (General Ct. of Justice,

Super. Ct. Div.), Dec. 15, 2006 (a copy of the motion is attached hereto as Exhibit A).

This is how counsel for the three indicted lacrosse players summarized the media

"feeding frenzy":

> As of mid-November [2006], ABC News had mentioned this case 102,000
> times, CBS had mentioned this case 294,000 times, NBC had mentioned
> this case 244,000 times and CNN had approximately 577,000 references to
> this case. *The New York Times* had written 99 separate articles about this
> case and *Newsweek Magazine* had published at least 76 articles concerning
> this case. The *Durham Herald-Sun*, the only daily newspaper in general
> circulation in Durham County, had published more than 295 articles,
> editorials and letters about this case over a six-month period.

*Id.* at 7. The motion placed heavy reliance on the fact that scores of Duke employees and

faculty members had "repeatedly condemned" the lacrosse players. *Id.* at 16. In short,

the avalanche of adverse publicity and hostile public commentary that engulfed the

lacrosse players for most of 2006—much of it attributable to Duke's own officials,

professors, and students—more than justifies the restrained press communications at

issue here.

> **B.** **Law Firm And Case-Related Websites Are Ubiquitous, And Press
> Releases Announcing Litigation Are *De Rigueur*.**

Duke's counsel voice dismay at the press release issued by Plaintiffs' attorneys,

and they marvel at a press conference "which lasted for almost an hour," Duke Br. 3, and

at a website that is accessible anytime from "anywhere in the world." *Id.* at 10. They

bemoan the supposedly "unusual level of attorney-initiated and attorney-sanctioned

communication regarding the filing of this lawsuit." *Id.* at 14. But it is hard to take this

posturing seriously. Law-firm websites are ubiquitous, and press releases announcing

litigation are *de rigueur*.  Duke's own North Carolina counsel has a website that includes press releases announcing developments in its cases and lecturing its opponents for having the temerity to litigate.[3]  Virtually all governmental law enforcement agencies, both state and federal, maintain websites that post press releases not only announcing arrests, indictments, and other enforcement actions, but also summarizing the allegations against their opponents.  The United States Department of Justice, each of its litigating divisions, and most if not all of its United States Attorneys (including the United States Attorney for the Middle District of North Carolina) all have websites and all post press releases that announce litigation and describe their allegations.[4]  The website of the North Carolina Department of Justice posts press releases not only to announce and describe indictments and other enforcement actions, but also to disseminate its perspectives on, for example, how temporary judicial restraining orders against allegedly fraudulent businesses constitute findings of guilt and victories for consumers.[5]  And the internet is clogged with websites, like Plaintiffs', devoted to a case or class of cases.[6]

Duke itself, of course, also has a very sophisticated website on which it provides links to news stories and posts its own frequent press releases, including those about the

---

[3] *See* http://www.smithmoorelaw.com/ (press release on ACC case, Oct 16, 2003)

[4] *See, e.g.,* http://www.usdoj.gov/usao/ncm/press_releases/index.html.

[5] *See, e.g.,* http://www.ncdoj.com/DocumentStreamerClient?directory= PressReleases/&file=Home%20repair%20fraud%20Shearer.pdf.

[6] *See, e.g.*, http://www.fedexdriverslawsuit.com/; http://fanniemaelitigation.com/index.php; http://www.rjrt.com/legal/litOverview.asp; www.zyprexafacts.com; http://www.leadlawsuits.com; http://www.omnicomsecuritieslitigation.com/index.html; http://moneymartclassaction.com/.

lacrosse incident.[7]  Duke includes one such press release as an exhibit to its submission here, in which Duke's General Counsel, Pamela Bernard, openly violates the confidentiality of settlement negotiations by revealing what purport to be details of a settlement offer made by Duke to the Plaintiffs.  *See* Duke Br. 6 & Exh. 9 (press release of Feb. 21, 2008).[8]  In contrast, when asked about Ms. Bernard's press statement during the Plaintiffs' February 21 press conference, Mr. Cooper declined to discuss the substance of the parties' confidential settlement discussions.  Duke Mot., Exh. 6 at 10.

The point is this:  if Plaintiffs' press release, press conference, and website violate Rule 3.6, then Rule 3.6 is to the practicing bar what a "Don't Walk" sign is to a typical busy city intersection.  And the First Amendment is a dead letter.

---

[7] *See* http://www.dukenews.duke.edu/mmedia/features/lacrosse_incident/ announce_archive.html.

[8] Duke's counsel represent to this Court that Ms. Bernard's press release was issued only "[i]n the face of [plaintiffs'] publicity," and out of Duke's "belie[f] that a statement was required to protect the Duke Defendants from the substantial undue prejudicial effect of this publicity which was initiated by the Plaintiffs . . . ."  Duke Br. 6.  But Duke issued a materially indistinguishable press release on December 18, 2007, in response to the filing of a similar civil action in this Court by three other lacrosse players, a filing which was not accompanied by any press release or press conference.  (A copy of Duke's press release is attached hereto as Exhibit B, and may be found at http://news.duke.edu/2007/12/lacrosse_statement.html.)  And Ms. Bernard also issued a press release in response to the state court action filed against Duke by former lacrosse team coach Mike Pressler, although the filing of his suit was not accompanied by a press release or a press conference.  (A copy of Duke's press release is attached hereto as Exhibit C, and may be found at http://news.duke.edu/2007/10/lawsuit_response.html.)  Perhaps Duke's counsel will be able to explain the purpose of these unprovoked press releases in their reply brief.

## CONCLUSION

For the foregoing reasons, Duke's motion should be denied.

March 13, 2008                    Respectfully submitted,

                                  **COOPER & KIRK, PLLC**


                                  By: _/s/ Charles J. Cooper_____
                                        Charles J. Cooper*
                                        David H. Thompson*
                                        Nicole Jo Moss (N.C. Bar # 31958)
                                        1523 New Hampshire Avenue, NW
                                        Washington, DC  20036
                                        Tel. (202) 220-9600
                                        Email: ccooper@cooperkirk.com
                                        Email: nmoss@cooperkirk.com

                                  *Attorneys for Plaintiffs*

                                        (* motion for special appearance
                                           has been filed)

                                              -and-


                                  **THOMAS, FERGUSON & MULLINS, L.L.P.**

                                  By: _/s/ William J. Thomas_____
                                        William J. Thomas, II (N.C. Bar # 9004)
                                        119 East Main Street
                                        Durham, NC  27701
                                        Tel. (919) 682-5648
                                        Email: thomas@tfmattorneys.com

19

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 13, 2008, I electronically filed the foregoing

Plaintiffs' Response to Defendants' Motion Regarding Attorney-Initiated and Attorney-

Sanctioned Contact with the Media with the Clerk of the Court using the CM/ECF system

which will send notification of such filing to the following counsel:

> *Counsel for Defendants Duke University, Richard H. Brodhead, Peter Lange, Larry Moneta, John Burness, Tallman Trask, Suzanne Wasiolek, Matthew Drummond, Aaron Graves, Robert Dean, Kate Hendricks and Victor Dzau*
>
> > J. Donald Cowan, Jr. (N.C. Bar # 0968)
> > Dixie T. Wells (N.C. Bar # 26816)
> > L. Cooper Harrell (N.C. Bar # 27875)
> > Smith Moore LLP
> > 300 N. Greene Street
> > Suite 1400
> > Greensboro, N.C. 27401
> > Don.cowan@smithmoorelaw.com
> > Dixie.wells@smithmoorelaw.com
> > Cooper.harrell@smithmoorelaw.com
>
> *Counsel for Defendants Duke University Health Systems, Inc. Tara Levicy and Theresa Arico*
>
> > Dan J. McLamb (N.C. Bar # 6272)
> > Yates, McLamb & Weyher, L.L.P.
> > One Bank of America Plaza
> > 421 Fayetteville Street, Suite 1200
> > Raleigh, North Carolina 27601
> > dmclam@ymwlaw.com
>
> *Counsel for Duke University, Duke University Health Systems, Inc., Tara Levicy and Theresa Arico, Richard H. Brodhead, Peter Lange, Larry Moneta, John Burness, Tallman Trask, Suzanne Wasiolek, Matthew Drummond, Aaron Graves, Robert Dean, Kate Hendricks and Victor Dzau*

William F. Lee
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
William.lee@wilmerhale.com

Jamie Gorelick
Paul. R. Q. Wolfson
Jennifer M. O'Connor
Wilmer Culter Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Jamie.gorelick@wilmerhale.com
paul.wolfson@wilmerhale.com
Jennifer.oconnor@wilmerhale.com

*Counsel for David W. Addison*
James B. Maxwell
Maxwell, Freeman & Bowman, P.A.
P.O. Box 52396
Durham, NC 27717
Phone: (919) 493-6464
jmaxwell@mfbpa.com

*Counsel for City of Durham*
Reginald B. Gillespie, Jr.
Faison & Gillespie
P.O. Box 5517
Durham, NC 27717
rgillespie@faison-gillespie.com

*Counsel for Benjamin W. Himan*
Joel Miller Craig
4011 University Drive, Suite 300
Durham, North Carolina 27717-1579
jcraig@kennoncraver.com

*Counsel for Beverly Council, Ronald Hodge, Jeff
Lamb, Stephen Mihaich, Michael Ripberger, Lee Russ, and Patrick
Baker, Steven Chalmers,*

Patricia P. Kerner
D. Martin Warf
Hannah G. Styron
Troutman Sanders, LLP
P.O. Drawer 1389
Raleigh, NC 27602-1389
tricia.kerner@troumansanders.com
martin.warf@troutmansanders.com
hannah.styron@troutmansanders.com

As of the date of this filing, no attorney has made an appearance on behalf of the following Defendants. Based on information and belief, the following Defendants are represented by counsel as indicated below and are being served by email:

*Counsel for Mark D. Gottlieb*
Edwin M. Speas, Jr., Esq. (N.C. Bar # 4112)
P.O. Box 10096
Raleigh, North Carolina 27605-0096
espeas@poynerspruill.com

*Counsel for Steven Chalmers*
Reginald B. Gillespie, Jr.
Faison & Gillespie
P.O. Box 5517
Durham, NC 27717
rgillespie@faison-gillespie.com

As of the date of this filing, no attorney has made an appearance on behalf of the following Defendants. I hereby certify that I served the following Defendants by U.S. Mail:

Linwood Wilson
6910 Innesbrook Way
Bahama, NC 27503-9700

J. Wesley Covington
Kress Building, Mezzanine Floor
103 W. Main St.
Durham, NC 27701

This 13th day of March 2008.

/s/ Nicole Jo Moss
Nicole Jo Moss (N.C. Bar # 31958)
1523 New Hampshire Avenue, NW
Washington, DC  20036
Tel. (202) 220-9600
Email:  nmoss@cooperkirk.com