# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

## No. 1:08-cv-119

| | |
|---|---|
| EDWARD CARRINGTON, et al., ) | **Reply Brief in Support of the Duke** |
| ) | **Defendants' Motion Regarding** |
| Plaintiffs, ) | **Attorney-Initiated and Attorney-** |
| ) | **Sanctioned Contact with the Media** |
| v. ) | |
| ) | |
| DUKE UNIVERSITY, et al., ) | **EXPEDITED REVIEW** |
| ) | **REQUESTED** |
| Defendants. ) | |

## INTRODUCTION

"Legal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper." Bridges v. California, 314 U.S. 252, 271 (1941). Rule 3.6 of the North Carolina Rules of Professional Conduct was therefore "designed to preserve a right to a fair trial by avoiding trial by media." 98 Formal Ethics Op. 4. Although it is somewhat rare for civil cases to implicate Rule 3.6, even rarer are cases that are announced at the National Press Club and feature a dedicated website. Indeed, just because the issue is seldom raised does not mean Rule 3.6 should be ignored in this case.

Tellingly, Plaintiffs nowhere dispute any of the facts recited in the Duke Defendants' motion – namely, the content of the press conference; that it was designed to attract significant media attention; and that Plaintiffs appear poised to continue issuing media alerts, directing the public to consult www.dukelawsuit.com for "official information" about the case. Instead, Plaintiffs have asked the Court to conclude that their ongoing media strategy is consistent with Rule 3.6. Such is not the case.

## ARGUMENT

"Membership in the bar is a privilege burdened with conditions." Gentile v. State Bar of Nevada, 501 U.S. 1030, 1066 (1991) (citations omitted). "[A] lawyer . . . [is] an officer of the court, and like the court itself, an instrument of justice." Id. at 1074 (quotations omitted). "Because lawyers have special access to information through discovery and client communications, their extrajudicial statements pose a threat to the fairness of a pending proceeding . . . ." Id.[1] Rule 3.6 addresses these concerns.

### I. Plaintiffs' Media Strategy Is Inconsistent with Rule 3.6.

Plaintiffs argue that their statements do not implicate Rule 3.6 because (a) this is a civil case; (b) the statements are not prejudicial; (c) some of the statements are not attributable to lawyers; (d) some of the statements recite statements in the complaint; and (e) the statements are permitted under Rule 3.6(c). Each of these arguments fails.

#### A. Rule 3.6 applies in civil cases.

Plaintiffs suggest that Rule 3.6 does not apply to civil cases. (Pls.' Resp. Br. at 4.) The plain language of Rule 3.6 says otherwise. While the prejudicial effect of extrajudicial statements may depend on the type of proceeding involved, that fact does not relieve attorneys litigating civil cases of their duty to adhere to the dictates of Rule

---

[1] Plaintiffs cite Gentile extensively throughout their brief, implying that the citations are to either the majority or plurality opinion. (See, e.g., Pls.' Resp. Br. at 9-11, 14, 15.) Notably, almost every citation by Plaintiffs is to Parts I or II of Justice Kennedy's opinion, which is not the opinion of the Court. See Gentile, 501 U.S. at 1032. The opinion of the Court with respect to Parts I and II was delivered by Chief Justice Rehnquist. Id. at 1062, 1082. Accordingly, Parts I and II of Justice Kennedy's opinion (and Part V, which Plaintiffs also cite) are not controlling law.

3.6. Further, it does not divest the Duke Defendants of their rights to a fair trial, which Rule 3.6 is designed to secure. Hirschkop v. Snead, 594 F.2d 356, 373 (4th Cir. 1979) ("Our system of justice properly requires that civil litigants be assured the right to a fair trial."). Rule 3.6, therefore, applies to this case.

B. Plaintiffs' statements are prejudicial, regardless of the imminence of trial.

Throughout their brief, Plaintiffs claim that their statements cannot be prejudicial. 98 Formal Ethics Opinion 4 indicates otherwise. See 98 Formal Ethics Op. 4 (listing several factors for determining prejudice and noting that whether an attorney initiates media contact is a significant consideration). Based on the factors in 98 Formal Ethics Opinion 4 – and particularly because Mr. Cooper initiated the press conference – Plaintiffs' claim that their statements cannot be prejudicial misses the mark.

Plaintiffs also argue that, because no trial is immediately scheduled, there can be no "imminent or proximate risk of prejudice" caused by their ongoing publicity campaign. (Pls.' Resp. Br. at 11.) "Imminence" is not a requirement found in Rule 3.6.[2] Rather, it is the nature of the statements made (not their timing) that determines whether

---

[2] The very authority that Plaintiffs have put before this Court makes clear that "imminence" is not required for a violation of Rule 3.6. See Gentile, 501 U.S. at 1069-75 (rejecting the argument that a "clear and present danger" or "imminent threat" was necessary to discipline a lawyer who initiates a press conference, and ruling instead that the "substantial likelihood of material prejudice" standard strikes a constitutionally permissible balance between any First Amendment rights and the State's interest in fair trials); Hirschkop, 594 F.2d at 362 (rejecting the notion that the rule restricting lawyers' comments about pending litigation was unconstitutional because of its failure to proscribe only comments posing a "serious and imminent threat to a fair trial," and holding instead that it was sufficient that such a comment "present a reasonable likelihood that it will be prejudicial to the fair administration of justice").

3

Rule 3.6 has been violated. Moreover, because Plaintiffs promise to update their website "regularly as the case progresses" and because they urge readers to "[c]heck back for updates," (Duke Mot., Ex. 3 at 1), it seems clear that Plaintiffs intend to maintain their publicity strategy until trial.[3]

    C.    <u>The identified statements are properly attributed to Plaintiffs' counsel.</u>

"[L]awyers in pending cases [are] subject to ethical restrictions on speech to which an ordinary citizen would not be." <u>Gentile</u>, 501 U.S. at 1071 (citing <u>In re Sawyer</u>, 360 U.S. 622 (1959)). Rule 3.6 is such a restriction and bars, with only a few exceptions, a lawyer from making a public statement that the lawyer knows or reasonably should know will have a substantial likelihood of materially prejudicing an active case. Also, a lawyer cannot do or say indirectly through an agent that which the lawyer could not do or say alone. <u>See</u> 98 Formal Ethics Op. 4.

    <u>Statements by a client, Mr. Henkelman, fall under Rule 3.6</u>: Plaintiffs' counsel protests that he did not "put any words in Mr. Henkelman's mouth." (Pls.' Resp. Br. at 8.) The proceedings make clear, however, that counsel is effectively putting forward and sponsoring Mr. Henkelman's statement. Mr. Henkelman was introduced by his counsel at the press conference, and read a prepared statement that was later posted on www.dukelawsuit.com. (Duke Mot., Ex. 3 at 2-3.) While it is certainly not

---

[3] Plaintiffs' position is particularly disingenuous in light of the other arguments they raise. For example, they argue that the Duke Defendants could suffer no harm because the trial in this case is at least 18 months away. (Pls.' Resp. Br. at 11). However, they maintain that their media statements were necessary to rebut the prejudicial effect of media coverage that occurred two years ago. (<u>Id.</u> at 15-16). These arguments are unpersuasive and cannot be reconciled.

unprecedented for a client to speak publicly without his attorney present, such is not the case here. Mr. Cooper orchestrated the press conference and used his client to promote numerous prejudicial statements. Mr. Cooper, therefore, should not be permitted to now distance himself from those statements. Under Rule 3.6, Mr. Cooper could not have made the statements that Mr. Henkelman made. Accordingly, Mr. Cooper's overt use of Mr. Henkelman to make the statements violates Rule 3.6.

Statements by Plaintiffs' Media Advisor fall under Rule 3.6: Plaintiffs' response essentially concedes that Plaintiffs' counsel hired their media advisor. (Pls.' Resp. Br. at 14 ("Far from an abuse of an attorney's duty to represent his clients, employment of professional media advisors can be an important part of the fulfillment of that duty.").) Accordingly, Mr. Bork, as the agent of Plaintiffs' counsel, cannot make any statements that Plaintiffs' counsel could not make.

The website falls under Rule 3.6: Plaintiffs argue that because other law firms and cases have websites, their website should be allowed. Four of the websites cited by Plaintiffs are for class action lawsuits (as information about class membership is required by the Federal Rules of Civil Procedure to be widely disseminated to potential class members). Two others are run by major corporations to report on litigation in which they are involved. They are marked as being run by the companies, do not appear to be run by attorneys representing those companies, and do not purport to be an "official source of information." In contrast, www.dukelawsuit.com has posts discussing the merits of

pending motions[4] and links to community blogs critical of the Duke Defendants.[5] These links are fairly attributable to Plaintiffs' counsel, as they cannot escape Rule 3.6 by sponsoring links to other sites and then disclaiming responsibility for their content. In short, irrespective of any statements on other websites, the statements on www.dukelawsuit.com violate Rule 3.6 and should be addressed by this Court.

D.     Plaintiffs do not escape the rule by parroting the Complaint.

As Plaintiffs suggest, Rule 3.6(b)(2) allows a lawyer to recite information "contained in a public record." That accommodation, however, is not designed to open the door to overt media trials where the complaint is used as cover to repeat prejudicial statements to both the mass media and the internet-using public.[6] Indeed, under

---

[4] See Exhibit A, attached to this Reply. In response to the Duke Defendants' motion, a statement was posted on www.dukelawsuit.com on 1 March 2008 as follows, "Duke's motion to keep information about this case out of the media is utterly meritless. We will file our response promptly."

[5] Plaintiffs mention that Duke "maintains a very sophisticated website on which it provides links to news stories and posts its own frequent press releases." (Pls.' Resp. Br. at 17.) The efforts to compare Plaintiffs' affirmative media contacts, which include press statements, a press conference, and ongoing advocacy on their website, to the institutional webpage maintained by Duke's communications office is strained, at best. There are obvious and important distinctions between Plaintiffs' orchestrated campaign to taint the jury pool and Duke's catalogue of historical data. Indeed, the Duke webpage cited by Plaintiffs is an archival site that has not posted any new information since May 2007.

[6] This is particularly the case where, as here, the statements were made before the Duke Defendants had had an opportunity to review the Complaint and file, if deemed appropriate, a Rule 12(f) motion to strike "redundant, immaterial, impertinent, or scandalous matter." Such a motion is futile where the attorney has already repeated those allegations in the national press. See also Fed. R. Civ. P. 8(a)(1) ("A pleading . . . shall contain . . . a short and plain statement of the claim.").

Plaintiffs' theory, it would be perfectly appropriate to craft an inflammatory complaint precisely for the purpose of manufacturing media sound bites. Rule 3.6(b)(2) is not so toothless as to authorize this sort of conduct. See ABA Informal Ethics Ops. 1172 & 1230 (interpreting a similar ethics rule and stating that "[n]o attorney should use language in a pleading which, if publicized, would, by its nature, be likely to prejudice the public or the tribunal, except to the extent that it is essential to properly plead the cause of action") (attached collectively as Ex. B).

Moreover, while Rule 3.6 includes exceptions to the general prohibition against attorneys' extrajudicial statements, those exceptions are governed by the basic requirement that a party not be subjected to prejudice that will compromise the right to a fair trial or otherwise interfere with the administration of justice.[7] Indeed, Comment 1 to Rule 3.6 makes clear the notion that Plaintiffs' counsel cannot ride roughshod over the spirit of the ethical requirement and other parties' right to a fair trial:

> Preserving the right to a fair trial necessarily entails some curtailment of the information that may be disseminated about a party prior to trial, particularly where trial by jury is involved. If there were no such limits, the result would be the practical nullification of the protective effect of the rules of forensic decorum and the exclusionary rules of evidence.

Once information is in the public record, it is less likely to cause prejudice, but that does not mean there is no likelihood. 98 Formal Ethics Opinion 4, which interprets

---

[7] See 98 Formal Ethics Op. 4 (noting that Rule 3.6 "was designed to preserve a right to a fair trial by avoiding trial by media"); see also Gentile, 501 U.S. at 1069-75 ("Few, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right.").

Rule 3.6 says as much: "[A]ny publicity involving information already available to the public, such as that contained in filed pleadings, discovery responses, affidavits, and previous witness testimony, is <u>less likely</u> to have a prejudicial effect on a subsequent court proceeding." 98 Formal Ethics Op. 4 (emphasis added). Nowhere does the opinion suggest that publicity involving such information is per se permitted, especially when the attorney making the comments sponsors the publicity campaign. Indeed, it indicates just the contrary. <u>See</u> <u>id.</u> (stating that "whether the attorney intended a trial by media is also a significant factor" in determining the likelihood of material prejudice).[8]

Plaintiffs argue that because press releases are de rigueur, anything should be allowed and cite to various examples. The first example is one from Smith Moore's own website, which was a press release to announce that a case had been dismissed. Any comments contained therein would not prejudice an ongoing proceeding because the case had been dismissed. They also cite to press releases issued by the United States Attorney for the Middle District of North Carolina. Again, many of them report cases that have been resolved. While some do report indictments, the releases do not contain generalizations, avoid characterizations, and contain appropriate cautionary language that an indictment does not create an inference of guilt. The statements at Plaintiffs' press conference and on their website cannot be similarly described.

---

[8] Mr. Bork's website makes clear that he assists clients in "legal battles . . . fought . . . in the court of public opinion." (Duke Mot., Ex. 8 at 4.) Plaintiffs argue that employing someone like Mr. Bork is an "important part of the fulfillment of [an attorney's duty to represent his clients]," and that "it might well verge on malpractice for a lawyer to ignore media interest in his client's case." (Pls.' Resp. Br. at 14.)

### E. Rule 3.6(c) does not apply.

Rule 3.6(c) provides that "a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client." Rule 3.6(c). As Plaintiffs recognize, the publicity regarding the underlying allegations occurred in 2006. (Pls.' Resp. Br. at 16.) That publicity should not be considered "recent" under Rule 3.6.

## II. Rule 3.6, as Written, Is Constitutional.

Plaintiffs' fallback argument is that Rule 3.6 is unconstitutional if applied to the kind of "trial by media" campaign of which Plaintiffs' counsel has given notice that he intends to pursue. As the Supreme Court held in <u>Gentile</u>, "[t]he 'substantial likelihood' test . . . is constitutional under this analysis, for it is designed to protect the integrity and fairness of a State's judicial system, and it imposes only narrow and necessary limitations on lawyers' speech." <u>Gentile</u>, 501 U.S. 1075-76. Thus, contrary to Plaintiffs' suggestion, (<u>see</u> Pls.' Resp. Br. at 12), the Supreme Court in <u>Gentile</u> reiterated the well-established principle that attorneys' speech may be regulated to ensure the fairness of a pending proceeding and, moreover, endorsed the standard in Rule 3.6. <u>Gentile</u>, 501 U.S. 1062-75. Although <u>Gentile</u> held that the "safe harbor" provision included in a rule of the Nevada Supreme Court was unconstitutionally vague because it "misled petitioner into thinking that he could give his press conference without fear of discipline," 501 U.S. at 1048, Plaintiffs' counsel can claim no such ignorance here, given the clear terms of Rule 3.6, the clarifying comments to the rule, and the ethical opinion interpreting the rule.

9

As Chief Justice Rehnquist says in the Court's opinion in Gentile, "[e]xtensive voir dire may not be able to filter out all of the effects of pretrial publicity." Gentile, 501 U.S. at 1075. Because it is impossible to determine exactly what effects publicity at this stage will have on the eventual jurors, Rule 3.6 limits what attorneys and their agents can say. To interpret the rule otherwise, eviscerates its very purpose. In summary, while there is little precedent for enforcing Rule 3.6 in civil cases, the rule nevertheless applies. In a case such as this one, where there is unprecedented (at least for this district) affirmative contact with the media, Rule 3.6 limits what may be said.

## CONCLUSION

For the reasons stated, the Duke Defendants respectfully request that this Court grant their Motion.

This 25th day of March 2008.

/s/ J. Donald Cowan, Jr.
J. DONALD COWAN, JR.
N.C. State Bar No. 0968
DIXIE T. WELLS
N.C. State Bar No. 26816
L. COOPER HARRELL
N.C. State Bar No. 27875
Smith Moore LLP
300 N. Greene Street,
Suite 1400
Greensboro, NC 27401
Telephone: (336) 378-5200
Facsimile: (336) 378-5400
Email: don.cowan@smithmoorelaw.com
Email: dixie.wells@smithmoorelaw.com
Email: cooper.harrell@smithmoorelaw.com

*Counsel for Defendants Duke University, Richard H. Brodhead, Peter Lange, Larry Moneta, John Burness, Tallman Trask, Suzanne Wasiolek, Matthew Drummond, Aaron Graves, Robert Dean, Kate Hendricks, and Victor J. Dzau*

WILLIAM F. LEE
Massachusetts State Bar No. 291960
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6556
Facsimile: (617) 526-5000
Email: William.lee@wilmerhale.com

JAMIE GORELICK
District of Columbia Bar No. 101370
PAUL R. Q. WOLFSON
District of Columbia Bar No. 414759
JENNIFER O'CONNOR
District of Columbia Bar No. 460352
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6500
Facsimile: (202) 663-6363
Email: Jamie.gorelick@wilmerhale.com
Email: Paul.wolfson@wilmerhale.com
Email: Jennifer.oconnor@wilmerhale.com

*Counsel for Defendants Duke University, Duke University Health Systems, Inc., Aaron Graves, Robert Dean, Peter Lange, John Burness, Larry Moneta, Matthew Drummond, Theresa Arico, Tara Levicy, Suzanne Wasiolek, Richard Brodhead, Tallman Trask, Kate Hendricks, and Victor J. Dzau*

/s/ Dan J. McLamb
DAN J. MCLAMB
N.C. State Bar No. 6272
Yates, McLamb & Weyher, L.L.P.
One Bank of America Plaza
421 Fayetteville Street, Suite 1200
Raleigh, North Carolina 27601
Telephone: (919) 835-0900
Facsimile: (919) 835-0910
Email: dmclamb@ymwlaw.com

*Counsel for Defendants Duke University Health System, Inc., Tara Levicy, and Theresa Arico*

# CERTIFICATE OF SERVICE

I hereby certify that on 25 March 2008, I electronically filed the foregoing Reply Brief in Support of the Duke Defendants' Motion Regarding Attorney-Initiated and Attorney-Sanctioned Contact with the Media with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel:

> *Counsel for the Plaintiffs*
> William J. Thomas, II
> N.C. State Bar No. 9004
> 119 East Main Street
> Durham, NC 27701
> Telephone: (919) 682-5648
> Facsimile: (919) 688-7251
> Email: thomas@tfmattorneys.com

> *Counsel for the Plaintiffs*
> Charles J. Cooper
> David H. Thompson
> Brian S. Doukoutchos
> Nicole Jo Moss
> N.C. State Bar No. 31958
> 1523 New Hampshire Avenue, NW
> Washington, DC 20036
> Telephone: (202) 220-9600
> Facsimile: (202) 220-9601
> Email: ccooper@cooperkirk.com
> Email: dthompson@cooperkirk.com

*Counsel for Defendant City of Durham*
    Reginald B. Gillespie, Jr.
    Faison & Gillespie
    P.O. Box 51729
    Durham, NC 27717
    Telephone: (919) 489-9001
    Facsimile: (919) 489-5774
    Email: rgillespie@faison-gillespie.com

*Counsel for Defendant Benjamin W. Himan*
    Joel Miller Craig
    4011 University Drive, Suite 300
    Durham, North Carolina 27717-1579
    Telephone: (919) 490-0500
    Facsimile: (919) 490-0873
    Email: jcraig@kennoncraver.com

*Counsel for Defendant David W. Addison*
    James B. Maxwell
    Maxwell, Freeman & Bowman, P.A.
    P.O. Box 52396
    Durham, NC 27717
    Telephone: (919) 493-6464
    Facsimile: (919) 493-1218
    Email: jmaxwell@mfbpa.com

*Counsel for Defendant Mark D. Gottlieb*
    Edwin M. Speas, Jr.
    Eric P. Stevens
    N.C. Bar No. 4112
    P.O. Box 10096
    Raleigh, North Carolina 27605-0096
    Telephone: (919) 783-6400
    Facsimile: (919) 783-1075
    Email: espeas@poynerspruill.com
    Email: estevens@poyners.com

*Counsel for Defendants Steven Chalmers, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, Lee Russ, and Patrick Baker*
    Patricia P. Kerner
    D. Martin Warf
    Hannah Gray Styron
    Troutman Sanders, LLP
    P.O. Drawer 1389
    Raleigh, NC 27602-1389
    Telephone:  (919) 835-4117
    Facsimile:  (919) 829-8714
    Email:  tricia.kerner@troutmansanders.com
    Email:  martin.warf@troutmansanders.com
    Email:  hannah.styron@troutmansanders.com

*Counsel for Defendant J. Wesley Covington*
    Kenneth Kyre, Jr.
    N.C. State Bar No. 7848
    Paul D. Coates
    N.C. State Bar No. 9753
    Pinto Coates Kyre & Brown, PLLC
    P.O. Box 4848
    Greensboro, NC 27404
    Telephone:  (336) 282-8848
    Facsimile:  (336) 282-8409
    E-mail:  kkyre@pckb-law.com
    E-mail:  pcoates@pckb-law.com

As of the date of this filing, no attorney has made an appearance on behalf of the following Defendant.  I hereby certify that I served the following Defendant by U.S. Mail:

    Linwood Wilson
    6910 Innesbrook Way
    Bahama, NC 27503-9700

This 25th day of March 2008.

                                                    <u>/s/ J. Donald Cowan, Jr.</u>
                                                    J. Donald Cowan, Jr.

*Counsel for Defendants Duke University, Richard H. Brodhead, Peter Lange, Larry Moneta, John Burness, Tallman Trask, Suzanne Wasiolek, Matthew Drummond, Aaron Graves, Robert Dean, Kate Hendricks, and Victor J. Dzau*