UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:08-CV-00119

|  |  |
|---|---|
| EDWARD CARRINGTON, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| DUKE UNIVERSITY, et al., Defendants. | ) ) ) ) |

### **REPLY BRIEF IN SUPPORT OF CITY DEFENDANTS' JOINDER IN DUKE DEFENDANTS' MOTION REGARDING ATTORNEY-INITIATED AND ATTORNEY-SANCTIONED CONTACT WITH THE MEDIA**

NOW COME Defendants the City of Durham, North Carolina, Mark Gottlieb, Benjamin Himan, Patrick Baker, Steven Chalmers, Ronald Hodge, Lee Russ, Stephen Mihaich, Beverly Council, Jeff Lamb, Michael Ripberger, and David Addison (collectively, the "City Defendants"), herein by and through their respective counsel of record, and pursuant to LR7.3(h), MDNC, submit this reply brief in support of their joinder in the Duke Defendants' Motion Regarding Attorney-Initiated and Attorney-Sanctioned Contact with the Media. The City Defendants adopt and incorporate herein by reference the statements of the nature of the matter before the court, facts, and questions presented, as set forth in their brief filed March 13, 2008 (doc. 37[1]).

---

[1] Unless otherwise stated, all references to Doc. __ or doc. __ are to the CM/ECF Document numbers of filed documents, and when accompanied by p.__, identify the Page numbers, as appearing in the documents' footers as assigned by the CM/ECF system.

REPLY ARGUMENT

Plaintiffs launched a pre-filing multimedia campaign[2] to publicize themselves and the filing of their lawsuit which, among other things, seeks money damages for adverse publicity to which Plaintiffs were allegedly exposed. In their knee-jerk response to the City Defendants' argument that Plaintiffs' lawyers must comply with the ethics rules of the North Carolina State Bar, Plaintiffs now assert that the City Defendants' position "gives new meaning to the concept of gall." However, none of the arguments raised in Plaintiffs' response suffices to excuse their lawyers from complying with the State Bar's ethics rules.

Plaintiffs offer the following six arguments why their lawyers should not be required to comply with the State Bar's ethics rules or the rules of this Court:

(1) the statements challenged by the City Defendants were taken from the complaint;

(2) Plaintiffs should be free to include in their complaint -- and their lawyers should be free to publicize through the media -- as many incendiary statements as they desire;

(3) the City Defendants cannot show a likelihood of prejudice;

(4) neither the City Defendants nor the Duke Defendants cite any support for their position in the context of civil cases;

(5) the City Defendants have ignored Hirschkop v. Snead, 594 F.2d 356 (4th Cir. 1979) (en banc); and

(6) because of media coverage regarding the investigation of other lacrosse

---

[2] Plaintiffs' lawyers hired a publicist, issued a public invitation for the international press to come to the National Press Club in Washington, capitalized on their PR efforts by staging an elaborate public presentation of their side of their case in a widely publicized and reported press conference, and setting up, through their publicist, a website that was (mis)represented to be "the official source of information" about this lawsuit. (Doc. 10-3, p. 2.)

players that occurred in 2006, Plaintiffs' lawyers should now be permitted to say whatever they want to the media about Plaintiffs' current lawsuit.

As explained below, each of plaintiffs' arguments should be rejected.

1. THE COMPLAINT DOES NOT IMMUNIZE STATEMENTS BY PLAINTIFFS' LAWYERS**.**

Plaintiffs argue that all statements included in the press release, made at the press conference, and posted on their website are protected because their lawyer's statements "were lifted directly from [their] complaint." (Pls.' Br., doc. 47, p. 2.) In this and other arguments Plaintiffs take excessive liberties with the facts. For example, the press conference orchestrated by Plaintiffs' lawyers and their publicist was held, and such statements were made, **before** the complaint was filed.[3]

Further, many of the most inflammatory things Plaintiffs' lawyer said at the press conference were not included in Plaintiffs' complaint.[4] Moreover, Plaintiffs' assertion regarding their lawyer's statements ignores the statements of their publicist and Plaintiff Henkelman, who strayed far beyond the complaint in their remarks. As demonstrated in the Duke Defendants' and the City Defendants' principal briefs, Plaintiff's publicist and Plaintiff Henkelman must also abide by Rule 3.6 of the Revised Rules of Professional Conduct of the North Carolina State Bar, because of their lawyers' involvement in and sponsorship of their

---

[3] At the end of the press conference, Plaintiffs' publicist said, "Again, as soon as the complaint is filed and I have a copy of it, I will put it up on DukeLawsuit.com." (Doc. 10-7, p. 15. See also, id., p. 9.)

[4] At the press conference Plaintiffs' counsel stated that the lawsuit was "born out of Duke's and Durham's sustained wrong doing and callous conduct against the players." (Tr. of the Press Conference, doc. 10-7, p. 3.) Plaintiffs' counsel also asserted that "the players and their families are painfully aware of what Duke's leadership is capable of doing, and they are understandably apprehensive that today's action will bring more of the same down upon them." (Id.) Neither of these statements appears in the complaint.

-3-

comments to the media. (<u>See</u> Duke's Br., doc. 11, at pp. 10-12; City Defendants' Br., doc. 37, pp. 2-5. <u>See</u> <u>also</u> Duke's Reply, doc. 40, pp. 4-5.)

The fallacy of Plaintiffs' argument is demonstrated in another respect. The assertions made at the press conference were presented as facts, not as allegations. At no time did Plaintiffs' lawyer explain that those statements he made that actually do correspond to the complaint were allegations, and not the positive, unequivocal statements of fact he represented them to be at the press conference. It is ironic, to say the least, that among the many purported wrongs that Plaintiffs condemn, is Defendant David Addison's failure, in early Crimestoppers communications, to state that it had been **alleged** that a rape had occurred. (<u>See</u>, compl. ¶¶ 690, 692, 715, doc. 5, pp. 25-26, 30.)

2. IT IS NO DEFENSE THAT PLAINTIFFS INCLUDED UNNECESSARY INCENDIARY LANGUAGE IN THEIR COMPLAINT.

According to Plaintiffs, it is entirely appropriate to include incendiary language in a complaint for the specific purpose of conducting a trial in the media. (Doc. 47, p. 3 n.1. ("There is nothing wrong with trying a case in the press.").)[5] The American Bar Association, however, disagrees and has condemned the very practice that Plaintiffs would have this Court accept as universal. (<u>See</u> ABA Informal Ops. 1172 & 1230, doc. 40-3.) Adopting Plaintiffs' position would condone insertion of all manner of outrageous language in complaints,

---

[5] Plaintiffs cite Professor Monroe Freedman's book, <u>Understanding Lawyers' Ethics</u>, in support of their radical belief that "[t]here is nothing wrong with trying a case in the press." <u>See</u> doc. 46, p. 3 n.1 (citing Freedman & Smith, <u>Understanding Lawyers' Ethics</u> 104-09 (3d ed. 2004)). However, Professor Freedman expressly acknowledges that his "book takes a distinct position in a continuing and often heated controversy regarding the lawyer's role" and does not purport to offer an impartial interpretation of the ethical rules, including North Carolina's Rule 3.6. Freedman & Smith, <u>Understanding Lawyers' Ethics</u> vii.

followed by repetition of that language in the media and dissemination to the potential jury pool. The incompatibility between Plaintiffs' position and their complaints that they have suffered from unfair pretrial publicity caused by extrajudicial statements is breathtaking.

3. THE CITY DEFENDANTS CAN SHOW A LIKELIHOOD OF HARM.

Plaintiffs contend that they should be free to say what they please to the media because the City Defendants cannot show a likelihood of harm. In fact, prejudice is inherent in Plaintiffs' and their publicist's stated attempt to impact the outcome of this case through the media where, according to that publicist, the rules of evidence have no place. Indeed, Plaintiffs assert that trials by media are entirely appropriate. Plaintiffs have moved forward with their plan too, as they continue to post incendiary statements on their website about the Duke Defendants, the City Defendants, and this motion. (See Ex. A, attached hereto (using www.dukelawsuit.com to improperly characterize the Duke Defendants' and the City Defendants' motion as a "gag motion" and an attack on the players' right to disseminate information about their lawsuit).)

4. CIVIL AUTHORITY SUPPORTS THE CITY DEFENDANTS' MOTION.

Plaintiffs say that neither the City Defendants nor the Duke Defendants cite any support for their position in the context of civil cases. Rule 3.6 makes no distinction between civil and criminal cases[6] -- and if there ever were a case in which a court should be concerned about a civil case being tried in the media rather than the courtroom, this is it. Moreover, the North Carolina State Bar's 98 Formal Ethics Opinion 4 (Ex. B hereto) was decided in a civil

---

[6] The Rule contains no language excluding civil cases from its coverage. In addition, North Carolina has an ethics rule that applies only to criminal proceedings. See, e.g., Rule 3.8 of the Revised Rules of Professional Conduct.

context. That opinion concerned a lawyer's conduct during a civil case, and held that a lawyer's use of a third party as a conduit to make statements that the attorney could not make is a violation of Rule 3.6. Further, and as noted in Part 2 above, the ABA has proscribed conduct similar to that of Plaintiffs' lawyers in a civil setting, as have other states. (See doc. 11, p. 9 n.11.)

     5.    HIRSCHKOP DOES NOT APPLY.

Plaintiffs suggest that Hirschkop v. Snead, 594 F.2d 356 (4th Cir. 1979) (en banc), is dispositive of the City Defendants' motion. Plaintiffs are wrong. First, Hirschkop was not decided under Rule 3.6. Hirschkop, 594 F.2d at 361 (addressing Rule 7-107 of the Virginia Code of Professional Responsibility). It is therefore not controlling authority. Second, Hirschkop was decided in 1979, nearly twenty years prior to 98 Formal Ethics Opinion 4, which definitively states that Rule 3.6 applies in civil cases. It should be remembered that, in Hirschkop, the Virginia State Bar's Executive Committee acknowledged that Mr. Hirschkop had not violated the Virginia State Bar's "Trial Publicity" disciplinary rule, and in fact, in one matter "he did no more than tell the press that he was representing an indicted prison official because the official was 'a good guy.'" 594 F.2d at 362-63. In sharp contrast to Hirschkop, Plaintiffs' lawyer and their publicist have launched an orchestrated and deliberate national media campaign that lives on through www.dukelawsuit.com. See United States v. Cutler, 58 F.3d 825, 840 (2d Cir. 1995) ("We recognize that Cutler did not singlehandedly generate the media circus that threatened the fairness of the final Gotti trial. . . . Nonetheless, a lawyer, of all people, should know that in the face of a perceived injustice, one may not take the law into his own hands. . . . Trial practice, whether criminal or civil, is not a contact

sport. And, its tactics do not include eye-gouging or shin-kicking.").

> 6. MEDIA COVERAGE REGARDING THE INVESTIGATION OF OTHER LACROSSE PLAYERS IN 2006 DOES NOT GIVE PLAINTIFFS' LAWYERS LICENSE TO SAY WHATEVER THEY WANT TO THE MEDIA ABOUT THE CURRENT LAWSUIT.

Plaintiffs argue finally that their lawyers' unsolicited media contacts in this case are somehow justified in light of the coverage devoted to the criminal investigation in 2006. However, the press conference and the website are not directed at diffusing any media coverage from 2006. Moreover, the business model of Plaintiffs' publicist makes clear that he involves his company in cases for one purpose: to impact and influence results by manipulating the media. In the foregoing and at least three other respects, and as they have in other arguments, Plaintiffs take excessive liberties with the facts and/or the law.

First, Plaintiffs' allegations and purported injuries are based in part on the extrajudicial statements made to the media in connection with the criminal investigation of other Duke Lacrosse players. Using whatever derogatory terms they can conceive -- a veritable thesaurus of vituperation -- they decry the public statements made by the prosecutor. Yet they initiated media attention in this case: they issued a widespread invitation to a press conference, called a widely attended and widely publicized and reported press conference, and set up through their publicist a website represented to be "the official source of information" about this case. (Doc. 10-3, p. 2.) In this, Plaintiffs epitomize hypocrisy.

Second, it is difficult to imagine Plaintiffs' blatant mischaracterization of the prosecutor as the City Defendants' delegate as accidental ignorance. As will be explained fully in the City Defendants' forthcoming motions to dismiss, the prosecutor, who is a separate constitutional officer of the State of North Carolina, was a state actor at all times.

See, e.g. N.C. Const. art. IV, § 18(1) (providing that district attorney shall "be responsible for the prosecution **on behalf of the State** of all criminal actions in the Superior Courts of his district" (emphasis added)); N.C. Gen. Stat. §§ 7A-61, 7A-63 (same). Plaintiffs' contention that the prosecutor acted as a "delegate" of the City Defendants is a counterfactual *ipse dixit*, and does not justify their multimedia attacks.

Finally, the alleged adverse publicity Plaintiffs purport to be counteracting arose during the investigation of other lacrosse players, even though such investigation -- and such alleged adverse publicity -- terminated almost a year ago. Because of this temporal attenuation, the exception in Rule 3.6 allowing counteraction of recent publicity does not apply. The facts belie any assertion that the present publicity Plaintiffs created and sought was defensive. Instead, Plaintiffs have embarked on a preemptive multimedia strike.

## CONCLUSION

WHEREFORE, Defendants City of Durham, North Carolina, Mark Gottlieb, Benjamin Himan, Patrick Baker, Steven Chalmers, Ronald Hodge, Lee Russ, Stephen Mihaich, Beverly Council, Jeff Lamb, Michael Ripberger, and David Addison request that the Court allow the Duke Defendants' motion (doc. 10), declare that the existing website, the press conference on February 21, 2008, and the press release issued on February 21, 2008 that are the subject of the motion violate Rule 3.6 of the Revised Rules of Professional Conduct of the North Carolina State Bar and LR83.10e(b), MDNC, and grant the Duke Defendants and the City Defendants such other relief as the Court deems appropriate.

This the 10th day of April, 2008.

| FAISON & GILLESPIE | STEPTOE & JOHNSON LLP |
|---|---|
| By: /s/ Reginald B. Gillespie, Jr.<br>   Reginald B. Gillespie, Jr.<br>   North Carolina State Bar No. 10895<br><br>   *Attorneys for Defendant the City of*<br>      *Durham, North Carolina*<br>   Post Office Box 51729 [27717-1729]<br>   5517 Chapel Hill Blvd., Suite 2000<br>   Durham, North Carolina  27707<br>   Telephone:  (919) 489-9001<br>   Fax: (919) 489-5774<br>   E-Mail:rgillespie@faison-gillespie.com | By: /s/ Roger E. Warin<br>   Roger E. Warin*<br>   Michael A. Vatis*<br>   John P. Nolan*<br>   Ana H. Voss*<br><br>   *Attorneys for Defendant the City of*<br>      *Durham, North Carolina*<br>   1330 Connecticut Avenue, NW<br>   Washington, DC  20035<br>   Telephone: (202) 429-3000<br>   Fax: (202) 429-3902<br>   E-Mail: rwarin@steptoe.com<br>*(Motion for Special Appearance to be filed) |

POYNER & SPRUILL LLP

By:/s/ Edwin M. Speas
   Edwin M. Speas
   North Carolina State Bar No. 4112

   Attorneys for Defendant Mark
      Gottlieb
   3600 Glenwood Avenue
   Raleigh, North Carolina  27612
   Telephone:  (919) 783-6400
   Fax: (919) 783-1075
   E-Mail: espeas@poynerspruill.com

MAXWELL, FREEMAN & BOWMAN, P.A.

By: /s/ James B. Maxwell
   James B. Maxwell
   North Carolina State Bar No. 2933
   Attorneys for Defendant David Addison
   Post Office Box 52396
   Durham, North Carolina  27717
   Telephone:  (919) 493-6464
   Fax: (919) 493-1218
   E-Mail: jmaxwell@mfbpa.com

***SIGNATURES OF COUNSEL CONCLUDED ON NEXT PAGE***

| | |
|---|---|
| TROUTMAN SANDERS LLP | KENNON, CRAVER, BELO, CRAIG & & McKEE, PLLC |
| By:/s/ Patricia P. Kerner<br>   Patricia P. Kerner<br>   North Carolina State Bar No. 13005<br><br>Attorneys for Defendants Patrick<br>   Baker, Steven Chalmers, Ronald<br>   Hodge, Lee Russ, Stephen Mihaich,<br>   Beverly Council, Jeff Lamb, and<br>   Michael Ripberger<br>434 Fayetteville Street Mall<br>Two Hannover Square, Suite 1100<br>Raleigh, North Carolina 27601<br>Telephone: (919) 835-4100<br>Fax: (919) 829-8714<br>E-Mail: tricia.kerner@troutmansanders.com | By: /s/ Joel M. Craig<br>   Joel M. Craig<br>   North Carolina State Bar No. 9179<br><br>Attorneys for Defendant Benjamin<br>   Himan<br>4011 University Drive, Suite 300<br>Post Office Box 51579<br>Durham, NC 27717-1579<br>Telephone: (919) 490-0500<br>Fax: (919) 490-0873<br>E-Mail: jcraig@kennoncraver.com |

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

The undersigned hereby certifies that, pursuant to Rule 5 of the Federal Rules of Civil Procedure and LR5.3 and LR5.4, MDNC, the foregoing pleading, motion, affidavit, notice, or other document/paper has been electronically filed with the Clerk of Court using the CM/ECF system, which system will automatically generate and send a Notice of Electronic Filing (NEF) to the undersigned filing user and registered users of record, and that the Court's electronic records show that each party to this action is represented by at least one registered user of record, to each of whom the NEF will be transmitted, except that, with respect to the following parties, a copy is being transmitted via first class mail to the address listed below:

    Mr. Linwood Wilson
    *Pro Se*
    [Home Address redacted per LR 7.1(b), MDNC and ECF P&P Manual, part J]

This the 10th day of April, 2008.

                                                           FAISON & GILLESPIE

                                                           By: /s/ Reginald B. Gillespie, Jr.
                                                               Reginald B. Gillespie, Jr.

RBGjr:ms
8838-34\P\005 JOINDER MOTION REPLY BRIEF