IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No.: 1:08-cv-119

| EDWARD CARRINGTON, et al., | ) | |
|---|---|---|
| | ) | |
| Plaintiffs, | ) | DEFENDANT DAVID ADDISON'S |
| | ) | MEMORANDUM OF LAW IN |
| vs. | ) | SUPPORT OF MOTION TO DISMISS |
| | ) | (Rule 12(b)(6), F.R.Civ.P.) |
| DUKE UNIVERSITY, et al. | ) | |
| | ) | |
| Defendants. | ) | |

Defendant David Addison (hereinafter "Addison"), by and through his counsel of record, respectfully submits this Memorandum of Law in Support of his Motion to Dismiss, pursuant to Local Rule 7.3(a), M.D.N.C.

## 1. SUMMARY OF THE NATURE OF THE CASE

The Plaintiffs filed this action on February 28, 2008, seeking damages pursuant to 42 U.S.C. §§ 1983 and the common law of North Carolina, arising out of events occurring at 610 N. Buchanan Blvd., Durham, N.C. on or about March 13 – 14, 2006, which resulted in an investigation of criminal charges of rape, sexual assault and kidnapping. None of the Plaintiffs in this action were ever charged with any crime arising out of this investigation, nor was any one of them indicted or arrested as a result of that investigation. This matter is now before the Court on the Motion to Dismiss of David Addison pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim against him upon which relief can be granted.

1

Dockets.Justia.com

## II. STATEMENT OF FACTS

The Plaintiffs in this action are all members of the 2006 Duke University Men's Lacrosse Team or they are parents of members of that team. The allegations in the Complaint arise out of the now infamous "stripper" party held at the home of some of the Captains of that team located at 610 N. Buchanan Blvd. in Durham, N.C. on the evening of March 13 or early morning of March 14, 2006. The alleged "facts" of what occurred that night, as well as the conduct of the various Plaintiffs and Defendants after the events of that night, have been the subject of many "Statement of Facts", including the pleadings filed in the two similar cases that have preceded it (*Evans, et. al. v. The City of Durham, et. al.,* USDC, MDNC: 1:07-cv-00739 and, *McFadyen, et. al. v. Duke University, et. al.,* USDC, MDNC: 1:07-cv-00953). For the purposes of this Memorandum, the Defendant David Addison will not engage in repetition and restate his version of those "facts" here. Rather, he will try to confine his reference to "facts" as they relate to him and are relevant to his Motion to Dismiss.

The Complaint on behalf of these Plaintiffs is 225 pages long and has 481 separate paragraphs, including: an Introduction and Summary (¶¶ 1 – 9); an identification of the Parties (¶¶ 10 – 80); and, an alleged Statement of Facts (¶¶ 83 – 481). It also contains Thirty-One Counts or specific claims for relief against various combinations of Defendants. Without too great a concern for being contradicted, it would be noted that the overwhelming factual allegations and Counts contained in this Complaint relate to perceived wrongs done to the

Plaintiffs by Duke University, its administrators, or its Health Services. David Addison is the last named Defendant in the Complaint and is individually named as a Defendant in only one Count of the Complaint (Count XXV: "False Public Statements in Violation of 42 U.S.C. § 1983"). The alleged Statement of Facts in the Complaint begins with ¶ 83 and ends with ¶ 481. David Addison's name is mentioned in no more than five (5) of those Three Hundred and Ninety-Eight (398) paragraphs.

In the Plaintiffs' identification of Parties, David Addison is identified as a Corporal with the Durham Police Department who it is alleged, at times, served as the "official spokesman for the Durham Police Department." (¶ 78) In addition, in ¶ 79 it is stated that: "Defendants Baker, Chalmers, Hodge, Russ, Mihaich, Council, Lamb, Ripberger *and Addison* are referred to collectively herein as the "Durham Supervisors." (emphasis added) However, in the paragraphs that individually identify Baker, Chalmers, Hodge, Russ, Mihaich, Council, Lamb and Ripberger there is an allegation for each, that they "served in a supervisory and policymaking role" for either the City of Durham or the Durham Police Department, although for Lt. Ripberger, that allegation is "upon information and belief" (¶¶ 70-76). There is no allegation anywhere in the Complaint that David Addison served in a supervisory or policymaking role for either the City of Durham or the Durham Police Department and it is unknown or unclear as to why the Plaintiffs have chosen to identify Addison as one of the "Durham

3

Supervisors." He was not in such a position; it is not effectively alleged that he was in a supervisor or policymaking position; and he should not have been so designated.

In the various Counts of the Complaint, the "Durham Supervisors" are collectively named as Defendants in Seven Counts (XXIV, XXVI, XXVII, XXVIII, XXIX, XXX and XXXI). Because there is no factual allegation to support a claim that Addison was a "Durham Supervisor," this Memorandum will not address those Seven Counts in the Complaint. Rather, and to the extent that this Court should feel that Addison should respond to those allegations involving the Durham Supervisors, he will adopt and incorporate by reference, the Motion to Dismiss and Memorandum in Support of that Motion, filed on behalf of the other alleged "Durham Supervisors" (Baker, Chalmers, Hodge, Russ, Mihaich, Council, Lamb and Ripberger) in order to avoid unnecessary and duplicative pleadings. Likewise, to the extent that the claims contained in Count XXII ("Malicious Investigation") and Count XXIII ("Obstruction of and Conspiracy to Obstruct Public Justice") list "All Defendants" as the alleged responsible parties (which would, presumably, include David Addison even though he is not mentioned by name), rather than file duplicative responses, Addison will adopt and incorporate by reference, the Motion to Dismiss and Memorandum in Support of that Motion filed on behalf of the City of Durham as that Motion and Memorandum relates to Counts XXII and XXIII. As a result of those incorporations by reference, this Memorandum will be confined to the allegations contained in Count XXV of the

Complaint against The Durham Investigators, The City of Durham and *David Addison*.

## QUESTIONS PRESENTED

1. Whether the Defendant, David Addison, is entitled to qualified governmental immunity from the claims asserted against him?

2. Whether or not the Plaintiffs have alleged cognizable claims against the Defendant, David Addison?

3. Whether the Complaint as to David Addison should be dismissed as to him because it is redundant when he is included as a Defendant in his "official capacity" in the same count as the City of Durham?

## ARGUMENT

**Applicable Standard of Review**

While it is conceded that for the purposes of a Rule 12(b)(6) Motion, the factual allegations of a Complaint are deemed to be true, it is still a legal requirement that those assumed facts "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombley*, 127 S.Ct. 1955, 1974, 75 U.S. 4337, 167 L.Ed.2d 929 (2007). Our courts have gone further in defining what makes a "plausible" statement of a claim by requiring that the factual pleadings "require more than labels and conclusions" *Id.* As noted in this District, the Court is not bound by the legal conclusions alleged or included in the complaint, *Heckman v. University of North Carolina at Chapel Hill*, 19 F. Supp.2d 468 (M.D.N.C. 1998), *rev. denied*, 166 F.3d 1209 (4th Cir. 1998). More recently in *Gladden v. Winston-Salem State Univ.*, 495 F.2d 517m 520-21 (M.D.N.C. 2007), this Court wrote that:

"The presence...of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the Complaint cannot support the legal conclusion." When read in its entirety, and judged by these standards, the Complaint of the Plaintiffs in this action, as it relates to the Defendant, David Addison, does not state a cognizable or plausible claim for relief, notwithstanding that the factual allegations comprise 398 paragraphs. In addition, it does it establish a legal basis for creating individual civil liability when the allegations of that Complaint establish that his actions were taken in his official capacity as a governmental agent. No court has yet held that mere verbiage is sufficient, standing alone, to create either a plausible claim for relief or a cognizable legal right.

## I. INTRODUCTION

In their Complaint, the Plaintiffs attempt to impose civil liability against David Addison in only a few paragraphs. First, in ¶78 it is alleged that he was a corporal employed by the Durham Police Department who was serving as an official spokesman for the Department during relevant times in this action. Next, in ¶79 it is noted that he will be included in the group collectively referred to as the "Durham Supervisors" (despite the fact that there are no allegations which would support his inclusion in that group). However, in the next paragraph, the Plaintiffs claim that those same "Durham Supervisors" (presumably, including by their definition, David Addison) are sued in their individual "and official capacities."

In the more substantive statement of alleged facts as it relates to David Addison, the Plaintiffs have alleged that he made some false statements to the news media (¶248) which, in conjunction with President Broadhead and other Duke and Durham officials fed animus on the Duke campus (¶260). It is also alleged that on March 24, 2006, he told a local paper that there was "really strong physical evidence of rape" (¶274). As the Complaint makes clear, this statement was apparently based on police reports of what they had been told by medical personnel at Duke Hospital. Finally, and in reference to a document the Plaintiffs refer to as a "Vigilante Poster" allegedly produced by a Duke employee, Sam Hummell, and other (unnamed) Duke faculty, employees and students, Addison is quoted as stating that: "We're not saying that all 46 (lacrosse team members) were involved. But we do know that some of the players inside that house on that evening knew what transpired and we need them to come forward." (¶283). It is not alleged that Addison had anything to do with the actual production or distribution of that poster.

It does not appear that David Addison, by name, has any other "substantive" allegations involving him in the remaining alleged "Statement of Facts" in the Plaintiffs Complaint and his name does not appear again, until Count Twenty-Five of claims for relief (¶¶654 – 664). Based solely upon these allegations, the Plaintiffs contend, in a conclusory manner, that Addison compromised the "fairness of subsequent proceedings against the lacrosse team"

7

(although, other than complying with the NTID Order, none of the Plaintiffs in this action was subjected to any further proceedings); was indifferent to the Plaintiffs' constitutional rights; subjected them to a malicious investigation in violation of their Fourteenth Amendment rights; and caused them "reputational" harm, emotional distress and economic loss. These mere allegations do not meet the requisite threshold to have stated a valid claim for relief against David Addison, individually, and he should be dismissed from this action.

## II. AS A GOVERNMENT OFFICIAL PERFORMING A DISCRETIONARY FUNCTION AS AN ALLEGED "SPOKESMAN" FOR THE DURHAM POLICE DEPARTMENT, DAVID ADDISON IS ENTITLED TO QUALIFIED GOVERNMENT IMMUNITY FROM THIS ACTION.

In Count Twenty-Five of their Complaint, the Plaintiffs attempt to impose individual and personal liability against David Addison as well as the City of Durham and the Durham Investigators for "false public statements" allegedly made about or against the Plaintiffs. They make these allegations against Addison after having previously identified him as the "official spokesman" for the Durham Police Department (¶78) and stating that he is sued in his "official capacity" (¶80). Since the Plaintiffs concede that David Addison's alleged statements were all made in the performance of his official duties and in his official capacity as a Durham police officer, he is entitled to qualified governmental immunity from this suit as "governmental officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As is shown below (**ARGUMENT III**), the Plaintiffs in this action do not have a constitutional or statutory right to recover damages in a civil action as a result of any alleged damage to their individual or collective reputations (see *Seigart v. Gilley*, 500 U.S. 226 (1991)), nor are they constitutionally or statutorily shielded from a criminal investigation which resulted in no criminal charges ever having been brought against any of them.

Unless the Plaintiffs can meet the threshold requirement of establishing a violation of a constitutional right, David Addison is entitled to raise the defense of qualified immunity in order that he may not have to stand trial and a ruling on this issue "should be made early in the proceedings so the costs and expenses of trial are avoided where the defense is dispositive" *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Since the Plaintiffs here have failed to allege a violation by Addison of a substantive constitutional right that they possess or, even a statutory §1983 claim, the defense of qualified governmental immunity is available to David Addison and warrants dismissal of the Complaint as to him.

### III. NEITHER DEFAMATION NOR FREEDOM FROM A CRIMINAL INVESTIGATION ARE CONSTITUTIONALLY PROTECTED RIGHTS OR ACTIONABLE RIGHTS PURSUANT TO 42 U.S.C. §1983

As the Plaintiffs' claims involve David Addison, they specifically relate to the contention that he made "false public statements" about them in regard to their lack of cooperation in the investigation and in the description of the criminal activity under investigation as depicted in early versions of the "CrimeStoppers"

postings. The Plaintiffs attempt to extrapolate those claims into further claims that these alleged reputational damaging public statements led to or contributed to them being subjects of a criminal investigation with the attendant emotional distress and economic losses associated with that investigation. Again, even assuming that any of those allegations could be proven to be correct (and for the purpose of this Memorandum, that assumption prevails), neither of those claims represent or constitute a violation of a constitutionally protected, or a statutorily created, right which would entitle these Plaintiffs to maintain this action against David Addison.

In the public statements attributed to Addison, not one of the individually named Plaintiffs in this Complaint was ever identified by name and other than comply with the NTID Order. None of these Plaintiffs were ever even remotely subjected to arrest, indictment, incarceration or limitation of activities. To the extent that they claim that David Addison made "false public statements" about them as a collective group, they are, in essence asserting that he damaged their reputations. It has long been recognized by the Supreme Court that damage to one's reputation, standing alone, is not a constitutionally protected right for which civil redress can be sought. *Paul v. Davis*, 424 U.S. 693 (1976) and *Siegert v Gilley*, 500 U.S. 226, 233 (1991). As the Court has noted, these are essentially claims of defamation which is not constitutionally protected, *Id.* The Plaintiffs attempt to bolster their claim of reputational damage into a constitutional deprivation by alleging that they have suffered "lost economic and job

opportunities" and "economic losses" (¶¶661 and 663), but they do so with no specificity as to those losses. Even if they were to attempt to amend their Complaint to allege such damages with more specificity, financial or economic harm "caused by government imposed stigma" has been held to "not transform an interest in reputation into a liberty interest." *Mosrie v. Barry*, 715 F.2d 1151, 1158 (D.C. Cir. 1983). Plaintiffs' claimed reputational damage is not a constitutionally protected right nor a claim created through or justified by 42 U.S.C. §1983.

The Plaintiffs attempt to create yet another new constitutional or §1983 claim when they assert that the alleged false "statements were intended to inflame the community against the plaintiffs in order to prolong the investigation and compromise the fairness of *subsequent proceedings* against the lacrosse team." (¶658, emphasis added). Since there were no "subsequent proceedings" as to any of these Plaintiffs in that they were neither indicted, arrested or ever had any court appearance, this claim would not appear to apply to them. Yet, even if they were under some cloud of suspicion for some limited period of time, the first indictments were returned against Collin Finnerty and Reade Seligman on April 17, 2006 and the District Attorney announced that the final indictment had been returned when David Evans was indicted on May 15, 2006, so there was no further "cloud" over these Plaintiffs approximately two months after the party sponsored by members of the lacrosse team which, in and of itself, was the first action leading to the series of events about which the Plaintiffs now complain in this Complaint.

In addition to their claim that there was damage to their reputations by "false public statements" allegedly made by Addison and others, the Plaintiffs further assert, with no alleged factual basis to support the allegation, that these statements were a contributing factor in the ongoing criminal investigation which impacted on them. This sounds like a claim that they each have some statutory or constitutional right to be free from a criminal investigation. Regardless of what may now be known or thought to be known about the underlying claims of Crystal Mangum, in March, 2006 the Durham Police Department was presented with a claim that a rape and sexual assault had occurred at 610 N. Buchanan Blvd. during the late evening of March 13, 2006 or the early morning of March 14, 2006. It is not now, nor should it be, the province of law enforcement officials to attempt to prove or disprove the veracity of a citizen making a criminal complaint before initiating an investigation into that complaint. Nor should the discussion of such an investigation in the public realm be prevented, as such discussion can and often does assist in law enforcement investigations. The very existence of the national CrimeStoppers program rests on this simple premise and it has been extremely beneficial in aiding law enforcement investigations. As a result of this reality, our courts have been loath to impose civil liability against law enforcement officers who have made public comments during an investigation. In *Kipps v. Ewell*, 391 F.Supp. 1285 (W.D.Va. 1975), a 15 year old boy's decomposing body was discovered in a field. When this became publicly known, there was an understandable public demand and pressure for results in the ensuing criminal

investigation. Prior to the plaintiff's arrest in the criminal proceeding, there were interviews given by law enforcement officials and the defendant's picture was widely disseminated to the media all of which he claimed was part of a deliberate effort to generate a prejudiced atmosphere within the community where he was to be tried (and, ultimately, acquitted). Like this case, he also claimed that the law enforcement officers did not have sufficient cause to arrest him at the time of that event. With the exception of the fact that none of these Plaintiffs were ever arrested, let alone subjected to a trial, these claims are remarkably similar to the claims now being asserted by these Plaintiffs; particularly as directed to David Addison. The court there held that not only must the pretrial publicity be beyond the limits of proper police procedure, but it must be demonstrated that the publicity actually had a prejudicial impact that affected the result *at trial*. Id. at 1290. Again, none of these Plaintiffs was ever subjected to a trial. There is not and should not be a "constitutional sword" given to these Plaintiffs or others in the future (who may choose to wield one) which would grant them constitutional immunity from being investigated for an alleged criminal act when it later develops that the charge was baseless. This should be particularly true in this case when the State recognized the charges had no merit and, not only dismissed the charges, but declared the charged individuals as being "innocent." As was noted in *Eagle v. Morgan*, 88 F.3d 620, 627 (8th Cir. 1996) "the Constitution does not provide a remedy for every wrong that occurs in society."

# IV. DISMISSAL IS WARRANTED AS TO DAVID ADDISON IN THAT HE HAS BEEN NAMED AS A DEFENDANT IN THIS ACTION "IN HIS OFFICIAL CAPACITY" AS A DURHAM POLICE OFFICER AND, SINCE THE CITY OF DURHAM IS A NAMED DEFENDANT, HIS CONTINUED INVOLVEMENT IS DUPLICATIVE.

In Count Twenty-Five of the Complaint, David Addison is a named defendant along with the Durham Investigators and the City of Durham. Earlier in the Complaint, it is alleged that he, along with other Defendants included in the group designated as "Durham Supervisors" are being sued "in both their individual and *official capacities.*" (emphasis added). Since David Addison is sued in this Count in his official capacity and his employer, the City of Durham, is also a named Defendant in this Count, the real defendant party in interest is the City of Durham and it is duplicative to have Addison as an individual plaintiff.

This issue was addressed and resolved by the Supreme Court in *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) when it stated that "such suits (official capacity suits)...generally represent only another way of pleading an action against an entity of which this officer is an agent (in this action, the City of Durham)....There is no longer a need to bring such official-capacity actions against local government officials.....local government units can be sued directly for damages and injunctive or declaratory relief." 473 U.S. at 165-166, 168 n. 14. The concept of dismissing such duplicative claims has recently been reaffirmed by this Court in *W.E.T v. Mitchell,* No. 1:06-cv-447, U.S.Dist. LEXIS 68376 *30 (M.D.N.C. Sept. 14, 2007) wherein it was stated that: "Claims against the official in his or her official capacity which are duplicative of claims against a

government entity are subject to dismissal." This recent decision in this Court is consistent with the Fourth Circuit's decisions on this same point as articulated in *Love-Lane v. Martin,* 355 F.3d 766, 783 (4th Cir. 2004) wherein the Fourth Circuit Court held the District Court's decision to dismiss a §1983 claim against a named individual government official when the governmental entity that he represented was also a named defendant. The public policy behind such holdings is sound in that it promotes efficient litigation and, when, as here, it is a public governmental agency that is involved as the primary defendant, dismissal of the individual defendant prevents wasted public resources for attorney fees for the individual defendant. See *Wisler v. City of Fresno,* No. CV F 06-1694, 2007 U.S. Dist. LEXIS 18666 *19 (E.D. Cal. Mar. 16, 2007). In this action brought by Plaintiffs, there are, at least, two sets of Defendants who are sued in their "official capacity" when the governmental entity that employed them is also named as a Defendant: "The Durham Supervisors" and David Addison. For so long as these Defendants remain in this lawsuit, there will not only be duplicative pleadings filed, court appearances made and co-counsel meetings held, but there will be expenditure of public resources for costs and fees in advancing those duplicative efforts. Such a duplication of efforts and expenditure of public resources is neither efficient, nor should it be encouraged.

## CONCLUSION

In that the only Count in this Complaint which individually names David Addison as a Defendant is Count Twenty-Five in which he is sued in his "official

capacity" along with the City of Durham; and, because all conduct attributed to him occurred in his position as a government official performing discretionary duties; and, because the Plaintiffs have no statutory or constitution rights arising out of alleged "false public statements" made during the investigation of alleged criminal activity in this matter, some of which are attributed to David Addison, this action should be dismissed as to him.

This the 30th day of May, 2008.

/S/ James B. Maxwell
Maxwell, Freeman & Bowman, P.A.
P. O. Box 52396
Durham, NC 27717-2396
Telephone: 919-493-6464
Facsimile: 919-493-1218
State Bar No.: 2933
*Attorneys for David Addison*

# Certificate of Service

I hereby certify that I have served a copy of the foregoing Defendant David Addison's Memorandum of Law in Support of Motion to Dismiss upon the below listed individuals by electronically filing the document with the Clerk of Court on this date using the CM/ECF system which will send notification of such filing to the following counsel and by serving Linwood Wilson by U.S. mail:

William J. Thomas, II
119 East Main St.
Durham, NC 27701
*Counsel for Plaintiffs*

Charles J. Cooper
David H. Thompson
Brian S. Doukoutchos
Nicole Jo Moss
Cooper & Krik, PLLC
1523 New Hampshire Ave., NW
Washington, DC 20036
*Counsel for Plaintiffs*

J. Donald Cowan, Jr.
Dixie Thomas Wells
Leslie Cooper Harrell
Smith Moore, L.L.P.
P. O. Box 21927
Greensboro, NC 27420
*Counsel for Defendants Duke University, Richard H. Brodhead, Peter Lange, Larry Moneta, John Burness, Tallman Trask, Suzanne Wasiolek, Matthew Drummond, Aaron Graves, Robert Dean, Kate Hendricks, and Victor J. Dzau*

Jamie S. Gorelick
Jennifer M. O'Connor
Paul R. Q. Wolfson
Wilmer, Cutler, Pickering,
Hale and Dorr, L.L.P.
1875 Pennsylvania Ave., NW
Washington, DC 20006
*Counsel for Defendant Duke University, et al.*

William F. Lee
Wilmer, Cutler, Pickering, Hale
    & Dorr, LLP
60 State St.
Boston, MA 02109
*Counsel for Defendant Duke University, et al.*

Dan J. McLamb
Shirley M. Pruitt
T. Carlton Younger, III
Yates, McLamb & Weyher, L.L.P.
P. O. Box 2889
Raleigh, NC 27602-2889
*Counsel for Defendants Duke University Health System, Inc., Tara Levicy and Theresa Arico*

Reginald B. Gillespie, Jr.
Faison & Gillespie
P. O. Box 51729
Durham, NC 27717
*Counsel for Defendant City of Durham*

Joel M. Craig
Henry W. Sappenfield
Kennon, Craver, Belo, Craig & McKee, PLLC
P. O. Box 51579
Durham, NC 27717-1579
*Attorneys for Defendant Benjamin Himan*

Patricia Kerner
D. Martin Warf
Hannah G. Styron
Troutman Sanders, LLP
434 Fayetteville St., Suite 1900
Raleigh, NC 27601
*Attorneys for Defendants Patrick Baker, Steven Chalmers, Ronald Hodge, Lee Russ, Stephen Mihaich, Beverly Council, Jeff Lamb and Michael Ripberger*

Edwin M. Speas, Jr.
Eric P. Stevens
Poyner & Spruill, LLP
P. O. Box 10096
Raleigh, NC 27605-0096
*Attorneys for Defendant Mark Gottlieb*

Kenneth Kyre, Jr.
Pinto, Coates, Kyre & Brown, PLLC
P. O. Box 4848
Greensboro, NC 27404
*Attorneys for Defendant J. Wesley Covington*

Linwood Wilson
6910 Innesbrook Way
Bahama, NC 27503-9700
*Pro se*

This the 30th day of May, 2008.

/S/James B. Maxwell
Maxwell, Freeman & Bowman, P.A.
Attorneys for David Addison
P. O. Box 52396
Durham, NC 27717-2396
(919) 493-6464
State Bar No.: 2933