UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

File No. 1:08-CV-119

EDWARD CARRINGTON, CASEY J. )
CARROLL, MICHAEL P. CATALINO, GALE )
CATALINO, THOMAS V. CLUTE, KEVIN )
COLEMAN, JOSHUA R. COVELESKI, )
EDWARD J. CROTTY, EDWARD S. )
DOUGLAS, KYLE DOWD, PATRICIA DOWD, )
DANIEL FLANNERY, RICHARD GIBBS )
FOGARTY, ZACHARY GREER, IRENE )
GREER, ERIK S. HENKELMAN, STEVEN W. )
HENKELMAN, JOHN E. JENNISON, BEN )
KOESTERER, MARK KOESTERER, JOYCE ) **DEFENDANT BENJAMIN**
KOESTERER, FRED KROM, PETER J. ) **HIMAN'S BRIEF IN**
LAMADE, ADAM LANGLEY, CHRISTOPHER ) **SUPPORT OF MOTION**
LOFTUS, DANIEL LOFTUS, BARBARA ) **TO DISMISS**
LOFTUS, ANTHONY MCDEVITT, GLENN )
NICK, NICHOLAS O'HARA, LYNNDA )
O'HARA, DANIEL OPPEDISANO, SAM )
PAYTON, JOHN BRADLEY ROSS, KENNETH )
SAUER, III, STEVE SCHOEFFEL, ROBERT )
SCHROEDER, DEVON SHERWOOD, DANIEL )
THEODORIDIS, BRET THOMPSON, )
CHRISTOPHER TKAC, TRACY TKAC, JOHN )
WALSH, JR., MICHAEL WARD, ROBERT H. )
WELLINGTON, IV, WILLIAM WOLCOTT, )
MICHAEL YOUNG, )
       Plaintiffs, )
 )
  vs. )
 )
DUKE UNIVERSITY, DUKE UNIVERSITY )
HEALTH SYSTEM, INC., RICHARD )
BRODHEAD, PETER LANGE, LARRY )
MONETA, JOHN BURNESS, TALLMAN )
TRASK, SUZANNE WASIOLEK, MATTHEW )
DRUMMOND, AARON GRAVES, ROBERT )

DEAN, TARA LEVICY, THERESA ARICO,    )
J. WESLEY COVINGTON, KATE HENDRICKS, )
VICTOR DZAU, CITY OF DURHAM,         )
LINWOOD WILSON, MARK GOTTLIEB,       )
BENJAMIN HIMAN, PATRICK BAKER,       )
STEVEN CHALMERS, RONALD HODGE,       )
LEE RUSS, STEPHEN MIHAICH, BEVERLY   )
COUNCIL, JEFF LAMB, MICHAEL          )
RIPBERGER and DAVID ADDISON,         )
                        Defendants.   )
_____

NOW COMES Defendant Benjamin Himan ("Investigator Himan"), by and through his undersigned attorneys, and submits the following Brief in support of his motion to dismiss this action pursuant to 12(b)(6) of the Rules of Civil Procedure.

## MATTER BEFORE THE COURT

The matter before the Court is Defendant Investigator Benjamin Himan's motion to dismiss Plaintiffs' claims against him, set out in Counts Eight, Ten, Twenty, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Four, Twenty-Five, Twenty-Eight, Twenty-Nine and Thirty in their Complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF THE CASE

Plaintiffs filed this action on February 21, 2008, claiming violations of 42 U.S.C. § 1985 and North Carolina common law. On April 10, 2008, the parties filed a Joint Motion for Leave to File Excess Pages and to Establish a Rule 12 Briefing Schedule. Judge Beaty allowed this motion on April 14, 2008. Under the terms of the Order,

Defendants have until May 30, 2008, in which to file briefs in support of their motions to dismiss, not to exceed fifty pages in length. Investigator Himan's Motion to Dismiss has been filed pursuant to Judge Beaty's Order.

## STATEMENT OF FACTS

Plaintiffs' Complaint numbers two hundred and twenty-five pages, names twenty-nine defendants and has thirty-one causes of action. Although Investigator Himan strongly disagrees with Plaintiffs' sometimes hyperbolic characterizations of the stated events, Fed. R. Civ. P. 12(b)(6) requires that these allegations be taken as true for the limited purpose of arguing that they should be dismissed as a matter of law. The relevant allegations of the Complaint are set out below.

Three members of the 2005-2006 Duke lacrosse team were falsely accused of rape by Crystal Mangum after she and another woman had performed as exotic dancers at a party attended by members of the team.[1] Compl. ¶¶ 90-91, 102, 399, 432. Plaintiffs allege that, as members of that team, they were subjected to a vast conspiracy to harm their reputations and deprive them of their constitutional rights. Compl. ¶¶ 5, 650, 700. According to Plaintiffs, this conspiracy encompassed not only the twenty-nine listed defendants, but others not listed in the Complaint. Compl. ¶ 3-4. It supposedly included

---

[1] The charges against the three indicted players were dismissed. They were exonerated and declared innocent by the Attorney General in a public statement on April 11, 2007. Compl. ¶¶ 468-69. The innocence of the indicted players was established in part due to information gathered by Investigator Himan and other members of the Durham Police Department. Compl. ¶ 467.

employees of Duke University, the Duke University Health System, the Duke Campus Police, the City of Durham, the Durham Police Department and private companies. Compl. ¶¶ 3-4.

Plaintiffs were never arrested, indicted or tried. Plaintiffs were never specifically identified as the supposed or suspected perpetrators of the alleged "crime." They have not spent one day in jail, nor have they been forced to appear in court. Plaintiffs now seek to recover damages against Investigator Himan based upon the fact that their potential involvement (or the potential involvement of their children) in the alleged crime on March 16, 2006 was investigated pursuant to the Durham Police's inquiry into Crystal Mangum's claims. Compl. ¶¶ 1-4.

According to Plaintiffs' Complaint, Investigator Himan participated in the investigation of Mangum's claims as follows:

### *Initial Investigation*

On or about March 16, 2006, Sergeant Mark Gottlieb assigned Investigator Himan to assist him in his investigation into Mangum's claims. Compl. ¶ 137. Sergeant Gottlieb was the lead investigator and Investigator Himan was his chief assistant. Compl. ¶ 148. In the days that followed, Durham Police Commander Jeff Lamb instructed Sergeant Gottlieb and Investigator Himan that they should take direction from District Attorney Michael Nifong, "but that they should also report regularly to Durham police senior staff regarding the [progress of] the investigation." Compl. ¶ 222.

Mangum had initially claimed she had been raped during her intake interview at Durham ACCESS, a local outpatient mental health clinic, in the early morning hours of March 14, 2006. Compl. ¶¶ 101-02. Based on her rape allegation, Mangum was moved to Duke Medical Center for a rape examination. Compl. ¶¶ 103, 126. During this examination Mangum indicated that she had been raped by three men and was in intense pain. Compl. ¶ 106. When examiners inserted a speculum for vaginal examination Mangum screamed hysterically and complained of severe pain. Compl. ¶ 128. The examination found evidence of "diffuse edema of the vaginal walls", a symptom consistent with a number of potential causes. Compl. ¶¶ 103, 126.

That same day Investigator Himan received photos of all of the Duke lacrosse players from the Duke Police, along with a copy of the police report created by Duke Police Officer Christopher Day, prepared the night of the alleged incident. Compl. ¶¶ 139, 149. Investigator Himan then spoke by telephone with Tara Levicy, the Duke Hospital nurse who had participated in the forensic medical examination of Mangum. Compl. ¶ 150. The purpose of this call was for Investigator Himan to request the medical and physical evidence relating to Mangum's rape allegations. Compl. ¶ 150. Levicy informed Investigator Himan that she was not able to share this medical information due to HIPAA restrictions, but that "*there were signs consistent with sexual assault* during her test." Compl. ¶ 150 (emphasis in original).

Investigator Himan then interviewed Mangum regarding her claims of sexual assault. Compl. ¶¶ 150, 155-56. Later that day Investigator Himan participated in serving and carrying out a search warrant for 610 North Buchanan. Compl. ¶ 162.

Over the next few days Investigator Himan worked with the Duke police "to set up a voluntary meeting for the players to speak to [the] Durham PD and give photographs, [sic] and DNA." Compl. ¶ 176. On March 20, 2006, Investigator Himan contacted then Duke lacrosse coach Mike Pressler to set up a meeting with the team members who had attended the party in question. Compl. ¶ 179.

### Interview of Kimberly Pittman

On March 20, 2006, Investigator Himan contacted Kimberly Pittman by telephone. Compl. ¶ 180. Pittman was the exotic dancer who had performed at 610 N. Buchanan with Crystal Mangum on the night in question. Compl. ¶ 180. During that conversation, Pittman disputed that any assault had occurred. Compl. ¶ 180.

Two days later, Investigator Himan met with Pittman and had her give a written statement. Compl. ¶¶ 182-83. This written statement recanted Pittman's initial verbal statement to Investigator Himan that no assault had occurred. Compl. ¶¶ 182-83. At this same meeting, Investigator Himan served an outstanding warrant on Pittman for parole violations. Compl. ¶¶ 182-83. Plaintiffs allege that the written statement was induced by offering Pittman "a deal on her probation violation." Compl. ¶ 182. Plaintiffs characterize this alleged agreement as "witness tampering." Compl. ¶ 182.

### *The Non-Testimonial Identification Procedure*

On or about March 23, 2006, Investigator Himan and Sergeant Gottlieb applied for and received a Nontestimonial Identification Order ("NTID Order"), directing all white members of the Duke lacrosse team to provide DNA samples, submit to physical examinations and allow themselves to be photographed. Compl. ¶¶ 205, 213. In their Application for the NTID Order ("NTID Application"), Investigator Himan and Sergeant Gottlieb included information they had identified and collected to that point in the investigation. Compl. ¶¶ 205-09. Plaintiffs also assert that the press was tipped off about the NTID Order but do not indicate who supposedly did so. Compl. ¶ 216.

### *The Results of DNA Testing*

On or about March 28, 2006, Investigator Himan participated in a meeting with District Attorney Michael Nifong, Sergeant Gottlieb, Durham City Manger Patrick Baker, Durham Police Chief Steve Chalmers, and various officials from Duke. Compl. ¶ 306. According to Plaintiffs' Complaint, the purpose of this meeting was to report that "Mangum's accounts of the attack were patently inconsistent, that the SBI lab results had come back negative, and that Mangum had failed to identify any alleged attackers in two separate photo arrays." Compl. ¶ 306. Plaintiffs further allege that those present at the meeting agreed to cooperate in an "expedited effort to make identifications and arrests notwithstanding the evidence." Compl. ¶ 308.

### Keycard Information Provided by Duke Police

On or about March 31, 2006, Duke University Police provided Sergeant Gottlieb with a report generated by the Duke Card Office. Compl. ¶ 324. This report provided information regarding when and where members of the lacrosse team had swiped their Duke ID cards to enter buildings or make small purchases on March 13th and 14th. Compl. ¶¶ 325-26. According to Plaintiffs' Complaint, this information was used to identify which players from the lacrosse team were to be included in the April 4th photo identification procedure presented to Mangum. Compl. ¶ 326.

Plaintiffs allege that District Attorney Nifong later issued subpoenas for this key card information, and even fought a motion to quash these subpoenas on July 17, 2006, for the sole purpose of obscuring the fact that this information had previously been provided. Compl. ¶¶ 436-42.

### Ongoing Interviews of Crystal Mangum

Plaintiffs also allege that Investigator Himan interviewed Mangum on March 28, 2006, but do not make any allegations of damages to them that were caused by this meeting. Compl. ¶ 309.

On or about April 6, 2006, Mangum provided Sergeant Gottlieb and Investigator Himan a written statement detailing her allegations regarding the claimed assault. Compl. ¶ 376. This statement differed significantly from prior allegations Mangum previously had made. Compl. ¶ 376.

*Investigator Himan's Dealings With DNA Security, Inc.*

On or about April 10, 2006, prior to the indictments of David Evans, Reade Seligman and Collin Finnerty, Investigator Himan, District Attorney Nifong and Sergeant Gottlieb met with representatives of DNA Security, Inc. ("DSI"). Compl. ¶ 382. DSI had been engaged at District Attorney Nifong's direction to perform sensitive DNA testing. Compl. ¶¶ 381-82. During this meeting, Defendant Brian Meehan detailed the results of DSI's testing, which found that none of the Duke lacrosse players were contributors of DNA on the rape kit items taken from Mangum. Compl. ¶ 383. According to Plaintiffs' Complaint, those present at the meeting "conspired to illegally conceal DSI's findings" by not taking any notes and obfuscating or concealing the full results of DSI's testing. Compl. ¶ 384. This was followed by an April 21, 2006 meeting where, Plaintiffs allege, Investigator Himan and the other individuals present "agreed that DSI would produce a written report that would purport to be the final and complete report of the results of all DNA testing conducted by DSI, but . . . would omit crucial exculpatory findings of DSI's testing." Compl. ¶ 403.

*Investigator Himan's Dealings With Witnesses*

According to Plaintiffs' Complaint, Investigator Himan and Sergeant Gottlieb entered student dormitories and engaged in "warrantless entry and searches of a dorm and dorm rooms and uncounseled interrogation of lacrosse players . . . " Compl. ¶ 394. The purpose of these supposed searches and interrogations was "to gather further

confirmation of the identities of all the party attendees in order to ensure against indicting a player who could readily establish an alibi." Compl. ¶ 394.

Plaintiffs also allege that "[a]s late as Friday, April 14, [Investigator] Himan made repeated phone calls to defense counsel . . . to determine who had attended the party." Compl. ¶ 396. Plaintiffs allege that these calls arose from concerns about "bringing indictments against players who had not attended the party." Compl. ¶ 396.

### *Conclusion of Investigator Himan's Involvement in the Investigation*

On December 21, 2006, Mangum informed investigators that she could no longer be 100% sure she had been raped. Compl. § 461. District Attorney Michael Nifong dismissed the rape charges the following day, but the charges of kidnapping and sexual result remained. Compl. § 461.

On January 10, 2007, while District Attorney Nifong was already facing ethics charges, Investigator Himan and Investigator Linwood Wilson met with Nurse Tara Levicy. Compl. ¶ 462. During this meeting Nurse Levicy speculated that condoms might have been used in the assault and that she was not surprised that no DNA had been found on Mangum. Compl. ¶¶ 462-63.

Plaintiffs specifically allege that Investigator Himan conveyed all information he had uncovered, both exculpatory and inculpatory, to District Attorney Michael Nifong. Compl. ¶ 268.

## QUESTIONS PRESENTED

1.      Have Plaintiffs stated cognizable claims against Investigator Himan under federal and state law?

2.      Can Plaintiffs' claims overcome Investigator Himan's qualified immunity for federal claims and absolute immunity from personal liability for state law claims?

## ARGUMENT

Outside of Plaintiffs' insufficient and conclusory allegations of conspiracy, Plaintiffs' Complaint makes clear that Investigator Himan complied with his duties as a law enforcement officer under North Carolina law.  Investigator Himan provided District Attorney Nifong with all of the potentially exculpatory evidence he was aware of and provided the necessary information to the Court for a Non-Testimonial Identification Order to be granted.  Plaintiffs' Complaint fails to allege sufficient facts to support allegations that their constitutional rights have been violated.  Because they cannot establish any underlying violation, Plaintiffs' federal claims fail as a matter of law.

Investigator Himan's performance of his duties as a law enforcement officer also means that his actions are protected by the doctrine of qualified immunity for federal constitutional claims and that the doctrine of public official immunity for state law claims.

### *Applicable Legal Standard*

A complaint should be dismissed for failure to state a claim when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991), *cert. denied*, 503 U.S. 936, 112 S. Ct. 1475, 117 L. Ed. 2d 619 (1992). To state a viable claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 75 U.S. 4337, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Because the primary objective of Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims, a court is not bound by any legal conclusions that are included in the complaint. *Heckman v. University of North Carolina at Chapel Hill*, 19 F. Supp. 2d 468, 471 (M.D.N.C. 1998), *rev. denied*, 166 F.3d 1209 (4th Cir. 1998); *see also Gladden v. Winston Salem State Univ.*, 495 F. Supp. 2d 517, 520-21 (M.D.N.C. 2007) ("The presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the Complaint cannot support a finding of deliberate indifference." (quoting *Young v. City of Mount Rainer*, 238 F.3d 567, 577 (4th Cir. 2001)). A motion to dismiss should be "granted if there is either a lack of cognizable legal theory or the absence of sufficient

facts alleged under a cognizable legal theory." *Trolley v. Kivett*, No. 1:01-CV-410, 2002 U.S. Dist. LEXIS, at *5-6 (M.D.N.C. July 1, 2002).

### *Plaintiffs' Claims Against Investigator Himan*

Plaintiffs' federal claims against Investigator Himan include alleged violations of § 1983 and conspiracy to violate § 1983 arising out of: the Duke University key card reports (Count Twenty); the process for requesting DNA samples (Count Twenty-One); malicious investigation in violation of the Fourteenth Amendment (Count Twenty-Two); deprivation of property without due process (Count-Twenty-Four); and false public statements (Count Twenty-Five).

Plaintiffs' state law claims include: fraud and conspiracy to defraud (Count Eight); abuse of process and conspiracy to abuse process (Count Ten); obstruction of justice and conspiracy to obstruct justice (Count Twenty-Three); intentional infliction of emotional distress (Count Twenty-Eight); negligent infliction of emotional distress (Count Twenty-Nine); and negligence (Count Thirty).

## I. AS PLAINTIFFS HAVE NOT SUFFERED A CONSTITUTIONAL DEPRIVATION, THEIR § 1983 CLAIMS SHOULD BE DISMISSED AS A MATTER OF LAW

Section 1983 is not "a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979). In their Complaint, Plaintiffs make a host of allegations that

they contend constitute violations of Section 1983 (Counts Twenty, Twenty-One, Twenty-Two, Twenty-Four and Twenty-Five). [2] However none of the alleged acts by Investigator Himan resulted in a violation of Plaintiffs' constitutional rights. Plaintiffs were never arrested or tried, only subjected to scrutiny as part of a criminal investigation.

## A. The Fact That Plaintiffs Were Subject To An Investigation Is Not A Constitutional Injury

In Counts Twenty-Two and Twenty-Four, Plaintiffs allege that Investigator Himan, along with each and every one of the listed defendants, "instigated, promoted, and executed a malicious criminal investigation of plaintiffs" that caused them "grave reputational injuries". Compl. ¶ 650. Even if the above allegations had some basis in fact, Plaintiffs' constitutional rights have not been violated. The parade of horrors listed above did not result in the arrest, indictment, trial or conviction of any of the Plaintiffs. The fact that an individual is the subject of an investigation, and incurs costs as a result, is not by itself cognizable under § 1983. *See Sloane v. Department of Housing and Urban Development*, 231 F.3d 10, 24 (D.C. Cir. 2000) ("[t]he law is clear, however, that 'there is no constitutional right to be free of investigation.'")

There is no constitutional right "to be free from maliciously instigated and baseless investigations." *Biasella v. City of Naples, Florida*, No. 2:04-cv-320-FtM-

---

[2] Plaintiffs Complaint states that all claims against Investigator Himan are in both his individual and official capacities. Compl. ¶ 80. Official capacity claims are really claims against Investigator Himan's employer the City of Durham, an entity Plaintiffs' have sued directly. To the extent Plaintiffs have alleged such claims they are duplicative and should be dismissed. *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004).

29DNF, 2005 U.S. Dist. LEXIS 20211, at *12 (M.D. Fl. August 11, 2005). The fact that the investigation is undertaken for improper motives or out of personal animus is irrelevant, as an investigation by itself does not implicate any constitutional rights. The facts as alleged by Plaintiffs are analogous to those set out in *Biasella v. City of Naples, Florida*, where the plaintiff, a contractor, filed suit against the City of Naples, claiming that it had harassed him, destroying his business and reputation over a four year period. 2005 U.S. Dist. LEXIS at *4-5. The alleged harassment was supposedly in retaliation for the plaintiff's involvement in a contentious dispute over the amount of a bill the plaintiff's company had submitted to the city for work performed. *Id.* According to the plaintiff's amended complaint in *Biasella*, the defendant city instituted eleven different investigations of plaintiff with clear advance knowledge that he was innocent of all charges. *Id.* The true purpose of these investigations, according to the plaintiff, was for city officials "to further their own political careers" by harassing and prosecuting him. *Id.* at 11-12.

The Court in *Biasella* found that the plaintiff's constitutional rights were not violated, as he was "never arrested or charged with anything." *Biasella*, 2005 U.S. Dist. LEXIS at *13. The Court recognized that "[w]hile there is a cause of action . . . [against] investigators if they conduct a constitutionally deficient investigation and an arrest results from the investigation", there is "no particular level of evidence constitutionally required before a person may seek to instigate an investigation by authorities." *Biasella*, 2005

U.S. Dist. LEXIS at *13 (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1228-31 (11th

Cir. 2004).

Here, Counts Twenty-Two and Twenty-Four in Plaintiffs' Complaint suffer from

the same fatal flaw as those in *Biasella*. Plaintiffs were never arrested or tried, only

subjected to scrutiny as part of a criminal investigation. As such, they have suffered no

harm to their constitutional rights. Allegations that Investigator Himan sought to conceal

or fabricate evidence, and that he attempted to intimidate witnesses, therefore fail to state

a valid claim under § 1983. *See Biasella*, 2005 U.S. Dist. LEXIS at *13 ("the Amended

Complaint asserts that all investigations ended favorably towards plaintiff and he was

never arrested or charged with anything. While defendants may have committed a state

tort, the alleged conduct does not amount to a constitutional violation within the Due

Process clause."); *see also Baker v. McCollan*, 443 U.S. 137, 146, 99 S. Ct. 2689, 61 L.

Ed. 2d 433 ("Section 1983 imposes liability for violations of rights protected by the

Constitution, *not* for violations of duties of care arising out of tort law").

>   **B.**     **To The Extent Plaintiffs' Claims Are Based On The Violation Of
>              Substantive Due Process Under The Fourteenth Amendment,
>              They Fail As A Matter Of Law**

It is not clear if Counts Twenty-Two and Twenty-Four are alleging a separate

Fourteenth Amendment violation or if they simply cite the Fourteenth Amendment to

establish that the Fourth Amendment applies to the states. See Compl. ¶¶ 636-37, 650.

To the extent that these counts are based on a separate claim under the Fourteenth Amendment, they fail for an additional reason.

The Fourth Circuit has held that malicious prosecution claims based on the Fourteenth Amendment are not cognizable. *See Osbourne v. Rose*, No. 97-1259, No. 97-1264, 1998 U.S. App. LEXIS 850, at *12 (4th Cir. Jan. 20, 1998) (the Supreme Court's decision in "*Albright* foreclosed malicious prosecution claims based on the Fourteenth Amendment . . .") (citing *Albright v. Oliver*; 510 U.S. 266, 275, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994)); *Taylor v. Waters*, 81 F.3d 429, 435-36 (4th Cir. 1996) ("[plaintiff's] assertion that [police officer in question] failed to disclose exculpatory evidence does not allege a deprivation of any right guaranteed under the Due Process Clause of the Fourteenth Amendment"). In *Lambert v. Williams*, 223 F.3d 257, 260-61 (4th Cir. 2000), the Fourth Circuit explicitly refused to recognize a § 1983 malicious prosecution lawsuit based on alleged violations of substantive due process rights applied to state actors under the Fourteenth Amendment. The Court in *Lambert* reasoned that what "is conventionally referred to as a 'Section 1983 malicious prosecution' action is nothing more than a '§ 1983 claim arising from a Fourth Amendment violation." 223 F.3d at 260. Thus Plaintiffs must allege facts giving rise to a plausible claim that Investigator Himan engaged in an unconstitutional seizure in violation of the Fourth Amendment—something their Complaint fails to do.

**C. Plaintiffs' Claims Regarding Investigator Himan's Involvement In The Application For A Nontestimonial Order Should Be Dismissed, As The Asserted Facts Do Not Support A Valid Section 1983 Claim**

In Count Twenty-One, Plaintiffs allege that Investigator Himan and others included "false" and "overbroad" information in their application for a Nontestimonial Identification Order. Compl. ¶ 630. Even if such allegations were true, they do not support a plausible claim that the application was insufficient or improper as a matter of law and, by extension, do not support a viable § 1983 claim.

Under North Carolina law, a Nontestimonial Identification Order may be obtained on a showing that a police officer has "reasonable suspicion" or "reasonable grounds" to believe that the subject may be responsible for a crime. *State v. Pearson*, 356 N.C. 22, 566 S.E.2d 50, 54 (2002). The "reasonable grounds standard required for . . . [a Nontestimonial Identification Order] is significantly lower" than the standard for probable cause. *Id.* This lower standard arises from the underlying purpose of an NTID Order, as "an investigative tool requiring a lower standard of suspicion that is available for the limited purpose of identifying the perpetrator of a crime." *Id.*

The North Carolina Supreme Court has defined the "reasonable grounds" standard as "similar to the reasonable suspicion standard applied to brief detentions" in cases such as *Terry v. Ohio*. *Pearson*, 356 N.C. at 28-29, 566 S.E.2d at 54 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). "The sole requirement is a minimal amount of objective justification, something more than an 'unparticularized suspicion or

hunch.'" *Id. (*quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L.Ed.2d 1, 10 (1989) (quoting *Terry*, 392 U.S. at 27, 88 S. Ct. 1868, 20 L. Ed. 2d at 909)).

A fair reading of Plaintiffs' Complaint indicates that the NTID Application satisfies this reasonable grounds standard. The NTID Application: (1) recounted the details of the complaining witness' allegation that three white males raped and sexually assaulted her; (2) asserted that a nurse with experience in forensic sexual assault investigation and a physician examined the accuser after the alleged incident and that the medical records and interviews "revealed the victim had signs, symptoms, and injuries consistent with being raped and sexually assaulted vaginally and anally" and "the injuries and her behavior were consistent with a traumatic experience"; and (3) asserted that three residents of the house where the alleged assault was to have occurred and stated that only lacrosse team members attended the party and that there were no strangers who appeared at the event. A copy of the NTID Application is attached hereto as Exhibit 1[3].

The NTID Affidavit, like an affidavit supporting a search warrant, is entitled to a presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). The underlying purpose of this presumption is to encourage police officers to seek warrants, so that neutral judicial officers may serve as vital checkpoints between citizens and their government. *See id.* North Carolina Superior Court Judge

---

[3] A Court may consider documents referenced in the Complaint in determining whether to grant a Rule 12(b)(6) motion so long as there is no question about the authenticity of the documents. *Phillips v. LCi Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

Ronald L. Stephens served as this checkpoint, recognizing that the reasonable grounds standard was met here and properly issuing NTID Orders directing each white member of the Duke lacrosse team to be photographed and provide DNA samples on March 23, 2006.

      **1.**      **Plaintiffs Fail To Allege Facts Showing That The NTID Application Contained Willfully Fraudulent Statements That Were Necessary To The Judge's Approval of the NTID Application**

To establish a valid § 1983 claim arising out of a warrant issued during a criminal investigation, a plaintiff must show that the officer in question deliberately or with a "reckless disregard for the truth" made material false statements in the affidavit or omitted from that affidavit "material facts 'with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading.'" *Miller v. Prince George's County, Maryland*, 475 F.3d 621, 628, (4th Cir. 2007) (quoting *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) (internal quotation marks omitted). It is not enough that there were fraudulent statements or omissions in the affidavit, these statements or omissions must be necessary to the approval of the order by the judge or magistrate. *Miller*, 475 F.3d at 628.

Although Plaintiffs contend that the NTID Application included false assertions that "medical records and interviews . . . revealed the victim had signs, symptoms, and injuries consistent with being raped and sexually assaulted vaginally and anally," and that "the SANE nurse stated the injuries and her behavior were consistent with a traumatic

experience"[4] and that Mangum had been "strangled", Compl. § 205, they do not allege that Investigator Himan knew that these statements were false, nor do they allege that these assertions were necessary to the finding of reasonable suspicion. In fact, Plaintiffs' allegations are that Investigator Himan and others did not have access to this information, as this "medical evidence" was "in Duke's exclusive possession." Compl. ¶ 206.

Plaintiffs likewise point to statements in the NTID Application regarding lost fake fingernails, Compl. ¶ 206, the use of aliases during the supposed attack, Compl. ¶ 208, and attempts by the players to conceal their sports affiliation, Compl. ¶ 209, but there are no allegations that these statements were relied upon by the Court in its decision to approve the NTID Application. *See, e.g.*, *Wilkinson*, 2006 U.S. Dist. LEXIS, at *20 ("even assuming as true that the affidavit [for a search warrant] contains false and fraudulent information, the Court still concludes that the Plaintiffs have failed to meet the two-pronged test [for attacking the validity of a search warrant] because Plaintiffs do not allege that such statements were necessary to the finding of probable cause"). Even if the NTID Application included a statement that "the physical and medical evidence was inconsistent"[5] with Mangum's accounts, and that the specifics of these accounts had changed over time, as Plaintiffs assert was required, they cannot establish that the NTID

---

[4] It is unclear how these particular allegations can be considered to have been false when made, as they are entirely consistent with Plaintiffs' factual allegations. Plaintiffs explicitly allege that potential causes for "diffuse edema of the vaginal walls" include sexual intercourse and use of a vibrator, Compl. ¶ 126, and that the nurse who examined Mangum informed Investigator Himan that "there were signs consistent with sexual assault during her test." Compl. ¶ 150.

[5] Leaving aside, for the reasons described above that some of the allegations in the NTID Application are entirely consistent with Plaintiffs' Complaint. Compl. ¶¶ 126, 150.

Application would have therefore been denied for that reason.  A law enforcement officer is not required to provide all material exculpatory evidence in a warrant application.  The warrant affidavit would only be invalid if "its inclusion in the affidavit would defeat probable cause . . ."  *Colkley*, 899 F.2d at 301 ("an omission must do more than potentially affect the probable cause determination: it must be 'necessary to the finding of probable cause'") (quoting *Franks*, 438 U.S. at 156, 57 L. Ed. 2d 667, 98 S. Ct. 2674).

### 2. The NTID Affidavit Provided Reasonable Grounds For The Identification Information Sought

Plaintiffs assert, with the benefit of perfect hindsight, that investigators should have stopped the investigation prior to filing the NTID Application due to inconsistencies and Mangum's account of the assault and her alleged mental illness.  Compl. ¶¶ 2, 382.  However the Fourth Circuit has never held that investigators are constitutionally required to stop the investigation of an alleged incident once potential problems with the accuser's allegations come to light.  In fact, they have held that investigators must take their witness as they find him or her.

In *Torchinsky v. Siwinski*, the Fourth Circuit considered the validity of an arrest warrant based on the conflicting accounts of a purported assault where the supposed victim was the only witness to the alleged crime.  942 F.2d 257, 262 (4th Cir. 1990).  The supposed victim, Bill Bull, was found battered and bloodied outside of his home and initially gave conflicting accounts of how he had been injured, including claiming he had

been in an auto accident then claiming he had been assaulted in his home by two black males. *Id.* at 259.

The investigating officer later learned that Bull was bisexual and had been in a relationship with a man known as Stanley. *Torchinsky*, 942 F.2d at 259. The investigating officer suspected that Stanley had been the individual who assaulted Bull. *Id.* Two days later, the investigating officer interviewed Bull, who stated that he had actually been assaulted by Bill Torchinsky. *Id.* at 259-60. Bull repeated his accusation in a subsequent interview in the presence of a nurse. *Id.* Siwinksi then sought and obtained an affidavit for Torchinsky's arrest. *Torchinsky*, 942 F.2d at 260. After the arrest, Bull recanted his allegation and the charges against Torchinsky were dismissed. *Id.* Torchinsky sued the investigating officer under § 1983. *Id.*

The district court dismissed the claims and the Fourth Circuit affirmed. *Torchinsky*, 942 F.2d at 263. In rejecting the contention that probable cause was lacking because of inconsistencies in the accuser's statements, the Fourth Circuit held:

> Under the circumstances, we believe Siwinski acted reasonably in relying on Bull's implication of the Torchinskys. Bull's other explanations of his injures had been given just before and just after he was transported to the hospital at a time when he was still experiencing the shock and trauma of the assault. Siwinski could reasonably believe that Bull's implication of the Torchinskys, given two full days after the attack, was the most credible and reliable account of the events. In addition, an officer could reasonably believe that a victim might be initially reluctant to discuss, or even try to hide, the details of an assault that also involved the intimate details of his somewhat unusual sex life.

> . . . Torchinsky's various contentions disregard the realities of police work that must inform qualified immunity analysis. Criminal investigations are often conducted under trying conditions over which officers have limited control. Here, for example, there was only witness to a brutal attack, the victim himself. Ideally, of course, additional witnesses would have been available and the victim would not have been so brutalized. In reality, however, the police were compelled to take the victim as they found him and do the best they could under the circumstances.

*Id.*

Mangum made her inconsistent statements in the aftermath of a purported violent group assault. Compl. ¶¶ 101-02, 376, 461. Investigator Himan and others had to take Mangum "as they found [her] and do the best they could under the circumstances." *Torchinsky*, 942 F.2d at 263. It was reasonable for them to continue to pursue the investigation and to seek identifying photographic and DNA information from the white members of the Duke lacrosse team as part of it. Plaintiffs' claim that their Constitutional rights were violated because they had to sit for photos and provide buccal samples must be rejected, and Count Twenty-One dismissed.

### 3. Plaintiffs' Allegations Regarding "False" and "Overbroad" Information In The NTID Application Is Insufficient To Support A Viable Claim Under § 1983

Anytime a plaintiff challenges an application for a court order, he is alleging essentially fraudulent behavior. A plaintiff must therefore meet the requirements for specific pleading under Fed. R. Civ. P. 9(b). *See Wilkinson v. Hallsten*, No. 5:06CV2, 2006 U.S. Dist. LEXIS, at *15-16 (W.D.N.C. August 2, 2006) (failure to identify what

information included in search warrant was fraudulent rendered claim insufficient for purposes of Fed. R. Civ. P. 9(b)). Specific pleading requires that Plaintiffs must plead the time, place and contents of the alleged fraudulent statements in order to satisfy this standard. *See Harrison v. United States of America*, 176 F.3d 776 (4th Cir. 1999) (setting out pleading requirements under Fed. R. Civ. P. 9(b)). Plaintiffs' general assertion that the NTID Application included "false" and "overbroad" is insufficient as a matter of law. Compl. ¶ 630.

### D. As Plaintiffs Have Suffered No Constitutional Injury From The Release Of Their University Key Card Information, Their § 1983 Claims Based On This Release Should Therefore Be Dismissed

In Counts Eight and Twenty, Plaintiffs allege that Investigator Himan improperly and illegally received Plaintiff's key card information from Duke University. Compl. ¶¶ 532, 536. Plaintiffs further allege that Investigator Himan participated in the issuance and service of a so-called "sham subpoena" for these reports, despite already having them, with the intention of concealing the fact that Duke had previously shared this information. Compl. ¶ 536. Even such a violation occurred, it cannot, as a matter of law, support a § 1983 claim against Investigator Himan.

Plaintiffs' Complaint correctly notes that this key card information is to be kept private according to the terms of the Federal Educational Rights and Privacy Act ("FERPA"). Compl. § 327. However FERPA is clear that its terms are to be enforced by the Secretary of Education—it does not create a private cause of action or any

enforceable rights for private citizens. *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 69 (1st Cir. 2002) ("Our review of this [statute] . . . fails to reveal a shred of evidence that Congress intended FERPA to embody a private right of action. The . . . [legislative history] reinforces the plain language of the statute, charging the Secretary with enforcing its provisions and cautioning that failure to comply with those provisions can lead to the withdrawal of federal funding."). In fact, the Supreme Court has explicitly foreclosed such claims. *Gonzaga University v. Doe*, 536 U.S. 273, 279, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002) ("we have never before held, and decline to do so here, that spending legislation drafted in terms resembling those of FERPA can confer enforceable rights [under § 1983]").

**E.** **Plaintiffs Fail To Allege Any Specific False Public Statements By Investigator Himan, As Such Their Claims Fail As A Matter Of Law**

Count Twenty-Five of Plaintiffs' Complaint generally alleges that Investigator Himan "made multiple public statements that were knowingly false relating to . . . [his] criminal investigation of plaintiffs", Compl. ¶ 655, and that these public statements constitute an actionable claim under § 1983. Aside from the obvious legal challenges to this claim, the fact is that Plaintiffs' Complaint does not specify what false statements Investigator Himan supposedly made. As there are no allegations of specific false statements by Investigator Himan that allegedly violated § 1983, there can be no cognizable claim against him for false statements in violation of § 1983.

Plaintiffs do allege that Sergeant Gottlieb and Investigator Himan filed an affidavit in court asserting that medical records and an interview with the nurse who conducted the forensic investigation "revealed the victim had signs, symptoms and injuries consistent with being raped and sexually assaulted vaginally and anally." Compl. ¶274. This statement is true based upon Plaintiffs own Complaint. Compl. ¶ 150. Plaintiffs fail to allege sufficient facts that would indicate that Investigator Himan had some reason to disbelieve the results he received from the forensic investigation. Moreover, this statement simply asserts that the purported victim had medical symptoms consistent with rape. It includes nothing about the Plaintiffs or any other perpetrators of this supposed assault. This statement cannot constitute defamation as a matter of law. *See Arnold v. Sharpe*, 296 N.C. 533, 539, 251 S.E.2d 453, 456 (1979).

Even if Investigator Himan had allegedly made false statements regarding Plaintiffs, the fact remains that damage to one's reputation by itself is not a violation of a constitutional right. *Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976); *Siegart v. Gilley*, 500 U.S. 226, 233, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991) ("injury to reputation by itself was not a 'liberty' interest protected under the Fourteenth Amendment"). As noted above, this is essentially a claim for defamation, which by itself does not constitute a violation of a constitutional right. *Id.*

Although Plaintiffs allege that they have "suffered deprivation of property interests without due process of law, including for certain plaintiffs lost economic and job opportunities . . . ", Compl. ¶ 661, they fail to allege sufficient facts to support a plausible

claim that they have suffered a constitutional injury.  *See, e.g.*, *Mosrie v. Barry*, 718 F.2d 1151, 1158 (D.C. Cir. 1983) (financial or economic harm "caused by government imposed stigma does not transform an interest in reputation into a liberty interest").  The damages Plaintiffs complain of arise solely from the supposed defamatory statements.  As such no constitutional rights are implicated.  *See, e.g.*, *O'Malley v. Martin*, No. 94-11392, 1996 U.S. Dist. LEXIS, at *12 (D. Mass. February 29, 1996) (there is no law to support the plaintiff's position that "[h]e has a constitutionally protected privacy interest in 'being free from damaging and false accusations prior to an indictment being issued'"); *Smith v. Coughlin*, 727 F. Supp. 834, 843 (S.D.N.Y. 1989) ("There is no constitutional protection against the disclosure of the fact of an ongoing investigation.").

Plaintiffs further allege that, "[t]hese statements were intended to inflame the community against the plaintiffs in order to prolong the investigation and compromise the fairness of the subsequent proceedings . . . "  Compl. § 658.  There were no "subsequent proceedings" here.  Plaintiffs were never indicted, tried, or even arrested, so efforts to "inflame the community" are to that extent irrelevant.

F. **To The Extent Potential Section 1983 Claims Might Arguably Exist Against Investigator Himan, They Are Barred By Qualified Immunity**

Even if Counts Eight, Twenty, Twenty-One, Twenty-Two, Twenty-Four and Twenty-Five stated viable causes of action under § 1983, they must still be dismissed as Investigator Himan's actions are protected by the doctrine of qualified immunity.  The facts as alleged in Plaintiffs' Complaint demonstrate that Investigator Himan was

assigned to investigate Mangum's claims, Compl. ¶¶ 137, 148, and did so aggressively, providing all information he found to both District Attorney Michael Nifong and up his chain of command. Compl. ¶¶ 222, 268. Even if Investigator Himan was required by his role as a police officer to circumvent the prosecutor and decide to conclude the investigation and/or provide all exculpatory evidence directly to defendants or the grand jury, the fact remains that Investigator Himan's actions did not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known" by failing to do so. *Simmons v. Poe*, 47 F.3d 1370, 1385 (4th Cir. 1995). As such, his actions are protected by qualified immunity.[6]

A cause of action under § 1983 requires more than a claim that Investigator Himan violated a right guaranteed under the U.S. Constitution; that right must also have been clearly established at the time of the alleged violation. *See Saucier v. Katz*, 533 U.S. at 201-02, 121 S. Ct. 2151, 150 L. Ed. 2d 272. For a police officer to lose his qualified immunity "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). "The right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful." *Gooden v. Howard County*, 954 F.2d 960, 968 (4th Cir. 1992) (quoting *Azeez*

---

[6] Determination of qualified immunity may be made at either the motion to dismiss or summary judgment stage, however, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001) (citations omitted).

*v. Fairman*, 795 F.2d 1296, 1301 (7th Cir. 1986)). The applicability of qualified immunity is to be assessed at "the time at which the action or inaction occurred." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982); *see also Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989) (determination regarding the reasonableness of an officer's use of force should not be judged "with the 20/20 vision of hindsight").

There is no legal support for Plaintiffs' implicit contention that the failure to take action to terminate an investigation after it has been initiated constitutes a violation of § 1983. *See, e.g.*, *Brooks v. City of Winston Salem*, 85 F.3d 178 (4th Cir. 1996) (plaintiff's claim that investigator "failed to attempt to have the criminal proceedings terminated after it became apparent that . . . [plaintiff] was not the perpetrator fails to state a claim upon which relief may be granted").

There is likewise little legal support for Plaintiffs' implicit argument that a "reasonable person" in Investigator Himan's position should have known that he was legally required to go around the prosecutor and directly provide exculpatory evidence to defendants or the grand jury. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999) (in determining whether a right was clearly established, courts do not ordinarily need to "look beyond the decisions of the Supreme Court, the [local Circuit] court of appeals and the highest court of the state in which the case arose . . . "). "[A] reasonable officer possessing the same information [as Investigator Himan] would have

believed his conduct was lawful." *Shaw v. Stroud*, 13 F.3d 791, 801 (4th Cir. 1994) (citation omitted).

## II. INVESTIGATOR HIMAN CANNOT BE HELD LIABLE UNDER PLAINTIFFS STATE LAW CLAIMS, AS HIS ACTIONS ARE PROTECTED BY PUBLIC OFFICIAL IMMUNITY

In Counts Ten, Twenty-Three, Twenty-Nine and Thirty, Plaintiffs allege various common law claims, including abuse of process and conspiracy to abuse process, obstruction of justice and conspiracy to obstruct justice, negligent infliction of emotional distress and negligence. Compl. ¶¶ 543, 644-45, 730, 736-38. These claims are generally based on the same factual allegations that underlie Plaintiffs' federal claims. The facts as alleged in Plaintiffs' Complaint make clear, however, that Investigator Himan's actions are protected from liability under the doctrine of public official immunity.

Under North Carolina law, a public official performing discretionary acts can be liable for wrongdoing only (1) if the wrongdoing occurs outside the scope of official authority or if the conduct is (2) intended to be prejudicial or injurious to the Plaintiff or (3) malicious or corrupt. David A. Logan and Wayne A. Logan, *North Carolina Torts* § 107 (2d Ed. 2004); *Moore v. Evans*, 124 N.C. App. 35, 42, 476 S.E.2d 415, 421 (1996). As a police officer employed by a North Carolina municipality engaged in the investigation of an alleged crime, Investigator Himan is a public official for purposes of the public official immunity doctrine. *See Campbell v. Anderson*, 156 N.C. App. 371, 376, 576 S.E.2d 726, 730 (2003).

The law presumes that "in the performance of his official duties [the officer] 'acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest." *Green v. Town of Valdese*, 306 N.C. 79, 82, 291 S.E.2d 630, 632 (1982). It is the Plaintiffs' burden to overcome this presumption and "make a prima facie showing that the official's actions (under the color of authority) are sufficient to pierce the cloak of official immunity." *Moore*, 124 N.C. App. at 42, 476 S.E.2d at 421. Plaintiffs fail to satisfy this burden and, as such, their state law claims must be dismissed.

Plaintiffs' allegations do not create a plausible inference that Investigator Himan acted outside the scope of his employment, acted corruptly (e.g., for personal benefit), or that he "intends to be prejudicial or injurious" to Plaintiffs. *Marlowe v. Piner*, 119 N.C. App. 125, 128, 458 S.E.2d 220, 223 (1995). Investigator Himan's duty as a police officer is to investigate claims of sexual assault and kidnapping made by anyone within the jurisdiction. *See, e.g.*, N.C. Gen. Stat. §§ 15A-31. This is precisely what Plaintiffs' allegations show he did.

According to Plaintiffs' Complaint, Investigator Himan was assigned to the investigation by Sergeant Gottlieb and was told to report both to District Attorney Nifong and up the Durham Police chain of command. Compl. ¶¶ 222, 268. Investigator Himan did so, providing all evidence he uncovered to District Attorney Nifong. Compl. ¶ 268. Plaintiffs detail a host of alleged improper actions Investigator Himan took during the course of the investigation, but they fall short of pleading specific facts to support a claim

that he acted outside the scope of his authority, was corrupt or "intends . . . to be prejudicial or injurious" to Plaintiffs. *Marlowe*, 119 N.C. App. at 128, 458 S.E.2d at 223; *see also Jetton v. Caldwell County Board of Education*, No. COA05-1389, 2007 N.C. App. LEXIS 1699, at *17-18 (August 7, 2007) ("While Defendants may not have always acted in a professional manner, or treated Plaintiff with patience, respect, or kindness, there is no evidence that they intended to hurt Plaintiff. Any alleged harm resulting to Plaintiff from Defendants' allegedly improper conduct was simply a collateral consequence").

Plaintiffs' Complaint does not describe any alleged conduct of Investigator Himan that was intended to cause the specific Plaintiffs injury, that was corrupt (i.e., for his undue benefit), or that occurred outside the scope of his duties as a police investigator. *See Marlowe*, 119 N.C. App. at 128, 458 S.E.2d at 223 (granting summary judgment dismissing claims against deputy sheriff in his individual capacity for false imprisonment and false arrest based on public official immunity where evidence showed that "[a]t most" plaintiff had presented evidence showing that defendant "negligently believed he had probable cause to arrest plaintiffs").

Plaintiffs assert that Investigator Himan engaged in a conspiracy that involved the use of keycard information provided by Duke University that they contend was protected by FERPA. Compl. §§ 325, 327. According to Plaintiffs, this information was used by Investigator Himan or other investigators to identify which players from the lacrosse team were to be included in the April 4th photo identification procedure. Compl. ¶ 326.

Such a use would have been a critical part of Investigator Himan's duties. Likewise, had Investigator Himan actually made any false statements to the public regarding the Plaintiffs, Compl. § 655, they would have been made pursuant to his duties as an investigator.

## III. PLAINTIFFS' OBSTRUCTION OF JUSTICE CLAIM FAILS AS A MATTER OF LAW

Count Twenty-Three for common law obstruction of justice fails as a matter of law, as the facts as alleged by Plaintiffs fail to support such a claim. Although the language of the tort is broadly defined, creating a cause of action against any entity that performs an act that prevents, obstructs, impedes, or hinders public or legal justice, *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 33, 588 S.E.2d 20, 29-30 (2003), these elements are not effectively pled in Plaintiffs Complaint.

Plaintiffs allege that Investigator Himan investigated an alleged sexual assault based in part on medical evidence as described to him by a nurse who conducted a forensic investigation. Compl. §150. Plaintiffs likewise allege that Investigator Himan shared all information he uncovered, both inculpatory and exculpatory, with District Attorney Michael Nifong and up the chain of command. Compl. ¶¶ 268, 306. The only "statement" made by Investigator Himan was to quote information he received from the nurse who conducted the forensic investigation. Compl. ¶ 274. These alleged actions do not support a finding that Investigator Himan impeded or hindered public justice. *Compare Reed v. Buckeye Fire Equip.*, 241 Fed. App'x 917, 919 (4th Cir. 2007)

(obstruction of justice claim where there was an attempt to blackmail plaintiff by threatening to reveal extramarital affair in exchange for plaintiff's not going forward with a claim under the Family Medical Leave Act); *Jackson v. Blue Dolphin Communs. Of N.C., LLC*, 226 F. Supp. 2d 785 (W.D.N.C. 2002) (obstruction of justice claim where employee terminated in retaliation for her refusal to sign false affidavit in unrelated matter); *Henry v. Deen*, 310 N.C. 75, 310 S.E.2d 326 (1984) (obstruction of justice claim where physician intentionally altered medical records).

## IV. PLAINTIFFS FAIL TO ALLEGE COGNIZABLE NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIMS AGAINST INVESTIGATOR HIMAN

### A. Investigator Himan Did Not Owe Plaintiffs A Duty For Purposes Of Their Negligence Claims

Counts Twenty-Nine, for negligent infliction of emotional distress, and Thirty, for negligence, fail for a further reason – Investigator Himan did not owe them a duty for purposes of such claims. An actionable negligence claim exists where there is "a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff, under the circumstances in which they were placed." *Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (quoting *Mattingly v. N.C.R.R. Co.*, 253 N.C. 746, 750, 117 S.E.2d 844, 847 (1961)). No reported North Carolina decision addresses the question of whether a law enforcement officer's alleged negligence in the course of the investigation of a crime is an actionable tort. However other jurisdictions have held that no such cause of action exists. *See Fondren v. Klickitat*

*County*, 905 P.2d 928 (Wash. App. 1995) (a claim for negligent investigation is not cognizable under Washington law); *Wimer v. State of Idaho*, 841 P.2d 453 (Idaho 1993) (holding that a claim for negligent investigation does not exist and stating that to hold otherwise would "impair vigorous prosecution and have a chilling effect on law enforcement"); *Lewis v. McDorman*, 820 F. Supp. 1001 (W.D. Va. 1992), *aff'd*, 28 F.3d 1210 (4th 1994) (police officers owe no duty of reasonable care in conducting investigations).

As a police officer for a municipal law enforcement agency, Investigator Himan owed a duty to the public, not to Plaintiffs in particular. By investigating Mangum's claims, including searching for suspects and physical evidence, Investigator Himan was fulfilling this duty. There is no legal basis for Plaintiffs' allegation that he owed them a separate duty in conducting his investigation.

### B. Plaintiffs Fail to Allege The Required Elements For Negligent Infliction of Emotional Distress

Plaintiffs fail to allege sufficient facts to support their claim for negligent infliction of emotional distress in Count Twenty-Nine. The essential elements for such a claim are that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress and (3) that the conduct caused such severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assoc.*, *P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990) (citations omitted). "Severe emotional distress" is defined as "any emotional or mental disorder,

such as, for example neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Id.*  Plaintiffs fail to allege both that it was foreseeable that Investigator Himan's alleged actions would cause them severe emotional distress and that they suffered from sufficiently severe emotional distress.

Instead, Plaintiffs generally allege that Investigator Himan, as part of the "Durham Investigators", engaged in conduct that breached their "identified duties of care."  Compl. ¶¶ 729-730.  However Plaintiffs do not identify any specific acts that were supposedly negligent, instead incorporating the same acts they identify as intentional in Count Twenty-Eight.  This Court has previously recognized that "when the plaintiff's complaint alleges acts . . . that are intentional in nature, and simply concludes that the acts were committed negligent, it is insufficient to state a claim for negligent infliction of emotional distress."  *Sabrowski v. Albani-Bayeux, Inc.*, No. 1:02-CV-728, 2003 U.S. Dist. LEXI 23242, at *16-17 (M.D.N.C. Dec. 19, 2003) (quoting *Barbier v. Durham County Bd. Of Educ.*, 225 F. Supp. 2d 617 (M.D.N.C. 2002)).

## V.    THE FACTS ALLEGED BY PLAINTIFFS DO NOT SUPPORT A VIABLE CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Investigator Himan's supposed acts of "knowingly making false public statements condemning the plaintiffs for committing rape and hiding behind a conspiracy of silence, suppressing exculpatory evidence and fabricating false inculpatory evidence," Compl. ¶¶ 384, 423, 427, 700, does not qualify as sufficiently extreme or outrageous conduct to

support a claim intentional infliction of emotional distress. Count Twenty-Eight of Plaintiffs' Complaint therefore fails as a matter of law.

To establish a valid claim for intentional infliction of emotional distress, a plaintiff must allege: (1) extreme and outrageous conduct; (2) which is intended to cause and does cause; (3) severe and disabling emotional distress. *Dickens v. Puryear*, 302 N.C. 437, 452-53, 276 S.E.2d 325, 335 (N.C. 1981). For conduct to qualify, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded at atrocious, and utterly intolerable in a civilized community." *Bradley v. Lowe's Cos.*, 3:05CV488-MU, 2007 U.S. Dist. LEXIS 69872, at *10 (W.D.N.C. Sept. 20, 2007) (quoting *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (N.C. App. 1985). Plaintiffs must allege facts that, if later proved, "exceed all bounds of decency," *Peck v. Town of Lake Lure*, 1:00cv183-T, 2001 U.S. Dist. LEXIS 13179, at *15 (W.D.N.C. Feb. 23, 2001) (internal quotations omitted), or are "regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Wagoner v. Elkin City School Bd. of Educ.*, 113 N.C. App. 579, 440 S.E.2d 119, 123 (1994).

Plaintiffs' alleged behavior is not sufficiently extreme or atrocious. Plaintiffs do not allege that Investigator Himan threatened or used force against them, only that he aggressively investigated Mangum's claims and participated in the ongoing very public efforts to find the supposed culprits. *See, e.g.*, *Dickens*, 302 N.C. at 447, 276 S.E.2d at 332 (valid claim of intentional infliction of emotional distress where defendants

threatened plaintiff's life, pointed a gun between his eyes, beat him with a nightstick and threatened him with castration). It does not compare with a husband's knowing of and intentionally refusing to pay a tax deficiency as part of a separation agreement, resulting in foreclosure of the wife's home, *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979), or with a private citizen placing posters of Plaintiff in public places, approaching other citizens, including teachers and students in high school within the jurisdiction where defendant was a superintendent, and reading or showing portions of papers about the plaintiff's *nolo contendere* plea while a college student decades earlier. *Woodruff v. Miller*, 64 N.C. App. 364, 307 S.E.2d 176 (1983).

## CONCLUSION

Plaintiffs' claim that their Constitutional rights were violated because they had to sit for photos and provide a buccal sample must be rejected. Plaintiffs identify no underlying violation of their constitutional rights. As such, their federal claims against Investigator Himan must be dismissed as a matter of law.

The alleged facts set out that Investigator Himan was assigned to investigate an allegation of rape, participated in the investigation consistent with his duty as a law enforcement officer and then turned over all evidence he uncovered to District Attorney Michael Nifong. Although Plaintiffs detail a host of purportedly improper actions by Investigator Himan, they do not make specific allegations that would support a viable cause of action against him under federal or state law.

Respectfully submitted this the 30th day of May, 2008.

<div style="margin-left: 50%">

KENNON, CRAVER, BELO,
CRAIG & MCKEE, PLLC

By:    */s/ Joel M. Craig*
North Carolina State Bar No. 9179


*/s/ Henry W. Sappenfield*
North Carolina State Bar No. 37419
Attorneys for Defendant Benjamin
Himan
4011 University Drive, Suite 300
P.O. Box 51579
Durham, NC 27717-1579
(919) 490-0500
jcraig@kennoncraver.com
hsappenfield@kennoncraver.com

</div>

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that I electronically filed the foregoing Defendant Benjamin Himan's Brief in Support of Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Charles J. Cooper
David H. Thompson
Brian S. Koukoutchos
Nicole Jo Moss
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036

William J. Thomas, II
Thomas, Ferguson & Mullins, L.L.P.
119 East Main Street
Durham, NC 27701
*Attorneys for Plaintiffs*

Dan J. McLamb
Shirley M. Pruitt
T. Carlton Younger, III
Yates, McLamb & Weyher, L.L.P.
P.O. Box 2889
Raleigh, NC 27602
*Attorneys for Defendants Duke University Health System, Inc., Theresa Arico, R.N. and Tara Levicy, R.N.*

J. Donald Cowan, Jr.
Dixie T. Wells
L. Cooper Harrell
Smith Moore LLP
P.O. Box 21927
Greensboro, NC 27420

William F. Lee
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109
Jamie Gorelick

Jennifer M. O'Connor
Paul R.Q. Wolfson
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
*Attorneys for Defendants Duke University, Richard H. Brodhead, Peter Lange,*
*Larry Moneta, John Burness, Tallman Trask, Suzanne Wasiolek, Matthew*
*Drummond, Aaron Graves, Robert Dean, Kate Hendricks and Victor J. Dzau*

Reginald B. Gillespie, Jr.
Faison & Gillespie
P.O. Box 51729
Durham, NC 27717-1729
*Attorneys for Defendant City of Durham, North Carolina*

James B. Maxwell
Maxwell, Freeman & Bowman, P.A.
P.O. Box 52396
Durham, NC 27717-2396
*Attorneys for Defendant David Addison*

Edwin M. Speas, Jr.
Eric P. Stevens
Poyner & Spruill LLP
P.O. Box 10096
Raleigh, NC 27605-0096
*Attorneys for Defendant Mark Gottlieb*

Patricia P. Kerner
D. Martin Warf
Hannah G. Styron
Troutman Sanders LLP
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
*Attorneys for Defendants Patrick Baker, Steven Chalmers, Ronald Hodge, Lee*
*Russ, Stephen Mihaich, Beverly Council, Jeff Lamb and Michael Ripberger*

Paul D. Coates
Kenneth Kyre, Jr.
Pinto Coates Kyre & Brown, PLLC
P.O. Box 4848
Greensboro, NC 27404
*Attorneys for Defendant J. Wesley Covington*

The undersigned further certifies that the foregoing document was served by first-class mail, postage prepaid to the following non CM/ECF participant:

Linwood Wilson
Bahama, NC
*Pro Se*

This the 30th day of May, 2008.

KENNON, CRAVER, BELO,
CRAIG & MCKEE, PLLC

By:   */s/ Henry W. Sappenfield*
North Carolina State Bar No. 9179
Attorneys for Defendant Benjamin Himan
4011 University Drive, Suite 300
P.O. Box 51579
Durham, NC 27717-1579
(919) 490-0500
E-mail: hsappenfield@kennoncraver.com