UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

File No. 1:08-CV-119

EDWARD CARRINGTON, CASEY J. CARROLL,
MICHAEL P. CATALINO, GALE CATALINO, THOMAS
V. CLUTE, KEVIN COLEMAN, JOSHUA R.
COVELESKI, EDWARD J. CROTTY, EDWARD S.
DOUGLAS, KYLE DOWD, PATRICIA DOWD, DANIEL
FLANNERY, RICHARD GIBBS FOGARTY, ZACHARY
GREER, IRENE GREER, ERIK S. HENCKELMAN,
STEVEN W. HENKELMAN, JOHN E. JENNISON, BEN
KOESTERER, MARK KOESTERER, JOYCE
KOESTERER, FRED KROM, PETER J. LAMADE,
ADAM LANGLEY, CHRISTOPHER LOFTUS, DANIEL
LOFTUS, BARBARA LOFTUS, ANTHONY
MCDEVITT, GLENN NICK, NICHOLAS O'HARA,
LYNNDA O'HARA, DANIEL OPPEDISANO, SAM
PAYTON, JOHN BRADLEY ROSS, KENNETH SAUER,
III, STEVE SCHOEFFEL, ROBERT SCHROEDER,
DEVON SHERWOOD, DANIEL THEODORIDIS, BRET
THOMPSON, CHRISTOPHER TKAC, TRACY TKAC,
JOHN WALSH, JR., MICHAEL WARD, ROBERT H.
WELLINGTON, IV, WILLIAM WOLCOTT, MICHAEL
YOUNG,

|  | Plaintiffs, |
| --- | --- |

vs.

DUKE UNIVERSITY; DUKE UNIVERSITY HEALTH
SYSTEM INC., RICHARD BRODHEAD, PETER
LANGE, LARRY MONETA, JOHN BURNESS,
TALLMAN TRASK, SUZANNE WASIOLEK, TRASK,
SUZANNE WASIOLEK, MATTHEW DRUMMOND,
AARON GRAVES, ROBERT DEAN, TARA LEVICY,
THERESA ARICO, J. WESLEY COVINGTON, KATE
HENDRICKS, VICTOR DZAU, CITY OF DURHAM,
LINWOOD WILSON, MARK GOTTLIEB, BENJAMIN
HIMAN, PATRICK BAKER, STEVEN CHALMERS,
RONALD HODGE, LEE RUSS, STEPHEN MIHAICH,
BEVERLY COUNCIL, JEFF LAMB, MICHAEL
RIPBERGER, AND DAVID ADDISON,

|  | Defendants. |
| --- | --- |

# MEMORANDUM SUPPORTING MARK GOTTLIEB'S MOTION TO DISMISS

Sgt. Mark Gottlieb respectfully submits this brief in support of his motion to dismiss. He is one of the 26 individuals sued in this matter by 38 members of the 2006 Duke University lacrosse team (the "Player Plaintiffs") and 9 of their parents. Sgt. Gottlieb is one of the defendants in twelve of the thirty-one claims for relief asserted in the Complaint -- Counts 8, 10, 20-26, and 28-30. For reasons set forth in this Brief, and for additional reasons set forth in Briefs filed contemporaneously herewith by the City of Durham, Benjamin Himan, and Defendants Baker, Chalmers, Council, Hodge, Lamb, Mihaich, Ripberger, and Russ, Sgt. Gottlieb respectfully requests the Court to dismiss all twelve of the causes of action that have been asserted against him.

This case arises out of the investigation of the claim by Crystal Mangum that she was brutally raped at a party attended by Duke Lacrosse players the night of March 13, 2006. The investigation led to the indictment of three lacrosse players, none of whom is a party to this lawsuit. On May 16, 2006, the day the last indictment was issued, District Attorney Nifong announced that -- based on the information then available -- he had no intention of bringing further indictments.

None of the Player Plaintiffs in this case was ever accused of or charged with sexually assaulting Ms. Mangum. Except for allegations with regard to the places the players reside and their membership on the 2006 lacrosse team, there is no specific mention in the 224 pages of the complaint of any individual Plaintiff -- player or parent.

The defendants in this lawsuit fall into two different categories. The primary emphasis of the Complaint is that officials and employees associated with Duke

University and Duke University Health System engaged in wrongful conduct that enabled the investigation to go forward and mistreated the players in numerous ways during the course of the investigation. The Complaint also includes, almost as an afterthought, a number of claims against various employees of the Durham Police Department, including Sgt. Gottlieb. Plaintiffs allege that Sgt. Gottlieb, along with other Durham officials, caused them legal harm by: (a) subjecting them to unwanted scrutiny in the process of conducting a "malicious" investigation into Crystal Mangum's claims; (b) making statements during the course of the investigation that harmed their reputations; (c) requiring the white members of the Duke Lacrosse team to provide saliva samples for DNA testing; and (d) obtaining allegedly private "key card" reports from Duke University that showed when lacrosse team members entered and exited the exterior doors of Duke dormitories on the night of the alleged rape.

As this brief will demonstrate, Plaintiffs' claims against Sgt. Gottlieb must be dismissed. The rape claim of Crystal Mangum, which was corroborated by medical evidence supplied by Tara Levicy from Duke University Hospital, gave investigators ample legal grounds to conduct an investigation and to seek a "nontestimonial order" requiring the white Duke lacrosse players to provide DNA samples. Plaintiffs have no constitutional right to avoid being the subjects of inquiry in a criminal investigation or to have their reputations protected from all harm during the course of a criminal investigation. Finally, Sgt. Gottlieb did not violate any of the Plaintiffs' rights by accepting key card information supplied to him by Duke police officials.

## STATEMENT OF FACTS

On March 15, 2006, Sgt. Gottlieb was assigned to investigate Crystal Mangum's rape and sodomy allegations. The next day Sgt. Gottlieb in turn assigned Investigator Benjamin Himan to assist him. (Compl. ¶'s 136 & 137). That day, Sgt. Gottlieb and Inv. Himan interviewed Mangum, who alleged that she had been raped by three men at a party attended by members of the Duke lacrosse team. (Compl. ¶'s 150 & 155). Just prior to the interview, Tara Levicy, the SANE nurse who had participated in the forensic medical examination of Mangum at Duke Hospital, advised Inv. Himan that "there were signs consistent with sexual assault" during her examination the morning after the alleged incident. (Compl. ¶ 150). Through this statement Ms. Levicy advised Himan and Gottlieb, in effect, that a rape had likely occurred. (Compl. ¶ 153).

That day Durham Police showed Mangum 4 arrays of 6 photos of the Duke lacrosse players. She did not identify anyone as her attacker, and stated that "they all look alike." (Compl. ¶'s 157-158). That evening Sgt. Gottlieb interviewed the three players (Evans, Flannery and Zach) who resided in the home where Ms. Mangum alleged she was raped. They provided Sgt. Gottlieb with a list of lacrosse team players who had attended the party "as possible suspects." (Compl. ¶165). A second photo array was shown to Ms. Mangum on March 21, 2006. (Compl. ¶ 194). Again she was unable to identify anyone while stating that the players all looked the same. (Id.).

On March 21 Tara Levicy, the nurse who had examined Ms. Mangum in the early hours of March 14, told Sgt. Gottlieb that "the examination of Mangum had revealed physical evidence of 'blunt force trauma and that the blunt force trauma was "consistent

with the victim's statement."'  (Compl. ¶ 185).  Nurse Levicy also told Sgt. Gottlieb "that the evidence corroborated Mangum's claims of both vaginal and anal rape" and that Mangum had "edema and tenderness to palpitation both anally and especially vaginally." (Compl. ¶186).  The players allege that these statements "breathed life-giving credibility into [Mangum's] rape allegations" (Comp. ¶7) and that "if the Durham Police had been advised truthfully by Levicy . . . the rape investigation . . . would not have been … pursued" (Comp. ¶135).  Likewise, the players allege that these statements "were critical factors in sustaining the ensuing rape allegations".  (Comp. ¶181).

Sgt. Gottlieb decided to continue to pursue the rape investigation because the SANE nurse advised him that the medical evidence was consistent with Mangum's account of a sexual assault.  (Compl. ¶ 398).   He tried to work with Duke to obtain voluntary interviews with, and DNA samples from, the Duke lacrosse players. (Compl. ¶ 176).   When the players postponed the interviews, Durham Police worked with the District Attorney's office to prepare and file an application on March 23, 2006 --- ten days after the alleged rape -- requesting a "nontestimonial order" (the "NTO Application") to compel the lacrosse players to provide DNA samples. (Compl. ¶ 204-205).   The NTO Application was submitted by Assistant District Attorney David Saacks and the fact sections of the NTO Application were signed by Inv. Himan, who received assistance from Sgt. Gottlieb.[1]

---

[1] A copy of the NTO Application is being filed herewith as Exhibit 1.  A Court may consider documents referenced in the Complaint in determining whether to grant a Rule 12(b)(6) motion so long is there is no question about the authenticity of the documents. *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

The NTO Application "placed decisive emphasis on nurse Levicy's statements, asserting that 'medical records and interviews . . . revealed the victim had signs, symptoms, and injuries consistent with being raped and sexually assaulted vaginally and anally,' and that 'the sane nurse stated the injuries and her behavior were consistent with a traumatic experience.'" (Compl. ¶ 205). These statements were false, and Duke knew the statements were false "*on the basis of medical evidence in Duke's exclusive possession.*" (Compl. ¶ 206)(emphasis added).

On the afternoon of March 23, 2006, Judge Ronald Stephens issued the NTO and ordered all 46 white lacrosse team members to provide DNA samples to the police. (Compl. ¶ 213).[2]  The team members complied without objection. (Compl. ¶ 214). The press was tipped off about the NTO, reporters were present when team members arrived to provide DNA samples, and a national media frenzy continued for months thereafter. (Compl. ¶ 216).

On March 24, 2006, District Attorney Nifong notified Durham officials that he was taking control of the investigation of Mangum's claims. (Compl. ¶ 218). Durham Police Commander Jeff Lamb instructed Sgt. Gottlieb and Inv. Himan that they should take direction from Nifong, but they should also report to DPD senior staff. (Compl. ¶ 222). On March 27, Sgt. Gottlieb and Investigator Himan met with the District Attorney and told the District Attorney about the "exculpatory evidence that they had discovered so far." (Compl. ¶ 267). They advised Nifong about contractions in Mangum's testimony, exculpatory statements by Kim Roberts, that Mangum had failed to identify

---

[2] A copy of the NTO is attached hereto as Exhibit 2.

her attackers in lineups, and that the three co-captains had denied that any attack occurred. (Compl. ¶ 268). By that date "the lacrosse players counsel . . had already amassed powerful evidence corroborating their claims of innocence." (Comp. ¶266). There is no allegation in the Complaint that any of this evidence was shared with the DPD.

On March 31, 2006, Duke investigators gave Sgt. Gottlieb key card reports showing when members of the Duke Lacrosse team entered and exited their dorms' exterior doors on March 13 and 14. (Compl. ¶ 325). This information helped investigators determine who had likely attended the party on the night of the alleged rape. (Compl. ¶ 325). Later, on May 31, 2006, District Attorney Nifong issued a formal subpoena for the same key card records Sgt. Gottlieb had previously obtained informally.[3] (Compl. ¶ 434).

On March 31, 2006, District Attorney Nifong decided to conduct a new photo array consisting only of white lacrosse players. (Compl. ¶ 326). Sgt. Gottlieb conducted the procedure on April 4, 2006, acting on Nifong's instructions. (Compl. ¶ 343). Mangum identified lacrosse players Reade Seligmann and Colin Finnerty as her attackers with "100% certainty" and Dave Evans with 90% certainty. (Compl. ¶ 348).

The Complaint catalogs numerous public statements made by many parties during the course of the investigation. The only public "statement" attributed to Sgt. Gottlieb, however, is an affidavit he allegedly filed in court on April 8, 2006 stating that

---

[3] A copy of the subpoena issued by District Attorney Nifong is attached hereto as Exhibit 3.

"Mangum's medical records from Duke Hospital and interviews with 'the SANE nurse' 'revealed the victim had signs, symptoms, and injuries consistent with being raped and sexually assaulted vaginally and anally.'" (Compl. ¶ 274).

On April 17, 2006, a grand jury indicted Reade Seligmann and Colin Finnerty. (Compl. ¶ 399). David Evans was indicted on May 15, 2006. (Compl. ¶ 432). District Attorney Nifong announced at the time that this would be the last indictment based on "the evidence we have developed." (*Id.*). After May 15, 2006, the focus of the case involved the District Attorney's efforts to prosecute the three indicted players. After District Attorney Nifong was forced to recuse himself , the Attorney General dismissed all charges against the three indicted players and declared them innocent on April 11, 2007. (Compl. ¶ 468). None of the Plaintiffs in this lawsuit was ever indicted, arrested, jailed, accused of, or charged with a crime.

## THE STANDARD FOR EVALUATING THIS MOTION TO DISMISS

When considering a Rule 12(b)(6) motion to dismiss, a district court must weed out merely "conceivable" claims against a defendant from those that are "plausible" based on the facts alleged in the complaint. *See Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1973-74, 167 L. Ed. 2d 929 (2007). In *Twombly*, *supra*, the Supreme Court reviewed a complaint alleging violations of the Sherman Act. The Court held that the plaintiffs' allegations of an agreement in violation of that Act were conclusory or just conceivable, not plausible, and thereby warranted dismissal. *Id.* at 1974 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their

claims across the line from conceivable to plausible, their complaint must be dismissed.").

To avoid dismissal, a plaintiff must "allege *facts* sufficient to state all the elements of [their] claim." *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (2003). In *Bass*, the Fourth Circuit affirmed the district court's dismissal of a claim alleging that plaintiff had been subjected to a "hostile work environment" because there were not sufficient factual allegations to support the conclusory claims in the plaintiff's complaint:

> While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts that support a claim for relief. The words "hostile work environment" are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage.

*Bass*, 324 F.3d at 765; *see also Gladden v. Winston Salem State Univ.*, 495 F. Supp. 2d 517, 521 (M.D.N.C. 2007) ("The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion."). Under *Twombly* and *Bass*, this Court must determine whether the Complaint alleges *facts* that plausibly support the legal claims asserted against Sgt. Gottlieb.

## ARGUMENT

**A. THE COMPLAINT AFFIRMATIVELY ESTABLISHES THAT SGT. GOTTLIEB DID NOT VIOLATE THE PLAINTIFFS' FOURTH AMENDMENT RIGHTS BY SEEKING DNA SAMPLES FROM THE CAUCASIAN MEMBERS OF THE DUKE LACROSSE TEAM (Count 21)**

On March 23, 2006, ten days after Crystal Mangum claimed she was raped, the Durham Police worked with the Durham District Attorney's office to apply for a nontestimonial order ("NTO") requiring white members of the Duke Lacrosse team to provide DNA samples to compare against DNA collected from Ms. Mangum's rape kit. (Compl. ¶ 205). Superior Court Judge Ronald Stephens entered an NTO Order, and the team members provided the required saliva swabs without objection. (Compl. ¶'s 213, 214). The DNA tests showed that no player's DNA matched DNA found in the rape kit. (Compl. ¶ 311). Defense counsel for the players was notified of this result on April 10, 2006. (Compl. ¶ 312). None of the Plaintiffs was ever accused of or charged with sexually assaulting Ms. Mangum.

Plaintiffs contend that Sgt. Gottlieb and certain other defendants violated their rights under 42 U.S.C. § 1983 by seeking and executing the NTO Order. According to Plaintiffs, the white Duke Lacrosse players were subjected to an unlawful search and seizure in violation of the Fourth Amendment when law enforcement officers obtained saliva swabs from their cheeks to conduct DNA tests. (Cause of Action No. 21, Compl. ¶ 628). Sgt. Gottlieb respectfully requests the Court to dismiss Count 21 against him because Plaintiffs have affirmatively alleged facts which conclusively demonstrate that Sgt. Gottlieb did not "deliberately" include material false information in the NTO Application.

An order requiring a person to provide saliva samples for DNA testing is governed by the Fourth Amendment. *See In re Shabazz*, 200 F. Supp. 2d 578, 582 (D.S.C. 2002)(and cases cited therein). Because saliva swabs for DNA tests can be obtained with

only a very limited intrusion upon personal autonomy, however, investigators may obtain orders requiring the provision of DNA samples based upon suspicions that, while reasonable, do not rise to the level of "probable cause." *Id*. The North Carolina Supreme Court recently explained how to apply this "reasonable suspicion" standard in a case that explicitly applied the Nontestimonial Identification Order statute employed by the Durham police in this case:

> The reasonable grounds standard is similar to the reasonable suspicion standard applied to brief detentions. *See Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, 44 Ohio Op. 2d 383 (1968). The sole requirement is a minimal amount of objective justification, something more than an "unparticularized suspicion or 'hunch.'" *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10, 109 S. Ct. 1581 (1989)(quoting *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909); *accord State v. Watkins*, 337 N.C. 437, 442, 446 S.E.2d 67, 70 (1994). The reasonable grounds standard required for an NIO is significantly lower than a probable cause standard. *State v. Grooms*, 353 N.C. 50, 73, 540 S.E.2d 713, 728 (2000), *cert. denied*, __ U.S. __, 151 L. Ed. 2d 54, 122 S. Ct. 93 (2001). An NIO "is an investigative tool requiring a lower standard of suspicion that is available for the limited purpose of identifying the perpetrator of a crime." *Id*.

*State v. Pearson*, 356 N.C. 22, 28-29, 566 S.E.2d 50, 54 (2002).

In this case, the "seizure" of saliva samples was accomplished only after the District Attorney's office sought and received the NTO issued by Superior Court Judge Ronald Stephens. Sgt. Gottlieb allegedly assisted in the preparation of the NTO Application, which was filed by the District Attorney's office and signed by Inv. Himan. (Exhibit 1). The NTO Application, like applications supporting requests for search warrants, was entitled to a presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Courts afford a presumption of validity to

these applications to encourage law enforcement officers to seek warrants, and thereby ensure that neutral judicial officers play a role in the investigation process. *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4ᵗʰ Cir. 1991). Judge Stephens played that role in this case.

Plaintiffs can overcome the presumption that the NTO issued by Judge Stephens was valid only by showing: (1) either that the affidavit seeking the NTO deliberately or recklessly included material false statements or deliberately omitted material facts; and (2) showing that the fraudulent statements or omissions were necessary to the finding of probable cause [or in this case reasonable suspicion]. *Miller v. Prince George's County*, 475 F.3d 621, 628, *cert. denied*, __ U.S. __, 128 S. Ct. 109, 169 L. Ed. 2d 24(2007).[4]

Plaintiffs' Complaint fails to plausibly allege that Sgt. Gottlieb included any deliberately false statement or omission in the NTO Application that was material to the Court's determination that reasonable suspicion existed to issue the NTO. *See State v. Pearson, supra*. Plaintiffs premise their claim that the NTO Application was invalid exclusively upon the allegation that the NTO was tainted by false medical information provided by Duke Hospital and Tara Levicy. (Compl. ¶ 629). Plaintiffs include the conclusory – "upon information and belief" -- allegation that Durham Police somehow "knowingly" premised the NTO Application upon false medical information. (*Id.*). This

---

[4]Since a challenge to a warrant affidavit is necessarily predicated upon fraud, a complaint attacking the validity of a warrant affidavit must plead the time, place, and contents of the alleged fraudulent statement with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. *Wilkinson v. Hallsten*, 2006 U.S. Dist. Lexis 53822 (W.D.N.C. 2006), *aff'd*, 225 Fed. Appx. 127 (4th Cir. 2007) (dismissing complaint challenging warrant affidavit for failure to satisfy Rule 9(b)).

conclusory and speculative allegation, however, simply cannot survive a review of the facts affirmatively alleged by Plaintiffs themselves in their Complaint.

The Complaint alleges that Levicy told Inv. Himan on March 16 that "there were signs consistent with sexual assault" during her examination the night of the alleged rape (Compl. ¶ 150). This statement served as confirmation to the DPD "that a rape had likely occurred." (Compl. ¶ 153). On March 21, 2006 Levicy told Sgt. Gottlieb "that the examination of Mangum had revealed physical evidence of 'blunt force trauma,' and that the blunt force trauma was "consistent with the victim's statement' alleging a forcible gang rape by three men. (Compl. ¶ 185). She also advised Sgt. Gottlieb that the evidence corroborated Mangum's rape claim, and that Mangum "had edema and tenderness to palpitation both anally and vaginally." (Compl. ¶ 186). Levicy's statement corroborating Mangum's allegations played a pivotal role in Sgt. Gottlieb's determination to continue the investigation of Mangum's claims. (Compl. ¶ 398).

Sgt. Gottlieb repeated the information he had been given by Levicy in the NTO Application, asserting that "[m]edical records and interviews that were obtained by a subpoena revealed the victim had signs, symptoms, and injuries consistent with being raped and sexually assaulted vaginally and anally." (Compl. ¶ 205). Medical evidence revealing Levicy's assertions to be false was located "*in the exclusive possession of Duke.*" (Compl. ¶ 206)(emphasis added).

Given that Sgt. Gottlieb could not be aware of information in Duke's exclusive possession, there is no plausible basis for the speculative allegation that Sgt. Gottlieb "knowingly" included false information from Levicy in the NTO Application. *See*

*Gladden v. Winston Salem State Univ.*, *supra* ("The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion.").   Since the Complaint itself demonstrates that Plaintiffs cannot satisfy their burden to show that Sgt. Gottlieb deliberately included material false information in the NTO Application, *Miller v. Prince George's County, Maryland*, *supra*, they will be unable to overcome the presumption of validity afforded to the NTO Application, and their 21st Cause of Action for damages arising out of the collection of DNA samples must be dismissed.[5]

## B.   PLAINTIFFS HAD NO CONSTITUTIONAL RIGHT TO BE FREE FROM A CRIMINAL INVESTIGATION (Counts Twenty-Two and Twenty Four)

Plaintiffs allege in their 22nd Cause of Action that all Defendants "instigate[d], promote[d], facilitate[d], and prolong[ed] a malicious, bad faith criminal investigation of plaintiffs" in violation of their substantive due process rights under the Fourteenth Amendment to the U.S. Constitution.   (Compl. ¶ 638).   In their 24th Cause of Action, Plaintiffs allege that the "Durham Investigators," presumably including Sgt. Gottlieb, violated their procedural due process rights under the Fourteenth Amendment because

---

[5] The Complaint also alleges that the NTO Application included false information regarding lost fake fingernails (Compl. ¶ 206), the use of aliases during the supposed attack (Compl. ¶ 208), and attempts by the players to conceal their sports affiliation (Compl. ¶ 209).   These allegations do not support Plaintiffs' 21st Cause of Action because Plaintiffs do not allege that these statements were material to the Court's decision to issue the NTO.   *See, e.g.*, *Wilkinson*, 2006 U.S. Dist. LEXIS, at * 20 ("even assuming as true that the affidavit [for a search warrant] contains false and fraudulent information, the Court still concludes that the Plaintiffs have failed to meet the two pronged test [for attacking the validity of a search warrant] because Plaintiffs do not allege that such statements were necessary to the finding of probable cause").

they "instigated, promoted, and executed a malicious criminal investigation of plaintiffs that was calculated to inflict maximum injury on plaintiffs' reputations." (Compl. ¶ 650).

Plaintiffs' 22nd and 24th Causes of Action for "malicious investigation" must be dismissed because there is no constitutional right to be free from official government investigation. *United States v. Allibhai,* 939 F.2d 244, 249 (5th Cir. 1991), cert denied 502 U.S. 1072, 112 S. Ct. 967, 117 L. Ed.2d 133 (1992); *Hale v. Townley,* 45 F.3d 914 (5th Cir. 1995); *United States v. Jacobson,* 916 F.2d 467, 469 (8th Cir. 1990)(en banc); *Sloane v. HUD* 231 F.3d 10 (2000); *United States v. Trayer,* 898 F.2d 805 (D.C. Cir. 1990); *United States v. Crump,* 934 F.2d 947 (8th Cir. 1991); *United States v. Miller,* 891 F.2d 1265 (7th Cir. 1989); *United States v. Jannotti,* 673 F.2d 578 (3d Cir. 1982); *United States v. Myers,* 635 F.2d 932 (2d Cir. 1980); *Biasella v. City of Naples,* 2005 U.S. Dist. Lexis 20211 (M.D. Fla. 2005).

Due process grants wide leeway to law enforcement agents in their investigation of crime. *United States v. Jacobsen, supra*, 916 F.2d at 469. The Constitution does not require reasonable suspicion of wrongdoing before the government can begin an investigation. *Id. See also Biasella v. City of Naples, supra*, at 13 ("There is no particular level of evidence constitutionally required before a person may seek to instigate an investigation by authorities"). "To hold otherwise would give the federal judiciary an unauthorized 'veto over law enforcement practices of which it [does] not approve.'" *Jacobsen, supra*, at 469 (*quoting United States v. Russell*, 411 U.S. 423, 435, 93 S. Ct. 1637, 36 L. Ed. 2d 366 (1973).

Even where the government starts an investigation for improper or retaliatory motives with no reason to suspect that the target of the investigation has committed a crime, the person investigated has no constitutional grievance. In *Hale v. Townley*, for instance, plaintiff Hale had been arrested for kidnapping, but the grand jury did not return an indictment. Hale successfully sued an official with the local Louisiana sheriff's department and an FBI agent for damages under Section 1983. Shortly after his successful trial, Hale alleged that "he was the target of a campaign by law enforcement officers from different agencies to harass him and to implicate him in criminal activity" in retaliation for his suit against the government. *Hale*, 45 F.3d at 916. Among other things, local police officers issued thirty citations to the nightclub where Hale worked, though they did not target any other similar establishments for such violations; a narcotics task force initiated a narcotics investigation into the nightclub; a deputy sheriff attempted to find an underage female willing to have sex with Hale so he would be arrested; and the nightclub was raided on two occasions during which Hale was beaten and mistreated by law enforcement officers. *Id.* at 916-17.

Hale filed a second Section 1983 suit against numerous law enforcement defendants. Among other things, he claimed that law enforcement officers targeted him and his nightclub in order to retaliate against him for having successfully sought damages against law enforcement officers in the earlier Section 1983 suit. The district court held that Hale had stated a claim against three officers for violation of his "constitutional right of access to the courts, free of retaliation." *Id* at 919. The Fifth Circuit reversed the district court's decision, holding that the officers were entitled to qualified immunity.

Even if the officers acted in retaliation for the successful prosecution of a prior lawsuit, Hale had no constitutional right to be free from official investigation. *Id*. at 920. At the time of the alleged conduct, there was no clearly established "constitutional tort of retaliation against an individual for having filed and won a lawsuit" against law enforcement officials. *Id*. There is no such clearly established right now.

Similarly, in *Biasella, supra*, the plaintiff contractor filed suit against the City of Naples in the wake of a dispute over his company's $166,000 bill to the city to clean damages caused by a fire at a city boat house. According to the Amended Complaint, the city harassed the plaintiff and destroyed his reputation and business during the four years following his work for the city. Id. at 4-5. The Amended Complaint alleged that the city and several individual officials instituted eleven investigations against plaintiff all the while knowing the plaintiff had not committed any crime or wrongful act. Plaintiff contended that city officials "maliciously instigated investigations solely to further their own political careers." *Id*. at 11-12.

The district court dismissed plaintiff's claim for violation of his alleged due process right "to be free from maliciously instigated and baseless investigations." *Id*. at 12. The Court explained:

> The Court concludes that this is not one of those fundamental rights and liberties which is implicit in the concept of ordered liberty such that neither liberty nor justice would exist if they were sacrificed. There is no particular level of evidence constitutionally required before a person may seek to instigate an investigation by authorities. While there is a cause of action as to the investigators if they conduct a constitutionally deficient investigation and an arrest results from the investigation, *Kingsland v. City of Miami*, 382 F.3d 1220, 1228-31 (11th Cir. 2004), the Amended Complaint asserts that all investigations ended favorably towards plaintiff and he was never arrested

or charged with anything. While defendants may have committed a state tort, the alleged conduct does not amount to a constitutional violation within the Due Process clause.

*Id*. at 13.

Similarly, the Plaintiffs were not deprived of any constitutional rights because they were members of a group that suffered scrutiny from a criminal investigation, when the investigation ultimately did not lead to any charges against them. Plaintiffs' 22nd and 24th Causes of Action for "malicious investigation" must be dismissed.

## C.   PLAINTIFFS' SECTION 1983 CLAIMS FOR DAMAGES TO THEIR REPUTATIONS MUST BE DISMISSED (Count Twenty Five).

In Count 25 of their Complaint, Plaintiffs assert that they are entitled to recovery under 42 U.S.C. § 1983 because the "Durham Investigators" violated their Fourteenth Amendment rights by making "multiple public statements that were knowingly false relating to their criminal investigation of plaintiffs." Plaintiffs assert that these alleged false statements caused harm to their reputations and led to other consequential damages, such as the cancellation of their season with the Duke Lacrosse team and the continuation of the alleged "malicious investigation." (See Compl. ¶'s 654-664). The Complaint is peppered with several other quasi-defamation allegations requesting damages under Section 1983 for harm to the reputations of the Player Plaintiffs. (See Compl. ¶'s 632, 639, 652).

Any purported claim of Plaintiffs against Sgt. Gottlieb for harm to their reputations from alleged false statements must be dismissed. First, while they have lumped Sgt. Gottlieb in with a group of "Durham Investigators" who allegedly made

false statements, Plaintiffs have utterly failed to specify what, if any, "false statements" from Sgt. Gottlieb form the basis of their Section 1983 defamation claims. Simply alleging that Sgt. Gottlieb was one member of a group that allegedly made false statements, but failing to specify what statements Sgt. Gottlieb made, does not satisfy Plaintiffs' obligation to give Sgt. Gottlieb fair notice of the specific claims against him. *See Jones v. Williams*, 297 F.3d 930, 939 (9th Cir. 2002)("We reject the idea that the mere presence at a search or membership in a group, without personal involvement in and a causal connection to the unlawful act, can create liability under section 1983").

The Complaint includes numerous allegations concerning public statements made by District Attorney Nifong, various Duke officials, and spokespersons for the Durham Police. The only allegation in the Complaint that singles out any statement allegedly made by Sgt. Gottlieb, however, is Paragraph 274 which includes one subparagraph asserting that Sgt. Gottlieb and Inv. Himan filed an affidavit in court asserting that medical records and an interview with the SANE nurse "revealed the victim had signs, symptoms and injuries consistent with being raped and sexually assaulted vaginally and anally."

Even assuming *arguendo* Plaintiffs could recover for defamation under Section 1983 (which, as demonstrated below, they can not), this statement could not form the basis for Plaintiff's claim for several reasons. First, as demonstrated in Section A of this Memorandum, this statement simply truthfully repeats, in an official court filing, information supplied to the Durham Police by outside experts, which the Complaint shows they had no reason to disbelieve. Second, the affidavit in question asserts that Ms.

Mangum had medical symptoms consistent with rape, but does nothing directly or indirectly to suggest that any particular person or group of persons was the perpetrator. "In order for defamatory words to be actionable, they must refer to some ascertained or ascertainable person and that person must be the plaintiff. If the words used contain no reflection on any particular individual, no averment can make them defamatory." *Arnold v. Sharpe*, 296 N.C. 533, 539, 251 S.E.2d 452, 456 (1979).

Plaintiffs' claim for reputational damages is not only factually deficient, but also legally prohibited. It is well settled that a plaintiff cannot recover under Section 1983 for damage to reputation alone. *Paul v. Davis*, 424 U.S. 693, 711-12, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976); *Seigart v. Gilley*, 500 U.S. 226, 233, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991). In *Paul v. Davis* the plaintiff sought to recover for damage to his reputation that occurred when his photograph was included by local police chiefs in a flyer listing supposed "active shoplifters" after the plaintiff had been mistakenly arrested for shoplifting. The plaintiff sued under Section 1983, asserting that including his name in the flyer damaged his reputation and would impair his future employment opportunities, thus depriving him of his rights under the Fourteenth Amendment. The Supreme Court held that the plaintiff's Section 1983 case must be dismissed because governmental actions that caused consequential harm to plaintiff based upon injury to his reputation simply did not deprive him of any rights under the U.S. Constitution. *Paul v. Davis*, 424 U.S. at 708-09. Similarly, in this case, assuming *arguendo* any statement by Sgt. Gottlieb somehow caused harm to the Plaintiffs' reputation, this reputational harm did not cause them any injury for which they are entitled to seek recovery under Section

1983. Plaintiffs' 25th Cause of Action, and all other claims seeking a remedy under Section 1983 for damages to their reputations, must be dismissed.[6]

## D. PLAINTIFFS' CLAIMS AGAINST SGT. GOTTLIEB BASED UPON ALLEGED MISUSE OF "KEYCARD REPORTS" MUST BE DISMISSED (COUNT 8, 10, 20 AND 23)

Counts 8, 10 and 20 of the Complaint in their entirety and Count 23 in part revolve around "keycard reports" which revealed the times members of the Duke lacrosse team entered and exited exterior doors of Duke buildings on March 13 and 14, 2006. Plaintiffs now claim that Duke officials violated their federal privacy rights under 12 USC 1232g, the Federal Educational Records and Privacy Act, (FERPA) when they gave these records to Sgt. Gottlieb on March 31, 2006 without a subpoena, and that District Attorney Nifong violated State law when he issued a subpoena for these records on May 21, 2006, allegedly for the purpose of concealing alleged violation of plaintiffs' FERPA rights. (Compl ¶'s 324 & 434). Notably, except for the allegation that Duke officials gave these reports to Sgt. Gottlieb on March 27, Sgt. Gottlieb is not individually named in the Complaint with regard to this alleged scam. (Compl. ¶ 535). To the extent he was targeted for violation of these counts, the key card claims fail to set forth a valid cause of action against Sgt. Gottlieb and should be dismissed.

a.  No Section 1983 Claim Lies against Sgt. Gottlieb Based on His Receipt or Use of "Keycard Reports"  (Count 20)

---

[6] Although defamation alone cannot give rise to a constitutional claim, a plaintiff can recover under Section 1983 in certain instances in which the defamatory statement is made in connection with an additional act that also deprives the plaintiff of some legal right. *See Velez  v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005).  Plaintiffs did not allege that Sgt. Gottlieb's April 18, 2006 affidavit or any other statement was made in connection with the deprivation of some other legal right of Plaintiffs.

Count 20 of the Complaint is a Section 1983 claim against various sets of defendants including the "Durham Investigators" for alleged violation of FERPA. On its face this claim is contrary to is well-settled law and should be dismissed. In enacting FERPA Congress did not confer a private right of action upon either aggrieved students or their parents and FERPA cannot be enforced under Section 1983. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 290-91, 122 S. Ct. 2268 (2002); *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52 (1st Cir. 2002); *see also Smith v. Duquesne University*, 612 F. Supp. 72 (W.D. Pa. 1985), *aff'd* 787 F.2d 583 (3d. Cir. 1986) (Holding that FERPA does not give rise to a private federal cause of action in favor of an aggrieved person since it is simply directed to the Secretary of Education to prohibit distribution of public funds as sanction against schools which denied students rights to inspect and review their educational records).

Assuming a private right of action for a violation of FERPA existed, the burden of complying with FERPA would not belong to Sgt. Gottlieb or the Durham Police Department. *See generally* 20 U.S.C.S. 1232(g). The underlying purpose of FERPA is not to grant individual students the right to privacy or access to educational records but to stem the growing policy of institutions to carelessly release student records. *Smith v. Duquesne University*, 612 F. Supp. 72, aff'd by 787 F.2d 583 (3d Cir. 1986). The provisions of FERPA bind **schools** not third parties seeking information. *See Falvo ex rel. Pletan v. Owasso Indep. Sch. Dist.*, 233 F.23 1203 (10th Cir. 2000), *rev'd on other grounds*, 534 U.S. 426, 122 S. Ct. 934, 151 L. Ed. 2d 896 (2002).

Plaintiffs missed their target when they named Sgt. Gottlieb as a defendant with respect to their §1983 claims based on use of the "keycard reports" and those claims should be dismissed.

      b.      <u>No Valid State Law Claims are Asserted Against Sgt. Gottlieb In Connection With Subpoenaing Keycard Reports (Counts 8, 10 and 23)</u>.

Counts 8, 10 and 23 of the Complaint are various state law claims all dependent on the theory that the "Durham Investigators" did not have a valid reason for subpoenaing the key card records since they were already in the possession of the Durham Police Department. (Count 8, Compl. ¶ 535, "subpoena was a sham"; Count 10, Compl. ¶ 544, subpoena issued "to achieve a collateral purpose not within the intended scope of the process"; Count 23, Compl. ¶ 645, "concealing illegal key card disclosures" was obstruction of justice). This theory is defective. Where, as here, valid grounds exist for issuing a subpoena, law enforcement officers cannot be held accountable for issuance of the subpoena under fraud, abuse of process of obstruction of justice theories regardless of what their subjective motives may have been. *See, e.g., Melton v. Rickman,* 225 N.C. 700, 704, 36 S.E.2d 276, 278 (1945) ("'Regular and legitimate use of process, though with a bad intention, is not a malicious abuse of process.'", quoting 1 Cooley, Torts, 3d Ed. 354); 72 C.J.S. *Process* § 156 (2005) ("Misapplication [of the process] will not be inferred from a wrongful purpose.")

Valid grounds plainly exist for subpoenaing documents informally obtained by a law enforcement agency. A subpoena *duces tecum* not only compels production of documents; it also requires the person or entity named in the subpoena to authenticate the

records produced.  *See Vaughn v. Broadfoot*, 267 N.C. 691, 149 S.E.2d 37 (1966); *State v. Richardson*, 59 N.C. App. 558, 297 S.E.2d 921 (1982), *rev'd on other grounds*, 308 N.C. 470, 302 S.E.2d 799 (1983).  "The custodian's action of producing books or records in response to a subpoena *duces tecum* is itself a representation that the documents produced are those demanded by the subpoena. Requiring the custodian to identify or authenticate the documents for admission in evidence merely makes explicit what is implicit in the production itself." *Couch v. United States*, 409 U.S. 322, 346-47, 93 S. Ct. 611, 625, 34 L. Ed. 2d 548, 564 (1973); *citing Curio v. United States*, 354 U.S. 118, 125 (1957).  Since the keycard reports had only been provided to the Durham Police Department on an informal basis, it was prudent and appropriate for the District Attorney to seek the same records by subpoena in order to ensure that the documents were properly authenticated.

Regardless, there is no reason for the Court to hold Sgt. Gottlieb responsible for the District Attorney's prosecutorial decision to issue a subpoena seeking these records. Plaintiffs have not alleged that the subpoena was issued by Sgt. Gottlieb or even the "Durham Investigators."  Instead, they have alleged specifically that "On May 31, Nifong subpoenaed Duke University to obtain the key card reports that he already possessed." (Compl. ¶ 434).

### E. PLAINTIFFS' FEDERAL CLAIMS ARE BARRED BY THE DOCTRINE OF QUALIFIED IMMUNITY (Counts 20, 21, 22, 24, and 25)

Assuming *arguendo* this Court determined that the Complaint adequately plead any alleged violation of any of the Plaintiffs' federal rights under 42 U.S.C. § 1983, Sgt.

Gottlieb is still entitled to dismissal of the Complaint unless Plaintiffs can also show that the right in question was *clearly established* at the time of the alleged violation in 2006. *See Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272, 281 (2001). Sgt. Gottlieb is entitled to dismissal of the Section 1983 claims on qualified immunity grounds unless it would have been clear to an objectively reasonable officer that his conduct violated the Plaintiffs' constitutional rights. *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002).

For a police officer to lose his qualified immunity "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). "The right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful." *Gooden v. Howard County*, 954 F.2d 960, 968 (4th Cir. 1992) (*quoting Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir. 1986)).

The basis for the doctrine of qualified immunity has been explained as follows:

> Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action. But where an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken "with independence and without fear of consequences."

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2739, 73 L. Ed. 2d 396 (1982), *quoting Pierson v. Ray*, 386 U.S. 547, 87 S. Ct. 1213, 1217, 18 L. Ed. 2d 288 (1967). Plaintiffs will be unable to satisfy their burden to show that Sgt. Gottlieb violated any

clearly established constitutional right of the Plaintiffs, and these federal claims all must be dismissed.

**F.    PLAINTIFFS' "MONELL" CLAIM SHOULD BE DISMISSED TO THE EXTENT IT SEEKS RECOVERY AGAINST SGT. GOTTLIEB IN HIS "OFFICIAL" CAPACITY (Count 26)**

In their 26th Cause of Action, Plaintiffs claim that the City of Durham, the Durham Investigators in their official capacities, and the Durham Supervisors in their official capacities, implemented policies that violated the Plaintiffs' civil rights.  (Compl. ¶ 667). Plaintiffs also assert generally that all Defendants "are sued in both their individual and official capacities."  (Compl. ¶ 80).  As explained fully in the Brief of Defendants Baker, Chalmers, Council, Hodge, Lamb, Mihaich, Ripberger, and Russ, which is incorporated herein by reference, claims against government officers in their official capacities should be dismissed as duplicative of the claims against the governmental entity itself, and therefore should be dismissed.  See Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004)(affirming dismissal of Section 1983 claims against official when governmental entity was a named defendant).  Plaintiffs' 26th Cause of Action, which names Sgt. Gottlieb as a defendant only in his official capacity must be dismissed, and all other claims against Sgt. Gottlieb in his official capacity must be dismissed, since Sgt. Gottlieb's employer, the City of Durham, is a named defendant.

**G.    THE PUBLIC IMMUNITY DOCTRINE SHIELDS SGT. GOTTLIEB FROM THE PLAINTIFFS' STATE LAW CLAIMS (Counts 8, 23, 28, 29, 30)**

Plaintiffs have asserted several North Carolina state law claims against Sgt. Gottlieb, including:  fraud and conspiracy to defraud (Count Eight), obstruction of justice

(Count Twenty Three), intentional infliction of emotional distress (Count Twenty Eight), negligent infliction of emotional distress (Count Twenty Nine), and negligence (County Thirty). Plaintiffs' state law claims against Sgt. Gottlieb (in his individual capacity) must be dismissed because the Amended Complaint affirmatively alleges facts demonstrating that Sgt. Gottlieb is protected from liability under the doctrine of public official immunity.[7]

"To maintain a suit against a public official in his/her individual capacity, a plaintiff must make a *prima facie* showing that the official's actions (under color of [state] authority) are sufficient to pierce the cloak of official immunity." *Moore v. Evans*, 124 N.C. App. 35, 42, 476 S.E.2d 415, 421 (1996). "As a general rule it is presumed that a public official in the performance of his official duties 'acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest." *Green v. Valdese*, 306 N.C. 79, 82, 291 S.E.2d 630, 632 (1982). A police officer employed by a North Carolina municipality and engaged in the investigation of an alleged crime is a public official for purposes of the public official immunity doctrine. *Campbell v. Anderson*, 156 N.C. App. 371, 376, 576 S.E.2d 726, 730 (2003).

A public official performing discretionary acts can be liable for wrongdoing only (1) if the wrongdoing occurs outside the scope of official authority or if the conduct is (2)

---

[7] As was the case with Plaintiffs' federal claims, Plaintiffs' state law claims against Sgt. Gottlieb in his "official" capacity are the functional equivalent of claims against his employer, the City of Durham. *See Moore v. City of Creedmoor*, 345 N.C. 356, 367, 481 S.E.2d 14, 21-22 (1997).

malicious or (3) corrupt. *Moore v. Evans, supra; Epps v. Duke Univ.,* 122 N.C. App. 198, 207, 468 S.E.2d 846, 853, *rev. denied*, 344 N.C. 436, 476 S.E.2d 115 (1996). For purposes of public official immunity, an official acts with malice only "when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty *and* which he *intends to be prejudicial or injurious to another*." *Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984)(emphasis added). An act is wanton if it is done with a wicked purpose or with reckless indifference to the rights of others. *Id.*

While Plaintiffs criticize certain aspects of the manner in which Sgt. Gottlieb performed his duties in the investigation of Crystal Mangum's rape claims, Plaintiffs' allegations do not create a plausible inference that Sgt. Gottlieb acted outside the scope of his employment, that he acted corruptly (e.g., for personal benefit), or that he "intended his actions to be prejudicial or injurious" to the Plaintiffs. *Marlowe v. Piner*, 119 N.C. App. 125, 128, 458 S.E.2d 220, 223 (1995). Affirmative allegations in the Complaint reveal that Sgt. Gottlieb's decision to conduct an investigation was based upon the legitimate rationale that Crystal Mangum's rape claim was persuasively corroborated by the medical evidence provided by Tara Levicy. Given that there were legitimate grounds to conduct an investigation and that the investigation never led to any indictment or accusation that any of the Plaintiffs committed a crime, Plaintiffs simply have no basis for imposing tort liability upon a police officer for the manner in which he performed his duties.

Plaintiffs' state law claims must, therefore, be dismissed on grounds of public official immunity. *See Id.* (granting summary judgment dismissing claims against deputy

sheriff in his individual capacity for false imprisonment and false arrest based upon public official immunity where evidence showed that "[a]t most" plaintiff had presented evidence showing that defendant *"negligently"* believed he had probable cause to arrest plaintiffs); *Olvera v. Edmundson*, 151 F. Supp. 2d 700, 706 (W.D.N.C. 2001)(dismissing wrongful death claim against sheriff under Rule 12(b)(6) based upon public official immunity since plaintiff alleged only that the sheriff acted with *deliberate indifference* towards decedent rather than having an *intention* to injure or otherwise prejudice the decedent); *Jetton v. Caldwell County Bd of Educ.*, 2007 N.C. App. LEXIS 1699 (Aug. 7, 2007)("While Defendants may not have always acted in a professional manner, or treated Plaintiff with patience, respect, or kindness, there is no evidence they intended to hurt Plaintiff. Any alleged harm resulting to Plaintiff from Defendants' allegedly improper conduct was simply a collateral consequence"); *Compare Blair v. County of Davidson*, 2006 U.S. Dist. LEXIS 34253 (M.D.N.C. May 10, 2006)(public official immunity claim rejected where plaintiff alleged among other things that the law enforcement defendants repeatedly shocked and burned her with high voltage taser devices, forced her to assume lewd poses and "reveal her genitals" while others made salacious comments, and kicked, assaulted, and battered her).

## H. PLAINTIFFS' NEGLIGENCE CLAIMS MUST BE DISMISSED (Counts 29 and 30)

As set forth above, Plaintiffs' causes of action for negligent infliction of emotional distress (Count Twenty Nine) and negligence (Count Thirty) are clearly barred by the public official immunity doctrine. A public official is immune from civil liability for any

alleged failure to use due care in the performance of his public duties. *Marlowe v. Piner*, 119 N.C. App. 125, 128, 458 S.E.2d 220, 223 (1995)(summary judgment in favor of sheriff upheld under public official immunity doctrine where evidence showed that "[a]t most" plaintiff had presented evidence showing that defendant "*negligently*" believed he had probable cause to arrest plaintiffs).

The negligence claims also fail because Plaintiff cannot satisfy a key element of both claims. In order to prevail on a claim for negligence or negligent infliction of emotional distress, a plaintiff must show: (1) that defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury. *Guthrie v. Conroy*, 152 N.C. App. 15, 25, 567 S.E.2d 403, 410-11 (2002) (citation omitted). A legal duty is an obligation recognized by law requiring a person to conform to a certain standard of conduct for the protection of others against unreasonable risks. *Id*. at 411.

Plaintiff has failed to specify any legal duty Sgt. Gottlieb allegedly owed *to Plaintiffs* to exercise due care. Rather, the only duty a public official owes to the public is the duty to refrain from conduct intended to injure others or from corrupt conduct intended to obtain undue personal benefit. As this Court noted in *Shaeffer v. County of Chatham*, 337 F. Supp. 2d 709, 734 (M.D.N.C. 2004), "[t]he lack of a duty from a defendant to a plaintiff is fatal to a negligent infliction of emotional distress claim." *Id*., citing *Guthrie*, 152 N.C. App. at 25, 567 S.E.2d at 411. Sgt. Gottlieb is not aware of any North Carolina case specifically this issue, but courts in other jurisdictions whose law is consistent with that of North Carolina have held that no cause of action for negligent

investigation exists. *See Fondren v. Klickitat County*, 905 P.2d 928 (Wash. App. 1995) (a claim for negligent investigation is not cognizable under Washington law); *Wimer v. State of Idaho*, 841 P.2d 453, 455 (Idaho 1993) (holding that a claim for negligent investigation does not exist and stating that to hold otherwise would "impair vigorous prosecution and have a chilling effect on law enforcement"); *Lewis v. McDorman*, 820 F. Supp. 1001 (W.D. Va. 1992), *aff'd*, 28 F.3d 1210 (4th 1994) (police officers owe no duty of reasonable care in conducting investigations).

Sgt. Gottlieb, who owed his duties to the general public, owed no legal duty enforceable by these Plaintiffs to exercise due care in the conduct of his investigation. Plaintiffs' claims for negligence and negligent infliction of emotional distress must be dismissed.

I.    **PLAINTIFFS' CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS MUST BE DISMISSED (Count Twenty Eight)**

In order to state a claim for intentional infliction of emotional distress, a plaintiff must allege: (1) extreme and outrageous conduct (2) which is intended to cause and does cause (3) severe and disabling emotional distress. *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (N.C. 1981); *see Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 493, 340 S.E.2d 116 (1986) (*quoting* Restatement (Second) of Torts, § 46 cmt. (d) (1965)). Plaintiffs' Amended Complaint fails to adequately allege that Sgt. Gottlieb engaged in the requisite extreme and outrageous conduct, or that his conduct was intended to cause the Plaintiffs severe and emotional distress.

"The standard of 'extreme and outrageous' is quite high. Indeed, the allegations must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded at [sic] atrocious, and utterly intolerable in a civilized community.'" *Bradley v. Lowe's Cos.*, 2007 U.S. Dist. LEXIS 69872, at *10 (W.D.N.C. Sept. 20, 2007) (*quoting Briggs v. Rosenthal*, 73 N.C. App. 672, 327 S.E.2d 308, 311 (N.C. App. 1985)). Plaintiffs must allege facts that, if later proved, would "exceed all bounds of decency," *Peck v. Lake Lure*, 2001 U.S. Dist LEXIS 13179, at *15 (W.D.N.C. Feb. 23, 2001) (*quoting West v. King's Dep't Store, Inc.*, 321 N.C. 698, 365 S.E.2d 621, 625 (N.C. 1988)), or would be "'regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (*quoting Wagoner v. Elkin City Sch. Bd. of Educ.*, 113 N.C. App. 579, 440 S.E.2d 119, 123 (N.C. Ct. App. 1994)). The question of whether the alleged conduct is sufficiently "extreme and outrageous" is initially a question of law. *Briggs v. Rosenthal, supra*, at 676, 327 S.E.2d at 311.

In this case, the Complaint does not describe any alleged conduct of Sgt. Gottlieb that exceeded all bounds of decency, that was intended to cause Plaintiffs severe emotional distress, or that showed a "reckless indifference" to the likelihood of causing the Plaintiffs severe emotional distress. *See Dickens v. Puryear, supra*, at 449, 276 S.E.2d at 333. Sgt. Gottlieb conducted an investigation that was justified by the allegations made by Crystal Mangum and the corroborating medical information supplied by Crystal Mangum. (Compl. ¶'s 153-54, 398). Early on, Sgt. Gottlieb told the District Attorney everything he knew about the investigation, including all exculpatory information. (Compl. ¶ 268). Thereafter the District Attorney made decisions

concerning the conduct of photo lineups, whether to bring the case to the grand jury, whether and how to disclose DNA testing results to the lacrosse players, and whether to issue a subpoena for key card reports. (Compl. ¶'s 326, 343, 394, 386-87). Three individuals who are not parties to this case were ultimately indicted. Following the last of these indictments on May 15, 2006, District Attorney Nifong announced that no further indictments would be forthcoming. (Compl. ¶ 432). None of the Plaintiffs was ever accused of, or charged, indicted, or jailed for any crime. Under these circumstances, Plaintiffs cannot prove that Sgt. Gottlieb engaged in outrageous conduct intended to cause the Plaintiffs emotional distress, and Plaintiffs' Twenty Eighth Cause of Action should be dismissed.

**J.      PLAINTIFFS' CLAIM FOR OBSTRUCTION OF JUSTICE MUST BE DISMISSED (Count 23)**

Under North Carolina law, a civil cause of action for obstruction of justice is available against one who performs an act that prevents, obstructs, impedes, or hinders public or legal justice. *Broughton v. McClatchy Newspapers, Inc*., 161 N.C. App. 20, 33, 588 S.E.2d 20, 29-30 (2003). Plaintiffs base their claims here upon allegations of conducting a malicious criminal investigation, defamation, suppression of evidence, concealment of key card disclosures, and obtaining the NTO.

As this Memorandum has demonstrated, Sgt. Gottlieb had ample grounds – in the statement from Crystal Mangum and the corroborative medical evidence from SANE Nurse Levicy -- for conducting the investigation and seeking the NTO. The only "statement" Sgt. Gottlieb allegedly made was to quote information he received from

SANE Nurse Levicy in an affidavit filed with the Court. (Compl. ¶ 274). Sgt. Gottlieb did not "suppress" evidence or conceal key card disclosures because decisions about what evidence to disclose and whether to subpoena key card records were made by the District Attorney (who had good reason to officially seek the key card records Sgt. Gottlieb had obtained informally). Plaintiffs, furthermore, have no cause to complain about investigative tactics that did not lead to any of them being accused of or arrested, jailed, or indicted for any crime.

The allegations against Officer Gottlieb are simply not comparable to the types of perversion of the justice system or abuses of power that have given rise to civil liability for obstruction of justice. *Compare Reed v. Buckeye Fire Equip.*, 241 Fed. Appx. 917, 919 (4th Cir. 2007)(defendant allegedly attempted to blackmail plaintiff by threatening to reveal his extramarital affair in exchange for not filing a Family Medical Leave Act lawsuit); *Burgess v. Busby*, 142 N.C. App. 393, 544 S.E.2d 4, 12-13 (2001)(defendant physician retaliated against jurors who entered verdict against him in malpractice lawsuit by sending letter disclosing the jurors' names to other health care providers in Rowan County); *In re Kivett*, 309 N.C. 635, 309 S.E.2d 442 (1983)(abuse of power by Superior Court judge); *Jones v. City of Durham*, 168 N.C. App. 433, 608 S.E.2d 387 (2005), *remanded on other grounds*, 361 N.C. 144, 638 S.E.2d 202 (2006)(destruction of evidence by law enforcement officers); *Jackson v. Blue Dolphin Communs. of N.C., LLC*, 226 F. Supp. 2d 785 (W.D.N.C. 2002)(employer's termination of employee in retaliation for employee's refusal to sign a false affidavit); *Henry v. Deen*, 310 N.C. 75, 310 S.E.2d

326 (1984)(physician's alteration of medical records). Plaintiffs' cause of action for obstruction of justice should be dismissed.

## CONCLUSION

For the foregoing reasons, Sgt. Gottlieb respectfully requests the Court to dismiss all claims asserted against him in the Complaint (Counts 8, 10, 20-26, and 28-30) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This the 30th day of May, 2008.

**POYNER & SPRUILL LLP**

By: /s/Edwin M. Speas, Jr.
      Edwin M. Speas, Jr.
      North Carolina Bar #4112
      Eric P. Stevens
      North Carolina Bar # 17609
      P.O. Box 10096
      Raleigh, N.C. 27605-0096
      Tel.   (919) 783-6400
      Fax   (919) 783-1075
      Email espeas@poynerspruill.com
      Email: estevens@poyners.com

      *Attorneys for Defendant Mark Gottlieb*

## CERTIFICATE OF SERVICE

       The undersigned attorney hereby certifies that on May 30 2008, I electronically filed the foregoing Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

*Charles J. Cooper*
*David H. Thompson*
*Brian S. Koukoutchos*
*Nicole Jo Moss*
*Cooper & Kirk, PLLC*
*1523 New Hampshire Avenue, NW*
*Washington, DC 20036*

*Dan J. McLamb*
*Shirley M. Pruitt*
*T. Carlton Younger, III*
*Yates, McLamb & Weyher, L.L.P.*
*Post Office Box 2889*
*Raleigh, NC 27602*

*Attorneys for Defendants Duke Unviersity*
*Health System, Inc., Theresa Arico R.N.*
*And Tar Levicy, R.N.*

*William J. Thomas, II*
*Thomas, Ferguson & Mullins, L.L.P.*
*119 East Main Street*
*Durham, NC 27701*

*Attorney for Plaintiffs*

*J. Donald Cowan, Jr.*
*Dixie T. Wells*
*L. Cooper Harrell*
*Smith Moore LLP*
*Post Office Box 21927*
*Greensboro, NC 27420*

*William F. Lee*
*Wilmer Cutler Pickering Hale and Dorr LLP*
*60 State Street*
*Boston, MA 02109*

*Jamie Gorelick*
*Jennifer M. O'Connor*
*Paul R.Q. Wolfson*
*Wilmer Cutler Pickering Hale and DorrLLP*
*1875 Pennsylvania Avenue, NW*
*Washington, DC 20006*

*Attorneys for Defendants Duke University,*
*Richard H. Brodhead, Peter Lange,*
*Larry Moneta, John Burness, Tallman Trask,*
*Susanne Wasiolek, Matthew Drummond,*
*Aaron Graves, Robert Dean, Kate Hendricks*
*And Victor J. Dzau*

*Reginald B. Gillespie, Jr.*
*Faison & Gillespie*
*Post Office Box 51729*
*Durham, NC 27717-1729*

*Attorneys for City of Durham, NC*


*Henry W. Sappenfield*
*Kennon, Craver, Belo, Craig & McKee,*
*PLLC*
*4011 University Drive, Suite 300*
*Post Office Box 51579*
*Durham, NC 27717-1579*

*Attorneys for Defendant Benjamin Himan*


*Linwood Wilson, Pro Se*
*Bahama, NC*

James B. Maxwell
Maxwell, Freeman & Bowman, P.A.
Post Office Box 52396
Durham, NC 27717-2396

Attorneys for Defendant David Addison


*Paul D. Coates*
*Kenneth Kyre, Jr.*
*Pinto Coasts Kyre & Brown, PLLC*
*Post Office Box 4848*
*Greensboro, NC 27404*

*Attorneys for Defendant J. Wesley Covington*


*Patricia P. Kerner*
*D. Martin Warf*
*Hannah G. Styron*
*Troutman Sanders LLP*
*434 Fayetteville Street, Suite 1900*
*Raleigh, NC 27601*

*Attorneys for Defendants Patrick Baker,*
*Steven Chalmers, Ronald Hodge,*
*Lee Russ, Stephen Mihaich,*
*Beverly Council, Jeff Lamb and*
*Michael Ripberger*

This the 30th day of May, 2008.

/s/Edwin M. Speas, Jr.
Edwin M. Speas, Jr.

RALEIGH/556393v1