IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO. 1:08-CV-119

| | | |
|---|---|---|
| EDWARD CARRINGTON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | **DEFENDANT** |
| | ) | **J. WESLEY COVINGTON'S** |
| vs. | ) | **BRIEF IN SUPPORT OF HIS** |
| | ) | **MOTION TO DISMISS** |
| DUKE UNIVERSITY, *et al.*, | ) | **PURSUANT TO RULE 12(b)(6)** |
| | ) | |
| Defendants. | ) | |

## STATEMENT OF NATURE OF MATTER BEFORE THE COURT

Defendant J. Wesley Covington (hereinafter referred to as "Wes Covington" or "Covington"), by and through his counsel, asserted a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure in his Answer to Plaintiffs' Complaint which he is filing contemporaneously herewith. The motion is being asserted because Plaintiffs' Complaint fails to state legally cognizable claims against Wes Covington upon which relief may be granted. The 47 Plaintiffs have filed their 225-page Complaint against not only Wes Covington, but also against 28 other defendants, alleging a total of 32 claims for relief (denominated "counts"), including claims based upon alleged constitutional and civil rights violations and North Carolina state law claims, such as intentional infliction of emotional distress. All claims generally arise from or allegedly are related in some manner to what has become known as the "Duke lacrosse incident," which essentially was an alleged assault, kidnapping, and rape of Crystal Mangum by three Duke lacrosse team members on March 13 (or 14), 2006.

Dockets.Justia.com

Because of the importance and nature of this expansive lawsuit, and the large number of defendants who are moving to dismiss on diverse grounds, Wes Covington respectfully requests that oral argument be held on his motion pursuant to Local Rule 7.3(c)(1).

## STATEMENT OF FACTS

*Preliminary Observations*

The Court already is aware to some extent of the Duke lacrosse incident and the present lawsuit because of its consideration of an earlier-filed motion by most defendants regarding "Attorney-Initiated and Attorney-Sanctioned Contact with the Media." The plaintiffs are most, but not all, of the members of the 2006 Duke University men's lacrosse team, plus some of those members' parents. Specifically, the plaintiffs consist of 38 team members (out of 47 members), and seven mothers and two fathers of some of those team members. The plaintiff team members were never charged with any crime as a result of the alleged assault, kidnapping, and rape of Crystal Mangum. Three other team members who also were not charged have filed a separate lawsuit against Duke University, Duke officials and employees, the City of Durham, Durham officials and employees, Durham police officers, and others, that case being *McFadyen v. Duke University*, No. 1:07-CV-953 (M.D.N.C. filed Dec. 18, 2007). The three lacrosse team members who were falsely accused by Crystal Mangum and who were charged criminally for the alleged assault, kidnapping, and rape filed their own lawsuit against the City of Durham, Durham officials and employees, Durham police officers, and others,

that case being *Evans v. City of Durham*, No. 1:07-CV-739 (M.D.N.C. filed Oct. 5, 2007). Wes Covington is not a defendant in either the *McFadyen* case or the *Evans* case.

The plaintiffs' present lawsuit is extraordinarily broad in its allegations of intentional wrongdoing against a large array of people, covering a period of 13 months. Often strident in its tone, it seeks to capture in its net of allegations Wes Covington, whose alleged role is exceedingly small. Out of the 481 "fact-based" paragraphs appearing in the Complaint preceding the claims for relief, Wes Covington is expressly mentioned in only 20 paragraphs (4%), and as will be explained below, only four of 31 claims for relief are directed at him. Furthermore, the alleged improper conduct of Wes Covington took place over, at most, only seven days, March 17 to March 23, 2006, and yet he is sued for alleged injuries that were purportedly sustained over a 13-month period. It is ironic that a Complaint which is so filled with detailed allegations (reading more like a book than a legal Complaint contemplated by Rule 8(a) of the Federal Rules of Civil Procedure) resorts to conclusory and general allegations that purport to include Wes Covington in the wrongdoing for which substantial damages are sought.

The singular and insignificant nature of Wes Covington in this lawsuit is reflected in the plaintiffs' own introduction and summary of the lawsuit that appear as Paragraphs 1 through 13 of the Complaint. (All references to paragraph (¶) numbers are to the numbered paragraphs of the Complaint.) Although much grievous conduct and omissions are recounted in those first 13 paragraphs, not one pertains to Wes Covington. Furthermore, the Complaint points out that the individual defendants are chiefly officials

and employees of the City of Durham and Duke University. Wes Covington was not, and is not, an official or employee of Durham or Duke. Although the Complaint attempts to include him among the 18 listed "Duke Defendants" (see ¶¶ 47-64), Wes Covington is the only defendant of the 18 who expressly is not tied to, employed by, or is an agent of, Duke University. Paragraph 60 succinctly states that "Defendant J. Wesley Covington was, at all relevant times herein, an attorney in Durham, North Carolina. On information and belief, Covington is a citizen and resident of North Carolina." As the Court examines and analyzes the claims against Wes Covington, this context should not be forgotten.

*Certain Facts Before "Appearance" of Wes Covington*

Although Wes Covington vehemently denies that he did anything wrong or improper, and he denies that he had any sinister motives toward or intended any harm to come to any of the Duke lacrosse players (and all allegations of wrongdoing leveled at him in the Complaint are expressly denied in his Answer to that Complaint which is being filed herewith), he realizes that for purposes of his Rule 12(b)(6) motion, the well-pled allegations set forth in Plaintiffs' Complaint must be accepted as true. (This is not so with respect to certain conclusory allegations, as will be explained below.)

As of March 13, 2006, three Duke lacrosse players, Dave Evans, Matt Zash, and Plaintiff Dan Flannery, rented a house located at 610 North Buchanan Avenue in Durham. ¶ 90. Two female "exotic" dancers were hired to perform at a party at the house on Monday, March 13, and one of the dancers who would eventually appear was Crystal

Mangum, the woman who would make the false allegations that she had been assaulted and raped. ¶¶ 91-92. Mangum and another dancer, Kim Roberts, began performing at around midnight and stopped four minutes later. At about 12:50 a.m. on Tuesday, March 14, Mangum and Roberts departed the house at 610 North Buchanan Avenue. ¶ 95. At no time was Mangum assaulted, kidnapped, or raped while at the house. ¶¶ 468-469.

At some point in the early morning hours of March 14, Mangum was transported by Durham police officers to the Durham Access Center, a facility for mentally ill patients and people under the influence of drugs, since Mangum had been exhibiting bizarre behavior. ¶¶ 99, 100. While at the Durham Access Center, Mangum for the first time that morning asserted that she had been raped, ¶ 102, and after she was taken to the emergency room of Duke Hospital, she contended (falsely) that she had been raped at the party at 610 North Buchanan Avenue. ¶¶ 105-106. However, there was no medical evidence that she had been raped. ¶ 123.

The rape allegation by Crystal Mangum was initially assigned to Durham police officer B.S. Jones, and he concluded that there was no evidence to proceed with a rape investigation. ¶ 131. However, Durham police officers Mark Gottlieb and Benjamin Himan (defendants in this lawsuit) subsequently proceeded to undertake an investigation into the alleged rape. ¶ 137.

"On or about" March 15 (Wednesday), Defendant Robert Dean, Director of the Duke University Police, notified Defendant Dean of Students Suzanne Wasiolek of Mangum's allegations that she had been raped, but he also said that Durham and Duke

police officers indicated that the accuser was not credible and that "this thing would go away." ¶¶ 138-139. Dean Wasiolek had reason to believe that the lacrosse players were innocent. ¶ 140. The four co-captains of the lacrosse team, Plaintiff Flannery, Plaintiff Thompson, Zash, and Evans emphatically and unequivocally denied Mangum's allegations to their coach, Mike Pressler, and to Dean Wasiolek, and they assured them that nothing of the kind had occurred at the party. ¶ 142. Dean Wasiolek advised Plaintiff Flannery, Plaintiff Thompson, Zash, and Evans that they should not hire lawyers or tell anyone about the rape allegation. ¶ 143. Coach Pressler passed Dean Wasiolek's advice along to the entire lacrosse team, and in reliance upon such advice, the players did not procure legal representation "for the next several days." ¶ 147.

On Thursday, March 16, Defendants Gottlieb and Himan interviewed Crystal Mangum, but she was unable to identify her alleged attackers from a photo array. ¶¶ 155, 158. In the evening of March 16, Durham police officers, including Defendants Gottlieb and Himan, searched the house at 610 North Buchanan Avenue pursuant to a search warrant. Lacrosse players and team co-captains Zash and Evans were present at the time the officers appeared, and Plaintiff co-captain Flannery arrived at the house while the search was occurring. All three players cooperated fully with and voluntarily assisted the police during the search. ¶¶ 162-163. After the search ended, the three players voluntarily accompanied the police to the police station and underwent a lengthy interrogation in the absence of counsel, and they voluntarily submitted to physical inspections for signs of scratches or other injuries, and they provided DNA samples. The players were

cooperative, and provided the police with the names of other lacrosse players who had attended the March 13-14 party. ¶¶ 164-165.

On Friday, March 17, following their interrogation by the Durham police, the three Duke lacrosse players, Zash, Evans, and Plaintiff Flannery met with Coach Pressler and Duke Associate Athletic Director Chris Kennedy. Kennedy recommended that the three players see attorney Wes Covington, Dean Wasiolek having advised or instructed Kennedy to so recommend Covington. ¶¶ 168-169.

On Saturday, March 18, Evans, Zash, and Plaintiff Flannery met with Wes Covington "to seek his advice and counsel." The players "told Covington their account of [the] events" (which would have included their assertion that no rape had occurred), and they told him about the interrogation by the Durham police on March 16-17. Covington told the players "that he would make the problem 'go away,'" and that "they should not mention this matter [i.e., the rape allegations] to anyone." He "left it unclear" as to "whom he was representing." ¶ 171. Later on that Saturday, Wes Covington told Evans' parents that "his friends in the Durham police department had advised him that everything would be okay. He added that they should not retain anyone – including himself – as Evans' lawyer." ¶ 172.

Wes Covington "was careful never to enter into a formal attorney-client relationship with most or all of the players or their parents, while repeatedly advising them and urging them to allow him to work on their behalf, and not to retain other

counsel." Covington "held himself out as an advisor to the players, dissuading them from retaining other counsel, while secretly acting on behalf of Duke and its administrators." ¶ 173. (Wes Covington wants to vigorously reiterate that such allegations are untrue, but he is constrained to accept such allegations as true for purposes of his Rule 12(b)(6) motion.)

On Monday, March 20, Wes Covington told Plaintiff Brett Thompson's father that his son "should not hire a lawyer. When Thompson pressed him on the question of whom he represented – Duke or the lacrosse players – he [Covington] responded that he was not representing anyone officially, but that he was acting as 'the unofficial adviser to everyone.'" ¶ 175

Also on March 20, Defendant Gottlieb began attempting to arrange for uncounseled interrogations of all lacrosse players and to obtain their DNA samples. ¶¶ 176, 177. Wes Covington "took the lead in encouraging the players and their parents to participate in these uncounseled interrogations," and "as early as . . . March 20, he was engaged in covert discussions both with Duke officials and with [Defendants] Gottlieb, Himan, and/or other Durham officials to arrange for Durham police to interrogate the lacrosse players *en masse* without the benefit of counsel." ¶ 178. On March 20, Defendant Himan called Coach Pressler to set up an appointment for the interrogations of all players who attended the March 13-14 party, with such interrogations to take place on Wednesday, March 22. "Covington advised Coach Pressler that this was a good plan and that the players should accede to it." ¶ 179.

On Tuesday, March 21, Wes Covington met with several lacrosse players' parents (not named in the Complaint), and he "suggested that 'a few key players' give interviews to Durham police in the absence of counsel. No lawyers would be necessary, Covington stated, because he himself would attend." ¶ 196. Covington "had scheduled the entire lacrosse team for police interrogations, including providing DNA samples, for . . . March 22." ¶ 197.

On Tuesday evening, March 21, Durham attorney Robert C. Ekstrand learned of the "Covington-Gottlieb plan for uncounseled interrogations" and [w]orking through the night, he managed to get in contact with many of the lacrosse team members to advise them not to agree to uncounseled interrogations." ¶ 199. On Wednesday morning, March 22, Plaintiff Peter Lamade's father and other parents, "acting on the advice of Ekstrand, advised Coach Pressler that the scheduled interrogations would have to be delayed so that the players could consult their parents and lawyers first." ¶ 200. Mr. Lamade, himself a lawyer, met with Wes Covington later on Wednesday and asked him "'Whom do you represent?'" and "Covington replied: 'I'm not really representing anyone. I'm here to kind of fix this. And I'm advising Duke.'" ¶ 201. "Overruling Covington's protests, Lamade insisted that the police interrogations scheduled for that day be postponed," and Covington's office advised Defendant Gottlieb "that the lacrosse players would not be available for interviews that day" and the interviews were rescheduled for March 29. ¶ 202.

Later in the afternoon of March 22, Wes Covington met again with Mr. Lamade and also Plaintiff Tricia Dowd (Plaintiff Kyle Dowd's mother) and he "urged that some or all of the players submit to uncounseled interviews with Gottlieb." ¶ 203. Unknown to the players, Defendants Gottlieb and Himan had planned to obtain DNA samples from the players who were interrogated. When the planned interrogations were postponed, Himan began to prepare an application for a non-testimonial order to compel the lacrosse payers to produce DNA samples. ¶ 204. On Thursday, March 23, Judge Stephens signed a non-testimonial order, which ordered all 46 white members of the Duke lacrosse team to provide DNA samples to the Durham police and to be photographed that day, and those team members fully and immediately complied with the order. ¶¶ 213-214. After the order was issued, many team members consulted attorney Ekstrand. ¶ 215.

Regardless of the plan to have lacrosse players provide the Durham police statements ("uncounseled interrogations" in the phraseology of the Complaint), no uncounseled interrogations, no uncounseled interviews, and no uncounseled statements were given by the lacrosse players (other than those of Plaintiff Flannery, Zash, and Evans on March 16-17, who voluntarily submitted to interrogation and before Wes Covington spoke to them or any player regarding the incident). The Complaint does not allege any other specific conduct of Wes Covington after March 23, when one lacrosse player asked him "'Are you my lawyer?'" and Covington "refused to answer directly." ¶ 215. Therefore, Wes Covington played no role whatsoever after March 23, and yet it was not until March 24 when the adverse publicity that was critical of the lacrosse players

began and all of the activity for which Plaintiffs claim damages actually occurred. As stated in the Complaint, "[t]he first prominent press coverage of the rape hoax would begin the next morning [March 24], with a front-page article in the *Raleigh News & Observer*. From March 24 onward, a national media frenzy continued for months." ¶ 216.

*Facts Regarding Criticized Conduct and Harm Allegedly Suffered by Plaintiffs after Wes Covington Ceased to Have Any Involvement*

For the remainder of the factual portion of the Complaint (¶¶ 217-481), numerous instances of allegedly improper conduct and harm to Plaintiffs are recounted. Because none of such allegations directly relate to Wes Covington's very small involvement (at most, seven days), the details will not be recited herein. However, the problems encountered by the plaintiffs and the harm they allegedly suffered did not begin until after March 23. For example, it was not until after March 23 that the "atmosphere [on the Duke campus and in the Durham community] was intensely hostile, even dangerous, for the lacrosse players" allegedly due to "the combination of faculty animosity, faculty and student protests, community outrage, and a massive invasion of the Duke campus by local and national media." ¶ 217. Additionally, it was no until March 24 when District Attorney Nifong took charge of the Durham police's investigation of the rape allegations of Crystal Mangum. ¶ 219.

The many subsequent "fact" sections of the Complaint, though full on alleged details, are devoid of allegations that Wes Covington was involved in any way whatsoever. Many of the allegations involve Nifong's improper conduct (¶¶ 267-281, 310-313, 379-385, 388-390, 401-404, and 424-429) and harsh criticism of Duke officials

and employees who purportedly "closed their eyes to the truth" and condemned, punished, harassed, and betrayed the lacrosse players (¶¶ 224-226, 282-303, 314-341, 355-375, 391-396, 405-420, and 433-455), including harassment by faculty and the creation and maintenance of a hostile atmosphere on the Duke campus.

## QUESTIONS PRESENTED

1.     Have the Plaintiffs Sufficiently Alleged Facts Showing that a Relationship of Trust and Confidence Was Created between Wes Covington and the Plaintiffs, and that Wes Covington Sought to Benefit Himself, So as to Support a Claim for Constructive Fraud?

2.     Have the Plaintiffs Sufficiently Alleged Facts that They Were "Hurt" as a Result of Wes Covington's Alleged Constructive Fraud?

3.     Have the Plaintiffs Sufficiently Alleged Facts that They Were Injured as a Result of the Allegation that Wes Covington Voluntarily Undertook to Counsel the Plaintiffs?

4.     Have the Plaintiffs Sufficiently Alleged Facts that Wes Covington Acted Under Color of State Law and that He Joined a Conspiracy to Maliciously Investigate the Plaintiffs?

5.     Can the Plaintiffs Who Were Never Charged with Any Crime State a Claim for Malicious Investigation Under 42 U.S.C. § 1983?

6.     Have the Plaintiffs Sufficiently Alleged Facts that Wes Covington Obstructed Justice or that His Conduct Resulted in the Plaintiffs Being Injured?

## ARGUMENT

### I.  *Standard for Dismissing Action for Failure to State a Claim for Relief*

The United States Supreme Court last year in *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 167 L. Ed. 2d 929, 127 S. Ct. 1955 (2007), clarified the standard in judging the

sufficiency of a Complaint when faced with a motion to dismiss under Rule 12(b)(6). The

Court observed that:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level.

*Twombly*, 127 S. Ct. at 1964-65 (most citations omitted). The Court further explained:

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out *in detail* the facts upon which he bases his claim," Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, . . . of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests. See 5 Wright & Miller § 1202, at 94, 95 (Rule 8(a)"contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented" and does not authorize a pleader's "bare averment that he wants relief and is entitled to it").

*Twombly*, 127 S. Ct. at 1965 n.3 (emphasis in original).

Just two months ago the Fourth Circuit Court of Appeals made clear the

importance of factual allegations in a Complaint. It indicated what a court should do

when reviewing the sufficiency of a Complaint due to a motion to dismiss under Rule

12(b)(6):

[W]e "take the facts in the light most favorable to the plaintiff," but "we need not accept the legal conclusions drawn from the facts," and "we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Additionally, the complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face."

*Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (emphasis in original) (quoting

*Twombly*, 127 S. Ct. at 1974).

## II. The Plaintiffs have Insufficiently Alleged Facts that a Relationship of Trust and Confidence Was Created between Wes Covington and the Plaintiffs, and that Wes Covington Sought to Benefit Himself, So as to Support a Claim for Constructive Fraud [Count Eleven]

The plaintiffs allege in Count Eleven that five defendants, including Wes Covington, were guilty of constructive fraud. For the plaintiffs to show constructive fraud, they must allege and show that they and Covington "were in a 'relation of trust and confidence . . . [which] led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.'" *Wilkins v. Safran*, ___ N.C. App. ___, 649 S.E.2d 658, 663 (2007). As explained in *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981) (quoting *Rhodes v. Jones*, 232 N.C. 547, 61 S.E.2d 725 (1950)):

In stating his cause of action under this principle of law [of constructive fraud], it is not sufficient for plaintiff to allege merely that defendant had won his trust and confidence and occupied a position of dominant influence over him. Nor does it suffice for him to allege that the deed in question was obtained by fraud and undue influence . . . . It is necessary for plaintiff to allege facts and circumstances (1) which created the relation of trust and confidence, and (2) (which) led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff.

14

The plaintiffs have failed to clearly so allege in their Complaint. Although they allege that Covington "enjoyed a position of trust and confidence with the plaintiffs," and that such a position "was created by his holding himself out to them as their lawyer and/or confidential counselor," ¶ 553, other allegations set forth earlier in the Complaint (which are incorporated into Count Eleven) indicate that Covington was not acting as the plaintiffs' lawyer. To the contrary, there is no indication that Covington ever entered into an attorney-client relationship with any of the players or parents, and so therefore the plaintiffs cannot take advantage of the observation by the Court in *Wilkins* that the "'relationship of attorney and client creates . . . a relationship of trust and confidence.'" 649 S.E.2d at 663 (quoting *Fox v. Wilson,* 85 N.C. App. 292, 299, 354 S.E.2d 737, 742 (1987)). *See* Paragraphs 173 (Wes Covington "was careful never to enter into a formal attorney-client relationship with most or all of the players or their parents"), 175 (Covington told Plaintiff Brett Thompson's father that "he was not representing anyone officially"), and 201 (Covington told Mr. Lamade that he was "not really representing anyone").

Additionally, to state a claim for constructive fraud, the plaintiffs must allege that a defendant sought "his own advantage in the transaction; that is, the defendant must seek to benefit himself." *Toomer v. Branch Bank & Trust Co.*, 171 N.C. App. 58, 67, 614 S.E.2d 328, 335 (2005) (quoting *Barger v. McCoy Hillard & Parks,* 346 N.C. 650, 488 S.E.2d 215 (1997)). *Accord*, *Sterner v. Penn*, 159 N.C. App. 626, 631-32, 583 S.E.2d 670, 674 (2003). Although there are allegations that Duke University would benefit, there

is no allegation that Wes Covington sought to benefit himself in some particular way. (The allegation that Covington was "motivated by the desire to serve . . . [his] own personal interests," ¶ 554, does not equate, absent further explanation, to seeking to benefit himself. *See Barger,* 346 N.C. at 666-68, 488 S.E.2d at 224-25 (finding that plaintiffs alleged "no facts tending to show that defendants gained anything" from the purported constructive fraud); *Sterner*, 159 N.C. App. at 632, 583 S.E.2d at 674 (finding that the Complaint's allegations failed "to show that defendants sought to benefit themselves by taking unfair advantage of plaintiff").

### III. The Plaintiffs have Insufficiently Alleged Facts that They Were "Hurt" as a Result of Wes Covington's Alleged Conduct [Count Eleven]

Wes Covington's alleged conduct of which the plaintiffs complain is his efforts to arrange uncounseled police interrogations of the lacrosse players by Defendants Gottlieb and Himan. To be actionable, however, such conduct by Wes Covington must have resulted in "the hurt of [the] plaintiffs." *See Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981). Although the plaintiffs make wild allegations of the harm that befell them as a result of Wes Covington's alleged attempt to arrange interrogations by the Durham police, ¶ 555, the extensive and explicit allegations throughout the Complaint show that such harm did not, and could not, have flowed from Covington's effort. First and foremost, no uncounseled interrogations occurred as a result of any efforts made by Covington. The interrogations that had been scheduled for March 23 were postponed and never held. In other words, the event of which the Complaint is so critical because it

would be contrary to the plaintiffs' interests (uncounseled police interrogations) never occurred.

The bald allegation in Paragraph 555 that Wes Covington's unimplemented plan for uncounseled police interrogations prevented the plaintiffs from procuring independent legal representation is belied by the Complaint's allegations that many of the lacrosse players had consulted another attorney, Robert Ekstrand, on March 21 and 22, as well as March 23. That means that only three days passed between the time that Wes Covington first met the three co-captains in his office on March 18 and when a number of the players had spoken with attorney Ekstrand. Additionally, on March 22, Coach Pressler was told by the parent of one of the players that any interrogations would need to be delayed so that the players "could consult their parents and lawyers first." ¶ 200. Furthermore, it defies common sense and logic that Covington's failed attempt to allegedly arrange for uncounseled police interrogations prolonged the rape investigation. As the extensive post-March 23 allegations reveal, many other individuals allegedly caused the prolonging of the "rape hoax investigation," with much intervening and superseding conduct. To accept the conclusory allegations of harm proximately caused by Wes Covington's alleged conduct as set forth in Paragraph 555 would improperly require ignoring the hundreds of paragraphs in the Complaint devoted to extensively explaining the numerous bases for the plaintiffs' alleged injuries that had no connection whatsoever with Wes Covington. The allegations in Paragraph 555 of harm suffered by the plaintiffs due to Covington's failed planned for uncounseled police interrogations, and even the

very temporary alleged effort to have some of the players not confer with another attorney, are just not plausible, and such implausibility is justification under *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008), to dismiss Count Eleven against Covington.

### IV. The Plaintiffs Have Insufficiently Alleged Facts that They Were Injured as a Result of Wes Covington Voluntarily Undertaking to Counsel Them [Count Twelve]

Count Twelve of the Complaint is asserted against the same defendants as Count Eleven is, including Wes Covington. It alleges that Covington "voluntarily undertook to counsel, advise, guide and assist the plaintiffs in protecting their interests in the rape hoax crisis," and that he "deliberately acted to discourage the plaintiffs from seeking the advice of other counselors, advisors, and helpers, such as the plaintiffs' parents and independent attorneys." ¶ 559. Just as with Count Eleven, the extensive allegations of the Complaint contradict the conclusory allegations of Count Twelve. Although Wes Covington allegedly discouraged the plaintiffs from seeking legal advice, within three days after Covington first met the three co-captains, "many" of the lacrosse players had been contacted by another attorney, Robert Ekstrand. No harm can legitimately be claimed by such players who did confer with that other attorney. Additionally, it is inconceivable that after March 23, when Wes Covington ceased any involvement whatsoever regarding any lacrosse player and the players complied with the non-testimonial order of providing DNA samples and being photographed, Covington's alleged conduct of discouraging players to consult with an attorney had any influence on any particular player to continue not consulting an attorney. Additionally, on March 22, Coach Pressler was told by the

18

parent of one of the players that any interrogations by police would need to be delayed so that the players "could consult their parents and lawyers first." ¶ 200. That allegation would seem to indicate that any alleged plan by Covington to discourage the lacrosse players from conferring with an attorney had failed.

The plaintiffs' claim in Count Twelve sounds in negligence. *See Williams v. Smith*, 149 N.C. App. 855, 858, 561 S.E.2d 921, 923 (2002) (in discussing a negligence action, the Court noted that a duty "may be imposed if one party undertakes to render services to another and the surrounding circumstances are such that the first party should recognize the necessity to exercise ordinary care to protect the other party"). It is well established in North Carolina that to establish actionable negligence, a plaintiff must show:

> that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed to the plaintiff under the circumstances in which they were placed, and that such negligence was *the proximate cause of the injury – a cause that produced the result in continuous sequence and without which it would not have occurred*, and one from which any man of ordinary prudence could have foreseen that such result was probable under all the facts as they existed.

*Clontz v. St. Mark's Evangelical Lutheran Church*, 157 N.C. App. 325, 328, 578 S.E.2d 654, 657 (2003) (emphasis added) (quoting *Jackson v. Gin Co.,* 255 N.C. 194, 196, 120 S.E.2d 540, 542 (1961)).

Considering the totality of the allegations of the Complaint, there are insufficient facts alleged that show that Wes Covington's discouragement of lacrosse players to not seek the advice of other attorneys and advisors was the proximate cause of any injuries,

including "irreparable reputational harm, severe emotional distress, economic injuries, and loss of educational and athletic opportunities, as well as enhancing injuries caused by other actors." ¶ 562. It is clear upon reading the entire Complaint that such alleged injuries were caused by the alleged conduct by others that post-dated March 23. Additionally, the numerous alleged actions of others, especially by Nifong, would constitute on their face (in the manner alleged by the plaintiffs in their Complaint) "[a]n efficient intervening cause[, which] is a new proximate cause which breaks the connection with the original cause and becomes itself solely responsible for the result in question." *Jackson v. Howell's Motor Freight, Inc.*, 126 N.C. App. 476, 481, 485 S.E.2d 895, 899 (1997). An intervening cause "must be an independent force, entirely superseding the original action and rendering its effect in the causation remote," *id.*, and the numerous acts and conduct by others alleged in the Complaint constitute independent forces that superseded anything that Wes Covington may have done.

## V. The Plaintiffs Have Insufficiently Alleged Facts that Wes Covington Acted Under Color of State Law, and It Cannot Be Cured By Inadequately Alleging that Wes Covington Joined a Conspiracy [Count Twenty-Two]

Count Twenty-Two of the Complaint is directed against all of the defendants, who all were allegedly "willing participants in a joint course of conduct, together with Durham Investigators and Duke Police who were acting under color of law, to instigate, promote, facilitate, and prolong a malicious, bad faith criminal investigation of plaintiffs." ¶ 636. The plaintiffs allege that all defendants violated 42 U.S.C. § 1983. "Liability under section 1983 only extends to persons acting under color of law, a

requirement equivalent to that of state action under the Fourteenth Amendment. Thus, 'conduct allegedly causing the deprivation of a federal right' is only actionable under section 1983 when the conduct is 'fairly attributable to the state.'" *United Auto Workers v. Gaston Festivals, Inc.*, 43 F.3d 902, 906 (4th Cir. 1995). Typically, "[t]he central inquiry in determining whether a private party's conduct will be regarded as action of the government is whether the party can be described 'in all fairness' as a state actor." *Id.* Wes Covington was not a "state actor," since he was a private citizen and attorney. Usually such individuals are not acting under color of state law. *See, e.g.*, *Deas v. Potts*, 547 F.2d 800 (1976) (private attorney retained to represent a criminal deposition held not to be acting under color of state law).

The plaintiffs have sought to get around the private nature of Wes Covington's status by asserting that all of the defendants, including Covington, participated in a joint course of conduct and conspiracy. It is true that "state action has also been found in circumstances where the private actor operates as a 'willful participant in joint activity with the State or its agents.'" *Mentavlos v. Anderson*, 249 F.3d 301, 311 (4th Cir. 2001) (quoting *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n,* 531 U.S. 288, 148 L. Ed. 2d 807, 121 S. Ct. 924, 930 (2001)). However, such joint activity (i.e., conspiracy) should not be pleaded generally or in a conclusory manner. "To survive a motion to dismiss . . . [a] conspiracy claim under § 1983, a plaintiff must allege both a mutual understanding to achieve some unconstitutional action reached by the private and state defendants and some factual assertions suggesting a meeting of the minds. . . . When

a complaint contains merely a vague allegation of conspiracy, it cannot withstand a motion to dismiss." *Howard v. Food Lion, Inc.*, 232 F. Supp. 2d 585, 597 (M.D.N.C. 2002). *See also Harris v. City of Virginia Beach*, No. 00-1704, 2001 WL 538905, 11 Fed. Appx. 212 (4th Cir. 2001) (affirming district court which held that plaintiff did not allege specific facts showing an agreement between two or more of the defendants which resulted in a deprivation of his civil rights in violation of § 1983) (a copy of the opinion is in the Appendix attached to this brief).

The plaintiffs have alleged in a vague and general manner that Wes Covington joined the conspiracy. No details are provided, and there are no allegations of any meeting of the minds. A lack of such allegations is not surprising, considering that Covington's alleged role spanned not more than seven days and ended by March 23, 2006, before Nifong took charge of the rape investigation, before the "media frenzy," before the alleged harassing atmosphere on the Duke campus, and before essentially almost all of the allegedly improper conduct by others described in detail in the Complaint occurred. Considering the extensive facts that have been alleged by the plaintiffs in their Complaint regarding the conduct of others, at the very least the plaintiffs should have included in the Complaint more specificity of how and when Wes Covington joined the purported conspiracy, and they should have included allegations of when and how and under what circumstances that there was a meeting of the minds between Covington and the "governmental" defendants.

The litany of wrongdoing that constitutes alleged violations of due process

appearing in Paragraphs 637 and 638 have nothing to do with Wes Covington and generally post-date the last day he had any involvement with or took any action related to any lacrosse player.

Even if Wes Covington is seen to have acted "in concert" with Defendant Gottlieb in attempting to arrange the interrogations of some or all of the lacrosse players, it has already been pointed out above that nothing came of such an attempt (no interrogations occurred) and no harm to any of the plaintiffs was caused by the failed attempt, and certainly the attempt to arrange interrogations was not the proximate cause of any injuries alleged by the plaintiffs in Paragraph 639.

## VI. Because the Plaintiffs Were Never Charged with Any Crime, the Investigation of Which They Complain Cannot be a Basis for a § 1983 Claim [Count Twenty-Two]

The plaintiffs essentially complain in Count Twenty-Two that they were the target of an unreasonable investigation (they phrase it "malicious investigation"). However, there is no legal basis for a § 1983 claim for an "unreasonable investigation." *Shields v. Twiss*, 389 F.3d 142, 150-51 (5th Cir. 2004). *Accord*, *Burrell v. Adkins*, at *3, No. CV01-2679-M, 2007 WL 4699166 (W.D. La. Oct. 22, 2007) (a copy of the opinion is included in the Appendix to this brief). The plaintiffs "must point to harm caused by the deficient investigation – [either] a false arrest or imprisonment." *Id.* at *4. *Cf. Johnson v. Kings County District Attorney's Office*, 308 A.D.2d 278, 284-85, 763 N.Y.S.2d 635, 640 (N.Y. Sup. Ct. 2003) (noting that New York courts do not recognize claims for malicious investigation). The plaintiffs in the present lawsuit were not charged with any crime, they were not arrested in connection with the alleged rape, and they were not imprisoned.

## *VII.  The Plaintiffs Have Insufficiently Alleged Facts that Wes Covington Obstructed Justice or that His Conduct Resulted in the Plaintiffs Being Injured [Count Twenty-Three]*

The last claim leveled at Wes Covington is essentially a "catch all" one against all of the defendants, whereby the plaintiffs assert in Count Twenty-Three that the defendants, "acting individually and in concert, engaged in acts that attempted to and did prevent, obstruct, impede, and hinder public and legal justice in the State of North Carolina." ¶ 644. "Obstruction of justice" is a common law offense in North Carolina for which a claim may be asserted, and it is "an offense to do any act which prevents, obstructs, impedes or hinders public or legal justice." *Jones v. City of Durham*, ___ N.C. App. ___, 643 S.E.2d 631, 633 (2007) (quoting *Broughton v. McClatchy Newspapers, Inc.,* 161 N.C. App. 20, 33, 588 S.E.2d 20, 30 (2003)).

All previous allegations contained in the Complaint are incorporated in Paragraph 643 of Count Twenty-Three, which means that there are no factual allegations that Wes Covington acted in concert with others after March 23, 2006. Additionally, he did none of the alleged wrongful acts listed in Paragraph 645, which is the heart of the claim. Because Covington's alleged plan to arrange for the uncounseled police interrogation never came to fruition, such an unexecuted plan does not constitute preventing, obstructing, impeding, or hindering public or legal justice.

## CONCLUSION

Wes Covington's extremely limited seven-day role does not justify keeping him in the plaintiffs' massive and wide-ranging lawsuit. The plaintiffs are saddled with purely

conclusory and implausible allegations that Covington's alleged conduct during those seven days in March 2006 (essentially the failed attempt to arrange for uncounseled interrogations and the failed attempt to discourage the lacrosse players from consulting their parents or another attorney) caused the alleged extensive injuries and damages to the plaintiffs, and such conclusory and implausible allegations fail to comply with current rules of pleading. For the reasons set forth and explained above, Defendant Wes Covington respectfully requests the Court to grant his motion to dismiss all of the plaintiffs' claims against him pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This the 30th day of May, 2008.

/s/ Kenneth Kyre, Jr.
N.C. State Bar Number: 7848
Attorney for Defendant Covington
Pinto Coates Kyre & Brown, PLLC
P.O. Box 4848
Greensboro, NC 27404
Telephone: (336) 282-8848
Fax: (336) 282-8409
E-mail: kkyre@pckb-law.com

/s/ Paul D. Coates
N.C. State Bar Number: 9753
Attorney for Defendant Covington
Pinto Coates Kyre & Brown, PLLC
P.O. Box 4848
Greensboro, NC 27404
Telephone: (336) 282-8848
Fax: (336) 282-8409
E-mail: pcoates@pckb-law.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 30th day of May, 2008, I electronically filed the foregoing Defendant Covington's Brief in Support of His Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

- **CHARLES J. COOPER**
  ccooper@cooperkirk.com,nmoss@cooperkirk.com
- **JAMES DONALD COWAN , JR**
  don.cowan@smithmoorelaw.com,kathy.hawkins@smithmoorelaw.com,leighann.
  robinson@smithmoorelaw.com
- **JOEL MILLER CRAIG**
  jcraig@kennoncraver.com,rrogers@kennoncraver.com,hsappenfield@kennoncraver.com
- **REGINALD B. GILLESPIE , JR**
  rgillespie@faison-gillespie.com,diane.taylor@faison-gillespie.com, avoss@steptoe.com,
  susan.veasey@faison-gillespie.com,Kelly.Troy@durhamnc.gov,Kimberly.Grantham@
  durhamnc.gov,susan.groves@faison-gillespie.com,RWarin@steptoe.com,Beverly.
  Thompson@durhamnc.gov
- **JAMIE S. GORELICK**
  jamie.gorelick@wilmerhale.com
- **LESLIE COOPER HARRELL**
  cooper.harrell@smithmoorelaw.com,linda.hassell@smithmoorelaw.com
- **PATRICIA P. KERNER**
  tricia.kerner@troutmansanders.com,melissa.bowling@troutmansanders.com,tracy.
  bowling@troutmansanders.com
- **WILLIAM F. LEE**
  william.lee@wilmerhale.com
- **JAMES B. MAXWELL**
  jmaxwell@mfbpa.com,lrosemond@mfbpa.com
- **DAN JOHNSON MCLAMB**
  dmclamb@ymwlaw.com,cyounger@ymwlaw.com
- **JENNIFER M. O'CONNOR**
  jennifer.oconnor@wilmerhale.com,whdukelacrosseassociates@wilmerhale.com,whdukel
  acrosseparalegals@wilmerhale.com
- **SHIRLEY MARING PRUITT**
  spruitt@ymwlaw.com
- **HENRY W. SAPPENFIELD**
  hsappenfield@kennoncraver.com,rrogers@kennoncraver.com

- **EDWIN M. SPEAS , JR**
  espeas@poynerspruill.com,sstutts@poyners.com
- **ERIC P. STEVENS**
  estevens@poyners.com,rclarke@poyners.com,eweston@poyners.com,johale@poynerspruill.com
- **HANNAH GRAY STYRON**
  hannah.styron@troutmansanders.com,nella.johnson@troutmansanders.com
- **WILLIAM JOHN THOMAS , II**
  thomas@tfmattorneys.com,tfm@tfmattorneys.com
- **DAVID H. THOMPSON**
  dthompson@cooperkirk.com
- **D. MARTIN WARF**
  martin.warf@troutmansanders.com,nella.johnson@troutmansanders.com
- **DIXIE THOMAS WELLS**
  dixie.wells@smithmoorelaw.com,kathy.hawkins@smithmoorelaw.com
- **PAUL R.Q. WOLFSON**
  Paul.Wolfson@wilmerhale.com
- **THOMAS CARLTON YOUNGER , III**
  cyounger@ymwlaw.com

The said Brief was served upon the following party who has entered an appearance in this lawsuit but to whom electronic notification will not be sent by the Clerk of Court by mailing the Answer via first class U.S. Mail to:

Linwood Wilson
6910 Innesbrook Way
Bahama, NC 27503

This the 30th day of May, 2008.

/s/ Kenneth Kyre, Jr.
N.C. State Bar Number:  7848
Attorney for Defendant Covington
Pinto Coates Kyre & Brown, PLLC
P.O. Box 4848
Greensboro, NC 27404
Telephone:  (336) 282-8848
Fax:  (336) 282-8409
E-mail:  kkyre@pckb-law.com