# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

### Civil Action No. 1:08-cv-00119

FILED
JUN 26 2008
IN THIS OFFICE
Clerk U. S. District Court
Greensboro, N. C.
By _____

| | |
|---|---|
| **EDWARD CARRINGTON, et al.**<br><br>                          **Plaintiffs,**<br><br>**vs.**<br><br>**DUKE UNIVERSITY, et al.**<br><br>                          **Defendants.** | **DEFENDANT LINWOOD WILSON'S BRIEF IN SUPPORT OF MOTION TO DISMISS** |

NOW COMES Defendant Linwood Wilson, *Pro Se*, and submits the following Brief in support of his motion to dismiss this action pursuant to 12(b)(6) of the Rules of Civil Procedure.

### MATTER BEFORE THE COURT

The matter before the Court is Defendant Linwood Wilson's motion to dismiss Plaintiffs' claims against him, set out in Counts Eight, Ten, Twenty, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Four, Twenty-Five, Twenty-Six, Twenty-Eight, Twenty-Nine and Thirty in their Complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

### STATEMENT OF THE CASE

Plaintiffs filed this action on February 21, 2008, claiming violations of 42 U.S.C. § 1985 and North Carolina common law. On April 10, 2008, the parties filed a Joint Motion for Leave to File Excess Pages and to Establish a Rule 12 Briefing Schedule. Judge Beaty allowed this motion on April 14, 2008. Under the terms of the Order, Defendants had until May 30, 2008, in which to file briefs in support of their motions to dismiss, not to exceed fifty pages in length. On April 21, 2008 Defendant Wilson filed a

1

Dockets.Justia.com

Motion for Extension of Time to Answer. On April 23, 2008, Magistrate/Judge Wallace Dixon allowed this motion. Under the terms of the Order Defendant Wilson has until June 27, 2008, in which to answer or file briefs in support of his motion to dismiss. Defendant Wilson's Motion to Dismiss has been filed pursuant to Judge Beaty's and Wallace's Orders.

## STATEMENT OF FACTS

Plaintiffs' Complaint numbers two hundred and twenty-five pages, names twenty-nine defendants and has thirty-one causes of action. Although Defendant Wilson strongly disagrees with Plaintiffs' sometimes hyperbolic characterizations of the stated events, Fed. R. Civ. P. 12(b)(6) requires that these allegations be taken as true for the limited purpose of arguing that they should be dismissed as a matter of law. The relevant allegations of the Complaint are set out below.

Three members of the 2005-2006 Duke lacrosse team were falsely accused of rape by Crystal Mangum after she and another woman had performed as exotic dancers at a party attended by members of the team.[1] (Compl. ¶¶ 90-91, 102, 399, 432). Plaintiffs allege that, as members of that team, they were subjected to a vast conspiracy to harm their reputations and deprive them of their constitutional rights. (Compl. ¶¶ 5, 650, 700). According to Plaintiffs, this conspiracy encompassed not only the twenty-nine listed

---

[1] The charges against the three indicted players were dismissed. They were exonerated and declared innocent by the Attorney General Roy Cooper in a public statement on April 11, 2007. (Compl. ¶¶ 468-69). The innocence of the indicted players was established in part due to information gathered by Defendant Wilson and members of the Durham Police Department. (Compl. ¶ 467).

defendants, but others not listed in the Complaint. (Compl. ¶ 3-4). It supposedly included employees of Duke University, the Duke University Health System, the Duke Campus Police, the City of Durham, the Durham Police Department and private companies. (Compl. ¶¶ 3-4).

Plaintiffs were never arrested, indicted or tried. Plaintiffs were never specifically identified as the supposed or suspected perpetrators of the alleged "crime." They have not spent one day in jail, nor have they been forced to appear in court. Plaintiffs now seek to recover damages against Defendant Wilson based upon the fact that their potential involvement (or the potential involvement of their children) in the alleged crime on March 16, 2006 was investigated pursuant to the Durham Police's inquiry into Crystal Mangum's claims. (Compl. ¶¶ 1-4).

According to Plaintiffs' Complaint, Defendant Wilson participated in the investigation of Mangum's claims as follows:

### Defendants

Defendant Linwood Wilson was, at all times relevant to this action, an investigator employed by the District Attorney for the Fourteenth Prosecutorial District in North Carolina. (Compl. ¶ 66). Defendants Nifong, Wilson, Gottlieb and Himan are referred to herein collectively as the *"Durham Investigators"*. (Compl. ¶ 69). However, Nifong has never been named as a defendant in this lawsuit although on June 3, 2008 during the Rule 26(f) teleconferece, Plaintiffs' Attorney William J. Thomas explained that they were considering adding Mr. Nifong as a defendant and had not yet made a decision. *See Attachment 1 (attached notes from teleconference, Number 8.)*

### Investigation

3

On or around April 20, 2006, Nifong assigned Defendant Linwood Wilson, an investigator with the district attorney's office, to coordinate with Gottlieb and Himan on the rape investigation. Plaintiffs also allege that while Defendant Wilson was working as a private investigator, he had a record of misconduct. (Compl. ¶ 401) Plaintiffs allege that on April 21, Durham Investigators, not naming Defendant Wilson, except previously lumping him with "Durham Investigators" (Compl. ¶ 69), met with Meehan and Clarke of DSI, and agreed to omit exculpatory in a report and to not make any written notes memorializing the substance of their discussions. (Compl. ¶¶402-403, 424-427, 457) Plaintiffs and Plaintiffs attorneys know full well that Defendant Wilson was not present and did not participate in any meeting with Dr. Meehan, Clarke, Gottlieb, Himan, Nifong or DSI. They know this from other filings set forth in 1:07CV739 and court records in the criminal case which they refer to in (Compl. ¶ 457) In no reports or allegations is there any reason for Plaintiffs to believe Defendant Wilson was part of those meetings. Plaintiffs Attorneys should be found in violation of Rule 11 for falsely making these allegations.

On December 21, Mrs. Mangum told Nifong's Investigators (Defendant Wilson) that she could no longer be 100% sure that she had been raped and Nifong dismissed the raped charges on December 22,. (Compl. ¶ 461)

On January 10, 2007, Defendants Wilson and Himan met with Nurse Levicy and it was the first time that Nurse Levicy "speculated" that condoms may have been used. (Compl. ¶ ¶ 461-463)

## QUESTIONS PRESENTED

1. Have Plaintiffs stated cognizable claims against Defendant Wilson under

federal and state law?

2. Can Plaintiffs' claims overcome Defendant Wilson's absolute and qualified immunity for federal claims and absolute immunity from personal liability for state law claims?

## ARGUMENT

Outside of Plaintiffs' insufficient and conclusory allegations of conspiracy, Plaintiffs' Complaint makes clear that Defendant Wilson complied with his duties as a district attorney investigator under North Carolina law. Defendant Wilson provided District Attorney Nifong with all of the potentially exculpatory evidence he was aware of in preparation for the criminal trial of three defendants in *State of NC v. Dave F. Evans, Reade Seligmann, and Collin Finnerty*. (Compl. ¶ 461). Because Plaintiffs cannot establish any underlying violation, Plaintiffs' federal claims fail as a matter of law.

Defendant Wilson's performance of his duties as a district attorney investigator also means that his actions are protected by the doctrine of absolute and qualified immunity for federal constitutional claims and that the doctrine of public official and absolute immunity for state law claims.

### *Applicable Legal Standard*

A complaint should be dismissed for failure to state a claim when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir. 1991), *cert. denied*, 503 U.S. 936, 112 S. Ct. 1475, 117 L. Ed. 2d 619 (1992). To state a viable claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 75 U.S. 4337, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d

929 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Because the primary objective of Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims, a court is not bound by any legal conclusions that are included in the complaint. *Heckman v. University of North Carolina at Chapel Hill*, 19 F. Supp. 2d 468, 471 (M.D.N.C. 1998), *rev. denied*, 166 F.3d 1209 (4th Cir. 1998); *see also Gladden v. Winston Salem State Univ.*, 495 F. Supp. 2d 517, 520-21 (M.D.N.C. 2007) ("The presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the Complaint cannot support a finding of deliberate indifference." (quoting *Young v. City of Mount Rainer*, 238 F.3d 567, 577 (4th Cir. 2001)). A motion to dismiss should be "granted if there is either a lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Trolley v. Kivett*, No. 1:01-CV-410, 2002 U.S. Dist. LEXIS, at *5-6 (M.D.N.C. July 1, 2002).

### *Plaintiffs' Claims Against Defendant Wilson*

Plaintiffs' federal claims against Defendant Wilson include alleged violations of § 1983 and conspiracy to violate § 1983 arising out of: the Duke University key card reports (Count Twenty); the process for requesting DNA samples (Count Twenty-One); malicious investigation in violation of the Fourteenth Amendment (Count Twenty-Two); deprivation of property without due process (Count-Twenty-Four); false public statements (Count Twenty-Five); and Violation of 42 U. S. C. § 1983 Under *Monell v.Dep't of Soc. Servs.* (Count Twenty-six).

6

Plaintiffs' state law claims include: fraud and conspiracy to defraud (Count

Eight); abuse of process and conspiracy to abuse process (Count Ten); obstruction of

justice and conspiracy to obstruct justice (Count Twenty-Three); intentional infliction of

emotional distress (Count Twenty-Eight); negligent infliction of emotional distress

(Count Twenty-Nine); and negligence (Count Thirty).

## I. AS PLAINTIFFS HAVE NOT SUFFERED A CONSTITUTIONAL DEPRIVATION, THEIR § 1983 CLAIMS SHOULD BE DISMISSED AS A MATTER OF LAW

Section 1983 is not "a source of substantive rights, but a method for

vindicating federal rights elsewhere conferred by those parts of the United States

Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S.

137, 144, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979). In their Complaint, Plaintiffs

make a host of allegations that they contend constitute violations of Section 1983

(Counts Twenty, Twenty-One, Twenty-Two, Twenty-Four, Twenty-Five and Twenty-

Six).[2] However none of the alleged acts by Defendant Wilson resulted in a violation of

Plaintiffs' constitutional rights. Plaintiffs were never arrested or tried, only subjected to

scrutiny as part of a criminal investigation.

### A. The Fact That Plaintiffs Were Subject To An Investigation Is Not A Constitutional Injury

In Counts Twenty-Two and Twenty-Four, Plaintiffs allege that "Durham Investigators",

not specifically naming Defendant Wilson, along with each and every one of the listed

defendants, "instigated, promoted, and executed a malicious criminal investigation of

---

[2] Plaintiffs Complaint states that all claims against Defendant Wilson are in both his individual and official capacities. (Compl. ¶ 80). Official capacity claims are really claims against Defendant Wilson's employer the State of North Carolina, an entity Plaintiffs' have not sued directly.

plaintiffs" that caused them "grave reputational injuries". (Compl. ¶ 650). Even if the above allegations had some basis in fact, Plaintiffs' constitutional rights have not been violated. The parade of horrors listed above did not result in the arrest, indictment, trial or conviction of any of the Plaintiffs. The fact that an individual is the subject of an investigation, and incurs costs as a result, is not by itself cognizable under § 1983. *See Sloane v. Department of Housing and Urban Development*, 231 F.3d 10, 24 (D.C. Cir. 2000) ("[t]he law is clear, however, that 'there is no constitutional right to be free of investigation.'") There is no constitutional right "to be free from maliciously instigated and baseless investigations." *Biasella v. City of Naples, Florida*, No. 2:04-cv-320-FtM-29DNF, 2005 U.S. Dist. LEXIS 20211, at *12 (M.D. Fl. August 11, 2005). The fact that the investigation is undertaken for improper motives or out of personal animus is irrelevant, as an investigation by itself does not implicate any constitutional rights. The facts as alleged by Plaintiffs are analogous to those set out in *Biasella v. City of Naples, Florida*, where the plaintiff, a contractor, filed suit against the City of Naples, claiming that it had harassed him, destroying his business and reputation over a four year period. 2005 U.S. Dist. LEXIS at *4-5. The alleged harassment was supposedly in retaliation for the plaintiff's involvement in a contentious dispute over the amount of a bill the plaintiff's company had submitted to the city for work performed. *Id.* According to the plaintiff's amended complaint in *Biasella*, the defendant city instituted eleven different investigations of plaintiff with clear advance knowledge that he was innocent of all charges. *Id.* The true purpose of these investigations, according to the plaintiff, was for city officials "to further their own political careers" by harassing and prosecuting him. *Id.* at 11-12.

8

The Court in *Biasella* found that the plaintiff's constitutional rights were not violated, as he was "never arrested or charged with anything." *Biasella*, 2005 U.S. Dist. LEXIS at *13. The Court recognized that "[w]hile there is a cause of action . . . [against] investigators if they conduct a constitutionally deficient investigation and an arrest results from the investigation", there is "no particular level of evidence constitutionally required before a person may seek to instigate an investigation by authorities." *Biasella*, 2005 U.S. Dist. LEXIS at *13 (citing *Kingsland v. City of Miami*, 382 F.3d 1220, 1228-31 (11th Cir. 2004). Here, Counts Twenty-Two and Twenty-Four in Plaintiffs' Complaint suffer from the same fatal flaw as those in *Biasella*. Plaintiffs were never arrested or tried, only subjected to scrutiny as part of a criminal investigation. As such, they have suffered no harm to their constitutional rights. Allegations that Defendant Wilson sought to conceal or fabricate evidence, and that he attempted to intimidate witnesses, therefore fail to state a valid claim under § 1983. *See Biasella*, 2005 U.S. Dist. LEXIS at *13 ("the Amended Complaint asserts that all investigations ended favorably towards plaintiff and he was never arrested or charged with anything. While defendants may have committed a state tort, the alleged conduct does not amount to a constitutional violation within the Due Process clause."); *see also Baker v. McCollan*, 443 U.S. 137, 146, 99 S. Ct. 2689, 61 L. Ed. 2d 433 ("Section 1983 imposes liability for violations of rights protected by the Constitution, *not* for violations of duties of care arising out of tort law").

**B.     To The Extent Plaintiffs' Claims Are Based On The Violation Of Substantive Due Process Under The Fourteenth Amendment, They Fail As A Matter Of Law**

It is not clear if Counts Twenty-Two and Twenty-Four are alleging a separate Fourteenth Amendment violation or if they simply cite the Fourteenth Amendment to establish that the Fourth Amendment applies to the states. (See Compl. ¶¶ 636-37, 650).

To the extent that these counts are based on a separate claim under the Fourteenth
Amendment, they fail for an additional reason.

The Fourth Circuit has held that malicious prosecution claims based on the
Fourteenth Amendment are not cognizable. *See Osbourne v. Rose*, No. 97-1259, No. 97-
1264, 1998 U.S. App. LEXIS 850, at *12 (4th Cir. Jan. 20, 1998) (the Supreme Court's
decision in "*Albright* foreclosed malicious prosecution claims based on the Fourteenth
Amendment . . .") (citing *Albright v. Oliver*, 510 U.S. 266, 275, 114 S. Ct. 807, 127 L.
Ed. 2d 114 (1994)); *Taylor v. Waters*, 81 F.3d 429, 435-36 (4th Cir. 1996) ("[plaintiff's]
assertion that [police officer in question] failed to disclose exculpatory evidence does not
allege a deprivation of any right guaranteed under the Due Process Clause of the
Fourteenth Amendment"). In *Lambert v. Williams*, 223 F.3d 257, 260-61 (4th Cir. 2000),
the Fourth Circuit explicitly refused to recognize a § 1983 malicious prosecution lawsuit
based on alleged violations of substantive due process rights applied to state actors
under the Fourteenth Amendment. The Court in *Lambert* reasoned that what "is
conventionally referred to as a 'Section 1983 malicious prosecution' action is nothing
more than a '§ 1983 claim arising from a Fourth Amendment violation." 223 F.3d at 260.
Thus Plaintiffs must allege facts giving rise to a plausible claim that Defendant Wilson
engaged in an unconstitutional seizure in violation of the Fourth Amendment—something
their Complaint fails to do.

## C.  Plaintiffs' Claims Regarding Durham Investigators Involvement In The Application For A Nontestimonial Order Should Be Dismissed, As The Asserted Facts Do Not Support A Valid Section 1983 Claim

In Count Twenty-One, Plaintiffs allege that "Durham Investigators", (Defendant
Wilson), and others included "false" and "overbroad" information in their application for

10

a Nontestimonial Identification Order. (Compl. ¶ 630). Plaintiffs have never specifically alleged Defendant Wilson took part in any Nontestimonial Identification Order. Even if such allegations were true, they do not support a plausible claim that the application was insufficient or improper as a matter of law and, by extension, do not support a viable § 1983 claim.

Under North Carolina law, a Nontestimonial Identification Order may be obtained on a showing that a police officer has "reasonable suspicion" or "reasonable grounds" to believe that the subject may be responsible for a crime. *State v. Pearson*, 356 N.C. 22, 566 S.E.2d 50, 54 (2002). The "reasonable grounds standard required for . . . [a Nontestimonial Identification Order] is significantly lower" than the standard for probable cause. *Id.* This lower standard arises from the underlying purpose of an NTID Order, as "an investigative tool requiring a lower standard of suspicion that is available for the limited purpose of identifying the perpetrator of a crime." *Id.*

The North Carolina Supreme Court has defined the "reasonable grounds" standard as "similar to the reasonable suspicion standard applied to brief detentions" in cases such as *Terry v. Ohio. Pearson*, 356 N.C. at 28-29, 566 S.E.2d at 54 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). "The sole requirement is a minimal amount of objective justification, something more than an 'unparticularized suspicion or hunch.'" *Id. (*quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L.Ed.2d 1, 10 (1989) (quoting *Terry*, 392 U.S. at 27, 88 S. Ct. 1868, 20 L. Ed. 2d at 909)).

A fair reading of Plaintiffs' Complaint indicates that the NTID Application satisfies this reasonable grounds standard. The NTID Application: (1) recounted the

details of the complaining witness' allegation that three white males raped and sexually assaulted her; (2) asserted that a nurse with experience in forensic sexual assault investigation and a physician examined the accuser after the alleged incident and that the medical records and interviews "revealed the victim had signs, symptoms, and injuries consistent with being raped and sexually assaulted vaginally and anally" and "the injuries and her behavior were consistent with a traumatic experience"; and (3) asserted that three residents of the house where the alleged assault was to have occurred and stated that only lacrosse team members attended the party and that there were no strangers who appeared at the event. A copy of the NTID Application as filed by Defendant Himan is attached hereto as Exhibit 1[3].

The NTID Affidavit, like an affidavit supporting a search warrant, is entitled to a presumption of validity. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). The underlying purpose of this presumption is to encourage police officers to seek warrants, so that neutral judicial officers may serve as vital checkpoints between citizens and their government. *See id.* North Carolina Superior Court Judge Ronald L. Stephens served as this checkpoint, recognizing that the reasonable grounds standard was met here and properly issuing NTID Orders directing each white member of the Duke lacrosse team to be photographed and provide DNA samples on March 23, 2006

**1.    Plaintiffs Fail To Allege Facts Showing That The NTID Application Contained Willfully Fraudulent Statements That Were Necessary To The Judge's Approval of the NTID Application**

---
[3] A Court may consider documents referenced in the Complaint in determining whether to grant a Rule 12(b)(6) motion so long as there is no question about the authenticity of the documents. *Phillips v. LCi Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

12

To establish a valid § 1983 claim arising out of a warrant issued during a criminal investigation, a plaintiff must show that the officer in question deliberately or with a "reckless disregard for the truth" made material false statements in the affidavit or omitted from that affidavit "material facts 'with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading.'" *Miller v. Prince George's County, Maryland*, 475 F.3d 621, 628, (4th Cir. 2007) (quoting *United States v. Colkley*, 899 F.2d 297, 300 (4th Cir. 1990) (internal quotation marks omitted). It is not enough that there were fraudulent statements or omissions in the affidavit, these statements or omissions must be necessary to the approval of the order by the judge or magistrate. *Miller*, 475 F.3d at 628. Defendant Wilson made no such applications and is included only as a "Durham Investigators Defendant". Therefore this claim should be dismissed. *See Exhibit 1.*

Although Plaintiffs contend that the NTID Application included false assertions that "medical records and interviews . . . revealed the victim had signs, symptoms, and injuries consistent with being raped and sexually assaulted vaginally and anally," and that "the SANE nurse stated the injuries and her behavior were consistent with a traumatic experience"[4] and that Mangum had been "strangled", (Compl. § 205), they do not allege that Defendant Wilson, as part of a conspiracy with the "Durham Investigators", knew

---

[4] It is unclear how these particular allegations can be considered to have been false when made, as they are entirely consistent with Plaintiffs' factual allegations. Plaintiffs explicitly allege that potential causes for "diffuse edema of the vaginal walls" include sexual intercourse and use of a vibrator, (Compl. ¶ 126), and that the nurse who examined Mangum informed Investigator Himan that "there were signs consistent with sexual assault during her test." (Compl. ¶ 150). Defendant Wilson was not even involved in the case at this time in the investigation, according to Plaintiff's own allegations. (Compl. ¶ 401)

13

that these statements were false, nor do they allege that these assertions were necessary to the finding of reasonable suspicion. In fact, Plaintiffs' allegations are that "Durham Investigators" and others did not have access to this information, as this "medical evidence" was "in Duke's exclusive possession." (Compl. ¶ 206).

Plaintiffs likewise point to statements in the NTID Application regarding lost fake fingernails, (Compl. ¶ 206), the use of aliases during the supposed attack, (Compl. ¶ 208), and attempts by the players to conceal their sports affiliation, (Compl. ¶ 209), but there are no allegations that these statements were relied upon by the Court in its decision to approve the NTID Application. *See, e.g., Wilkinson*, 2006 U.S. Dist. LEXIS, at *20 ("even assuming as true that the affidavit [for a search warrant] contains false and fraudulent information, the Court still concludes that the Plaintiffs have failed to meet the two-pronged test [for attacking the validity of a search warrant] because Plaintiffs do not allege that such statements were necessary to the finding of probable cause"). Even if the NTID Application included a statement that "the physical and medical evidence was inconsistent"[5] with Mangum's accounts, and that the specifics of these accounts had changed over time, as Plaintiffs assert was required, they cannot establish that the NTID Application would have therefore been denied for that reason. A law enforcement officer is not required to provide all material exculpatory evidence in a warrant application. The warrant affidavit would only be invalid if "its inclusion in the affidavit would defeat

---

[5] Leaving aside, for the reasons described above that some of the allegations in the NTID Application are entirely consistent with Plaintiffs' Complaint. (Compl. ¶¶ 126, 150). Defendant Wilson was not even involved in the case at this time in the investigation, according to Plaintiff's own allegations. (Compl. ¶ 401)

probable cause . . ." *Colkley*, 899 F.2d at 301 ("an omission must do more than potentially affect the probable cause determination: it must be 'necessary to the finding of probable cause'") (quoting *Franks*, 438 U.S. at 156, 57 L. Ed. 2d 667, 98 S. Ct. 2674).

**2. The NTID Affidavit Provided Reasonable Grounds For The Identification Information Sought**

Plaintiffs assert, with the benefit of perfect hindsight, that investigators should have stopped the investigation prior to filing the NTID Application due to inconsistencies and Mangum's account of the assault and her alleged mental illness. (Compl. ¶¶ 2, 382). However the Fourth Circuit has never held that investigators are constitutionally required to stop the investigation of an alleged incident once potential problems with the accuser's allegations come to light. In fact, they have held that investigators must take their witness as they find him or her.

In *Torchinsky v. Siwinski*, the Fourth Circuit considered the validity of an arrest warrant based on the conflicting accounts of a purported assault where the supposed victim was the only witness to the alleged crime. 942 F.2d 257, 262 (4th Cir. 1990). The supposed victim, Bill Bull, was found battered and bloodied outside of his home and initially gave conflicting accounts of how he had been injured, including claiming he had been in an auto accident then claiming he had been assaulted in his home by two black males. *Id.* at 259.

The investigating officer later learned that Bull was bisexual and had been in a relationship with a man known as Stanley. *Torchinsky*, 942 F.2d at 259. The investigating officer suspected that Stanley had been the individual who assaulted Bull. *Id.* Two days later, the investigating officer interviewed Bull, who stated that he had actually been assaulted by Bill Torchinsky. *Id.* at 259-60. Bull repeated his accusation in a subsequent

interview in the presence of a nurse. *Id.* Siwinksi then sought and obtained an affidavit for Torchinsky's arrest. *Torchinsky*, 942 F.2d at 260. After the arrest, Bull recanted his allegation and the charges against Torchinsky were dismissed. *Id.* Torchinsky sued the investigating officer under § 1983. *Id.*

The district court dismissed the claims and the Fourth Circuit affirmed. *Torchinsky*, 942 F.2d at 263. In rejecting the contention that probable cause was lacking because of inconsistencies in the accuser's statements, the Fourth Circuit held:

> Under the circumstances, we believe Siwinski acted reasonably in relying on Bull's implication of the Torchinskys. Bull's other explanations of his injures had been given just before and just after he was transported to the hospital at a time when he was still experiencing the shock and trauma of the assault. Siwinski could reasonably believe that Bull's implication of the Torchinskys, given two full days after the attack, was the most credible and reliable account of the events. In addition, an officer could reasonably believe that a victim might be initially reluctant to discuss, or even try to hide, the details of an assault that also involved the intimate details of his somewhat unusual sex life. . . . Torchinsky's various contentions disregard the realities of police work that must inform qualified immunity analysis. Criminal investigations are often conducted under trying conditions over which officers have limited control. Here, for example, there was only witness to a brutal attack, the victim himself. Ideally, of course, additional witnesses would have been available and the victim would not have been so brutalized. In reality, however, the police were compelled to take the victim as they found him and do the best they could under the circumstances. *Id.*

Mangum made her inconsistent statements in the aftermath of a purported violent group assault. (Compl. ¶¶ 101-02, 376, 461). "Durham Investigator Defendants", Defendant Wilson, not named specifically rather lumped in this definition, and others had to take Mangum "as they found [her] and do the best they could under the

16

circumstances." *Torchinsky*, 942 F.2d at 263. It was reasonable for them to continue to

pursue the investigation and to seek identifying photographic and DNA information from

the white members of the Duke lacrosse team as part of it. Plaintiffs' claim that their

Constitutional rights were violated because they had to sit for photos and provide buccal

samples must be rejected, and Count Twenty-One dismissed. Defendant Wilson was not

even involved in the case at this time in the investigation, according to Plaintiff's own

allegations. (Compl. ¶ 401)

**3.     Plaintiffs' Allegations Regarding "False" and "Overbroad" Information In
The NTID Application Is Insufficient To Support A Viable Claim Under § 1983**

Anytime a plaintiff challenges an application for a court order, he is alleging

essentially fraudulent behavior. A plaintiff must therefore meet the requirements for

specific pleading under Fed. R. Civ. P. 9(b). *See Wilkinson v. Hallsten*, No. 5:06CV2,

2006 U.S. Dist. LEXIS, at *15-16 (W.D.N.C. August 2, 2006) (failure to identify what

information included in search warrant was fraudulent rendered claim insufficient

for purposes of Fed. R. Civ. P. 9(b)). Specific pleading requires that Plaintiffs

must plead the time, place and contents of the alleged fraudulent statements in

order to satisfy this standard. *See Harrison v. United States of America*, 176 F.3d

776 (4th Cir. 1999) (setting out pleading requirements under Fed. R. Civ. P. 9(b)).

Plaintiffs' general assertion that the NTID Application included "false" and

"overbroad" is insufficient as a matter of law. (Compl. ¶ 630).

**D.     As Plaintiffs Have Suffered No Constitutional Injury From The Release Of
Their University Key Card Information, Their § 1983 Claims Based On This
Release Should Therefore Be Dismissed**

In Counts Eight and Twenty, Plaintiffs allege that Defendant Wilson, not named specifically, however lumped as the "Durham Investigators", improperly and illegally received Plaintiff's key card information from Duke University. (Compl. ¶¶ 532, 536). Plaintiffs further allege that Defendant Wilson, not named specifically, however lumped as the "Durham Investigators", participated in the issuance and service of a so-called "sham subpoena" for these reports, despite already having them, with the intention of concealing the fact that Duke had previously shared this information. (Compl. ¶ 536). Even such a violation occurred, it cannot, as a matter of law, support a § 1983 claim against Defendant Wilson. Defendant Wilson was not even involved in the case at this time in the investigation, according to Plaintiff's own allegations. (Compl. ¶ 401)

Plaintiffs' Complaint correctly notes that this key card information is to be kept private according to the terms of the Federal Educational Rights and Privacy Act ("FERPA"). (Compl. § 327). However FERPA is clear that its terms are to be enforced by the Secretary of Education—it does not create a private cause of action or any ("we have never before held, and decline to do so here, that spending legislation drafted in terms resembling those of FERPA can confer enforceable rights [under § 1983]"). enforceable rights for private citizens. *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 69 (1st Cir. 2002) ("Our review of this [statute] . . . fails to reveal a shred of evidence that Congress intended FERPA to embody a private right of action. The . . . [legislative history] reinforces the plain language of the statute, charging the Secretary with enforcing its provisions and cautioning that failure to comply with those provisions can lead to the withdrawal of federal funding."). In fact, the Supreme Court has explicitly foreclosed

such claims. *Gonzaga University v. Doe*, 536 U.S. 273, 279, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002)

**E.      Plaintiffs Fail To Allege Any Specific False Public Statements By Defendant Wilson, As Such Their Claims Fail As A Matter Of Law**

Count Twenty-Five of Plaintiffs' Complaint generally alleges that Defendant Wilson, not named specifically, however lumped as the "Durham Investigators", "made multiple public statements that were knowingly false relating to . . . [his] criminal investigation of plaintiffs", (Compl. ¶ 655), and that these public statements constitute an actionable claim under § 1983. Aside from the obvious legal challenges to this claim, the fact is that Plaintiffs' Complaint does not specify what false statements Defendant Wilson supposedly made. As there are no allegations of specific false statements by Defendant Wilson that allegedly violated § 1983, there can be no cognizable claim against him for false statements in violation of § 1983. Plaintiffs do allege that Sergeant Gottlieb and Investigator Himan filed an affidavit in court asserting that medical records and an interview with the nurse who conducted the forensic investigation "revealed the victim had signs, symptoms and injuries consistent with being raped and sexually assaulted vaginally and anally." (Compl. ¶274). This statement is true based upon Plaintiffs own Complaint. (Compl. ¶ 150). Plaintiffs fail to allege sufficient facts that would indicate that Defendant Wilson, not named specifically, however lumped as the "Durham Investigators", had some reason to disbelieve the results that was received from the forensic investigation. Moreover, this statement simply asserts that the purported victim had medical symptoms consistent with rape. It includes nothing about the Plaintiffs or any other perpetrators of this supposed assault. This statement cannot constitute

defamation as a matter of law. *See Arnold v. Sharpe*, 296 N.C. 533, 539, 251 S.E.2d 453, 456 (1979).

Even if Defendant Wilson had allegedly made false statements regarding Plaintiffs, the fact remains that damage to one's reputation by itself is not a violation of a constitutional right. *Paul v. Davis*, 424 U.S. 693, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976); *Siegart v. Gilley*, 500 U.S. 226, 233, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991) ("injury to reputation by itself was not a 'liberty' interest protected under the Fourteenth Amendment"). As noted above, this is essentially a claim for defamation, which by itself does not constitute a violation of a constitutional right. *Id.*

Although Plaintiffs allege that they have "suffered deprivation of property interests without due process of law, including for certain plaintiffs lost economic and job opportunities . . . ", (Compl. ¶ 661), they fail to allege sufficient facts to support a plausible claim that they have suffered a constitutional injury. *See, e.g.*, *Mosrie v. Barry*, 718 F.2d 1151, 1158 (D.C. Cir. 1983) (financial or economic harm "caused by government imposed stigma does not transform an interest in reputation into a liberty interest"). The damages Plaintiffs complain of arise solely from the supposed defamatory statements. As such no constitutional rights are implicated. *See, e.g.*, *O'Malley v. Martin*, No. 94-11392, 1996 U.S. Dist. LEXIS, at *12 (D. Mass. February 29, 1996) (there is no law to support the plaintiff's position that "[h]e has a constitutionally protected privacy interest in 'being free from damaging and false accusations prior to an indictment being issued'"); *Smith v. Coughlin*, 727 F. Supp. 834, 843 (S.D.N.Y. 1989) ("There is no constitutional protection against the disclosure of the fact of an ongoing investigation.").

Plaintiffs further allege that, "[t]hese statements were intended to inflame the community against the plaintiffs in order to prolong the investigation and compromise the fairness of the subsequent proceedings . . . " (Compl. ¶ 658). There were no "subsequent proceedings" here. Plaintiffs were never indicted, tried, or even arrested, so efforts to "inflame the community" are to that extent irrelevant.

**F.      To The Extent Potential Section 1983 Claims Might Arguably Exist Against Defendant Wilson, They Are Barred By Qualified Immunity**

Even if Counts Eight, Twenty, Twenty-One, Twenty-Two, Twenty-Four, Twenty-Five and Twenty-Six stated viable causes of action under § 1983, they must still be dismissed as Defendant Wilson's actions are protected by the doctrine of qualified immunity and absolute immunity. Even if Defendant Wilson was required by his role as a district attorney investigator to circumvent the prosecutor and decide to conclude the investigation and/or provide all exculpatory evidence directly to defendants or the grand jury, the fact remains that Defendant Wilson's actions did not violate any "clearly established statutory or constitutional rights of which a reasonable person would have known" by failing to do so. *Simmons v. Poe*, 47 F.3d 1370, 1385 (4th Cir. 1995). As such, his actions are protected by qualified immunity.[6]

**1.      Absolute Immunity for Prosecutors**

The United States Supreme Court granted prosecutors absolute immunity for

_____

[6] Determination of qualified immunity may be made at either the motion to dismiss or summary judgment stage, however, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001) (citations omitted).

legally required to go around the prosecutor and directly provide exculpatory evidence to defendants or the grand jury. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999) (in determining whether a right was clearly established, courts do not ordinarily need to "look beyond the decisions of the Supreme Court, the [local Circuit] court of appeals and the highest court of the state in which the case arose . . . "). "[A] reasonable officer possessing the same information [as Defendant Wilson] would have believed his conduct was lawful." *Shaw v. Stroud*, 13 F.3d 791, 801 (4th Cir. 1994) (citation omitted).

## II. DEFENDANT WILSON CANNOT BE HELD LIABLE UNDER PLAINTIFFS STATE LAW CLAIMS, AS HIS ACTIONS ARE PROTECTED BY PUBLIC OFFICIAL IMMUNITY

In Counts Ten, Twenty-Three, Twenty-Nine and Thirty, Plaintiffs allege various common law claims, including abuse of process and conspiracy to abuse process, obstruction of justice and conspiracy to obstruct justice, negligent infliction of emotional distress and negligence. (Compl. ¶¶ 543, 644-45, 730, 736-38). These claims are generally based on the same factual allegations that underlie Plaintiffs' federal claims. The facts as alleged in Plaintiffs' Complaint make clear, however, that defendant Wilson's actions are protected from liability under the doctrine of public official immunity.

Under North Carolina law, a public official performing discretionary acts can be liable for wrongdoing only (1) if the wrongdoing occurs outside the scope of official authority or if the conduct is (2) intended to be prejudicial or injurious to the Plaintiff or (3) malicious or corrupt. David A. Logan and Wayne A. Logan, *North Carolina Torts* § 107 (2d Ed. 2004); *Moore v. Evans*, 124 N.C. App. 35, 42, 476 S.E.2d 415, 421 (1996). As an

actions taken within the scope of prosecutorial duties in *Imbler v. Pachtman*, 424 U.S. 409, 96 S. Ct. 984, (1976). *Imbler* involved a claim that prosecutors violated the civil rights of the Plaintiff under 42 U.S.C. §1983. In *Imbler*, the Court reviewed the common law tradition of granting immunity to prosecutors for various actions associated with their official duties. The Court found that absolute immunity at common law was granted in order to allow the prosecutor to carry out the duties of the office without having to worry about the possibility of litigation or unreasonably cautioned judgment. *Id.* at 422-423.

After review, the Court determined that absolute immunity was necessary to protect the fairness and integrity of the justice system. The Court stated that absolute immunity could result in situations where people were harmed by a dishonest prosecutor and had no legal redress. However, the Court opined that the possibility of retaliation against prosecutors ultimately posed a greater threat to the system, from a public policy standpoint, than abuse by dishonest officials. *Id.*

## 2.     Defendant Wilson is Entitled to Absolute Immunity as an Investigator Acting at the Direction of a Prosecutor

Since the *Imbler* decision, the protections of absolute immunity have frequently been extended to individuals other than prosecutors. In *Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S. Ct. 2606, (1993), the Supreme Court noted that absolute immunity applies to the "nature of the function performed, not the identity of the actor who performed it." *Id.* at 269. Other circuits have held that investigators are entitled to the same absolute immunity as prosecutors. *See Joseph v. Patterson* 795 F.2d 549 (6th Cir. 1986) (rev'd on other grounds); *Goncalves v. Reynolds* 198 F. Supp.2d 278 (W.D.N.Y. 2001); *Davis v. Grusemeyer* 996 F.2d 617 (3d Cir.1993); *Gobel v. Maricopa County*, 867 F.2d 1201(9th Cir. 1989). Each of these cases recognized the principle that investigators performing

tasks as a function of an ongoing investigation at the direction of a prosecutor should be entitled the same absolute immunity given to prosecutors. *See* e.g., *Davis,* 996 F.2d at 632.

This Circuit implicitly acknowledged the same principle in *Hoover v. Keith,* 2004 U.S. Dist. LEXIS 27943 (M.D.N.C. 2004). *Hoover* involved a charge of malicious prosecution brought by a prisoner acting pro se against a prosecutor and the prosecutor's assistant. The charges were based on an alleged violation of the prisoner's civil rights under 42 U.S.C. §1983. *Id.* at 1. The Court determined that the prisoner's suit should be dismissed because it was frivolous but alternatively held that the actions of both the prosecutor and his assistant were covered by absolute prosecutorial immunity. *Id.* at 3-4.

Applying this to the facts of the present case, Defendant Wilson was at all relevant times duly employed as a prosecutorial investigator acting at the direction of District Attorney Nifong as Durham County District Attorney. District Attorney Nifong assigned Defendant Wilson several tasks related to the investigation of the criminal case. (Compl. ¶ 401). Throughout the performance of these tasks and at all relevant times, Defendant Wilson acted only when tasks were expressly delegated by District Attorney Nifong as part of the investigation and preparation of the prosecution's case for trial. As such, Defendant Wilson's actions in his role as an investigator are entitled to the same protections of absolute immunity which are afforded to a prosecutor.

**3. Defendant Wilson's Actions Are Prosecutorial in Nature and Fall Within the Scope of Absolute Immunity as Defined by the Courts**

The doctrine of absolute immunity is not without limits and only extends to actions which can be fairly classified as "prosecutorial." *Burns v. Reed,* 500 U.S. 478,

111 S. Ct. 1934, (U.S. 1991). In *Burns,* the Court held that absolute immunity is extended to those functions which are considered to be prosecutorial in nature, as opposed to those functions which can be classified as "administrative" or "investigative" functions which are not traditionally within the province of a judicial officer. *Id.* at 494-496. Further, the Court in *Imbler* noted that absolute immunity should be granted for actions which "intimately associated with the judicial phase of the criminal process." *Imbler,* 424 U.S. at 430. The precise line between administrative and investigatory functions on the one hand, and prosecutorial functions which are "intimately associated with the judicial process" on the other, is drawn with respect to the factual circumstances present in each case. The administrative/investigatory activity and the prosecutorial functions are examined below.

### 1. Administrative/Investigatory Activity

None of the alleged actions of Defendant Wilson are administrative or investigatory in nature. Each action was different from the actions taken in *Buckley* because Defendant Wilson acted in each instance either after indictment with a focus on the pending criminal trial, or else his actions were so intimately associated with the judicial process so as to be considered "prosecutorial" in nature and thus entitled to the protections of absolute immunity.

In *Buckley,* the Supreme Court was faced with the question of whether a prosecutor's actions in attempting to identify the source of a bootprint at the scene of a murder were entitled to absolute immunity. The Court noted:

> "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Id* at 273-274.

24

In an effort to charge an unindicted suspect with the crime, the prosecutors sought an expert who would provide them with a positive identification of the bootprint following three unsuccessful identifications from previous sources. *Id.* Based on the fact that the attempts to fabricate evidence took place prior to a grand jury indictment and in the preliminary investigation of the crime, before there was probable cause to have anyone arrested, the Court held that such activity was essentially police activity that could be classified as "investigatory" in nature, and therefore not entitled to the protections of absolute immunity. *Id.* Other actions that have been held to be investigatory in nature are: making public statements to the media, *Buckley,* 509 U.S. at 277; giving legal advice to the police, *Burns,* 500 U.S. at 565; and preparing a declaration in support of a search warrant, *Fletcher v. Kalina,* 93 F.3d 653 (9th Cir. 1996).

### 2. Prosecutorial Functions

All of the actions taken by Defendant Wilson are entitled to absolute immunity because they are prosecutorial as that term has been defined by courts. Under this definition, any function that cannot be fairly classified as administrative or investigatory is prosecutorial and thus entitles the actor to absolute immunity. The scope of what constitutes a prosecutorial function is not governed by the legality or constitutionality of the action; many actions that could give rise to a cognizable legal claim are protected by absolute immunity when performed within the scope of prosecutorial duties. *Carter,* 34 F.3d at 261. In *Carter,* the Fourth Circuit held that the act of withholding materially exculpatory evidence was entitled to prosecutorial immunity. *Id.* at 263. The Court, citing *Imbler,* noted that withholding evidence both before and during a trial can fairly be classified as prosecutorial because: "preparation, both for the initiation of the criminal

25

process and for a trial, may require the obtaining, reviewing and evaluating of evidence."
*Id.*, citing *Imbler*, 424 U.S. at 431.

In addition to the withholding of materially exculpatory evidence, the Fourth
Circuit has also held that the decision of "whether and when to prosecute" is entirely
within the province of the prosecutor. *Lyles v. Sparks* 79 F.3d 372, 377 (4th Cir. 1996),
citing *Imbler*, 424 U.S. at 431. *Lyles* involved allegations of wrongful prosecution
against an Assistant United States Attorney and members of the United States Postal
Service for their actions in initiating and maintaining criminal charges against a merchant
accused of defrauding contact lens suppliers. The Plaintiffs alleged that their indictments
in the case were secured through subornation of perjury and that various other false
statements were made during judicial proceedings. *Id.* at 375. Nonetheless, The *Lyles*
Court recognized that the issue of when a prosecutor functions as an administrator rather
than an officer of the court can be a difficult determination, but "absolute immunity
protects prosecutors' decisions 'whether and when to prosecute.'" *Id. at 377.*

Other courts dealing with the issue have expanded the scope of absolute immunity
to cover other illegal actions taken by judicial officers in the course of performing their
judicial duties. The result is a very broad range of conduct which is considered to be
prosecutorial and thus protected by absolute immunity. *See Brownlee v. Van Court*, 2007
U.S. Dist. LEXIS 78498 (E.D. Cal. 2007) (concealment of evidence); *Brandley v.
Keeshan*, 64 F.3d 196 (5th Cir. 1995) (intimidation of witnesses and suppression of
evidence); *Kennedy v. Grattan Twp.*, 2007 U.S. Dist. LEXIS 30980 (W.D. Mich. 2007)
(allegations of conspiracy are "irrelevant as a motive" for purposes of absolute
immunity).

A cause of action under § 1983 requires more than a claim that Defendant Wilson violated a right guaranteed under the U.S. Constitution; that right must also have been clearly established at the time of the alleged violation. *See Saucier v. Katz*, 533 U.S. at 201-02, 121 S. Ct. 2151, 150 L. Ed. 2d 272. For a police officer to lose his qualified immunity "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). "The right must be sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful." *Gooden v. Howard County*, 954 F.2d 960, 968 (4th Cir. 1992) (quoting *Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir. 1986)). The applicability of qualified immunity is to be assessed at "the time at which the action or inaction occurred." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982); *see also Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989) (determination regarding the reasonableness of an officer's use of force should not be judged "with the 20/20 vision of hindsight").

There is no legal support for Plaintiffs' implicit contention that the failure to take action to terminate an investigation after it has been initiated constitutes a violation of § 1983. *See, e.g., Brooks v. City of Winston Salem*, 85 F.3d 178 (4th Cir. 1996) (plaintiff's claim that investigator "failed to attempt to have the criminal proceedings terminated after it became apparent that . . . [plaintiff] was not the perpetrator fails to state a claim upon which relief may be granted").

There is likewise little legal support for Plaintiffs' implicit argument that a "reasonable person" in Defendant Wilson's position should have known that he was

investigator employed by the District Attorney of the Fourteenth Prosecutorial District, State of North Carolina engaged in the prosecution of an alleged crime, Defendant Wilson is a public official for purposes of the public official immunity doctrine. *See Campbell v. Anderson*, 156 N.C. App. 371, 376, 576 S.E.2d 726, 730 (2003).

Even though Defendant Wilson is not specifically named but grouped as a "Durham Investigator" the law presumes that "in the performance of his official duties [the officer] 'acts fairly, impartially, and in good faith and in the exercise of sound judgment or discretion, for the purpose of promoting the public good and protecting the public interest." *Green v. Town of Valdese*, 306 N.C. 79, 82, 291 S.E.2d 630, 632 (1982). It is the Plaintiffs' burden to overcome this presumption and "make a prima facie showing that the official's actions (under the color of authority) are sufficient to pierce the cloak of official immunity." *Moore*, 124 N.C. App. at 42, 476 S.E.2d at 421. Plaintiffs fail to satisfy this burden and, as such, their state law claims must be dismissed. Plaintiffs' allegations do not create a plausible inference that Defendant Wilson, as the "Durham Investigators", acted outside the scope of his employment, acted corruptly (e.g., for personal benefit), or that he "intends to be prejudicial or injurious" to Plaintiffs. *Marlowe v. Piner*, 119 N.C. App. 125, 128, 458 S.E.2d 220, 223 (1995). Plaintiffs detail a host of alleged improper actions Defendant Wilson, not named specifically rather as the "Durham Investigators", took during the course of the investigation, but they fall short of pleading specific facts to support a claim that he acted outside the scope of his authority, was corrupt or "intends . . . to be prejudicial or injurious" to Plaintiffs. *Marlowe*, 119 N.C. App. at 128, 458 S.E.2d at 223; *see also Jetton v. Caldwell County Board of Education*, No. COA05-1389, 2007 N.C. App. LEXIS 1699, at *17-18 (August 7, 2007)

("While Defendants may not have always acted in a professional manner, or treated Plaintiff with patience, respect, or kindness, there is no evidence that they intended to hurt Plaintiff. Any alleged harm resulting to Plaintiff from Defendants' allegedly improper conduct was simply a collateral consequence").

Plaintiffs' Complaint does not describe any alleged conduct of Defendant Wilson that was intended to cause the specific Plaintiffs injury, that was corrupt (i.e., for his undue benefit), or that occurred outside the scope of his duties as an investigator. *See Marlowe*, 119 N.C. App. at 128, 458 S.E.2d at 223 (granting summary judgment dismissing claims against deputy sheriff in his individual capacity for false imprisonment and false arrest based on public official immunity where evidence showed that "[a]t most" plaintiff had presented evidence showing that defendant "negligently believed he had probable cause to arrest plaintiffs").

Plaintiffs assert that Defendant Wilson engaged in a conspiracy that involved the use of keycard information provided by Duke University that they contend was protected by FERPA. (Compl. §§ 325, 327). According to Plaintiffs, this information was used by Investigator Himan or other investigators to identify which players from the lacrosse team were to be included in the April 4th photo identification procedure. (Compl. ¶ 326). Such a use would have been a critical part of Investigator Himan's duties. Likewise, had Investigator Himan actually made any false statements to the public regarding the Plaintiffs, (Compl. § 655), they would have been made pursuant to his duties as an investigator. At no time has the Plaintiffs alleged that Defendant Wilson specifically was involved in obtaining or using keycard information provided by Duke University and in their own complaint they allege that Defendant Wilson became involved in the

investigation on or around April 20, 2006 which is after the keycard information was obtained by Investigator Himan. (Compl. ¶ 401). Defendant Wilson contents his involvement came much later in the case, after all indictments, and was for preparation of trial.

## III. PLAINTIFFS' OBSTRUCTION OF AND CONSPIRACY TO OBSTRUCT PUBLIC JUSTICE CLAIM FAILS AS A MATTER OF LAW

Count Twenty-Three for common law obstruction of justice fails as a matter of law, as the facts as alleged by Plaintiffs fail to support such a claim. Although the language of the tort is broadly defined, creating a cause of action against any entity that performs an act that prevents, obstructs, impedes, or hinders public or legal justice, *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 33, 588 S.E.2d 20, 29-30 (2003), these elements are not effectively pled in Plaintiffs Complaint.

Plaintiffs allege that Defendant Wilson, not named specifically rather as the "Durham Investigators", investigated an alleged sexual assault based in part on medical evidence as described to Investigator Himan by a nurse who conducted a forensic investigation. (Compl. §150). Plaintiffs likewise allege that Defendant Wilson, not named specifically rather as the "Durham Investigators", shared all information Investigator Himan uncovered, both inculpatory and exculpatory, with District Attorney Michael Nifong. (Compl. ¶¶ 268, 306). These alleged actions do not support a finding that Defendant Wilson impeded or hindered public justice. *Compare Reed v. Buckeye Fire Equip.*, 241 Fed. App'x 917, 919 (4th Cir. 2007) (obstruction of justice claim where there was an attempt to blackmail plaintiff by threatening to reveal extramarital affair in exchange for plaintiff's not going forward with a claim under the Family Medical Leave Act); *Jackson v. Blue Dolphin Communs. Of N.C., LLC*, 226 F. Supp. 2d 785 (W.D.N.C.

2002) (obstruction of justice claim where employee terminated in retaliation for her refusal to sign false affidavit in unrelated matter); *Henry v. Deen*, 310 N.C. 75, 310 S.E.2d 326 (1984) (obstruction of justice claim where physician intentionally altered medical records).

## IV. PLAINTIFFS FAIL TO ALLEGE COGNIZABLE NEGLIGENCE AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIMS AGAINST DEFENDANT WILSON

### A. Defendant Wilson Did Not Owe Plaintiffs A Duty For Purposes Of Their Negligence Claims

Counts Twenty-Nine, for negligent infliction of emotional distress, and Thirty, for negligence, fail for a further reason – Defendant Wilson did not owe them a duty for purposes of such claims. An actionable negligence claim exists where there is "a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff, under the circumstances in which they were placed." *Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (quoting *Mattingly v. N.C.R.R. Co.*, 253 N.C. 746, 750, 117 S.E.2d 844, 847 (1961)). No reported North Carolina decision addresses the question of whether a law enforcement officer's alleged negligence in the course of the investigation of a crime is an actionable tort. However other jurisdictions have held that no such cause of action exists. *See Fondren v. Klickitat County*, 905 P.2d 928 (Wash. App. 1995) (a claim for negligent investigation is not cognizable under Washington law); *Wimer v. State of Idaho*, 841 P.2d 453 (Idaho 1993) (holding that a claim for negligent investigation does not exist and stating that to hold otherwise would "impair vigorous prosecution and have a chilling effect on law enforcement"); *Lewis v. McDorman*, 820 F. Supp. 1001 (W.D. Va. 1992), *aff'd*, 28 F.3d 1210 (4th 1994) (police officers owe no duty of reasonable care in conducting

investigations). Defendant Wilson makes this argument based on the fact that he is lumped with the "Durham Investigators", who were all police officers except him. Defendant Wilson is not named specifically in any of these claims.

As an investigator for a prosecutorial jurisdiction, Defendant Wilson owed a duty to the public, not to Plaintiffs in particular. By investigating Mangum's claims, including searching for suspects and physical evidence, Defendant Wilson was fulfilling this duty by preparing the case for trial as directed by the district attorney for the prosecutorial district within the State of North Carolina. There is no legal basis for Plaintiffs' allegation that he owed them a separate duty in conducting his investigation.

## B. Plaintiffs Fail to Allege The Required Elements For Negligent Infliction of Emotional Distress

Plaintiffs fail to allege sufficient facts to support their claim for negligent infliction of emotional distress in Count Twenty-Nine. The essential elements for such a claim are that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress and (3) that the conduct caused such severe emotional distress." *Johnson v. Ruark Obstetrics & Gynecology Assoc., P.A.*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990) (citations omitted). "Severe emotional distress" is defined as "any emotional or mental disorder, such as, for example neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Id.*

Plaintiffs fail to allege both that it was foreseeable that Defendant Wilson's alleged actions would cause them severe emotional distress and that they suffered from sufficiently severe emotional distress.

Instead, Plaintiffs generally allege that Defendant Wilson, as part of the "Durham Investigators", engaged in conduct that breached their "identified duties of care." (Compl. ¶¶ 729-730). However Plaintiffs do not identify any specific acts that were supposedly negligent, instead incorporating the same acts they identify as intentional in Count Twenty-Eight. This Court has previously recognized that "when the plaintiff's complaint alleges acts . . . that are intentional in nature, and simply concludes that the acts were committed negligent, it is insufficient to state a claim for negligent infliction of emotional distress." *Sabrowski v. Albani-Bayeux, Inc.*, No. 1:02-CV-728, 2003 U.S. Dist. LEXI 23242, at *16-17 (M.D.N.C. Dec. 19, 2003) (quoting *Barbier v. Durham County Bd. Of Educ.*, 225 F. Supp. 2d 617 (M.D.N.C. 2002)).

## V.     THE FACTS ALLEGED BY PLAINTIFFS DO NOT SUPPORT A VIABLE CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendant Wilson's supposed acts of "knowingly making false public statements condemning the plaintiffs for committing rape and hiding behind a conspiracy of silence, suppressing exculpatory evidence and fabricating false inculpatory evidence," (Compl. ¶¶ 384, 423, 427, 700), does not qualify as sufficiently extreme or outrageous conduct to support a claim intentional infliction of emotional distress. Count Twenty-Eight of Plaintiffs' Complaint therefore fails as a matter of law. Defendant Wilson is not mentioned in Plaintiff's complaint as taking part in the meetings held between Nifong, Clarke, Meehan, Gottlieb and Himan. (Compl. ¶ 384) Nowhere in the Plaintiff's complaint is it alleged that Defendant Wilson specifically did anything to suppress or discredit any exculpatory information made by the officers on the scene on March 14.

2006. (Compl. ¶¶ 423, 427,). Again Plaintiff's own complaint states Defendant Wilson became involved in the investigation on or around April 20, 2006. (Compl. ¶ 401).

To establish a valid claim for intentional infliction of emotional distress, a plaintiff must allege: (1) extreme and outrageous conduct; (2) which is intended to cause and does cause; (3) severe and disabling emotional distress. *Dickens v. Puryear*, 302 N.C. 437, 452-53, 276 S.E.2d 325, 335 (N.C. 1981). For conduct to qualify, it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded at atrocious, and utterly intolerable in a civilized community." *Bradley v. Lowe's Cos.*, 3:05CV488-MU, 2007 U.S. Dist. LEXIS 69872, at *10 (W.D.N.C. Sept. 20, 2007) (quoting *Briggs v. Rosenthal*, 73 N.C. App. 672, 677, 327 S.E.2d 308, 311 (N.C. App. 1985). Plaintiffs must allege facts that, if later proved, "exceed all bounds of decency," *Peck v. Town of Lake Lure*, 1:00cv183-T, 2001 U.S. Dist. LEXIS 13179, at *15 (W.D.N.C. Feb. 23, 2001) (internal quotations omitted), or are "regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *Wagoner v. Elkin City School Bd. of Educ.*, 113 N.C. App. 579, 440 S.E.2d 119, 123 (1994).

Plaintiffs' alleged behavior is not sufficiently extreme or atrocious. Plaintiffs do not allege that Defendant Wilson, as part of the "Durham Investigators", threatened or used force against them, only that he, not named specifically rather as a "Durham Investigator", aggressively investigated Mangum's claims and participated in the ongoing very public efforts to find the supposed culprits. *See, e.g., Dickens*, 302 N.C. at 447, 276 S.E.2d at 332 (valid claim of intentional infliction of emotional distress where defendants threatened plaintiff's life, pointed a gun between his eyes, beat him with a nightstick and

threatened him with castration). It does not compare with a husband's knowing of and intentionally refusing to pay a tax deficiency as part of a separation agreement, resulting in foreclosure of the wife's home, *Stanback v. Stanback*, 297 N.C. 181, 254 S.E.2d 611 (1979), or with a private citizen placing posters of Plaintiff in public places, approaching other citizens, including teachers and students in high school within the jurisdiction where defendant was a superintendent, and reading or showing portions of papers about the plaintiff's *nolo contendere* plea while a college student decades earlier. *Woodruff v. Miller*, 64 N.C. App. 364, 307 S.E.2d 176 (1983).

Under the reasoning in *Kennedy*, the fact that there might have been a conspiracy to engage in these actions is irrelevant because the motives of Defendant Wilson do not provide the standard for determining whether he is entitled to immunity for his actions. *Kennedy* at 14. The proper inquiry is to look to the nature of the underlying action and not necessarily to the motives of the actors. *See e.g., Burns*, 500 U.S. at 506. Since the actions of Defendant Wilson are entitled to absolute immunity because they were done in preparation for trial, it is of no consequence that there might have been a conspiracy to engage in the actions. The nature of the action protected by absolute immunity does not become any more or less protected simply because it is undertaken as part of an alleged conspiracy.

The claim for intentional infliction of emotional distress against Defendant Wilson individually is necessarily dependent on there being a cause of action on the other charges and must also be dismissed. Plaintiffs' complaint accuses Defendant Wilson, acting individually and in concert with others, of fraud, duplicity, deceit and conscience-shocking breaches of public trust an abuses of public authority. (Compl. ¶ 723-728).

36

These alleged actions of Defendant Wilson were performed as part of his official duties (Compl. ¶ 727) in his role as an assistant acting at the direction and supervision of a prosecutor. For compelling policy reasons, there can be no tort action against a public official, in an individual capacity, whose conduct falls within the accepted boundaries for absolute immunity. *Barr v. Matteo*, 360 U.S. 564, 79 S. Ct. 1335 (1959); *See also*, *Andrejko v. Sanders*, 638 F. Supp. 449 (W.D. Pa. 1986). The cause of action for intentional infliction of emotional distress against Defendant Wilson individually must therefore be dismissed because all of the actions giving rise to a potential claim for intentional infliction of emotional distress are prosecutorial in nature and protected by the doctrine of absolute immunity.

## CONCLUSION

Plaintiffs' claim that their Constitutional rights were violated because they had to sit for photos and provide a buccal sample must be rejected. Plaintiffs identify no underlying violation of their constitutional rights. As such, their federal claims against Defendant Wilson must be dismissed as a matter of law.

The alleged facts set out that Defendant Wilson, as one of the "Durham Investigators", was assigned to investigate an allegation of rape, participated in the investigation consistent with his duty as an investigator for the 14th Prosecutorial District of the State of North Carolina and then turned over all information he uncovered in the preparation for trial to District Attorney Michael Nifong. Although Plaintiffs detail a host of purportedly improper actions by Defendant Wilson, they do not make specific allegations that would support a viable cause of action against him under federal or state law.

All causes of action against Defendant Wilson must be dismissed because they are either insufficiently pled, barred by the doctrine of absolute immunity, or both. Accordingly, Defendant Wilson respectfully moves this Court to dismiss all claims with prejudice.

Respectfully submitted this the 27th day of June, 2008.

Linwood E. Wilson,
*Pro Se*

# CERTIFICATE OF SERVICE

The undersigned further certifies that the foregoing document was served by first-class mail, postage prepaid to the following participants:

Charles J. Cooper, David H. Thompson
Brian S. Koukoutchos, Nicole Jo Moss
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036

William J. Thomas, II
Thomas, Ferguson & Mullins, L.L.P.
119 East Main Street
Durham, NC 27701
*Attorneys for Plaintiffs*

Dan J. McLamb, Shirley M. Pruitt
T. Carlton Younger, III
Yates, McLamb & Weyher, L.L.P.
P.O. Box 2889
Raleigh, NC 27602
*Attorneys for Defendants Duke University Health System, Inc., Theresa Arico, R.N. and Tara Levicy, R.N.*

J. Donald Cowan, Jr., Dixie T. Wells
L. Cooper Harrell
Smith Moore LLP
P.O. Box 21927
Greensboro, NC 27420

William F. Lee
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109

Jamie Gorelick, Jennifer M. O'Connor, Paul R.Q. Wolfson
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
*Attorneys for Defendants Duke University, Richard H. Brodhead, Peter Lange, Larry Moneta, John Burness, Tallman Trask, Suzanne Wasiolek, Matthew Drummond, Aaron Graves, Robert Dean, Kate Hendricks and Victor J. Dzau*

Reginald B. Gillespie, Jr.
Faison & Gillespie

P.O. Box 51729
Durham, NC 27717-1729
*Attorneys for Defendant City of Durham, North Carolina*

James B. Maxwell
Maxwell, Freeman & Bowman, P.A.
P.O. Box 52396
Durham, NC 27717-2396
*Attorneys for Defendant David Addison*

Edwin M. Speas, Jr., Eric P. Stevens
Poyner & Spruill LLP
P.O. Box 10096
Raleigh, NC 27605-0096
*Attorneys for Defendant Mark Gottlieb*

Patricia P. Kerner , D. Martin Warf ,Hannah G. Styron
Troutman Sanders LLP
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601
*Attorneys for Defendants Patrick Baker, Steven Chalmers, Ronald Hodge, Lee Russ,*
*Stephen Mihaich, Beverly Council, Jeff Lamb and Michael Ripberger*

Paul D. Coates, Kenneth Kyre, Jr.
Pinto Coates Kyre & Brown, PLLC
P.O. Box 4848
Greensboro, NC 27404
*Attorneys for Defendant J. Wesley Covington*

Joel M. Craig, Henry W. Sappenfield
KENNON, CRAVER, BELO, CRAIG & MCKEE, PLLC
4011 University Drive, Suite 300
P.O. Box 51579
Durham, NC 27717-1579
*Attorneys for Defendant Benjamin Himan*

This the 27th day of June, 2008.

Linwood E. Wilson,
*Pro Se*