IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:08-cv-119

_____
                                   )
**EDWARD CARRINGTON, et al.,**     )
                                   )
              **Plaintiffs,**      )
**v.**                             )
                                   )
**DUKE UNIVERSITY, et al.,**       )
                                   )
              **Defendants.**      )
_____)

## PLAINTIFFS' OPPOSITION TO DEFENDANT J. WESLEY COVINGTON'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

### I.  NATURE OF PROCEEDINGS

We state the nature of the proceedings elsewhere.  Plaintiffs Opposition to City of Durham's Motion to Dismiss ("Pls.' Durham Opp.") Part I.  This brief addresses the motion to dismiss under Rule 12(b)(6) of J. Wesley Covington.

### II.  STATEMENT OF FACTS

Defendant Covington sets the theme for his motion to dismiss by taking issue with the facts alleged in the Complaint.  Covington objects to being included in this lawsuit because of what he characterizes as the "insignificant nature of Wes Covington" amidst "a large array of people, covering a period of 13 months," compared to the "improper conduct of Wes Covington [which] took place over, at most, only seven days."  Brief in Support of Defendant Covington's Motion to Dismiss ("Covington Br.") 3.  But this is a

motion to dismiss under Rule 12(b)(6)[1]—we are a long way from a jury apportioning damages liability among multiple tortfeasors. Defendant Covington also strives to distinguish himself from other Defendants by asserting that he is the only one of the 18 "Duke Defendants" who "is not tied to, employed by, or is an agent of, Duke University." Covington Br. 4 (emphasis added). Covington implores the Court that "this context should not be forgotten." *Id.*

But Covington's "context" is false—more important, it impermissibly disputes in a Rule 12(b)(6) motion the facts alleged by Plaintiffs. The Complaint alleges that Covington was closely associated with, and working for, Duke. Duke Dean Wasiolek, who brought him into the case, "had a close relationship with Covington, and Covington had often been engaged by Duke to handle potentially embarrassing or controversial legal problems." Carrington Complaint ("Compl.") ¶ 169. Covington told the lacrosse players and their parents, "I'm advising Duke." *Id.* ¶ 201; *see also id.* ¶¶ 552-54, 561-62. He explained to them, "I do this all the time for Duke." *Id.* ¶ 175. "Referring to his close relationship with Dean Wasiolek, Covington assured the co-captains that he had dealt with similar matters in the past and that he would make the problem 'go away.' " *Id.* ¶ 171.

At the same time, the Complaint alleges that Covington was "engaged in covert

---

[1] Actually, insofar as Covington has filed an answer with his motion, he appears to be making a motion for judgment on the pleadings. In any event, the standard of review is the same.

discussions both with Duke officials and with Gottlieb [and] Himan" and worked to implement the strategy, that he had formulated with Duke and the Durham police, to have the entire lacrosse team surrender DNA samples and be interrogated (without counsel) by the police. *Id*. ¶¶ 178, 196-98. Thus, just "[a]s Dean Wasiolek had done, Covington held himself out as an advisor to the players, dissuading them from retaining other counsel, while secretly acting on behalf of Duke and its administrators." *Id*. ¶ 173. The allegations about his duplicitous role that Covington impermissibly disputes are important to this case, particularly in light of his prior disciplinary problems. *See id.* ¶ 170. Covington is, of course, free to contest this and all other allegations at trial, but these are jury questions that cannot be resolved on a motion to dismiss.

### III. QUESTIONS PRESENTED

1. Whether Plaintiffs have stated a claim for constructive fraud (Count 11).
2. Whether Plaintiffs have stated a claim for breach of the duty of care in a voluntary undertaking (Count 12).
3. Whether Plaintiffs have stated a claim under 42 U.S.C. § 1983 (Count 22).
4. Whether Plaintiffs have stated a claim for obstruction of justice (Count 23).

### IV. STANDARD OF REVIEW

Defendant Covington contends that the standard of review was recently modified in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). Cov. Br. 12-14. He is mistaken. We answer Covington's *Twombly* argument and present the correct the standard of review elsewhere. *See* Pls.' Durham Opp. Part IV.

V.   **ARGUMENT**

Defendant Covington advances a variety of challenges to Plaintiffs' claims. As explained below, none of Defendant's arguments has merit.[2]

### A. Count 11 Adequately Pleads a Relationship of Trust and Confidence and Therefore a Claim for Constructive Fraud

Defendant Covington argues that the Complaint insufficiently alleges facts and circumstances creating a relationship of trust and confidence, which is an element of a claim for constructive fraud, between Plaintiffs and him. Covington Br. 14. He objects that the Complaint inconsistently attributes such a relationship to him because other allegations "indicate that Covington was not acting as the plaintiffs' lawyer." *Id*. at 15. Defendant misstates both the Complaint and the law.

There is nothing inconsistent in alleging a relationship of trust and confidence while also alleging that an attorney denied having an attorney-client relationship with the plaintiff. "Confidential relationship" is a very "broad term" that encompasses "any relation that may exist between two or more persons with respect to the rights of persons or the property of either." *Terry v. Terry*, 273 S.E.2d 674, 677-78 (N.C. 1981) (citation and quotation marks omitted). The North Carolina courts reversed dismissal of a constructive fraud claim against a lawyer in *Booher v. Frue ("Booher I")*, where the

---

[2] We incorporate into this opposition all oppositions filed today by Plaintiffs against the motions to dismiss of the Duke University Defendants, the Duke SANE Defendants, Defendant City of Durham, the Durham Supervisor Defendants, Defendant Gottlieb, Defendant Himan, Defendant Wilson, Defendant Addison, and Defendant Covington. Cross references to specific sections of Plaintiffs' other oppositions are provided throughout this brief

4

"plaintiffs stated in their complaint that they never retained [lawyer-defendant] Payne to represent them in any capacity" and further alleged "that they assumed he worked for" another defendant, Frue. 358 S.E.2d 127, 128-29 (N.C. Ct. App. 1987), *aff'd*, 364 S.E.2d 141 (N.C. 1988). The North Carolina Court of Appeals held that a confidential relationship could exist nonetheless. *Id*. Later, in *Booher II*, the Court of Appeals reversed an award of summary judgment to the defendant attorney and remanded for jury trial on the existence of a confidential relationship, despite the fact that "the plaintiffs' depositions reveal[ed] a total disavowal of any confidential or fiduciary relationship between plaintiffs and Payne." *Booher v. Frue*, 392 S.E.2d 105, 106 (N.C. Ct. App. 1990), *review denied*, 402 S.E.2d 410 (N.C. 1991).

The North Carolina Supreme Court explained (in a case relied upon by Covington) that it is, "indeed, a part of equity doctrine not to define [constructive fraud] … lest the craft of men should find a way of committing fraud which might escape such a rule or definition." *Terry*, 273 S.E.2d at 677 (citation and quotation marks omitted). The "inferences legitimately deducible from all the surrounding circumstances" can furnish "ample ground" for ruling that there was a relationship of trust, "often in the teeth of positive testimony to the contrary." *Id*.

Even state bar discipline can be imposed on an attorney, under the heightened burden of "clear, cogent and convincing" evidence, despite an attorney's protests that the complainant was not his client. In *North Carolina State Bar v. Sheffield* an attorney was suspended for three years for failing to take care of a civil action after an attorney-client

relationship was held to have been created. 326 S.E.2d 320, 322-23, 325 (N.C. 1985).
The lawyer testified that he had told the complainant "at least twice he would not represent him, and sent him two letters to the same effect," but the court nonetheless found "ample evidence to support . . . that defendant accepted employment." *Id*. at 325. The "relation of attorney and client may be implied from the conduct of the parties, and is not dependent on the payment of a fee, nor upon execution of a formal contract." *Id*. The "dispositive question" is "whether defendant's conduct was such that an attorney-client relationship could reasonably be inferred." *Id*.

The Complaint in the present case alleges that other Duke Defendants directed the lacrosse players to Wes Covington, touting him as "a wonderful lawyer" who had "a lot of experience with this kind of situation." Compl. ¶ 169. The students consequently "met with Covington to seek his advice and counsel." *Id*. ¶ 171; *see also* ¶ 242 (Wasiolek decided "to bring Covington into the case as the players' legal advisor"); ¶ 552 (Defendants "steer[ed plaintiffs] to defendant Wes Covington for confidential advice and guidance, including legal advice"). Covington himself assured the students "that he had dealt with similar matters in the past and that he would make the problem 'go away.' " *Id*. ¶ 171. The "rendering of legal advice establishes attorney-client relationship," and can do so even in the face of the attorney's denial of representation. *See Sheffield*, 326 S.E.2d at 325-26; *see also Booher II*, 392 S.E.2d at 107 (overruling attorneys' objections and finding "sufficient evidence" of a confidential relationship, "contrary to plaintiffs' depositions," in evidence that defendant attorneys had "traveled to Texas with Booher to

6

help him retain Texas legal counsel and that they had done some work on the case").

Similarly here, Covington repeatedly advised Plaintiffs that they should not tell anyone about the matter and should not retain other counsel. Compl. ¶¶ 171-73. "Covington was careful never to enter into a formal attorney-client relationship with most or all of the players or their parents, while repeatedly advising them and urging them to allow him to work on their behalf, and not to retain other counsel. As Dean Wasiolek had done, Covington held himself out as an advisor to the players, dissuading them from retaining other counsel, while secretly acting on behalf of Duke and its administrators." *Id*. ¶ 173.[3] Thus, "Defendant Wes Covington enjoyed a position of trust and confidence with the plaintiffs. This position was created by his holding himself out to them as their lawyer and/or confidential counselor, and was reinforced by Wasiolek's recommendation that Plaintiffs seek his confidential advice and her representation that he was acting on their behalf." Compl. ¶ 553.

In particular, a lawyer cannot escape responsibility when his communications with the client "bespeak[] a somewhat equivocal intention" to decline or to withdraw from representation. *Sheffield*, 326 S.E.2d at 326; *see also Booher I*, 358 S.E.2d at 128-29;

---

[3] *See also* Compl. ¶ 196 (Covington tells parents of lacrosse team members that their sons should "give interviews to Durham police in the absence of counsel. No lawyers would be necessary, Covington stated, because he himself would attend."); ¶ 203 (Covington meets with other parents and urges that Plaintiffs submit to police interrogation without counsel); ¶ 178 ("Covington later took the lead in encouraging the players and their parents to participate in these uncounseled interrogations" while "engaged in covert discussions both with Duke officials and with Gottlieb").

7

*Booher II*, 392 S.E.2d. at 106-07. This is precisely what is alleged here: Covington deliberately "left it unclear . . . whom exactly he was representing." Compl. ¶ 171; *see also id*. ¶¶ 173, 175, 201. When Plaintiffs started to reject Covington's advice and to consult other counsel, Covington complained that other lawyers were "trying to take over his position on the case." *Id*. ¶ 215; *see also id*. ¶ 202. When one lacrosse player confronted Covington and asked him "directly, 'Are you my lawyer?' Covington refused to answer directly." *Id*. ¶ 215. Under North Carolina law, this is a basis for a claim of constructive fraud. To be sure, Plaintiffs "must prove at trial that a confidential relationship did in fact exist . . . . It is enough at this stage, however, that plaintiffs' complaint imply that such a relationship existed." *Booher I*, 358 S.E.2d at 129.

Covington's next argument is that there cannot be constructive fraud here because there is no allegation that he "sought to benefit himself in some particular way." Covington Br. 15-16. He is wrong. The Complaint, as Covington concedes, alleges that he was "motivated by the desire to serve … [his] own personal interests," ¶ 554, and in other paragraphs (expressly incorporated by ¶ 549), the Complaint explains that Covington benefited by advancing and cultivating his special "close relationship" with Duke, ¶¶ 169, 171, as Duke's "fix[er]" for "embarrassing or controversial legal problems," ¶¶ 169, 201. He did " 'this all the time for Duke,' " ¶ 175; he "had dealt with similar matters in the past" and "would make the problem 'go away,' " ¶ 171. He was the go-to guy for Duke, the one who had special "contacts within the Durham police," the one who could " 'get this swept under the rug,' " ¶ 175; *see also id*. ¶ 172. Covington

8

had this special relationship because he was willing to hold "himself out as an advisor to the players, dissuading them from retaining other counsel, while secretly acting on behalf of Duke and its administrators," ¶ 173, and while "engag[ing] in covert discussions both with Duke officials and with Gottlieb," ¶ 178; *see also id.* ¶¶ 197, 204.

This is why Covington objected when other, independent attorneys became involved in the rape hoax investigation—because they were interfering with his effort to handle the volatile controversy in the manner that *Duke*, as opposed to Plaintiffs, wanted. *Id.* ¶ 215. In this manner, Covington served his interests in preserving and promoting his existing relationship with Duke at the expense of the hapless, unknowing parties he was advising. *See id.* ¶¶ 553-54. Indeed, Mr. Covington should be familiar with the perils posed by trying to serve two masters, because he was previously sanctioned by the North Carolina Bar for " 'engaging in a conflict of interest, failing to provide his clients with adequate information to make informed decisions, permitting a third party who paid his fee to make decisions regarding the clients' representation and thereby engaging in conduct prejudicial to the administration of justice.' " Compl. ¶ 170.

### B. Count 11 (Constructive Fraud) Adequately Pleads Causation of Injury

Covington contests the causality element of the Count 11 fraud claim, asserting (rather remarkably) that it "defies common sense" to suggest that his betrayal of Plaintiffs, his urging them not to retain counsel, and his active collaboration with both Duke and the Durham Police could have caused injury to Plaintiffs. Covington Br. 16-17. Prolonging the rape hoax investigation and delaying Plaintiffs' access to genuinely

9

independent legal counsel, *see* Compl. ¶¶ 175-78, 555, we are told, are "wild allegations of the harm" that "did not, and could not, have flowed from Covington's effort." Covington Br. 16. A complete answer to this argument is—once again—that Defendant does not, at this juncture, get to dispute the facts pleaded in the Complaint, which are sufficient to show causation.[4]

Covington also contradicts his own argument. He notes that his fraudulent conduct occurred principally before March 23, 2006, which he concedes was a pivotal date "before Nifong took charge of the rape investigation, before the 'media frenzy.'" Covington Br. 22. Thus he concedes the significance of the time period when his misconduct was deceiving and delaying Plaintiffs in retaining independent legal counsel: precisely when there was a last best opportunity to derail the Duke rape hoax before it gained explosive momentum with prosecutors and the media. Even a novice attorney comprehends the vital importance of obtaining legal advice as early in a criminal investigation as possible. Covington adds that "many of the lacrosse players" may have

---

[4] Defendant claims that the allegations of harms flowing from his fraud should be dismissed because they "are just not plausible." Covington Br. 17-18 (citing *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)). But Defendant's sole citation is inapposite. The "implausibility" of plaintiff Giarratano's claim was not that he alleged facts that the court deemed itself free to second-guess on a Rule 12(b)(6) motion, but rather that he asserted a legal claim under the Equal Protection Clause that was legally insufficient on its face. *See id.* at 304 (Plaintiff alleges that " '[t]he exclusion of inmates from the protections of the Freedom of Information Act is not rationally related to any legitimate government interest.' This conclusory assertion is insufficient to overcome the presumption of rationality that applies to the [statute's] prisoner exclusion. Thus, the district court's dismissal of the facial challenge was appropriate.").

10

spoken with other counsel by March 22, Covington Br. 17, but even Defendant does not pretend that "many" covers all Plaintiffs, nor does he cite any legal principle holding that there is a defense to fraud where some victims get suspicious sooner rather than later.

Finally, Covington contends that no harm attributable to his fraud is adequately pleaded because there are also "many other individuals" who are alleged to have contributed to "the prolonging of the 'rape hoax investigation,' with much intervening and superseding conduct." Covington Br. 17.[5] But Covington was extremely active at the critical juncture. Compl. ¶¶ 550-56. More important, Defendant's only authority for dismissing the fraud and negligence claims due to supposed intervening causes is *Jackson v. Howell's Motor Freight*, 485 S.E.2d 895, 899 (N.C. Ct. App. 1997), *cited in* Covington Br. 20, but that was a summary judgment decision, whereas this is a dismissal motion. When we get to trial, Defendant is free to try to attribute Plaintiffs' injuries to intervening causes, whether police officers or prosecutors or others. But "[f]or now, [the Court is] deciding a case about pleadings and not one about proof of causation." *Whiting v. Traylor*, 85 F.3d 581, 586 & n. 10 (11th Cir. 1996) (vacating dismissal of claims alleging prosecution without probable cause and remanding for trial); *Emergent Capital Inv. Mgmt. v. Stonepath Group*, 343 F.3d 189, 197 (2d Cir. 2003) ("the proximate cause element of common law fraud" and questions of "an intervening event" are "a matter of proof at trial and not to be decided on a Rule 12(b)(6) motion to dismiss"); *Trollinger v.*

---

[5] Defendant elaborates on his intervening-cause arguments in his motion to dismiss Count 12. Covington Br. 18-20.

*Tyson Foods, Inc.*, 370 F.3d 602, 619 (6th Cir. 2004) ("In the face of these attenuated links in the chain of causation, [defendant] asserts, plaintiffs cannot show proximate cause. [Defendant] may be right—but we cannot say so at this preliminary stage in the proceeding."). Plaintiffs have pleaded all that the law requires for causation. *See Dura Pharmaceuticals v. Broudo*, 544 U.S. 336, 347, 125 S. Ct. 1627, 1634 (2005) (plaintiff need only "provide a defendant with some indication of the loss and the causal connection the plaintiff has in mind").

    **C.    The Complaint Adequately Pleads Causation for Count 12 (Breach of Duty of Care in Voluntary Undertaking)**

Defendant Covington offers the same arguments (and authorities) as those he musters against the fraud claim (Count 11)—that is, supposedly conclusory pleading of causation and the supposedly exculpatory causes of intervening actors. Covington Br. 18-20. Both are answered above in Part V.B.

    **D.    Covington Was Acting Under Color of State Law**

Covington concedes that a private citizen such as himself can be liable under 42 U.S.C. § 1983 if the Complaint alleges that he is a " 'willful participant in joint activity with the State or its agents.' " *Mentavlos v. Anderson*, 249 F.3d 301, 311 (4th Cir. 2001), *cited in* Covington Br. 21. But he objects that the pleading of his conspiracy with state actors is unacceptably "general" or "conclusory." To the contrary, the Complaint's allegations of Covington's covert and continuous collaboration with state actors (the Durham and Duke Police forces) to achieve the baseless investigation, searches, and seizures of the Duke lacrosse team is detailed at length. *See* Compl. ¶¶ 173, 176-78, 196-

12

97, 201-04, 552-53. "Failure to allege specific meetings, memoranda, and other such communication is not fatal to [a] conspiracy claim because a conspiracy can arise without verbal communication," *Sara Lee Corp. v. Kayser-Roth Corp.*, No. 92CV00460, 1995 U.S. Dist. LEXIS 6554, at *16 (M.D.N.C. Apr. 10, 1995). Yet the Complaint does plead the dates of, and participants in, particular meetings between Covington and his co-conspirators. *See* Compl. ¶ 178 (March 20 meeting with Gottlieb, Himan, and other police); ¶ 197 (March 21 meetings with Gottlieb and Duke co-conspirators); ¶ 204 (Covington's knowledge of or participation in meetings of Gottlieb, Himan, and other Durham police). It further alleges details of the acts of other conspirators. *See* Pls.' Durham Opp. Part V.A (detailing conspiracy allegations against Durham Defendants). This is more than the law requires to plead conspiracy. *See Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 769 (1984) (even proof, not mere pleading, requires only "evidence that tends to exclude the possibility of independent action by the [alleged conspirators]. That is, there must be direct or circumstantial evidence that reasonably tends to prove that [the alleged conspirators] had a conscious commitment to a common scheme designed to achieve an unlawful objective.").

> **E.     Count 22 Adequately Pleads Malicious Investigation in Violation of Section 1983**

Covington's arguments relating to Count 22 are fully addressed in Part V.C. of Plaintiffs' Opposition to the Durham Supervisor Defendants' Motion to Dismiss ("Pls.' Supervisor Opp.").

13

### F. Count 23 Adequately Pleads Obstruction of Justice

Covington appears to accept that the common-law tort of obstruction of justice is exceedingly broad and applies to the conduct alleged in this case. Covington Br. 24. We rebut these arguments elsewhere. *See* Plaintiffs' Opposition to Defendant City of Durham's Motion to Dismiss ("Pls.' Durham Opp.") Part V.E.

Covington does object, however, that the obstruction of justice claim alleged in the Complaint (¶ 645) simply does not apply to him. But it does: Count 23 is pleaded against all Defendants and that includes the allegations in paragraph 645. More specific allegations against Wesley Covington may be found in paragraphs 171-73, 178, 196-98, 201-04, 215, and 552-55. As explained above, Covington is alleged to have deceived the lacrosse players he purported to advise while covertly colluding with Duke officials and the Durham police to ambush the players with interrogations and DNA searches without alerting their parents and while discouraging them from obtaining counsel. All of this denied them legal assistance at a critical juncture and prolonged and aggravated the rape hoax investigation.

Covington protests that his active participation in the conspiracy did not last as long as that of other conspirators, and that some elements of the scheme were not entirely successful—*e.g.*, despite Covington's frauds, some of the lacrosse players managed to get genuine legal representation in time to avert uncounseled police interrogations. But Covington does not, and at this juncture cannot, deny that his participation contributed to the lacrosse players' being vilified and brutalized by Covington's co-conspirators for

14

another year after his active role (may) have ended. Nor does Covington or any of his co-conspirators get a discount because their efforts to obstruct justice did not go as planned. The Fourth Circuit has recognized that the North Carolina reports are full of "decisions finding a legally sufficient claim where the defendant attempted to prevent, obstruct, impede, or hinder justice" but did not succeed in doing so. *Reed v. Buckeye Fire Equip.*, 241 Fed. Appx. 917, 928 (4th Cir. 2007) (per curiam) (citing *Burgess v. Busby*, 544 S.E.2d 4, 12-13 (N.C. Ct. App. 2001); *In re Kivett*, 309 S.E.2d 442, 462 (N.C. 1983); *State v. Rogers*, 315 S.E.2d 492, 512-13 (N.C. Ct. App. 1984); *Jackson v. Blue Dolphin Commc'ns of N.C.*, 226 F. Supp. 2d 785, 794 (W.D.N.C. 2002)).

## VI. CONCLUSION

Defendant Covington concludes by reiterating his plea that he is but a small fry caught in Plaintiffs' dragnet, and that other Defendants are the real predators with whom this case, and this Court, should be concerned. This is not a legal argument admissible on a Rule 12 motion. More important, Mr. J. Wesley Covington, Esq., overlooks the fact that he is alleged not only to have conspired against Plaintiffs, but to have done so while holding himself out to them as their attorney and advisor. These are questions for the jury. Plaintiffs look forward to giving Covington an opportunity to clear his name when he is under oath.

For the foregoing reasons, Defendant Covington's motion to dismiss should be denied.

Dated: August 28, 2008

Respectfully submitted,

**THOMAS, FERGUSON & MULLINS, L.L.P.**

**COOPER & KIRK, PLLC**

/s/ William J. Thomas
William J. Thomas, II
(N.C. Bar # 9004)
119 East Main Street
Durham, NC 27701
Tel. (919) 682-5648
Email: thomas@tfmattorneys.com

/s/ Charles J. Cooper
Charles J. Cooper
Brian S. Koukoutchos
David H. Thompson
Howard C. Nielson, Jr.
Nicole Jo Moss
(N.C. Bar # 31958)
David Lehn*
1523 New Hampshire Avenue, NW
Washington, DC 20036
Tel. (202) 220-9600
Email: ccooper@cooperkirk.com
Email: dthompson@cooperkirk.com
Email: nmoss@cooperkirk.com

(* motion for special appearance has been filed)

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel:

**TROUTMAN SANDERS LLP**
Patricia P. Kerner
N.C. State Bar No. 13005
Hannah Gray Styron
D. Martin Warf
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
Phone: (919) 835-4117
Fax: (919) 829-8714
Email: tricia.kerner@troutmansanders.com
Email: hannah.styron@troutmansanders.com
Email: martin.warf@troutmansanders.com
*Counsel for Defendants Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, and Lee Russ*

**FAISON & GILLESPIE**
Reginald B. Gillespie, Jr.
N.C. State Bar No. 10895
5517 Durham Chapel Hill Boulevard
Suite 2000
Durham, North Carolina 27727-1729
Phone: (919) 489-9001
Fax: (919) 489-5774
Email: rgillespie@faison-gillespie.com
*Counsel for Defendants City of Durham, North Carolina and Steven Chalmers*

**STEPTOE & JOHNSON LLP**
Roger E. Warin*
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000

Fax: (202) 429-3902
Email: rwarin@steptoe.com
*(Motion for Special Appearance to be filed)
***Counsel for Defendant City of Durham, North Carolina***

**ELLIS & WINTERS LLP**
J. Donald Cowan, Jr.
N.C. State Bar No. 0968
Dixie T. Wells
N.C. State Bar No. 26816
P.O. Box 21927 [27420]
100 N. Greene Street, Suite 102
Greensboro, North Carolina 27401
Phone: (336) 217-4197
Fax: (336) 217-4198
Email: don.cowan@elliswinters.com
Email: dixie.wells@elliswinters.com

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Jamie Gorelick*
D.C. Bar No. 101370
Jennifer M. O'Connor
William F. Lee
Paul R.Q. Wolfson
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6500
Facsimile: (202) 663-6363
Email: Jamie.gorelick@wilmerhale.com
Email: Jennifer.oconnor@wilmerhale.com
Email: William.lee@wilmerhale.com
Email: Paul.Wolfson@wilmerhale.com
***Counsel for Defendants Duke University, Aaron Graves, Robert Dean, Richard H. Brodhead, Peter Lange, Tallman Trask, III, John Burness, Larry Moneta, Victor J. Dzau, M.D., Allison Halton, Kemel Dawkins, Suzanne Wasiolek, Matthew Drummond,***

***Counsel for Duke University Health Systems,***

2

*Inc., Theresa Arico, and Tara Levicy*
(*motion for special appearance filed)

**YATES, McLAMB &WEYHER, L.L.P**
Dan Johnson McLamb
N.C. State Bar No. 6272
T. Carlton Younger, III
Shirley Marring Pruitt
POB 2889
Email: cyounger@ymwlaw.com
Email: spruitt@ymwlaw.com
*Counsel for Duke University Health Systems, Inc., Theresa Arico, and Tara Levicy*

**POYNER & SPRUILL LLP**
Edwin M. Speas, Jr.
N.C. State Bar No. 4112
P.O. Box 10096
Raleigh, North Carolina 27605-0096
Phone: (919) 783-6400
Fax: (919) 783-1075
Email: espeas@poynerspruill.com
*Counsel for Defendant Mark Gottlieb*

**KENNON, CRAVER, BELO, CRAIG & MCKEE, PLLC**
Joel M. Craig
N.C. State Bar No. 9179
Henry W. Sappenfield
P.O. Box 51579
4011 University Drive, Suite 300
Durham, North Carolina 27717-1579
Phone: (919) 490-0500
Fax: (919) 490-0873
Email: jcraig@kennoncraver.com
Email: hsappenfield@kennoncraver.com
*Counsel for Defendant Benjamin Himan*

**MAXWELL FREEMAN & BOWMAN, P.A.**
James B. Maxwell
N.C. State Bar No. 2933
P.O. Box 52396

3

Raleigh, North Carolina 27717-2396
Phone: (919) 493-6464
Fax: (919) 493-1218
Email: jmaxwell@mfbpa.com
***Counsel for Defendant David Addison***

**PINTO COATES KYRE & BROWN, PLLC**
Kenneth Kyre Jr. (N.C. Bar # 7848)
Paul D. Coates (N.C. Bar # 9753)
P.O. Box 4848
Greensboro, NC 27404
Email: kkyre@pckb-law.com
Email: pcoates@pckb-law.com
***Counsel for J. Wesley Covington***

As of the date of this filing, no attorney has made an appearance on behalf of the following Defendant.

Linwood Wilson
6910 Innesbrook Way
Bahama, NC 27503-9700
Email: linwoodw@aol.com


/s/ Nicole Jo Moss