IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:08-cv-119

_____

EDWARD CARRINGTON, et al.,     )
                                 )
                    Plaintiffs,   )
v.                               )
                                 )
DUKE UNIVERSITY, et al.,      )
                                 )
                   Defendants.   )
_____ )

**PLAINTIFFS' OPPOSITION TO DEFENDANT DURHAM SUPERVISORS'
MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

**I.    NATURE OF PROCEEDINGS**

We state the nature of the proceedings elsewhere. Plaintiffs Opposition to City of

Durham's Motion to Dismiss ("Pls.' Durham Opp.") Part I. This brief addresses the

motion to dismiss under Rule 12(b)(6) of Patrick Baker, Steven Chalmers, Ronald

Hodge, Lee Russ, Stephen Mihaich, Beverly Council, Jeff Lamb, and Michael Ripberger

("Durham Supervisors" or "Supervisors").

**II.    STATEMENT OF FACTS**

We provide statements of relevant facts elsewhere.[1]

---

[1] *See* Plaintiffs' Opposition to Defendant City of Durham's Motion to Dismiss
("Pls.' Durham Opp.") Part II; Plaintiffs' Opposition to Defendant Gottlieb's Motion to
Dismiss ("Pls.' Gottlieb Opp.") Part II; Plaintiffs' Opposition to Defendant Addison's
Motion to Dismiss ("Pls.' Addison Opp.") Part II; Plaintiffs' Opposition to Defendant
Himan's and Defendant Wilson's Motions to Dismiss ("Pls.' Himan-Wilson Opp.") Part
II.

### III. QUESTIONS PRESENTED

1. Whether the official-capacity claims are redundant.

2. Whether Plaintiffs state a claims for violations under 42 U.S.C. § 1983 (Counts 20-22, 24-25 & 27).

3. Whether Defendants are not protected by qualified immunity.

4. Whether Plaintiffs state a claim for obstruction of justice (Count 23).

5. Whether Plaintiffs state claims for intentional infliction of emotional distress (Count 28).

### IV. STANDARD OF REVIEW

We state the standard of review elsewhere. *See* Plaintiffs' Opposition to

Defendant City of Durham's Motion to Dismiss ("Pls.' Durham Opp.") Part IV.

### V. ARGUMENT

The Durham Supervisor Defendants advance a variety of challenges to Plaintiffs'

claims. As explained below, some of Defendants' arguments have merit, but most do

not.[2]

#### A. The Official-Capacity Claims Are Redundant

Several of the individual Defendants contend that the claims against them in their

official capacity should be dismissed as duplicative of Plaintiffs' identical claims (both

---

[2] We incorporate into this opposition all oppositions filed today by Plaintiffs against the motions to dismiss of the Duke University Defendants, the Duke SANE Defendants, Defendant City of Durham, the Durham Supervisor Defendants, Defendant Gottlieb, Defendant Himan, Defendant Wilson, Defendant Addison, and Defendant Covington. Cross references to specific sections of Plaintiffs' other oppositions are provided throughout this brief

state and federal) naming the City of Durham as a defendant.[3]  Insofar as the City

concedes that it is properly named as a defendant in these causes of action and that it

remains the real party in interest, Plaintiffs have no objection to dismissal of the official-

capacity claims against Durham employees and agents in Counts 8, 10, 20-22, 25-26, and

28-31.

**B.**      **The Complaint Adequately Pleads § 1983 Claims Against the Durham Supervisors (Counts 22, 24 & 27)**

Defendants confuse dismissal under Rule 12 with summary judgment under Rule

56.  The Durham Supervisors object that Plaintiffs have not "forecast" or made a

sufficient "showing" of evidence to support the § 1983 claims.  Supervisor Br. 13-14.

But as Defendants' own authorities attest, at the Rule 12 stage "a plaintiff is not charged

with 'forecasting evidence sufficient to prove an element' of her claim." *Bass v. E.I.*

*DuPont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003).  The authorities

invoked by Defendants to attack the Complaint are inapposite Rule 56 summary

judgment cases, *see, e.g.*, *DeBerry v. Runyon*, No. 97CV0777, 1998 U.S. Dist. LEXIS

12532, at *1-2 & n.1, *32-33 (M.D.N.C. Apr. 20, 1998), *discussed in* Supervisor Br. 13,

or even jury-instruction cases, *see Chuman v. Wright*, 76 F.3d 292, 294-95 (9th Cir.

1996), *cited in* Supervisor Br. 17.  The reason for this preponderance of decisions

---

[3] *See* Brief in Support of Durham Supervisor Defendants' Motion to Dismiss
("Supervisor Br.") 10-13; Brief in Support of Defendant City of Durham's Motion to
Dismiss ("Durham Br.") 5 n.2; Brief in Support of Defendant Addison's Motion to
Dismiss ("Addison Br.") 14.

involving the *merits* of supervisory liability rather than its pleading is that the issue is rarely appropriate for resolution on a motion to dismiss. As this Court has noted, supervisory liability is "determined 'by pinpointing the persons in the decision-making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked' and this determination 'is ordinarily one of fact, not law.' " *Blair v. County of Davidson*, No. 05CV00011, 2006 U.S. Dist. LEXIS 34253, at * 35 (M.D.N.C. May 10, 2006) (Beaty, J.); *see also Slakan v. Porter,* 737 F.2d 368, 376 (4th Cir. 1984); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *Avery v. County of Burke,* 660 F.2d 111, 114 (4th Cir. 1981). Defendants' arguments are therefore fatally premature.

### 1.     The Complaint Adequately Pleads Claims Against Council, Mihiach, Ripberger, and Russ

The Durham Supervisors complain that these four Defendants are named in the caption of the lawsuit but that there are no allegations in the Complaint against them. Supervisor Br. 14. Defendants are mistaken. We separately allege that each of the four served in a supervisory and policymaking role for Durham, Carrington Complaint ("Compl.") ¶¶ 73, 74, 75, 77, and that they, along with Defendants Baker, Chalmers, Hodge, and Lamb, will be collectively referred to as the "Durham Supervisors."  ¶ 79. The Complaint then pleads a wealth of allegations against them for involvement in, ratification of, and derelict supervision of the acts of their subordinates in fabricating evidence, tampering with witnesses, and other abuses.  ¶¶ 110, 160, 167, 181-82, 195, 212, 218, 220, 268-69, 276, 295, 308, 312-13, 353, 377, 385, 404, 423, 429, 514, 521, 538, 547, 625, 641, 667-719, 744-45. To be sure, those allegations do not recite the

names of the eight Durham Supervisors every time, but such a pleading requirement would be a pointless and inefficient exercise. It is therefore unsurprising that Defendants cannot cite a single case holding that a complaint must repeat an identical allegation separately for each individual Defendant even when the allegation is that several Defendants have engaged in the same act or practice or have engaged in an act together, as for example in collective decision-making.[4] Defendants' proposed rule that precludes the use of defined terms in a complaint makes no sense, and is without any support.

The Durham Supervisors rely on this Court's decision in *Tolley v. Kivett*, dismissing defendant Gainey from that case with prejudice because Gainey had not even been hired by the municipal defendant until several months after the events alleged in the complaint. No. 01CV00410, 2002 U.S. Dist. LEXIS 24368, *8 n.3 (M.D.N.C. July 1, 2002). None of the Durham Supervisors can offer that defense here. Furthermore, the claims against Gainey were dismissed in *Tolley* not because—as in the present case—his acts were pleaded together with other defendants in the same allegation (rather than by his individual name), but because *no* allegation in the complaint, however it was phrased, " 'indicat[ed] how the defendant violated the law or injured the plaintiff,' " or "suggest[ed] the personal involvement of Gainey in any of the violations allegedly

_____

[4] This distinguishes *Negrich v. Hohn*, 379 F.2d 213, 215 (3d Cir. 1967), where it was "apparent that all defendants could not have inflicted the beatings" at issue. *See* Supervisor Br. 16. When the defendants' misconduct is not physical assault on an individual but supervision of, and collective decision-making about, an investigation, there is no incongruity in multiple defendants being involved simultaneously.

perpetrated against Tolley." *Id.* at \*7-8. Again, none of the Durham Supervisors can make that argument here.[5]

> ### 2. The Allegations Against the Durham Supervisors Are Sufficient To Plead Their Individual Liability

The Durham Supervisors disparage the Complaint as unacceptable "group-think, team action, or mere chain of command" pleading. Supervisor Br. 18. These are not terms (or techniques) employed in the Complaint; they are merely epithets that Defendants use in lieu of analysis. In this circuit, "[t]he principle is firmly entrenched that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Shaw*, 13 F.3d at 798. Supervisory liability for a subordinate's misconduct "is not premised upon *respondeat superior* but upon 'a recognition that *supervisory indifference* or *tacit authorization* of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict." *Id.* at 798 (quoting *Slakan*, 737 F.2d at 372-73) (emphasis added).[6] The

---

[5] The Durham Supervisors' counsel have already confirmed that Council, Ripberger, and Russ are indeed in the "decision-making chain." Defense Counsel conferred with Plaintiffs and obtained Plaintiffs' consent to the voluntary dismissal of Stephen Mihaich, based on the representation that, *in contrast to the other Durham Supervisors*, Mihaich was not in the decision-making chain above Gottlieb, Himan, Addison, or Nifong and did not otherwise formulate or condone the practices and conduct at issue in this case. Counsel for the Durham Supervisors stated that they planned to file a motion to dismiss with respect to Mihaich on this basis, but they have filed the present motion instead.

[6] There are three elements in a supervisory liability claim: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the

6

Complaint alleges precisely such indifference and tacit (or even explicit) authorization

here.  The Durham Supervisors are alleged to have, *inter alia*:

- Delegated management of the rape hoax investigation to Nifong and then condoned his extraordinary abuses.  Compl. ¶¶ 218-20, 667, 676-79, 697-98.

- Ordered Himan and Gottlieb, on or about March 29, 2006, to press on with the case and to expedite arrests and indictments of Duke lacrosse players, notwithstanding the evidence demonstrating their innocence.  ¶¶ 699-702.

- Participated in meetings with Duke officials and Durham Investigators to review the exculpatory evidence and to discuss how to discredit it and continue with arrests and prosecution.  ¶ 308.

- Directed the Durham Investigators to discredit Sergeant Shelton and other officers because their evidence and appraisal of Mangum's credibility exonerated Plaintiffs. ¶¶ 110, 423.

- Assigned Gottlieb to the rape hoax investigation despite his record of biased, abusive law enforcement against Duke students, and then ratified and condoned his misconduct. ¶¶ 682-89.

- Authorized and ratified Addison's inflammatory media campaign against the players. ¶¶ 690-92.

- Conspired with the Durham Investigators to suppress exculpatory evidence, falsify evidence, and continue the prosecution of innocent men, despite knowledge that the DNA and other evidence exonerated the players. ¶¶ 212, 269, 312, 313, 353, 377, 385, 404, 429, 514, 521, 538, 547, 625, 633, 641, 646, 670.

These allegations explain to the Durham Supervisors how their supervisory acts

and omissions injured Plaintiffs.  The Defendants are accountable because they

---

plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices[]'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."  *Shaw*, 13 F.3d at 799.

"approved every false step, and [did] their part to make the scheme work." *Jones v. Chicago*, 856 F.2d 985, 993 (7th Cir. 1988); *see Blair*, 2006 U.S. Dist. LEXIS 34253 at *36 (denying motion to dismiss where plaintiff alleged that defendants "knew of the constitutional violations, had the power to prevent them, and failed to act to prevent the constitutional violations"). To the extent that the Durham Supervisors are suggesting that only *some*, rather than *all* of them, are responsible, that is a matter for discovery and trial, not a motion to dismiss. *See Blair*, 2006 U.S. Dist. LEXIS 34253, at * 36-37; *Slakan,* 737 F.2d at 376; *Shaw*, 13 F.3d at 799.

None of Defendants' authorities supports a different result in this case. Supervisor Br. 15-18. As the summary of the Complaint above demonstrates, Plaintiffs base their claims on Defendants' participation in meetings and their issuance of orders to, and supervision of, their subordinates, not on mere "membership in a group." *Jones v. Williams*, 297 F.3d 930, 939 (9th Cir. 2002). Nor do Plaintiffs try to predicate liability on Defendants' job titles without more. *Cf. Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005) ("complaint merely hypothesizes that Attorney General Fisher may have been somehow involved simply because of his position"); *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974) (insufficient to plead that warden was in charge of the prison where violation allegedly occurred); *Crawford v. Department of Corrections*, No. 07-C-840, 2008 U.S. Dist. LEXIS 6048, *4, *12-13 (E.D. Wisc. Jan. 16, 2008) (dismissing claim against Regional Chief officer at a state prison for want of allegations of "how the action (or inaction) of this defendant interfered with his needs" but denying motion to dismiss

claims against other prison officials).

Finally, *Wisler v. City of Fresno*, on which Defendants place great emphasis, Supervisor Br. 17-18, dismissed Fourth Amendment claims against three police officers (Pack, Bradford, and Casto) because the complaint did not allege *anything* about them "other than their employment by the City of Fresno." No. CV F 06-16940, 2007 U.S. Dist. LEXIS 18666, *12 (E.D. Cal. Mar. 16, 2007). The plaintiff did not allege that those officers "were even present when plaintiff was arrested," *id.* at *15, nor did he plead supervisory liability, *id.* at *12-15. But supervisory liability *is* pleaded here: the Durham Supervisors were the city officials who were responsible for the rape hoax investigation, and they "knew of the constitutional violations, had the power to prevent them, and failed to act to prevent" them. *Blair*, 2006 U.S. Dist. LEXIS 34253, at *36.

Indeed, *Wisler* confirms the adequacy of the allegations in this case. *Wisler* contrasted the insufficient (actually, non-existent) pleadings in that case with the allegations in *Boyd v. Benton*, 374 F.3d 773 (9th Cir. 2004). *See* 2007 U.S. Dist. LEXIS 18666, at *13-14. In *Boyd,* a SWAT team used a flash-bang device when entering an apartment and several people were injured. 374 F.3d at 778. The *Wisler* court explained that every member of the SWAT team and its supervisor could be held liable for an excessive use of force because "the SWAT team supervisor created the raid plan," and the "Ninth Circuit found that every 'officer involved in the operation knew of the plan to use the flash-bang, *did not object to that plan*, and actively participated in its operation.' " *Wisler*, 2007 U.S. Dist. LEXIS 18666, at *14 (quoting *Boyd*, 374 F.3d at 777) (emphasis

added); *see also id.* at *15 ("each officer participated in the search knowing that a flash-bang would be used *but failed to object*") (emphasis added).  The adequacy of the pleading in the instant case follows *a fortiori*: the Durham Supervisors are alleged not only to have known of, and failed to object to, the constitutional violations being perpetrated in the rape hoax investigation, but to have been responsible for the conduct of that investigation and to have ratified the abuses.  To be sure, Plaintiffs "will ultimately be required to present evidence in support of [these] allegations," but "at this stage in the litigation, Plaintiff[s'] supervisory liability claims [should] not be dismissed." *Blair*, 2006 U.S. Dist. LEXIS 34253, at *36-37.

### C.     Count 22 Properly Pleads a Claim for Malicious Investigation Under the Due Process Clause

The Durham Supervisors, like the other Defendants, ask this Court to hold that the constitutional rights violated by malicious government efforts to frame innocent people for a crime that never took place sound exclusively in the Fourth Amendment and do not implicate the Due Process Clause.  Supervisor Br. 19-25.[7]  But Defendants' principal authority, *Chavez v. Martinez*, 538 U.S. 760 (2003), *see* Supervisor Br. 19-24, actually establishes that a due process claim for malicious investigation is *not* foreclosed.  The Durham Supervisors simply misread the decision.

---

[7]  The other Defendants make the same argument.  *See* Durham Br. 26; Addison Br. 4, 11-13; Gottlieb Br. 14; Brief in Support of Defendant Himan's Motion to Dismiss ("Himan Br.") 14-16; Brief in Support of Defendant Wilson's Motion to Dismiss ("Wilson Br.") 9-10; Covington Br. 23; SANE Br. 40-44.

Martinez, the plaintiff, was interrogated by police while being treated in the emergency room for multiple gunshot wounds inflicted by the police during an altercation. Martinez was never charged with a crime, but he sued officer Chavez for violation of his Fifth Amendment rights against self-incrimination. 538 U.S. at 764-65. A plurality of the Court concluded that he had no Fifth Amendment claim because his testimony was never used against him at a trial. *Id.* at 773 (Thomas, J., joined by Rehnquist, C.J., and O'Connor and Scalia, JJ.). But the plurality hastened to add that this did not mean that "police torture or other abuse that results in a confession is constitutionally permissible so long as the statements are not used at trial; it simply means that the Fourteenth Amendment's Due Process Clause, rather than the Fifth Amendment's Self-Incrimination Clause, would govern the inquiry in those cases and provide relief in appropriate circumstances." *Id.* The Justices expressly noted that the Court's jurisprudence "left open the possibility that unauthorized police behavior in other contexts might 'shock the conscience' and give rise to § 1983 liability." *Id.* at 774 (citing *Rochin v. California*, 342 U.S. 165, 172, 174 (1952), and *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 850 (1998)). Justice Souter agreed with the *Chavez* plurality that "any argument for a damages remedy in this case must depend not on its Fifth Amendment feature but upon the particular charge of outrageous conduct by the police," and that such a claim "must sound in substantive due process." *Id.* at 779 (Souter, J., concurring in the judgment) (citing *Lewis*, 523 U.S. at 849). Accordingly, the Supreme Court held that "[w]hether Martinez may pursue a claim of liability for a substantive due process

violation is thus an issue that should be addressed on remand." *Id.* at 779-80 (opinion of the Court).[8]

Defendants also invoke the authority of *Albright v. Oliver*, 510 U.S. 266 (1994), but there was no opinion for the Court in that case; the Justices issued six opinions. In a detailed review of that decision, the Fourth Circuit has held that, despite much discussion by individual Justices, *Albright* did *not* decide whether the Due Process Clause supports a § 1983 claim for malicious investigation: "the decision itself ultimately does not reach the question." *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000). And as explained above, the Supreme Court expressly left that issue open again three years after *Lambert* in its decision in *Chavez v. Martinez*, 538 U.S. at 779-80.

*Albright* actually provides a useful contrast with the present case. Albright was arrested, indicted, arraigned, and bound over for trial; he sued after the prosecution was dismissed for failing to state a criminal offense under Illinois law. 510 U.S. at 268-69. Addressing his injury exclusively under the Fourth Amendment's ban on unreasonable *seizures*, rather than substantive due process, therefore made sense. *See id.* at 274 (Rehnquist, C.J., joined by O'Connor, Scalia and Ginsburg, JJ.); *id.* at 281 (Kennedy, J.,

---

[8] The Durham Supervisors have apparently overlooked the fact that the plurality opinion in *Chavez*, which they quote at such length, was *not* the opinion of the Court. *See* Supervisor Br. 22-24. Part II of Justice Souter's opinion was the opinion of the Court. *See* 538 U.S. at 777. Although the four Justices in the plurality rejected Martinez's due process claim on the *merits*, *id.* at 774-76, Justice Souter and Justices Stevens, Kennedy, Ginsburg, and Breyer held that Martinez had made a sufficient showing to survive summary judgment on his substantive due process claim and therefore remanded for further proceedings. *Id.* at 779-80.

joined by Thomas, J., concurring in judgment); *see also Lambert*, 223 F.3d at 261

(discussing *Albright*).  Indeed, many decisions, including many cited by Defendants, have

recognized that the Fourth Amendment's purview extends only to claims that a search or

seizure was conducted without probable cause.  *See, e.g.*, *Riley v. Dorton*, 115 F.3d 1159,

1162 (4th Cir. 1997) (constitutionality of "initial decision to detain an accused" must be

evaluated under Fourth Amendment but question whether "conditions or restrictions of

pretrial detention … amount to punishment of the detainee [are evaluated] under the Due

Process Clause") (quotation marks omitted), *cited in* Brief in Support of the Duke SANE

Defendants' Motion to Dismiss ("SANE Br.") 41 n.18; *Lambert*, 223 F.3d at 261-62

(noting that in *Brooks v. Winston-Salem*, 85 F.3d 178, 184 (4th Cir. 1996), court denied

due process claim because it found that plaintiff's claim for being arrested and tried

without probable cause was analogous to common-law "false arrest" and therefore

"foundation for his claim was 'a seizure that was violative of the Fourth Amendment' ");

*Taylor v. Waters*, 81 F.3d 429, 435-36 (4th Cir. 1996) (claim that accused was arrested

without probable cause is governed by Fourth Amendment rather than Due Process

Clause), *cited in* SANE Br. 41 n.18.

But in the instant case Plaintiffs were not arrested, indicted, or held for trial.

Compl. ¶¶ 635-40.  And Defendants' unlawful searches are only one aspect of their

conscience-shocking actions.  Defendants also, among other things, knowingly

humiliated Plaintiffs by publicly reciting that fabricated or false information, retaliated

against Plaintiffs for exercising their constitutional rights, suppressed exculpatory

evidence, and tampered with and coerced witnesses. *See, e.g.*, Compl. ¶ 637. These allegations do not arguably sound in the Fourth Amendment's prohibition of unreasonable searches and seizures, and so Defendants' attempt to shoehorn Count 22 into the Fourth Amendment is misplaced.

Moreover, even if some of Defendants' conscience-shocking conduct sounds in the Fourth Amendment, it does not follow that the Due Process Clause does not also apply. The Supreme Court has consistently rejected "the view that the applicability of one constitutional amendment pre-empts the guarantees of another." *United States* v. *James Daniel Good Real Prop.,* 510 U.S. 43, 49 (1993). "Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character. Rather, we examine each constitutional provision in turn." *Soldal v. Cook County,* 506 U.S. 56, 70 (1992).

It would be more than a little strange, in fact, to hold that the Fourth Amendment's rules about unreasonable seizures globally displace the substantive protections of the Fourteenth Amendment, because *Rochin*, the font of the Supreme Court's "shock the conscience" jurisprudence, was itself a case about unlawful search and seizure. The police broke into Rochin's bedroom, tried to seize evidence of contraband from his mouth, and then took him to the hospital and had his stomach pumped. 342 U.S. at 172. At that time, the Fourth Amendment itself had already been held applicable to the states. *See id.* at 170, 176; *Wolf v. Colorado*, 338 U.S. 25, 27-28 (1949). Even so, the Court

bypassed the Fourth Amendment and rested its decision squarely on substantive due process. 342 U.S. at 169-72. The misconduct of the government actors did "more than offend some fastidious squeamishness or private sentimentalism about combating crime too energetically. This is conduct that shocks the conscience." *Id.* at 172. The Court invoked the "general requirement that States in their prosecutions respect certain decencies of civilized conduct" and condemned government misconduct that would "discredit law and thereby … brutalize the temper of a society." *Id.* at 173-74.

Neither *Albright* nor *Chavez* purported to overrule *Rochin*. Indeed, as explained above, *Chavez* took pains to preserve the question of the scope of substantive due process claims challenging abusive government investigation that stops short of indictment and trial. The right at stake here has been recognized by the Fourth Circuit. It is "the right not to be deprived of liberty or property based on the *deliberate* use of evidence *fabricated by* or *known to be false* to a law enforcement official. We have recognized that an officer who violates this right may be subject to civil liability. … This claim is rooted in substantive due process." *White v. Wright*, 150 Fed. Appx. 193, 198 (4th Cir. 2005) (emphasis in original) (affirming summary judgment for defendant because plaintiff failed to raise a question of fact on intent or causality). " '[T]hose charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit. … Actions taken in contravention of this prohibition necessarily violate due process.' " *Id.* (quoting *Limone v. Condon*, 372 F.3d 39, 44-45 (1st Cir. 2004)).

The SANE Defendants assert that, even if this claim is not subsumed by the Fourth Amendment, it fails because "there is no substantive due process right against 'malicious investigation.'" SANE Br. 42-43. But the decisions just discussed (and others) expose the fallacy of the SANE Defendants' assertion. More generally, "immersion in criminal investigation," regardless whether it prompts an arrest, immediately produces "a wrenching disruption of everyday life." *Young* v. *United States ex rel. Vuitton et Fils S. A.,* 481 U.S. 787, 814 (1987). Every investigation, like every arrest, "is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends." *United States v. Marion,* 404 U.S. 307, 320 (1971). Indeed, the lower courts routinely recognize substantive due process claims based on malicious investigation.[9] None of the decisions that the SANE Defendants cite, *see*

---

[9] *See Moran v. Clarke,* 296 F.3d 638, 643-45 (8th Cir. 2002) (*en banc*) (concluding that "evidence that [the plaintiff] was investigated, prosecuted, suspended without pay, demoted and stigmatized by falsely-created evidence" reflected conscience-shocking behavior prohibited by substantive due process), *cited in White*, 150 Fed. Appx. at 198; *Orem v. Rephann*, 523 F.3d 442, 447 (4th Cir. 2008) ("excessive zeal amounting to an abuse of official power that shocks the conscience maybe redressed under the Fourteenth Amendment") (brackets, ellipsis, and quotation marks omitted) (denying motion for summary judgment on substantive due process claim); *Ward v. Anderson*, 494 F.3d 929, 933 & n.5, 938-39 (10th Cir. 2007) (malicious, ill-founded government investigation can violate substantive due process, but granting summary judgment for defendant due to lack of evidence of misconduct); *Kottmyer v. Maas*, 436 F.3d 684, 691 & n.1 (6th Cir. 2006) (dismissing claim of abusive government investigation due to lack of "evidence that the investigation was undertaken in bad faith or with a malicious motive

SANE Br. 42-43 & n.21, is to the contrary; most have nothing to do with whether the

Due Process Clause countenances a claim for malicious investigation, and most of the

rest suggest that it does.[10]   The SANE Defendants' plea that the Court not recognize a

---

or if tactics used to investigate would 'shock the conscience' "); *Omni Behavioral Health v. Miller*, 285 F.3d 646, 652 (8th Cir. 2002) (granting summary judgment for defendant because of "voluminous evidence that [defendant's] investigations were conducted in a professional manner" and lack of "viable support beyond bare allegations that [he] conducted his investigation in order to harass Woodlawn employees because of their race"); *Hirsch v. Otsego County*, No. 89-CV-954, 1992 U.S. Dist. LEXIS 3052, at *10-12 (N.D.N.Y. Mar. 12, 1992) (denying defendants' motion for summary judgment on plaintiff's claim that defendants persisted in an ill-founded child-abuse investigation despite their awareness of evidence exonerating him).

This dispenses with the Durham Supervisors' contention that Plaintiffs assert a radical and nebulous "liberty interest to be free of unwanted police questioning." Supervisor Br. 23-24.  Defendants' argument that " 'liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process,' " *id.* at 22 (quoting *Lewis*, 523 U.S. at 848-49), is similarly wide of the mark: Count 22 pleads intentional government misconduct.

[10] *See, e.g.*, *United States v. Crump*, 934 F.2d 947, 957 (8th Cir. 1991) ("Although [investigators'] knowledge of [accused's] involvement with drugs may have been somewhat temporally removed from the decision to make [him] the subject of investigation, we cannot say that the [investigators'] decision to target [him] was so outrageous as to violate his due process rights"); *United States v. Trayer*, 898 F.2d 805, 808 (D.C. Cir. 1990) (Fourth Amendment does not require "any defined level of suspicion … before a dog may be escorted along the corridor of a train, past a given compartment"); *Labensky v. County of Nassau*, 6 F. Supp. 2d 161 (E.D.N.Y. 1998) ("In these circumstances, where the obligation to provide the tapes to the defendant is a matter of subtle legal judgment to be made by a prosecutor, Labensky's assertion that the [police's] post-indictment provision of them to the prosecutor violated the Due Process Clause is tenuous indeed.") (quotation marks, citation, and emphasis omitted), *aff'd*, No. 98-7512, 1999 U.S. App. LEXIS 4241 (2d Cir. Mar. 15, 1999).  Only two cited decisions do not fit this pattern, but neither undermines Plaintiffs' claim.  In *Shields v. Twiss*, the court rejected the claim of "unreasonable investigation" (it is not clear whether this claim was brought under the Fourth Amendment or the Due Process Clause) on the ground that the plaintiff had "pointed to no legal basis for a § 1983 action of this sort."  389 F.3d 142, 150-51 (5th Cir. 2004).  We have.  And the opinion Defendants cite from the *Burrell v.*

"new" substantive due process right against the kind of malicious investigation inflicted by all Defendants here, SANE Br. 44, therefore, comes too late: the courts already have.

Finally, some Defendants argue that the conduct pleaded here is unremarkable and could not possibly "shock the conscience." Indeed, the City of Durham contends that, "given Mangum's repeated insistence that she had been raped and the medical evidence," it would have been "shocking" if Durham had *not* investigated the Duke lacrosse players. Durham Br. 30; *see also* Supervisor Br. 23. Once again, Defendants are fighting the facts that they must accept as true on a Rule 12(b)(6) motion. The Complaint avers that the Durham Investigators and the Durham Supervisors continued to persecute Plaintiffs despite their knowledge: (1) that Mangum's seven different versions of a gang-rape involving one to twenty attackers were fantastically inconsistent; (2) that Mangum had repeatedly recanted her accusations to the police; (3) that the investigator to whom the case had originally been assigned had closed it for lack of evidence; (4) that the other dancer at the party had said there was no rape and Mangum's charges were "a crock;" (5) that the NTO application contained deliberate falsehoods and omitted material facts; (6) that the North Carolina SBI found that the DNA evidence exonerated the lacrosse players; and (7) that the DNA tests by DSI likewise exonerated the players. *See* Pls.' Durham Opp. Part V.A & D (summarizing allegations in the Complaint). Defendants'

---

*Adkins* case was the recommendation of the magistrate judge, *see* No. CV01-2679-M, 2007 U.S. Dist. LEXIS 95899, at *28-29 (W.D. La. Oct. 22, 2007) – the relevant portion of which the district court never adopted, *see* 2008 U.S. Dist. LEXIS 1972 (Jan. 10, 2008).

stubborn insistence that this amounts to nothing more than "negligently inflicted harm" and "unwanted police questioning," and that there is nothing the least bit "shocking" in government efforts to frame innocent people for non-existent crime, Supervisor Br. 22, 24, is itself shocking. In sum, Defendants' corrupt and malicious investigation inflicted on Plaintiffs "unjustified torment and anguish" of the sort traditionally protected by the common law of torts and the Due Process Clause. *See Albright*, 510 U.S. at 283-84 (Kennedy, J., joined by Thomas, J., concurring in judgment) (accepting "*arguendo*, that some of the interests granted historical protection by the common law of torts (such as the interests in freedom from defamation and malicious prosecution) are protected by the Due Process Clause").

> **D.** **Counts 20 and 21 Adequately Plead Violations of the Fourth Amendment Right Against Unreasonable Searches**

The Durham Supervisors do not raise any grounds to dismiss the Fourth Amendment claim raised against them in Count 20, which is based on the Duke University key-card information). Compl. ¶ 625. This violation of Plaintiffs' rights is set forth in Pls.' Durham Opp. Part V.C.3.

The Supervisors do, however, challenge the Fourth Amendment claim raised in Count 21, arising out of the Non-Testimonial Order ("NTO") for DNA samples. Compl. ¶ 633.[11] They contend that the NTO did not require probable cause under the federal

---

[11] The Durham Supervisors characterize the right in issue as the Fourth Amendment right against unreasonable seizures, Supervisor Br. 26, but Plaintiffs also assert their right against unreasonable searches. *See* U.S. CONST., amend. IV ("The right

19

Fourth Amendment—a proposition for which they cite a single district court decision. *See* Supervisor Br. 28-29.[12]  First, the Durham Supervisors are mistaken: probable cause is required, as we explain elsewhere.  *See* Pls.' Durham Opp. Part V.D.

Second, even if probable cause were not required, the NTO could issue only upon the terms of N.C. GEN. STAT. § 15A-273—the NTO statute that the Durham Supervisors mischaracterize and do not even bother to quote.  An NTO may be issued only if (1) "there is probable cause to believe that a felony offense … has been committed" and (2) "there are reasonable grounds to suspect that the person named or described in the affidavit committed the offense."  *Id.*  Thus, contrary to Defendants' representation, Supervisor Br. 27, the statute *mandates a showing of probable cause* that a felony has been committed.  The lower, "reasonable grounds" standard applies only to determining whether those named in the NTO committed the offense.  The Defendants did not meet either of those two statutory requirements here and the NTO therefore violated Plaintiffs' Fourth Amendment rights.  *See* Pls.' Durham Opp. Part V.D.

Even the Durham Supervisors' own authorities confirm that the police lacked probable cause here.  Defendants cite *McZorn v. Endicott Police Dept.*, No. 06-CV-0033, 2008 U.S. Dist. LEXIS 3513, *19-22 (N.D.N.Y. Jan. 16, 2008), for the proposition that a

---

of the people to be secure in their persons … against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause"). An order to obtain DNA evidence from inside an individual's body is undoubtedly a search.

[12] The Supervisors also cite a couple of North Carolina state court decisions, Supervisor Br. 26-27, but Plaintiffs invoke their rights under the federal Constitution, not the North Carolina Constitution.

"victim's identification is sufficient basis for probable cause in an alleged rape case." Supervisor Br. 30. But on the very page that they cite, the court made clear that this rule applies *only* when the police have "*reasonably trustworthy* information of facts and circumstances sufficient to warrant a person of *reasonable* caution in the belief that Plaintiff committed a rape or some other sexual assault." *McZorn,* 2008 U.S. Dist. LEXIS 3513, at *22 (emphasis added). Defendants also cite *Martinez v. Golding*, and it likewise explains that there is probable cause *only* if the police "had no apparent reason to disbelieve" the complaining witness, and that there is *no* probable cause if "the circumstances raise doubt as to the person's veracity." 499 F. Supp. 2d 561, 567-69 (S.D.N.Y. 2007) (quotation marks and citations omitted).

As explained in detail elsewhere, *see* Pls.' Durham Opp. Part V.A & D; Plaintiffs' Opposition to the Duke SANE Defendants' Motion to Dismiss ("Pls.' SANE Opp.") Part V.C.1, when the Durham Investigators applied for the NTO, they had entered into a conspiracy with Nurse Levicy and were well aware that the centerpiece of the NTO, the medical evidence, was not consistent with Mangum's claims. And the Durham Supervisors (and Duke) had overwhelming reasons to doubt Crystal Mangum's credibility and to doubt that any crime had taken place: (1) Mangum gave seven wildly different versions of her rape claim in one evening, with anywhere from one to twenty rapists, Compl. ¶¶ 7, 106; (2) she recanted her rape charges to police at least twice, ¶¶ 106, 110; (3) the first detective assigned to the case concluded that there was no evidence of a rape and that the file should be closed, ¶ 131; and (4) no evidence of any crime (or

21

even a struggle) was found in the physical examination of the three lacrosse co-captains who lived at the house, and who had cooperated fully with the police and given consistent accounts of the March 13 party during their all-night interrogation. ¶¶ 166-67.  Indeed, when Nifong examined the very same evidence just a few days after the NTO application, it fell so far short of establishing probable cause that he said, "You know, we're f*cked!"  ¶¶ 267-70.

      **E.     The Complaint's Allegations Pass the So-Called "Stigma-Plus" Standard and Counts 24 and 25 Therefore Adequately Plead Causes of Action**

This issue (raised in Supervisor Br. 30-32) is addressed elsewhere.  *See* Durham Opp. Part V.G.

      **F.     The Defendants Are Not Protected by Qualified Immunity**

This issue (raised in Supervisor Br. 32-33) is addressed elsewhere.  *See* Pls.' Himan-Wilson Opp. Part V.E.

      **G.     Count 23 States a Claim for Obstruction of Justice**

This issue (raised in Supervisor Br. 33-35) is addressed elsewhere.  *See* Durham Opp. Part V.E.

      **H.     Count 28 States a Claim for Intentional Infliction of Emotional Distress**

These issues (raised in Supervisor Br. 35-45) are addressed elsewhere.  *See* Durham Opp. Part V.(I).

**VI.    CONCLUSION**

For the foregoing reasons, Defendant Durham Supervisors' motion to dismiss should be denied, except that it may be granted with respect to Counts 29-31 and with

respect to the official-capacity claims in Counts 8, 10, 20-22, 25-26, and 28, as stated

above.

Dated:  August 28, 2008                Respectfully submitted,

**THOMAS, FERGUSON**             **COOPER & KIRK, PLLC**
**& MULLINS,  L.L.P.**

/s/ William J. Thomas             /s/ Charles J. Cooper
William J. Thomas, II             Charles J. Cooper
(N.C. Bar # 9004)               Brian S. Koukoutchos
119 East Main Street            David H. Thompson
Durham, NC  27701            Howard C. Nielson, Jr.
Tel. (919) 682-5648             Nicole Jo Moss
Email: thomas@tfmattorneys.com   (N.C. Bar # 31958)
                                   David Lehn*
                                   1523 New Hampshire Avenue, NW
                                   Washington, DC  20036
                                   Tel. (202) 220-9600
                                   Email: ccooper@cooperkirk.com
                                   Email: dthompson@cooperkirk.com
                                   Email: nmoss@cooperkirk.com

                                   (* motion for special appearance has been filed)

                                   ***Attorneys for Plaintiffs***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 28, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel:

**TROUTMAN SANDERS LLP**
Patricia P. Kerner
N.C. State Bar No. 13005
Hannah Gray Styron
D. Martin Warf
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
Phone: (919) 835-4117
Fax: (919) 829-8714
Email: tricia.kerner@troutmansanders.com
Email: hannah.styron@troutmansanders.com
Email: martin.warf@troutmansanders.com
*Counsel for Defendants Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, and Lee Russ*

**FAISON & GILLESPIE**
Reginald B. Gillespie, Jr.
N.C. State Bar No. 10895
5517 Durham Chapel Hill Boulevard
Suite 2000
Durham, North Carolina 27727-1729
Phone: (919) 489-9001
Fax: (919) 489-5774
Email: rgillespie@faison-gillespie.com
*Counsel for Defendants City of Durham, North Carolina and Steven Chalmers*

**STEPTOE & JOHNSON LLP**
Roger E. Warin*
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000

Fax: (202) 429-3902
Email: rwarin@steptoe.com
*(Motion for Special Appearance to be filed)
***Counsel for Defendant City of Durham, North Carolina***

**ELLIS & WINTERS LLP**
J. Donald Cowan, Jr.
N.C. State Bar No. 0968
Dixie T. Wells
N.C. State Bar No. 26816
P.O. Box 21927 [27420]
100 N. Greene Street, Suite 102
Greensboro, North Carolina 27401
Phone: (336) 217-4197
Fax: (336) 217-4198
Email: don.cowan@elliswinters.com
Email: dixie.wells@elliswinters.com

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Jamie Gorelick*
D.C. Bar No. 101370
Jennifer M. O'Connor
William F. Lee
Paul R.Q. Wolfson
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6500
Facsimile: (202) 663-6363
Email: Jamie.gorelick@wilmerhale.com
Email: Jennifer.oconnor@wilmerhale.com
Email: William.lee@wilmerhale.com
Email: Paul.Wolfson@wilmerhale.com
***Counsel for Defendants Duke University, Aaron Graves, Robert Dean, Richard H. Brodhead, Peter Lange, Tallman Trask, III, John Burness, Larry Moneta, Victor J. Dzau, M.D., Allison Halton, Kemel Dawkins, Suzanne Wasiolek, Matthew Drummond,***

***Counsel for Duke University Health Systems,***

***Inc., Theresa Arico, and Tara Levicy***
(*motion for special appearance filed)

**YATES, McLAMB &WEYHER, L.L.P**
Dan Johnson McLamb
N.C. State Bar No. 6272
T. Carlton Younger, III
Shirley Marring Pruitt
POB 2889
Email: cyounger@ymwlaw.com
Email: spruitt@ymwlaw.com
***Counsel for Duke University Health Systems,
Inc., Theresa Arico, and Tara Levicy***

**POYNER & SPRUILL LLP**
Edwin M. Speas, Jr.
N.C. State Bar No. 4112
P.O. Box 10096
Raleigh, North Carolina 27605-0096
Phone: (919) 783-6400
Fax: (919) 783-1075
Email: espeas@poynerspruill.com
***Counsel for Defendant Mark Gottlieb***

**KENNON, CRAVER, BELO, CRAIG &
MCKEE, PLLC**
Joel M. Craig
N.C. State Bar No. 9179
Henry W. Sappenfield
P.O. Box 51579
4011 University Drive, Suite 300
Durham, North Carolina 27717-1579
Phone: (919) 490-0500
Fax: (919) 490-0873
Email: jcraig@kennoncraver.com
Email: hsappenfield@kennoncraver.com
***Counsel for Defendant Benjamin Himan***

**MAXWELL FREEMAN & BOWMAN, P.A.**
James B. Maxwell
N.C. State Bar No. 2933
P.O. Box 52396

Raleigh, North Carolina 27717-2396
Phone: (919) 493-6464
Fax: (919) 493-1218
Email: jmaxwell@mfbpa.com
*Counsel for Defendant David Addison*

**PINTO COATES KYRE & BROWN, PLLC**
Kenneth Kyre Jr. (N.C. Bar # 7848)
Paul D. Coates (N.C. Bar # 9753)
P.O. Box 4848
Greensboro, NC 27404
Email: kkyre@pckb-law.com
Email: pcoates@pckb-law.com
*Counsel for J. Wesley Covington*

As of the date of this filing, no attorney has made an appearance on behalf of the following Defendant.

Linwood Wilson
6910 Innesbrook Way
Bahama, NC 27503-9700
Email: linwoodw@aol.com

/s/ Nicole Jo Moss