IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:08-cv-119

|  |  |
|---|---|
| EDWARD CARRINGTON, et al., | ) |
| Plaintiffs, | ) |
| v. | ) |
| DUKE UNIVERSITY, et al., | ) |
| Defendants. | ) |

## PLAINTIFFS' OPPOSITION TO DEFENDANT MARK GOTTLIEB'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

### I. NATURE OF PROCEEDINGS

We state the nature of the proceedings elsewhere. Plaintiffs Opposition to City of Durham's Motion to Dismiss ("Pls.' Durham Opp.") Part I. This brief addresses the motion to dismiss under Rule 12(b)(6) of Mark Gottlieb.

### II. STATEMENT OF FACTS

Sergeant Gottlieb of the Durham Police objects to his inclusion in this lawsuit, which he casts as a case against Duke University to which the claims against the Durham Defendants are appended as "an afterthought." Brief in Support of Defendant Gottlieb's Motion to Dismiss ("Gottlieb Br.") 2-3. This defense impermissibly disputes the allegations of the Complaint that plead Gottlieb's wrongful actions and his participation in the conspiracy in detail. The Plaintiffs were interrogated, searched, threatened, harassed, and publicly condemned as gang rapists not in some sort of elaborate college

hazing ritual, but as part of a criminal investigation by the Durham Police, led by Gottlieb himself. This is the investigation that the Attorney General of North Carolina has denounced as a grotesque travesty of justice, deliberately perpetrated by Gottlieb and Nifong despite the absence of even a shred of credible testimonial or physical evidence, and the presence of ultimately overwhelming evidence demonstrating that the rape allegation was a malicious hoax. The acts of Tara Levicy and the other Duke Defendants were equally reprehensible and indefensible, but those acts could not have inflicted on Plaintiffs all of the harms pleaded in the Complaint without the malicious collaboration of government officers, including Sergeant Gottlieb.[1]

### III. QUESTIONS PRESENTED

1. Whether Plaintiffs have stated claims that Defendant violated their federal and constitutional rights under 42 U.S.C. § 1983 (Count 21-22, 24 and 25).

2. Whether Plaintiffs have stated claims based on the misuse of the key card data (Counts 8, 10, 20, and 23).

3. Whether the official-capacity claims are redundant.

4. Whether Defendant is shielded from Plaintiffs' federal claims by the doctrine of qualified immunity (Counts 20, 21, 22, 24, and 25).

5. Whether Gottlieb is not shielded from Plaintiffs' state-law claims by North Carolina's doctrine of public-official immunity (Counts 8, 23, 28, 29, and 30).

---

[1] We caution the Court that many of Gottlieb's citations to the Complaint are inaccurate. For example, he purports to quote Carrington Complaint ("Compl.") ¶ 135 for the supposition that the rape hoax was entirely Levicy's fault, Gottlieb Br. 5, but ¶ 135 actually sets forth Gottlieb's own history of abusive law enforcement targeting Duke students. Gottlieb also "quotes" ¶ 181 as placing blame for the rape hoax on Levicy, but ¶ 181 actually alleges that Gottlieb and the other Durham Investigators knew that Mangum was lying. Gottlieb Br. 5.

2

6. Whether Plaintiffs have stated claims for intentional infliction of emotional distress (Count 28).

7. Whether Plaintiffs have stated a claim for obstruction of justice.

## IV. STANDARD OF REVIEW

We state the standard of review elsewhere. *See* Plaintiffs' Opposition to Defendant City of Durham's Motion to Dismiss ("Pls.' Durham Opp.") Part IV.

## V. ARGUMENT

Defendant Gottlieb advances a variety of challenges to Plaintiffs' claims. As explained below, some of Defendant's arguments have merit, but most do not.[2]

### A. Count 21 States a Valid Fourth Amendment Claim Against Gottlieb

Gottlieb predicates his defense to the Fourth Amendment claims on his supposed adherence to the state-law procedures for obtaining a Nontestimonial Order ("NTO"), which do not, he insists, require probable cause. Gottlieb Br. 9-11. It is revealing that Gottlieb never even cites, let alone quotes, the North Carolina statute that governs NTOs. The Fourth Amendment requires probable cause for an order to obtain DNA and the North Carolina NTO statute itself mandates that there be probable cause to believe that a felony has been committed, as we explain in detail elsewhere. *See* Pls.' Durham Opp. Part V.D; Plaintiffs' Opposition to the Durham Supervisor Defendants' Motion to

---

[2] We incorporate into this opposition all oppositions filed today by Plaintiffs against the motions to dismiss of the Duke University Defendants, the Duke SANE Defendants, Defendant City of Durham, the Durham Supervisor Defendants, Defendant Gottlieb, Defendant Himan, Defendant Wilson, Defendant Addison, and Defendant Covington. Cross references to specific sections of Plaintiffs' other oppositions are provided throughout this brief

3

Dismiss ("Pls.' Supervisor Opp.") Part V.D. We incorporate those arguments here, and add the following additional points.

Gottlieb urges the Court to defer to the judgment of the magistrate who issued the NTO, but that requires the assumption that the magistrate was actually privy to all of the evidence—including the substantial exculpatory evidence—that Gottlieb and Himan kept to themselves. As Attorney General Cooper's exhaustive review later demonstrated, there was no credible evidence of a crime, but the police did not share everything with the public, Plaintiffs, or the North Carolina court. Gottlieb fights the facts pleaded, protesting that he did not have the exculpatory evidence when he prepared the NTO application. Gottlieb Br. 3, 6-7, 12-13. "Perhaps [Gottlieb] may ultimately persuade a factfinder, but this argument cannot prevail on summary judgment, for at this stage we do not find facts." *Miller v. Prince George's County,* 475 F.3d 621, 628 (4th Cir. 2007). *A fortiori* Gottlieb's factual defense cannot succeed on a motion to dismiss.

While review of actual evidence of how the magistrate was deceived in this case must await discovery and trial, the Complaint does allege false statements and omissions of material facts in Gottlieb's and Himan's NTO application that negate probable cause.[3]

---

[3] In a footnote relying on a single, unpublished decision, Gottlieb offers a half-hearted argument that a civil-rights plaintiff challenging a warrant for lack of probable cause must plead with particularity in accord with Rule 9. Gottlieb Br. 12 n.4 (citing *Wilkinson v. Hallsten*, No. 06CV2, 2006 U.S. Dist. LEXIS 53822 (W.D.N.C. Aug. 2, 2006)). The Supreme Court has held that Rule 9 does not apply to "complaints alleging municipal liability under § 1983. … [F]ederal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." *Leatherman v. Tarrant County*, 507 U.S. 163, 168-69 (1993). In any event, the

The NTO application, for example, stated that Mangum had been choked by her assailants during the rape—indeed, "felonious strangulation" was one of the crimes listed as the basis for the NTO. But Mangum never made such a claim in any of the seven different rape stories she told at the hospital. Carrington Complaint ("Compl.") ¶ 205. Gottlieb repeatedly points his finger at SANE nurse Levicy, protesting that he just relied on her statements about the medical evidence and is blameless because he was entitled to so do. *See, e.g.,* Gottlieb Br. 3, 6, 12. In the NTO, Gottlieb placed great reliance on the oral statements of Duke SANE Tara Levicy precisely because *her statements were all he had*. Compl. ¶¶ 185-90, 275, 340. The Complaint alleges that Gottlieb conspired with Levicy to investigate a crime that did not exist. *See* Plaintiffs' Opposition to the Duke SANE Defendants' Motion to Dismiss ("Pls.' SANE Opp.") Part V.C.1.a. In light of the allegation that Gottlieb conspired with Levicy in cooking and misrepresenting the evidence, his pointing his finger at her simply rebounds to implicate himself. Compl. ¶¶ 7-9, 153-54, 185-88, 190.[4]

It is worth noting that the NTO application told the magistrate that the lacrosse players' DNA was needed so that they could either be proved or be ruled out as perpetrators, and it stipulated that any players whose DNA was not found on the rape-kit items would be immediately exonerated. It stated, "The DNA evidence requested will

---

Complaint pleads Gottlieb's false statements and material omissions with ample specificity.

[4] The NTO application contained additional false statements and material omissions, as explained at length elsewhere. *See* Pls.' Durham Opp. Part V.D.

immediately rule out any innocent persons, and show conclusive evidence as to who the suspect(s) are in the alleged violent attack upon this person." Compl. ¶ 212. This was plainly correct, given Mangum's consistent statements to Duke medical personnel that she had been orally, vaginally, and anally raped, that condoms had not been used, and that there had been ejaculation. But when the DNA evidence came back and *did, in fact, exculpate all the lacrosse players*, Gottlieb and the other Durham Investigators conspired to suppress it. ¶¶ 212, 304-13, 381-84.

### B. Count 22 Adequately Pleads a Due Process Claim for Malicious Investigation

Gottlieb, like the other Durham Defendants, argues that Plaintiffs cannot state a claim under the Due Process Clause. Gottlieb Br. 14-18. This argument is fully addressed elsewhere. *See* Pls.' Supervisor Opp. Part V.C.[5]

### C. Counts 24 and 25 Comply with the So-called "Stigma-plus" Standard and Therefore Adequately Plead Causes of Action

Gottlieb, like the other Durham Defendants, argues that Plaintiffs cannot recover for any injury to their reputations. Gottlieb Br. 18-21. This argument is addressed elsewhere. *See* Pls.' Durham Opp. Part V.G.

---

[5] One of Gottlieb's principal authorities for his contention that an abusive and deceitful criminal investigation is not outrageous and does not violate due process is *United States v. Jacobson*, 916 F.2d 467, 469 (8th Cir. 1990) (en banc), which he cites repeatedly. *See* Gottlieb Br. 15. But the Supreme Court reversed that decision, holding that the government had targeted and entrapped an "unwary innocent." *Jacobson v. United States*, 503 U.S. 540, 542 (1992).

## D. Counts 8, 10, 20, and 23 Adequately Plead Causes of Action Against Gottlieb Based on Misuse of the Key-Card Reports

Much of Gottlieb's challenges to Plaintiffs' claims involving the key-card data and Defendants' related conspiracy, *see* Gottlieb Br. 21-24 – Count 8 (Fraud), Count 10 (Abuse of Process), Count 20 (Fourth Amendment), and Count 23 (Obstruction of Justice) – are addressed elsewhere. *See* Pls.' Durham Opp. Parts V.A, C & E. We respond to several of Gottlieb's specific points here.

First, Gottlieb protests that he is not named in any of the key-card claims. Gottlieb Br. 21. Not true. The Durham Investigators are named repeatedly in the allegations pertinent to Counts 8, 10, 20, and 23, and Gottlieb is clearly identified in the Complaint as one of the Durham Investigators. Compl. ¶¶ 67-69. This form of pleading is entirely appropriate. *See* Pls.' Supervisor Opp. Part V.B.

Second, Gottlieb contends that he cannot be liable because Nifong issued the key-card subpoena. Gottlieb Br. 24. But Counts 8, 10, 20, and 23 are all *conspiracy* claims, and Gottlieb is therefore, at the very least, liable for the acts of his co-conspirators. *See Fox v. Wilson*, 354 S.E.2d 737, 743 (N.C. Ct. App. 1987) ("all of the conspirators are liable, jointly and severally, for the act of any one of them done in furtherance of the agreement"). We thoroughly demonstrate the adequacy of the conspiracy allegations elsewhere. *See* Pls.' Durham Opp. Part V.A. Furthermore, Gottlieb was intimately involved in the scheme because he was the recipient of the illicit key-card data from the University and he used that data to rig the third photo array to ensure that Mangum would identify Duke lacrosse players. Compl. ¶¶ 324-30, 343-53.

Gottlieb argues that his misuse of the illicit key-card reports cannot make him liable to Plaintiffs because FERPA binds the schools which collect and hold such data, not third parties who might seek it. Gottlieb Br. 22. But even if FERPA does not bind government actors such as Gottlieb, the Fourth Amendment *does*. The North Carolina state court quashed the subpoena and ruled, relying in part on FERPA, that the government had no right to the key-card reports. The remainder of Gottlieb's key-card arguments are the same as those of Durham, which are addressed elsewhere. *See* Pls.' Durham Opp. Part V.C.

### E. The Redundant Official-Capacity Claims Against Gottlieb May Be Dismissed

Several of the individual Defendants contend that the claims against them in their official capacity should be dismissed as duplicative of Plaintiffs' identical claims (both state and federal) naming the City of Durham as a defendant. *See, e.g.*, Gottlieb Br. 26; Brief in Support of Durham Supervisor Defendants' Motion to Dismiss ("Supervisor Br.") 10-13. Insofar as the City concedes that it is properly named as a defendant in these causes of action and that it remains the real party in interest, Plaintiffs have no objection to dismissal of the official-capacity claims against Gottlieb and other Durham employees and agents in Counts 8, 10, 20-22, 25-26, and 28-31.

### F. Gottlieb Is Not Shielded From Plaintiffs' Federal Claims by the Doctrine of Qualified Immunity (Counts 20, 21, 22, 24, and 25)

Defendants' assertion of qualified immunity is addressed elsewhere. See Plaintiffs' Opposition to Defendant Himan's and Defendant Wilson's Motions to Dismiss

8

("Pls.' Himan-Wilson Opp.") Part V.E.

### G. Gottlieb Is Not Shielded from Plaintiffs' State-Law Claims by North Carolina's Doctrine of Public-Official Immunity (Counts 8, 23, 28, 29, and 30)

Defendant argues that North Carolina's doctrine of public-official immunity shields him from being held liable in his individual capacity for Plaintiffs' state-law claims. Gottlieb Br. 26-31. We concur that individual liability for the *negligence* claims (Counts 29 and 30) would be barred by public-official immunity. *Id.* at 29-31; *see Bailey v. Kennedy*, 349 F.3d 731, 742 (4th Cir. 2003). We do not seek to hold Sergeant Gottlieb or the other individual Durham defendants liable in their individual capacities on those causes of action.

In contrast, Gottlieb is liable in his individual capacity for the *intentional torts* pleaded in Counts 8 (Fraud), 23 (Obstruction of Justice), and 28 (Intentional Infliction of Emotional Distress). North Carolina's doctrine of public-official immunity "is unavailable to officers who violate clearly established rights because an officer acts with malice when he does that which a man of reasonable intelligence would know to be contrary to his duty." *Bailey*, 349 F.3d at 742 (quotation marks omitted). Consequently, such immunity is unavailable on a Rule 12 motion to dismiss where there are factual disputes over the official's conduct and its implications for the legal rights invoked by the plaintiff. *See, e.g.*, *Moore v. Evans*, 476 S.E.2d 415, 421-22 (N.C. Ct. App. 1996) (denying public official immunity where factual disputes existed over whether identification was sufficient to support probable cause). The malice and ill-will attributed

9

to Gottlieb in, and inferable from, the allegations of the Complaint—including such acts as falsifying evidence and witness tampering in order to frame innocent students for a crime that never happened—easily defeat the usual presumption that an official "acts fairly, impartially, and in good faith." *Green v. Valdese*, 291 S.E.2d 630, 632 (N.C. 1982); *see, e.g.*, Compl. ¶¶ 5, 7, 177-78, 181-83, 190, 268-70, 306-08, 346-48, 382-84, 423.

### H. Count 28 States a Claim Against Gottlieb for Intentional Infliction of Emotional Distress

With respect to Count 28, Gottlieb contends that the Complaint fails to allege that he "engaged in the requisite extreme and outrageous conduct." Gottlieb Br. 31. This boils down to the frivolous proposition that conspiring to frame innocent students for a crime that never happened is not outrageous. Gottlieb's arguments that he was just doing his job and that he believed in good faith that he had probable cause are rebutted elsewhere. *See* Part V.A., *supra*; Pls.' Durham Opp. Part V.(I).

### I. Count 23 States a Claim Against Gottlieb for Obstruction of Justice

Gottlieb again trots out his assertion that he was just following Nifong's orders and crediting Tara Levicy's evidence. Gottlieb Br. 33-34. These tired contentions have been thoroughly answered elsewhere. *See* Part V.A., *supra*; Pls.' Durham Opp. Part V.C-D. We also explain elsewhere the breadth of North Carolina law on obstruction of justice and how it encompasses the misconduct pleaded here. *See* Pls.' Durham Opp. Part V.E. It is inconceivable that witness tampering, fabricating evidence, suborning perjury, and suppressing exculpatory evidence would not be considered acts that "prevent[],

obstruct[], impede[] or hinder[] public or legal justice." *In re Kivett*, 309 S.E.2d 442, 462 (N.C. 1983). Even if Gottlieb's own malfeasance were not sufficient, Count 23 also pleads conspiracy, *see* Compl. ¶¶ 644-45; Pls.' Durham Opp. Part V.A (detailing evidence of conspiracy). Therefore, Gottlieb is chargeable with all of the lies and knavery of Mike Nifong and Tara Levicy, among others. The Attorney General's own thorough and careful investigation confirmed the palpable fact that the alleged gang rape was a hoax and that the investigation Gottlieb pushed so adamantly was an obscene burlesque of police procedure that generated not even a scintilla of credible evidence. The Complaint adequately pleads a claim for obstruction of justice.

## VI. CONCLUSION

For the foregoing reasons, Defendant Gottlieb's motion to dismiss should be denied, except that it may be granted with respect to Counts 29-30 and with respect to the official-capacity claims in Counts 8, 10, 20-22, 25-26, and 28, as stated above.

Dated: September 15, 2008

Respectfully submitted,

**THOMAS, FERGUSON & MULLINS, L.L.P.**

**COOPER & KIRK, PLLC**

/s/ William J. Thomas
William J. Thomas, II
(N.C. Bar # 9004)
119 East Main Street
Durham, NC  27701
Tel. (919) 682-5648
Email: thomas@tfmattorneys.com

/s/ Charles J. Cooper
Charles J. Cooper
Brian S. Koukoutchos
David H. Thompson
Howard C. Nielson, Jr.
Nicole Jo Moss
(N.C. Bar # 31958)
David Lehn*
1523 New Hampshire Avenue, NW
Washington, DC  20036
Tel. (202) 220-9600
Email: ccooper@cooperkirk.com
Email: dthompson@cooperkirk.com
Email: nmoss@cooperkirk.com

(* motion for special appearance has been filed)

***Attorneys for Plaintiffs***