IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:08-cv-119

_____
                                                )
**EDWARD CARRINGTON, et al.,**    )
                                                )
                 **Plaintiffs,**   )
**v.**                                         )
                                                )
**DUKE UNIVERSITY, et al.,**     )
                                                )
                **Defendants.**  )
_____ )

**PLAINTIFFS' OPPOSITION TO DEFENDANT BENJAMIN HIMAN'S
AND DEFENDANT LINWOOD WILSON'S MOTIONS TO
<u>DISMISS PURSUANT TO RULE 12(b)(6)</u>**

## I.   NATURE OF PROCEEDINGS

We state the nature of the proceedings elsewhere. Plaintiffs Opposition to City of Durham's Motion to Dismiss ("Pls.' Durham Opp.") Part I. This brief addresses the motions to dismiss under Rule 12(b)(6) of Benjamin Himan and Linwood Wilson.[1]

## II.   STATEMENT OF FACTS

Officer Benjamin Himan[2] of the Durham Police takes issue, as do other

---

[1] Defendant Linwood Wilson, appearing *pro se*, has filed a brief that is a nearly verbatim copy of the brief submitted on behalf of Defendant Himan. We will therefore treat the two briefs as one, and all the arguments addressed herein to Himan's brief should be understood as responding to Wilson's as well. The one distinction worth noting is that Wilson, but not Himan, asserts not only qualified immunity but also absolute prosecutorial immunity. This point will be dealt with separately, *infra*.

[2] Wilson makes one truly remarkable argument in his Statement of Facts: he claims partial credit for the ultimate exoneration of Plaintiffs, asserting that the "innocence of the indicted players was established in part due to information gathered by

Defendants, with what he derides as the Complaint's "hyperbolic characterizations of the stated events." Brief in Support of Defendant Himan's Motion to Dismiss ("Himan Br.") 3; *see also, e.g.*, Brief in Support of Defendant Wilson's Motion to Dismiss ("Wilson Br.") 2. Actually, genuine hyperbole is hard to come by, precisely because the events in this case are so appalling that resorting to hyperbole is unnecessary and scarcely possible. The Duke rape hoax convulsed the Durham community and dominated the national news media for a year. The district attorney has been disgraced, disbarred, and jailed. The Attorney General of North Carolina took over the case and repudiated both the investigation conducted by the Durham Police, and the analysis of medical and physical evidence conducted by Duke University Hospital. General Cooper concluded that there was no medical or physical evidence whatsoever of a crime, that the complaining witness whom Himan credited could not possibly be believed, and that the lacrosse players whom Himan persecuted by fabricating evidence and suborning perjury were, in truth, innocent.

---

Defendant Wilson and members of the Durham Police Department." Brief in Support of Defendant Wilson's Motion to Dismiss ("Wilson Br.") 2 n.1. But as the Complaint explains, the lacrosse players were exonerated only when Attorney General Roy Cooper displaced Nifong, Wilson, Gottlieb, and Himan and "conducted an intensive, thorough, and *independent* investigation of the evidence." Carrington Complaint ("Compl.") ¶ 467 (emphasis added). General Cooper's team examined the same evidence that Nifong's team had. The only difference was that General Cooper, unlike Nifong, Wilson, and the rest, was not part of a conspiracy to search, arrest, prosecute, convict, and presumably imprison Plaintiffs despite their known innocence. Thus Wilson effectively concedes that he always knew that the evidence he had helped gather plainly exonerated, rather than incriminated, Plaintiffs.

2

### III. QUESTIONS PRESENTED

1. Whether Plaintiffs state claims for violations of their rights under 42 U.S.C. § 1983 (Counts 20-22 and 24-25).

2. Whether Defendants Himan, Gottlieb, Wilson, Addison, and the Supervisory Defendants are entitled to qualified immunity from Plaintiffs' federal claims (Counts 20-22, 24-25).

3. Whether Defendant Wilson is shielded by absolute immunity.

4. Whether Himan or any other Durham Investigator or Durham Supervisor have public-official immunity against Plaintiffs' state-law intentional tort claims (Counts 8, 10, 23, 28).

5. Whether Plaintiffs have stated a claim for obstruction of justice (Count 23).

6. Whether Plaintiffs have stated a claim for intentional infliction of emotional distress (Count 28).

### IV. STANDARD OF REVIEW

We state the standard of review elsewhere. *See* Plaintiffs' Opposition to Defendant City of Durham's Motion to Dismiss ("Pls.' Durham Opp.") Part IV.

### V. ARGUMENT

Defendants Himan and Wilson advance a variety of challenges to Plaintiffs' claims. As explained below, some of Defendant's arguments have merit, but most do not.[3]

---

[3] We incorporate into this opposition all oppositions filed today by Plaintiffs against the motions to dismiss of the Duke University Defendants, the Duke SANE Defendants, Defendant City of Durham, the Durham Supervisor Defendants, Defendant Gottlieb, Defendant Himan, Defendant Wilson, Defendant Addison, and Defendant Covington. Cross references to specific sections of Plaintiffs' other oppositions are provided throughout this brief

### A. The Complaint Adequately Pleads Violations of Plaintiffs' Rights Under the Due Process Clause (Counts 22 and 24)

Himan argues that the malicious acts and conspiracy perpetrated in the course of his investigation of the Duke rape hoax do not constitute a constitutionally cognizable injury. Himan Br. 13-17; Wilson Br. 7-10. We address these issues elsewhere. *See* Plaintiffs' Opposition to the Durham Supervisor Defendants' Motion to Dismiss ("Pls.' Supervisor Opp.") Part V.C.

### B. The Complaint Adequately Pleads Violations of Plaintiffs' Rights Under the Fourth Amendment (Count 21)

Himan contends that there was probable cause to seek the NTO for the lacrosse players' DNA. Himan Br. 18-25; Wilson Br. 10-17. We address the constitutional infirmities of Defendants' application for an NTO elsewhere. *See* Plaintiffs' Opposition to Defendant City of Durham's Motion to Dismiss ("Pls.' Durham Opp.") Part V; Pls.' Supervisor Opp. Part V.D; Plaintiffs' Opposition to Gottlieb's Motion to Dismiss ("Pls.' Gottlieb Opp.") Part V.A. We also offer the following responses to Himan's unique arguments.

Himan contends that he cannot be faulted for putting the false statements that Mangum was "strangled" and that she was anally raped into the NTO application because the Complaint "do[es] not allege that Investigator Himan knew that these statements were false." Himan Br. 21. Himan alleges that only Duke had this information. *Id.* Not true, and Defendant is not permitted on this Rule 12 motion to dispute the facts alleged in the Complaint. Himan should have known the strangulation statement was false. That claim

was not in any of the seven different rape stories Mangum told at the hospital. Compl. ¶ 205. Himan ignored that exculpatory evidence and conspired with Levicy to investigate a crime that did not exist. ¶¶ 190-92, 311, 313, 462-63; *see* Pls.' SANE Opp. Part V.C.1.a.

Himan insists that he was entitled to base probable cause entirely on the statements of Mangum as the complaining witness without consideration of any other evidence. Himan Br. 22-24; Wilson Br. 15-17. But the authority Himan relies upon involved a crime with only one witness—the alleged victim—and that witness was, all things considered, credible (and severely battered, as well). *See Torchinsky v. Siwinski*, 942 F.2 257, 263 (4th Cir. 1990), *quoted in* Himan Br. 23-24. In contrast, the supposed victim here, Crystal Mangum, was unbelievable from the outset, and got even less every time she told a different version of the bogus attack; she repeatedly recanted her allegations of rape; she exhibited no bruises, bleeding, abrasions, or other physical injuries from the supposed gang-rape by at least three and as many as twenty attackers; and she might as well have been picking her alleged "attackers" in Himan's rigged photo lineups by the eenie-meenie-minie-moe method. Compl. ¶¶ 7, 106, 110, 123-25. But the most important distinction is that in the present case there was a second exotic dancer – Kim Roberts – who witnessed all the events at issue, *and initially she said nothing happened*. Compl. ¶¶ 180-83. Had Gottlieb and Himan not entered into a conspiracy with Tara Levicy, and had they disclosed the exculpatory medical evidence in the NTO application, the judge surely would have denied it. Unsurprisingly, Himan does not even try to explain away his conspiracy with Levicy.

5

### C. Count 20 Pleads a Constitutional Claim Pertaining to Plaintiffs' Key-Card Data

Defendant Himan's challenges to the Fourth Amendment rights at issue in Count 20, *see* Himan Br. 25-26; Wilson Br. 17-19, are addressed elsewhere. *See* Pls.' Durham Opp. Part V.C.1, 3; Pls.' Gottlieb Opp. Part V.D.

### D. Count 25 Adequately States a Claim Under Section 1983

Defendant Himan contends that Plaintiffs cannot state a claim for harm to their reputations. Himan Br. 26-28; Wilson Br. 19-21. This issue is addressed elsewhere. *See* Pls.' Durham Opp. Part V.G; Plaintiffs' Opposition to Defendant Addison's Motion to Dismiss ("Pls.' Addison Opp.") Part IV.C. We also offer the following responses to Himan's unique arguments.

Himan concedes that Count 25 adequately alleges that he made false public statements in the application for the NTO, but he insists that he had no reason to suspect his statements about Mangum and the supposed rape evidence were false and that he was entitled to rely on SANE Levicy. Himan Br. 26-27. But the question whether Himan could reasonably rely on Levicy's statements in preparing the NTO application misses the point: Himan was not merely *relying* on Levicy, he was *conspiring* with her. Compl. ¶¶ 190-92, 275, 311, 313, 340, 462-63. Even weeks after Nifong dismissed the rape charges, Himan and Wilson were still meeting with Levicy to further manipulate her testimony and conform it to their evolving needs for the remaining criminal charges of kidnapping and sexual assault. ¶¶ 192, 462-63.

### E. Himan, Gottlieb, Wilson, Addison, and the Supervisory Defendants Are Not Entitled to Qualified Immunity from Plaintiffs' Federal Claims (Counts 20, 21, 22, 24, and 25)

Defendant Himan asserts the affirmative defense of qualified immunity from Plaintiffs' federal claims. Himan Br. 28-31; *see also* Wilson Br. 21, 27-28; Addison Br. 8-9; Gottlieb Br. 24-26; Supervisor Br. 32-33. Qualified immunity protects government officials only to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). There is a two-step analysis. First, the court must decide "whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Second, the court must determine whether that right was "clearly established" at the time of the violation. *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002). "This determination 'is an objective one, dependent not on the subjective beliefs of the particular officer at the scene, but instead on what a hypothetical, reasonable officer would have thought in those circumstances.' " *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004). The " 'exact conduct at issue need not have been held unlawful for the law governing an officer's actions to be clearly established' "—"the absence of controlling authority holding identical conduct unlawful does not guarantee qualified immunity." *Id.* "After all, qualified immunity was never intended to relieve government officials from the responsibility of applying familiar legal principles to new situations." *Wilson v. Kittoe*, 337 F.3d 392, 403 (4th Cir. 2003) (quotation omitted). "Most often … qualified immunity is tested at the summary

7

judgment stage after the facts have been developed through discovery." *Alford v. Cumberland County*, No. 06-1569, 2007 U.S. App. LEXIS 24138, at *9 (4th Cir. Oct. 15, 2007).

The first step in the immunity inquiry—determining that a right would be violated on the facts alleged—has been fulfilled in Plaintiffs' opposition briefs explaining and defending each of their federal claims against Defendants' objections.[4] The second step—determining whether that right was clearly established in 2006, the time of the violation—is fulfilled by the same arguments.

In 2006, any reasonable police officer or city official would have known that the Fourth and Fourteenth Amendments are violated when a law enforcement officer: (1) conspires with a Duke nurse to include false information in an NTO; (2) coerces a witness to change her statement and fabricate testimony in order to incriminate an innocent party (indeed, tampering with witnesses is a crime); (3) omits material exculpatory evidence from an NTO application in order to deceive the magistrate; (4) conspires with a material witness to repeatedly change her testimony to fill holes in the

---

[4] For Count 20 (4th Amendment/key-cards), *see* Plaintiffs' Opposition to Defendant City of Durham's Motion to Dismiss ("Pls.' Durham Opp.") Part V.C.3; Plaintiffs' Opposition to the Durham Supervisor Defendants' Motion to Dismiss ("Pls.' Supervisor Opp.") Part V.D; Plaintiffs' Opposition to Defendant Gottlieb's Motion to Dismiss ("Pls.' Gottlieb Opp."). Part V.D.  For Count 21 (4th Amendment/NTO), *see* Pls.' Durham Opp. Part V.D; Pls.' Supervisor Opp. Part V.D; Pls.' Gottlieb Opp. A.  For Count 22 (Due Process/Malicious Investigation), *see* Pls.' Durham Opp. Part V.F; Pls.' Supervisor Opp. Part V.C; Pls.' Gottlieb Opp. Part V.B.  For Counts 24 and 25 (Section 1983 Violations by Deprivation of Liberty and False Public Statements), *see* Pls.' Durham Opp. Part V.G.

government's case as they arise; (5) conspires with other officers and a prosecutor to conceal from the court and criminal suspects decisively exculpatory DNA evidence; (6) conspires to deceive a court in applying for a subpoena for federally protected private information, in order to conceal the fact that he has already obtained and used that information illegally; or (7) makes false and inflammatory public statements accusing innocent college students of a heinous racial gang-rape that never happened.  Plaintiffs have a right to be free of searches and seizures without probable cause.  *See Brooks v. Winston-Salem*, 85 F.3d 178, 183-84 (4th Cir. 1996); *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000).  Plaintiffs have the right not to be searched or seized "as a result of the fabrication of evidence by a government officer acting in an investigatory capacity." *Washington v. Wilmore*, 407 F.3d 274, 282-83 (4th Cir. 2005).  Providing false information in an affidavit seeking a warrant or a search order, whether recklessly or knowingly, violates the Fourth Amendment.  *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *see also Jean v. Collins*, 221 F.3d 656, 662-63 (4th Cir. 2000) (*en banc*) (Wilkinson, J., concurring, joined by Widener, Wilkins, Niemeyer, Williams, and Traxler, JJ.) ("bad faith" concealment of evidence is actionable); *id*. at 677 (Murnaghan, J., dissenting, joined by Michael, Motz, King, and Hamilton, JJ.) (concealment actionable even without bad faith); *id.* at 679 (Luttig, J., dissenting) (same).

      These are not obscure or novel legal propositions.  Unable to fend off their alleged violations of these rights, Defendants assemble and attribute to Plaintiffs flimsy straw men, such as the "implicit contention that the failure to take action to terminate an

9

investigation after it has been initiated constitutes a violation of § 1983," or the "implicit argument that a 'reasonable person' [involved in a criminal investigation] should have known that he was legally required to go around the prosecutor and directly provide exculpatory evidence to defendants." Himan Br. 30; Wilson Br. 27-28. Plaintiffs are not arguing that Defendants were obliged to throw themselves in front of a prosecutorial freight train. Plaintiffs contend only that any reasonable public official would know that conspiring to frame innocent persons for a crime that never happened is wrong and a violation of the Constitution.

### F. Defendant Wilson is Not Shielded by Absolute Immunity

Defendant Linwood Wilson argues that he is entitled to absolute immunity because he was always "employed as a prosecutorial investigator" in the office of District Attorney Nifong, Wilson Br. 23, until he was fired in the aftermath of the Duke rape hoax. Compl. ¶ 66. Wilson contends that the law in this circuit is that "the actions of both the prosecutor and his assistant [a]re covered by absolute prosecutorial immunity." Wilson Br. 23 (citing *Hoover v. Keith*, No. 04CV01047, 2004 U.S. Dist. LEXIS 27943, at *3 (M.D.N.C. Nov. 9, 2004)).

Wilson misapprehends the law. As both the Magistrate Judge's report and the decision of this Court in *Hoover* make clear, the "assistant" who shared absolute immunity with the District Attorney in that case was the *Assistant District Attorney* who had successfully prosecuted Hoover for a crime. *See Hoover v. Keith*, No. 09CV01047, 2004 U.S. Dist. LEXIS 27943, at *1, *3; *Hoover v. Keith*, 2005 U.S. Dist. LEXIS 9614,

10

at *1 (M.D.N.C. Jan. 4, 2005) (Beaty, J.). In contrast, Wilson—as he himself acknowledges—was not an attorney but "a prosecutorial investigator" whose conduct is now challenged "in his role as an investigator." Wilson Br. 23; *see* Compl. ¶ 66.

The "scope of absolute prosecutorial immunity has been narrowly drawn." *Suarez Corp. Industries v. McGraw*, 125 F.3d 222, 230 (4th Cir. 1997). Even prosecutors do not get absolute immunity when performing investigatory functions similar to those of police officers. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273-76 (1993). In *Buckley* the Supreme Court declined to extend absolute immunity to prosecutors who were alleged to have fabricated evidence and false witness statements for use at a future trial. *Id.* Like the civil defendants who were denied absolute immunity in that case, Wilson was not preparing evidence for presentation at trial nor deciding whether and when to prosecute. *Id.* at 273, 275 n.6. He was "fabricating evidence during the preliminary investigation," *id.* at 261, and he therefore is not shielded by absolute immunity. *See Gobel v. Maricopa County*, 867 F.2d 1201, 1204-05 (9th Cir. 1989) (denying absolute immunity for role in false arrest, illegal detention, and false statements to the media); *Auriemma v. Montgomery*, 860 F.2d 273, 279 (7th Cir. 1988) (denying absolute immunity for "unlawful investigative activities"); *Joseph v. Patterson*, 795 F.2d 549, 560 (6th Cir. 1986) ("when he carries out administrative or investigatory functions of the prosecutor, he can only claim the affirmative defense of qualified immunity").[5]

---

[5] Wilson tries to distinguish this case from *Buckley* by asserting that he acted "after indictment with a focus on the pending criminal trial." Wilson Br. 24. But no

11

G.  **Neither Himan Nor Any Other Durham Investigator or Durham Supervisor Is Shielded from Plaintiffs' State-Law Intentional Tort Claims by North Carolina's Doctrine of Public-Official Immunity (Counts 8, 10, 23, 28)**

Himan claims the protection of public official immunity under North Carolina law. Himan Br. 31-34; Wilson Br. 28-31. These issues are addressed elsewhere. *See* Pls.' Gottlieb Opp. Part V.G.

H.  **Count 23 Adequately Pleads a Claim for Obstruction of Justice**

Himan contends that Count 23 fails as a matter of law. Himan Br. 34-35; Wilson Br. 31-32. This issue is addressed elsewhere. *See* Pls.' Durham Opp. Part V.E.

I.  **Count 28 States a Claim for Intentional Infliction of Emotional Distress**

Himan argues that Count 28 does not plead a viable claim. Himan Br. 37-39; Wilson Br. 34-37. This issue is addressed elsewhere. *See* Pls.' Durham Opp. Part V.(I).

VI. **CONCLUSION**

For the foregoing reasons, Defendant Himan's and Wilson's motions to dismiss should be denied, except that they may be granted with respect to Counts 29-30 and with respect to the official-capacity claims in Counts 8, 10, 20-22, 25-26, and 28, as stated above.

Dated: September 15, 2008             Respectfully submitted,

---

Plaintiff was indicted and no criminal trial of any of them was ever pending. The Complaint alleges that Wilson engaged only in investigative tasks, just like the other Durham Investigators, Himan and Gottlieb. *See, e.g.*, ¶¶ 192, 401-03, 462-63. Wilson may be confusing this case with another. In any event, on this Rule 12 motion Wilson must accept the facts as they are pleaded in the Complaint.

| THOMAS, FERGUSON & MULLINS, L.L.P. | COOPER & KIRK, PLLC |
|---|---|
| /s/ William J. Thomas<br>William J. Thomas, II<br>(N.C. Bar # 9004)<br>119 East Main Street<br>Durham, NC 27701<br>Tel. (919) 682-5648<br>Email: thomas@tfmattorneys.com | /s/ Charles J. Cooper<br>Charles J. Cooper<br>Brian S. Koukoutchos<br>David H. Thompson<br>Howard C. Nielson, Jr.<br>Nicole Jo Moss<br>(N.C. Bar # 31958)<br>David Lehn*<br>1523 New Hampshire Avenue, NW<br>Washington, DC 20036<br>Tel. (202) 220-9600<br>Email: ccooper@cooperkirk.com<br>Email: dthompson@cooperkirk.com<br>Email: nmoss@cooperkirk.com<br><br>(* motion for special appearance has been filed)<br><br>*Attorneys for Plaintiffs* |