IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

EDWARD CARRINGTON, *et al,*          )
                                     )
          Plaintiffs,                )
                                     )
v.                                   )          No. 1:08-CV-119
                                     )
DUKE UNIVERSITY, *et al,*            )
                                     )
          Defendants.                )

_____

## REPLY OF DEFENDANTS BAKER, CHALMERS, COUNCIL, HODGE, LAMB, MIHIACH, RIPBERGER, and RUSS IN SUPPORT OF THEIR MOTION TO DISMISS

_____

## INTRODUCTION

In their Opposition, Plaintiffs are unable to directly identify factual allegations in their Complaint that are sufficient to make a cognizable individual liability claim against any one of Defendants Baker, Chalmers, Council, Hodge, Lamb, Mihiach, Ripberger, and Russ ("Defendants")[1]. They attempt to confuse the reader by incorporating portions of oppositions filed in response to the briefs of other defendants (which in turn incorporate other portions of other oppositions), and by referencing facts, theories, and claims not actually asserted in their Complaint, rather than pointing to specific allegations supporting sound legal claims that would plausibly suggest that Plaintiffs are entitled to relief from each Defendant. By this method, Plaintiffs avoid making a direct response to

_____

[1] Plaintiffs refer to this group of Defendants collectively as "Durham Supervisors." Because this phrase has the potential to inaccurately characterize these individuals, Defendants choose not to accept this label.

1

Dockets.Justia.com

Defendants' arguments that they have failed to allege that their conduct resulted in the deprivation of a clearly established constitutional right, or the essential elements of an existing North Carolina common law claim.

It is only by obfuscation that Plaintiffs' claims against Defendants could survive. Here, Defendants will refocus on the allegations and claims actually asserted in the Complaint.

## ARGUMENT

### I. MATTERS AT ISSUE

#### A. Claims Expressly Conceded by Plaintiffs
(Counts 29, 30, 31; Official Capacity Claims in Counts 22, 26, 28)

Plaintiffs expressly concede that a number of their claims asserted against Defendants warrant dismissal:

- Count 26, alleging a § 1983 *Monell* claim against Defendants in their official capacities only. (*See* Pls' Supervisor Opp. 2-3, 22.)

- Count 29, alleging a claim for negligent infliction of emotional distress. (*See* Pls' Supervisor Opp. 22.)

- Count 30, alleging a claim for negligence by Durham Police. (*See* Pls' Supervisor Opp. 22.)

- Count 31, alleging a claim for negligent hiring, supervision, and retention by Durham Police. (*See* Pls' Supervisor Opp. 22.)

Plaintiffs do not dispute Defendants' contention that claims against them in their official capacities should be dismissed on those state and federal claims where the City is

also named as a defendant.  While still asserting individual capacity claims, Plaintiffs expressly consent to dismissal of the official capacity claims stated against Defendants in Count 22 (a claim pursuant to 42 U.S.C. §1983 claim for "malicious investigation)," and Count 28 (a state law claim for intentional infliction of emotional distress).  (*See* Pls' Supervisor Opp. 2-3, 22.)  Thus, all parties are in agreement that these official capacity claims should be dismissed.

### B. Claims Implicitly Conceded by Plaintiffs
(Official Capacity Claims in Counts 23, 24)

Plaintiffs neglect to specifically address Defendants' argument that the state law claim for obstruction of justice contained in Count 23 and the 42 U.S.C. §1983 claim in Count 24 should be dismissed for the same reasons as Counts 22 and 28.  Presumably, this oversight is a result of their labyrinthine oppositions to the motions filed by the various Defendants.  Just like those in the 22nd and 28th Counts, the official capacity claims in Counts 23 and 24 are redundant because those claims are asserted against the City of Durham ("the City") as well.  Thus, for the reasons stated in Defendants' Brief in Support of Motion to Dismiss, (*see* Defs' Br. 10-13), which have not been countered by Plaintiff, those official capacity claims should be dismissed as well.  *See, e.g., Kentucky v. Graham,* 473 U.S. 159 (1985); *Moore v. City of Creedmoor,* 345 N.C. 356, 481 S.E.2d 14 (1997).

### C. Claims Asserted For the First Time in the Opposition
(Counts 20, 21)

In their Opposition, Plaintiffs suggest that they asserted claims against Defendants in Count 20 (§1983 claim arising out of key card reports) and Count 21 (§1983 claim arising out of DNA samples). Plaintiffs contend that Defendants failed to make any argument concerning the dismissal of Count 20, but did present arguments that regarding Count 21. (*See* Pls' Supervisor Opp. 19.) Neither of these Counts, however, were asserted as claims against Defendants.

Under each individual Count in Plaintiffs' Complaint, Plaintiffs carefully included parenthetical lists of the defendants they intended to be held liable under each Count. Defendants are not mentioned in that list under either Count 20 or Count 21.[2] Even though Plaintiffs now attempt to state that Defendants were included in Count 20, their brief in opposition to the Duke University Defendants' motion to dismiss proves otherwise. They specifically state, "Count 20 charges the *University, Hendricks, Drummond, the Duke Police, the Durham Investigators, and the City of Durham with violating and conspiring . . . .*" (Pls' Duke Univ. Opp. 47) (emphasis added). Furthermore, Plaintiffs cannot amend their Complaint in their brief in response to Defendants' Motion to Dismiss. *See Bratcher v. Pharm. Prod. Dev., Inc*., 545 F. Supp.

_____

[2] Plaintiffs attribute Defendants' discussion of the NTO as a response to Count 21, which is clearly not directed at Defendants. Defendants expressly addressed the NTO, and its constitutionality, in response to the vague allegations of a Fourth Amendment violation contained in paragraph 637of Count 22, which was directed to all defendants. (Defs' Br. 26.) ("The only conceivable Fourth Amendment issue raised by Plaintiffs' complaint, (*see* Compl. 637), is whether Plaintiffs' compliance with the NTO amounted to a seizure and unlawful deprivation of liberty."). If Defendants had been included among the defendants enumerated in Count 21, those arguments, obviously, would apply to that Count as well.

2d 533, 542-43 (E.D.N.C. 2008) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

The only reference to Defendants in Counts 20 and 21 is the allegation that the actions of other defendants "were performed in the course and scope of employment, and were ratified and condoned by Duke University's officers and directors and by the Durham Supervisors."  (Compl. ¶ 625: *see also* ¶ 633.)  This allegation is followed by: "For the reasons stated in Count Twenty-six, the defendant City of Durham is liable for the Durham Investigators' actions under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)."  (Compl. ¶¶ 626, 634.)  It is apparent that the reference to Defendants in Paragraphs 625 and 633 was intended only to form the basis for liability against the City. *See Prism Constr. Co. v. Montgomery County*, No. 93-1578, 1994 U.S. App. LEXIS 28072 (4th Cir. Oct. 7, 1994).

However, even if Count 20 could be construed to allege a claim against Defendants under 42 U.S.C. §1983, Defendants have moved to dismiss it, and have made arguments in support of that motion.  Defendants argue at length, (Defs' Br. 13-32), that all of the section 1983 claims should be dismissed because: (1) Plaintiffs have failed to make sufficient allegations to support individual liability claims against them;[3] (2)

---

[3] A bald allegation that the "Supervisory Defendants" "ratified" the acts of others is insufficient to establish individual liability under the standard of *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994), discussed below.

5

Plaintiffs have failed to allege the violation of a constitutional right; and (3) that qualified immunity bars those claims.  These arguments apply with equal force to Count 20.

Further, Count 20 would fail against Defendants based upon the same arguments asserted by the City of Durham and Duke Defendants.  These arguments are incorporated herein by reference.  (*See* City of Durham Br. 17-20; City of Durham Reply, § III; Duke Univ. Br. 43-44.)  Specifically, Plaintiffs cannot state a Fourth Amendment claim against Defendants based upon alleged disclosure of key card data because Plaintiffs had no reasonable expectation of privacy in that data.

Plaintiffs allege that the key cards are used by members of the Duke lacrosse team to access "doors, dining facilities, vending machines, photocopy machines, and so forth on Duke's campus."  (Compl. ¶ 325.)  They further allege, "to access virtually any exterior door of Duke's dormitories and academic buildings requires the swiping of a Duke key card."  (*Id.*)  By Plaintiffs' own admissions, they did not have an expectation of privacy regarding their whereabouts on Duke's campus because they used the key cards for virtually everything they did on campus and to enter every building on campus.  The Supreme Court has held that there is no expectation of privacy in the publicly-observable "comings and goings" such as described by Plaintiffs.  *See United States v. Knotts*, 460 U.S. 276, 281-82 (1983); *United States v. Taylor*, 90 F.3d 903, 908-09 (4th Cir. 1996).

Additionally, Plaintiffs do not have a reasonable expectation of privacy in the data transferred to third persons.  *See Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) ("a person has no legitimate expectation of privacy in the information he voluntarily turns

over to third parties"), *superseded with regard to use of wiretap and pen register by Electronic Communication Privacy Act*, 18 U.S.C. § 2510. The Supreme Court has explained that a person takes a risk when he "reveals his affairs to another, that the information will be conveyed by that person to the Government." *United States v. Miller*, 425 U.S. 435, 443 (1976) (no expectation of privacy in the financial information conveyed to a bank), *superseded by Right to Financial Privacy Act*, 12 U.S.C. § 3401, *et. seq*. In this case, Plaintiffs voluntarily conveyed information regarding purchases on their key cards to Duke. Because of this voluntary conveyance, any disclosure of the key card information did not violate Plaintiffs' Fourth Amendment right.

Plaintiffs also attempt to allege that the disclosure of the key card data violated the Family Educational records & Privacy Act (FERPA), 20 U.S.C. §1232g, (Compl. ¶ 436), however a violation of FERPA cannot be enforced under 42 U.S.C. § 1983. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 290-91 (2002).

### D. Matters Requiring The Court's Consideration

After Plaintiff's concessions, both express and implied,[4] the following Counts asserted against Defendants in their individual capacities remain for the Court's consideration on Defendants' Motion to Dismiss: Count 22 ("malicious prosecution" claim under §1983); Count 23 (common law obstruction of justice claim); Count 24

---

[4] Because Counts 20 and 21 do not seek to impose liability on Defendants, there is no reason for the Court to address the merits of these non-existent claims. Since this issue has been raised by Plaintiffs in their opposition, Defendants request that in its Order, the Court declare that these Counts do not state claims against Defendants. In the alternative, Defendants request that these Counts be dismissed.

(deprivation of property without due process under § 1983); Count 27 (negligent supervision under § 1983); and Count 28 (intentional infliction of emotional distress).

## II.    STANDARD OF REVIEW

"Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry v. Renne*, 84 F.3d 1172, 1180 (9th Cir. 1996).

Plaintiffs dismiss as meaningless the plausibility standard recently established by the Supreme Court in *Bell Atlantic v. Twombly,* 127 S. Ct. 1955 (2007), relying on a single case decided by this Court, *Salami v. Monroe*, No. 1:07-CV-621, 2008 U.S. Dist. LEXIS 59058 (M.D.N.C. Aug. 1, 2008).  (Pls' City Opp. 7; incorporated into Pls' Supervisor Opp. 2.)  In *Salami,* this Court considered the application of *Twombly* to a *pro se* plaintiff, as a member of a class that is generally held to a less stringent pleadings standard:

> The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  However, the Court notes that Plaintiff is proceeding *pro se.*  As such the Court is required to construe Plaintiff's pleading liberally and hold it to a less stringent standard than those drafted by attorneys to allow for the development of a potentially meritorious claim. . . .  Nevertheless, "[t]he requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court."

*Id.* at *15-18 (citations omitted).

Here, Plaintiffs ask this Court to apply this lower standard reserved for *pro se* plaintiffs to them. Having made no effort at all to sort out which Defendant supervised whom, or which Defendant engaged in which act, Plaintiffs blithely assert that this "is a matter for discovery and trial."[5] Such a cavalier approach to pleading is not adequate under *Twombly* or long-standing interpretations of Rule 8. [127 S. Ct. at 1267](#) ("As we indicated over 20 years ago . . . 'a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.'") (citation omitted). "[A]lthough the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. *This requirement serves to prevent costly discovery on claims with no underlying factual or legal basis*." *Griffin v. Thornburg*, No. 1:08-CV-222, [2008 U.S. Dist. LEXIS 48068, *5-6](#) (W.D.N.C. June 19, 2008) (emphasis added) (citing *Migdal v. Rowe Price-Fleming Int'l Inc.,* [248 F.3d 321, 326](#) (4th Cir. 2001).

### III.  INDIVIDUAL LIABILITY OF SUPERVISORS UNDER 42 U.S.C. § 1983

---

[5] The statements in footnote 5 on page 6 of Plaintiffs' Opposition relating to negotiations concerning the dismissal of Stephen Mihiach are inadmissible under [Fed. R. Evid. 408](#)(a), and are outside of the allegations of the Complaint and should not be considered on this Motion. (Pls' Supervisor Opp. 6, n.5); *See* 2-12 MOORE'S FEDERAL PRACTICE - CIVIL § 12.34 (2000). Further, they are untrue. What is true is that defense counsel called Plaintiffs' counsel to inform them that one of her clients, Defendant Mihiach, did not supervise anyone connected with the investigation in any way, quite frankly, to let them know that their allegations to the contrary were in violation of their Rule 11 obligations. Counsel did not confirm that any of her other clients were in any "decision-making chain" of any kind, as inaccurately represented in the footnote.

(All Federal Claims: Counts 22, 24, 27)[6]

.Plaintiffs seek to hold Defendants individually liable, pursuant to 42 U.S.C. §
1983, as supervising officials, for the conduct of their subordinates; none of them are
alleged to have been directly involved in the investigation at issue.  Plaintiffs state that
identification in a group is sufficient to make out individual liability and to require
otherwise "would be [] pointless and inefficient."  (Pls.' Supervisor Opp. 4-6.)
Efficiency, however, is not the standard, plausible personal involvement is.

Individual supervisory "liability will only lie where it is affirmatively shown that
the official charged acted *personally* in the deprivation of the plaintiffs' rights."
*Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (dismissing complaint against
supervisor for failure to allege facts that supported personal involvement in the denial of
medical care) (emphasis added) (citations omitted).  Personal involvement by a
supervisor, for the purpose of a section 1983 claim, is properly alleged only when three
elements are factually supported:

> (1) that the supervisor had actual or constructive knowledge that his
> subordinate was engaged in conduct that posed a pervasive and
> unreasonable risk of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to
> show deliberate indifference to or tacit authorization of the alleged
> offensive practices; and

---

[6] These arguments would be equally applicable to Counts 20 and 21, if they had been
alleged against Defendants.

(3) that there was an affirmative causal link between the supervisor's
inaction and the particular constitutional injury suffered by the
plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (quotations omitted).

Plaintiffs' argument that the issue of showing which of Defendants was personally

involved is one for summary judgment, rather than a motion to dismiss, is misplaced.  In

*Davis v. Dep't of Soc. Servs.*, No. 90-1864, 1991 U.S. App. LEXIS 19081 (4th Cir.

1991), the Fourth Circuit affirmed the District Court's dismissal pursuant to Rule

12(b)(6) of claims asserted against a number of supervisory officials, in their individual

capacities:

> In order to maintain a cognizable claim under section 1983 against any of
> the officials or employees of the various agencies in their individual
> capacities, Davis had to allege facts that would demonstrate that the
> officials and employees were personally involved, directly or in a
> supervisory capacity, in the deprivation of her federally protected rights.
>
> No facts whatsoever have been proffered by Davis that could provide the
> basis for liability for any of the employees and officials named individually,
> other than O'Connell.  As the district court correctly ruled "simply using
> the phrase 'all defendants' in front of virtually every allegation does not
> relieve Mrs. Davis of the requirement that she plead facts demonstrating
> that each defendant named was personally involved in the alleged
> deprivation of civil rights."

*Id*. at *16-17; *see also Eaker v. Miller*, No. 1:07-CV-575, 2008 U.S. Dist. LEXIS 69554,

30-31 (M.D.N.C. Sept. 15, 2008) (recommending dismissal of individual claims against

supervisors, because the plaintiff "fails to allege that these two individuals participated in

any of the conduct that he alleges constitutes deliberate indifference").

Here, Plaintiffs have made no factual allegations showing the personal involvement of Defendants. Instead, Plaintiffs repeatedly make conclusory allegations that the "Durham Supervisors" were aware "on information and belief" of inconsistencies or weaknesses in the investigation, without pleading any facts that plausibly support those conclusions. Despite the interesting assertion that they intended to plead that Defendants Baker, Chalmers, Council, Hodge, Lamb, Mihiach, Ripberger, and Russ *each* did exactly the same thing or "collectively" approved *every* decision, these conclusory collective allegations, without factual allegations to support them, do not meet the plausibility standard of *Twombly.* 127 S. Ct. at 1964-65 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . . [T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.") (citations omitted).

Plaintiffs' intended meaning of the label "Durham Supervisors" is revealed in their Opposition to Addison's Motion to Dismiss. There, Plaintiffs admit that "Durham Supervisors" really means officers who had knowledge of the case and investigation and were "kept apprised of developments in the case." (Pls' Addison Opp. 2.) Mere knowledge, of course, is insufficient for personal involvement. *See Pacelli v. Devito*, 972 F.2d 871, 878 (7th Cir. 1992) ("The 'should have known' theory that [the plaintiff] pursues is both legally deficient and inconsistent with the demands of effective administration."); *Serna v. Colorado Dep't of Corrections*, 455 F.3d 1146, 1153-54 (10th

Cir. 2006) ("[T]he fact that [director of prisons] received reports about the operation does not suggest he directed the application of force against [the plaintiff]."). Thus, Plaintiffs' failure to plausibly allege personal involvement against *each* Defendant is fatal to the individual liability claims. *See Harris v. Virginia Beach*, 11 Fed. Appx. 212, 214-15 (4th Cir. 2001) (affirming district's court's dismissal of supervisor liability claim against a city manager, former and current police chiefs, a captain, and a sergeant where plaintiffs complaint failed to allege personal involvement of each of the individuals) (unpublished opinion); *Reaves v. Fair Bluff*, No. 7:03-CV-103, 2005 U.S. Dist. LEXIS 43084, *12 (E.D.N.C. May 12, 2005) (where plaintiff failed to make "any non-frivolous allegations of personal involvement against the individual defendants," and instead named a defendant "solely on the basis of respondeat superior," the action against the city manager, former and current police chiefs, and a sergeant must be dismissed).

## IV.   QUALIFIED IMMUNITY AND NO CONSTITUTIONAL DEPRIVATION
(All Federal Claims: Counts 22, 24, 27)[7]

Despite ample opportunity to do so, Plaintiffs have yet to articulate the constitutional right transgressed by any of Defendants' acts. For this reason, Plaintiffs' federal claims against Defendants are barred by the doctrine of qualified immunity. "Courts must be careful not to permit an artful pleader to convert the doctrine of qualified immunity into a hollow safeguard simply by alleging a violation of an exceedingly nebulous right." *Limone v. Condon*, 372 F.3d 39, 46 (1st Cir. 2004).

---

[7] These arguments would also be applicable to Counts 20 and 21, if they had been alleged against Defendants.

Under the doctrine of qualified immunity, Defendants are immune from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). For the purposes of qualified immunity:

> For a right to have been clearly established, "the 'contours of the right' must have been so conclusively drawn as to leave no doubt that the challenged action was unconstitutional." *Swanson v. Powers*, 937 F.2d 965, 969 (4th Cir. 1991) (quoting *Anderson [v. Creighton]*, 483 U.S. [635,] 640 [(1987)]). In determining whether a right was clearly established at the time of the claimed violation, "courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose . . . ." *Jean v. Collins*, 155 F.3d 701, 709 (4th Cir. 1998) (*en banc*). "If a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense." *Id.* Notably, however, the nonexistence of a case holding the defendant's identical conduct to be unlawful does not prevent the denial of qualified immunity. *See id.* at 708. In analyzing the applicability of the qualified immunity defense, we lastly consider whether a reasonable person in the official's position would have known that his conduct would violate that right. *See Anderson*, 483 U.S. at 639; *Taylor [v. Waters]*, 81 F.3d [429,] 433 [(4th Cir. 1996)].

*Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (4th Cir. 1999). Until "this threshold immunity question is resolved, discovery should not be allowed." *Harlow*, 457 U.S. at 818.

As explained below, Plaintiffs have failed to show that these Defendants are alleged to have violated any "clearly established" constitutional right. Thus, Plaintiffs have failed to overcome Defendants' entitlement to qualified immunity.

### A.     No Right Infringed by Investigation

Defendants established that courts have rejected the right to be free from investigation as a right protected by the constitution. (*See* Defs' Br. 23-25.) Nothing about Plaintiffs' case law changes that; in fact, it supports this constitutional principle.

In *United States v. Marion*, 404 U.S. 307 (1971), the Court did not hold, as Plaintiffs suggest, that there is no difference between an investigation and an actual arrest. (Pl. Supervisor Opp. 16.) There, the Court discussed application of the Sixth Amendment's speedy trial protections to the criminal defendant's case. *Marion*, 404 U.S. at 312-26. The Court held that the time-period protected by the amendment began upon an indictment, or at least an arrest, not before. *Id.* at 325. The Court based its holding on the exact opposite rationale for which Plaintiffs cite the case:

> Arrest is a public act that *may* seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and friends. . . .
>
> But we decline to extend the reach of the amendment to the period prior to arrest. Until this event occurs, a citizen suffers no restraints on his liberty and is not the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer.

*Id.* at 320-21(emphasis added).

Plaintiffs concede that "Plaintiffs were not arrested, indicted, or held for trial." (Pls' Supervisor Opp. 13.) Without this infringement on such a specific liberty interest, there is no constitutional hook for Plaintiff's federal claims, and Defendants are entitled to qualified immunity as a matter of law.

Other cases cited by Plaintiffs demonstrate that a liberty interest must be infringed upon before a section 1983 claim can be legally supported. Investigation alone does not infringe upon a liberty interest, which is why Plaintiffs try so hard to skew the fact that they were, at most, investigated. *Compare Kottmyer v. Maas*, [436 F.3d 684](6th Cir. 2006) (investigation by social workers did not violate established liberty interest in familial association, because child not removed from home), *with Hirsch v. Otsego County,* No. 89-CV-954, [1992 U.S. Dist. LEXIS 3052](N.D.N.Y. Mar. 12 1992) (deprivation of right of familial association where child was removed from home). Indeed, most of the cases cited by Plaintiffs in support of their purported right involved investigations that led to a deprivation of liberty without due process: mainly their arrest, indictment, trial, or years in prison. *See, e.g., White v. Wright*, [150 Fed. Appx. 193](4th Cir. 2005) (section 1983 plaintiff was indicted and tried, and suspended from his job); *Limone*, [372 F.3d at 39](section 1983 plaintiff was tried, convicted, and served decades in prison); *Moran v. Clarke*, [296 F.3d 638](8th Cir. 2002) (section 1983 plaintiff was investigated, prosecuted, tried, suspended without pay, and demoted). In particular, in *White*, the case in which Plaintiffs seem to place the foundation of their right to not be *deprived* of liberty or property, the Court notes that a plaintiff "must create an issue of fact as to the existence of a causal link between the alleged conduct constituting the due process violation and the deprivation of a liberty or property interest."[8] *White*, [150 Fed. Appx. at 199](.

---

[8] Plaintiffs cite another case attempting to establish a constitutional right, but that case

**B.**    **Defendants' Alleged Conduct Did Not Shock the Conscience**

Plaintiffs argue that the Durham Police Department's investigation into Mangum's allegations of sexual assault shocks the conscience. Again, as Plaintiffs' own cases make clear, to state such a claim. Plaintiffs must first "identify a protected liberty or property interest" that was deprived by Defendants, as well as properly allege that the right was violated in a way that "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Omni Behavioral Health v. Miller*, 285 F.3d 646, 651 (8th Cir. 2002) (quotations and citations omitted). This, they have not done.

While Plaintiffs may favor a practice of closing sexual assault investigations at the first sign of inconsistency in the victim's account, (*see* Pls' Supervisor Opp. 18-19), the investigation here hardly shocks the conscience. Plaintiffs say Defendants are "fighting the facts that they must accept as true on a Rule 12(b)(6) motion." It is Plaintiffs, however, who selectively remember what is positively alleged in their Complaint. Plaintiffs state that:

    a)    SANE Nurse Tara Levicy told Himan that Mangum's forensic medical examination revealed signs consistent with sexual assault, (Compl. ¶ 150);

    b)    "[O]n March 16, Duke Hospital's sexual assault examiner advised Durham police, in effect, that a rape had likely occurred," (*id.* ¶ 153);

    c)    That one of the two "pillars of evidentiary support" for the investigation was the Ms. Levicy's opinion, (*id.* ¶ 154);

---

applies the reasoning of excessive force cases, a distinct line of cases that is not applicable. *See, e.g., Orem v. Rephann*, 523 F.3d 442 (4th Cir. 2008).

d)      Levicy told Gottlieb on March 21 that "the blunt force trauma was 'consistent with the victim's statement' alleging a forcible gang rape by three men," (*id.* ¶185);

e)      "Levicy also advised Gottlieb that the evidence corroborated Mangum's claims of both vaginal and anal rape[,]" (*id.* ¶ 186);

f)      That "as late as January 10, 2007, Levicy spoke with Durham Investigators . . . [and] stated to the officers that Mangum had been unsure whether condoms had been used in the attack," (*id.* ¶ 192); and

g)      Duke possessed the only evidence that Levicy's account and interpretation of the medical evidence was misleading.  (*Id.* ¶ 275-76.)

In their Opposition to the Duke SANE Defendants' Motion to Dismiss, Plaintiffs emphasize these allegations.  Plaintiffs argue that Defendant "Levicy *assured* Nifong's investigators on March 16, two days after the alleged rape, that Duke Hospital's forensic examination had yielded evidence 'consistent with sexual assault.'"  (Pls' Duke SANE Opp. 2) (emphasis added).  Further, a few days later, Levicy "embellished" her statement, by "*assuring* Sergeant Gottlieb that the examination of Mangum had revealed physical evidence of 'blunt force trauma' consistent with a vaginal and anal gang rape by three men."  (*Id.*) (emphasis added).  Plaintiffs do not respond to the citation of these numerous allegations in their Opposition brief to Defendants, or Defendants' arguments that these facts justify the investigation of the alleged rape.  Rather, Plaintiffs ask the Court to focus on other allegations concerning inconsistencies in the evidence instead, and to ignore these facts for the purposes of this motion.  (Pls' Supervisor Opp. 18-19.)

When considering a Rule 12(b)(6) motion, however, "'a judge must accept as true *all* of the factual allegations contained in the complaint.'"  *Demetry v. Lasko Prods.*, No.

08-1073, 2008 U.S. App. LEXIS 17458, *3 (4th Cir. July 7, 2008) (citing *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (emphasis added)). A Court may not disregard allegations of facts that are unfavorable to the plaintiff's claims. *See Demetry*, 2008 U.S. App. LEXIS 17458 at *3-4 (district court properly dismissed the plaintiff's claim as barred by an affirmative defense, based upon the contents of an exhibit to the complaint). A plaintiff cannot use the device of "pleading in the alternative" to avoid dismissal; where his complaint affirmatively pleads facts fatal to his claim, those allegations must also be accepted as true. *Wilson Land Corp. v. Smith Barney, Inc.*, No. 5:97-CV-519, 1999 U.S. Dist. LEXIS 12879 (E.D.N.C. May 17, 1999).

Nowhere in their numerous Oppositions do Plaintiffs cite a single case that stands for the proposition that a police officer, or his or her supervisors, can be held civilly liable for the investigation of rape charges that he or she believes is supported by medical evidence. Because Plaintiffs have pointed to no authority that would inform officers that an investigation of Mangum's allegations would subject them to a substantive due process claim, these Defendants are entitled to qualified immunity.

C. **The NTO Does Not Give Rise to Liability of Defendants**

As addressed above, Defendants' discussion of the NTO was made in response to the vague allegations of a Fourth Amendment violation contained in paragraph 637 of Count 22, Plaintiffs' malicious investigation claim, which was directed at all defendants in Plaintiffs' typical conclusory fashion. An examination of the factual allegations of the Complaint discloses that Plaintiffs have not actually alleged Defendants

were involved in any way in *seeking* the NTO. (*See* Pls' Supervisor Opp. 21.) Rather, Plaintiffs allege that following the postponement of the March 22 interviews, where police intended to obtain DNA samples, Defendant Himan prepared the application for the NTO, which was filed with the Court the next day. (Compl. ¶¶ 198, 204, 205). Nowhere, however, do Plaintiffs allege that Defendants knew about the application or its contents before the NTO was entered, despite Plaintiffs' propensity to allege knowledge "upon information and belief." Thus, any claim contained in Count 22 based upon the NTO must be dismissed as to these Defendants.[9]

In any event, Plaintiffs' attempt to saddle Defendants with a perceived constitutional violation on the basis of the NTO is without legal merit. Defendants cite a Fourth Circuit District Court opinion and a Supreme Court of North Carolina opinion which hold that North Carolina's NTO procedure is constitutional and valid. (*See* Defs' Dismissal Br. 27-29.) Nonetheless, Plaintiffs argue that use of this procedure to obtain their DNA violated their Fourth Amendment rights, citing a Fifth Circuit case and a Nebraska District Court opinion. (*See* Pls. City Opp. 26.) Plaintiffs' reliance on such authorities demonstrates that even if they had alleged a claim against these Defendants arising out of the NTO procedure, that claim would be barred by qualified immunity. *See Edwards,* 178 F.3d at 251.

### D. Stigma Plus Test Not Met

---

[9] The City has quite aptly responded to Plaintiffs' arguments concerning the NTO in the portion of their Reply concerning Count 21. (City of Durham Reply § IV.) To the extent that the allegations concerning the NTO are directed to Defendants, Defendants hereby incorporate the City's Reply on this issue herein by reference.

In support of their reputational injury, Plaintiffs assert that the "plus" necessary to turn a state-tort defamation claim into a matter of constitutional concern is the deprivation of the right to play collegiate lacrosse. This argument is without basis in law. "[T]he overwhelming majority of courts have held that participation in interscholastic athletics or other extracurricular activities is not a constitutionally protected liberty or property interest." *Bailey v. Truby*, 321 S.E.2d 302, 314-15 (W. Va. 1984) (citing over 40 cases spanning federal and state courts); *see also Hawkins v. NCAA*, 652 F. Supp. 602, 610 (C.D. Ill. 1987) (court rejected plaintiff-basketball players' argument that they possessed "a constitutionally protected property interest in participation in intercollegiate post-season competition" and "constitutionally protected right in gaining tournament experience, which includes the national exposure and the associated business contacts"); *Justice v. NCAA*, 577 F. Supp. 356, 366-67 (D. Ariz. 1983) (where football players were suspended from participating in televised and post-season bowl games, court agreed "that participation in intercollegiate athletics is not a constitutionally protected interest" and found no viable due process claim because players held "no constitutionally protected right to play in post-season competition or on television").

Plaintiffs are unable to cite a single case concluding that the loss of an opportunity to play college athletics rises to the level of a sufficient "plus." Therefore, the absence of authority for this proposition means that the only "clearly established" area of "plus," involved in the stigma plus standard remains the loss of government employment. *See DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003); *see also Allen v. Denver Public*

*Sch. Bd.*, [928 F.2d 978, 982](...) (10th Cir. 1991) ("Only 'where the stigmatization results in the inability to obtain other employment does this type of claim rise to a constitutional level.'") (citation omitted)).  In the Fourth Circuit, in order to deprive an employee of a liberty interest, a public employer's stigmatizing remarks must be "made in the course of a discharge or significant demotion." *Ridpath v. Bd. of Governors Marshall Univ.*, [447 F.3d 292, 309](...) (4th Cir. 2006).  Without citation to some authority showing that Plaintiffs had a clearly established, constitutionally protected right to play lacrosse, any claim against these Defendants arising out of any reputational injury is barred by qualified immunity.  *See Siegert v. Gilley,* [500 U.S. 226, 232](...) (1991).

## V. STATE LAW CLAIMS

### A. Insufficient Facts to Support an Obstruction of Justice Claim
(Count 23)

As Defendants previously discuss, Plaintiffs' claim for obstruction of justice fails because the facts in their Complaint are insufficient to show that Defendants "hinder[ed] or imped[ed] public or legal justice." *See Broughton v. McClatchy Newspapers, Inc.*, [161 N.C. App. 20, 33](...), [588 S.E.2d 20, 30](...) (2003).  Specifically, Defendants cite cases showing that a civil claim for obstruction of justice has never been recognized in North Carolina where a plaintiff is seeking damages based upon a criminal investigation that was based upon a credible allegation of rape.  By contrast, Plaintiffs focus their arguments on cases involving the criminal prosecution for obstruction of justice, (*See* Pls.' Supervisor Opp. 34-35), and ask the Court to expand North Carolina law to cover their baseless claim for civil obstruction of justice.  However, "[w]hen expounding upon issues of purely state

law, federal courts should by chary to expand upon state courts' conceptions of state remedies." *McDaniels v. Douglas Hollowell, P.C.*, No. 2:97-CV-27, [1998 U.S. Dist. LEXIS 4055, *4](https://) (E.D.N.C. Jan. 21, 1998) ("Finding no support for the contention that North Carolina courts have upheld a claim for wrongful discharge in violation of public policy in cases alleging discrimination based on pregnancy, this Court refuses to extend North Carolina common law remedies in this case."). In other words, rarely do federal courts expand the state common law. Here, this Court should decline Plaintiffs' request to expand North Carolina law on obstruction of justice to fit the facts of this case and dismiss this Count 23 of the Complaint.

### B. Intentional Infliction of Emotional Distress
   (Count 28)

As Defendants have explained, Plaintiffs' claim for intentional infliction of emotional distress fails because Plaintiffs have not alleged actions by any one of these Defendants that rise to the level of extreme and outrageous conduct necessary to sustain this claim. Defendants pointed to numerous allegations in the Complaint where Plaintiffs made general allegations against the "Durham Supervisors," but fail to specify the specific conduct by each Defendant to support this claim. (*See* Defs' Br. 36-40.) This type of general pleading is insufficient to give Defendants adequate notice of the factual basis of the claim against them. Plaintiffs ignore this requirement and fail to argue that they have met the pleading requirements necessary to sustain their intentional infliction of emotional distress claim. In fact, Plaintiffs do not respond to Defendants arguments at all. They make no effort to point to a single allegation about any specific Defendant, and

explain why that conduct is extreme or outrageous.  Instead, they refer the Court to their Opposition to the City of Durham's motion to dismiss where they, again, fail to address the arguments made by Defendants.

At most, Plaintiffs suggest Defendants' alleged knowledge that Mangum made inconsistent statements and could not specifically point out her attackers, rendered Defendants' failure to terminate the investigation extreme and outrageous.[10]  However, this argument asks the Court to improperly ignore affirmative allegations in the Complaint that credible information was provided to the Durham Police Department by a SANE nurse from Duke; that information suggested a brutal rape had, in fact, occurred.  Under the circumstances as alleged, where police officers have such information, failure to terminate the investigation is neither extreme nor outrageous.

Plaintiffs cite two cases which have no application to Defendants.  *Hogan v. Forsyth Country Club*, 79 N.C. App. 483, 340 S.E.2d 116 (1986) held that sexual harassment in the workplace may, in some situations, amount to extreme and outrageous conduct.  Likewise, *West v. King's Dep't Stores, Inc.,* 321 N.C. 698, 365 S.E.2d 621 (1988), is inapposite.  There, the defendant store manager loudly and repeatedly accused the plaintiffs of shoplifting merchandise, in the presence of other shoppers, while also refusing to look at their proof of purchase.  *Id.* at 705, 365 S.E.2d at 625.  Here, none of these Defendants are alleged to have accused Plaintiffs of anything.  Thus, for the reasons

---

[10] Defendants are unaware of any allegation in the Complaint that any one of them "falsif[ied] evidence, suborn[ed] perjury, tamper[ed] with witnesses, and inflame[ed] racial animosity."  (Pls' City of Durham Opp. 47.)

stated in Defendants' Brief, which Plaintiffs do not rebut, the claims in Count 28 against

Defendants must be dismissed.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Defendants' Motion to Dismiss.

Respectfully submitted, this the 29th day of September, 2008.

TROUTMAN SANDERS LLP

By: /s/ Patricia P. Kerner
    Patricia P. Kerner
N.C. State Bar No. 13005
    Hannah G. Styron
N.C. State Bar No. 28824
    D. Martin Warf
N.C. State Bar No. 32982
*Attorneys for Defendants Baker, Chalmers, Council,*
*Hodge, Mihiach, Lamb, Ripberger, and Russ*
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
Telephone: (919) 835-4100
Facsimile: (919) 829-8714
tricia.kerner@troutmansanders.com
hannah.styron@troutmansanders.com
martin.warf@troutmansanders.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

EDWARD CARRINGTON, *et al,*        )
                                   )
      Plaintiffs,                )
                                   )
v.                                 )        Case No. 1:08-CV-00119
                                   )
DUKE UNIVERSITY, *et al,*          )
                                   )
      Defendants.                )
_____

**CERTIFICATE OF SERVICE**
_____

     I hereby certify that the foregoing was electronically filed with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to the

following:

Charles J. Cooper                    William John Thomas, II
David H. Thompson                    THOMAS FERGUSON & MULLINS, LLP
COOPER & KIRK, PLLC                  119 E. Main Street
1523 New Hampshire Ave., NW          Durham, NC 27701
Washington, DC 20036                 thomas@tfmattorneys.com
cooper@cooperkirk.com                *Attorneys for Plaintiffs*
dthompson@cooperkirk.com
*Attorneys for Plaintiffs*

1

James D. Cowan, Jr.
Dixie T. Wells
ELLIS & WINTERS, LLP
100 N. Greene Street, Suite 102
Greensboro, NC 27401
don.cowan@elliswinters.com
dixie.wells@elliswinters.com
*Attorneys for Defendants Duke*
*University, Duke University Health*
*System, Inc., Richard Brodhead,*
*Peter Lange, Larry Moneta,*
*John Burness, Tallman Trask,*
*Suzanne Wasiolek, Matthew*
*Drummond, Aaron Graves,*
*Robert Dean, Tara Levicy, Theresa*
*Arico, Kate Hendricks, Victor Dzau*

Jamie S. Gorelick
Jennifer M. O'Connor
Paul R.Q. Wolfson
William F. Lee
WILMER, CUTLER, PICKERING, HALE,
and DORR, LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
jamie.gorelick@wilmerhale.com
jennifer.oconnor@wilmerhale.com
paul.wolfson@wilmerhale.com
william.lee@wilmerhale.com
*Attorneys for Defendants Duke*
*University, Duke University Health System,*
*Inc., Richard Brodhead,*
*Peter Lange, Larry Moneta,*
*John Burness, Tallman Trask,*
*Suzanne Wasiolek, Matthew*
*Drummond, Aaron Graves,*
*Robert Dean, Tara Levicy, Theresa*
*Arico, Kate Hendricks, Victor Dzau*

Dan J. McLamb
Shirley M. Pruitt
T. Carlton Younger, III
YATES, MCLAMB & WEYHER, LLP
P.O. Box 2889
Raleigh, NC 27602-2889
dmclamb@ymwlaw.com
spruitt@ymwlaw.com
cyounger@ymwlaw.com
*Attorneys for Defendants Duke*
*University Health Systems, Inc.,*
*Tara Levicy, and Theresa Arico*

Kenneth Kyre, Jr.
PINTO COATES KYRE & BROWN, PLLC
P.O. Box 4848
Greensboro, NC 27404
kkyre@pckb-law.com
*Attorneys for Defendant J. Wesley Covington*

Reginald B. Gillespie, Jr.
FAISON & GILLESPIE
Post Office Box 51729
Durham, NC 27717
rgillespie@faison-gillespie.com
*Attorneys for Defendant City of Durham*

Joel M. Craig
Henry W. Sappenfield
KENNON, CRAVER, BELO, CRAIG &
MCKEE, PLLC
Post Office Box 51579
P.O. Box 51579
Durham, NC 27717-1579
*Attorneys for Defendant Himan*

Edwin M. Speas
Eric P. Stevens
POYNER & SPRUILL, LLP
3600 Glenwood Avenue
Raleigh, NC 27612
*Attorneys for Defendant Gottlieb*

James B. Maxwell
MAXWELL, FREEMAN & BOWMAN,
P.A.
Post Office Box 52396
Durham, NC 27717
*Attorneys for Defendant Addison*

I further certify that a copy of the foregoing was served today upon each of the

following non CM/ECF participants by United States mail, postage prepaid, addressed as

follows:

Linwood Wilson
6910 Innesbrook Way
Bahama, NC 27503-9700
*Pro Se*

Roger E. Warrin
Michael A. Vatis
John P. Nolan
Ana H. Voss
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave. N.W.
Washington, DC 20036
*Attorneys for Defendant City of Durham*

This the <u>29th</u> day of September, 2008.

Respectfully submitted,

By: /s/ Patrica P. Kerner
   Patricia P. Kerner
N.C. State Bar No. 13005
*Attorneys for Defendants Baker, Chalmers,*
*Council, Hodge, Lamb, Mihiach, Ripberger,*
*and Russ*
434 Fayetteville Street, Suite 1900

3

Raleigh, North Carolina 27601
Telephone: (919) 835-4100
Facsimile: (919) 829-8714
tricia.kerner@troutmansanders.com