UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

File No. 1:08-CV-119

EDWARD CARRINGTON, et. al.,

                                        Plaintiffs,

vs.

DUKE UNIVERSITY, et. al.,

                                        Defendants.

**DEFENDANT MARK GOTTLIEB AND BENJAMIN HIMAN'S
JOINT REPLY TO PLAINTIFF'S OPPOSITIONS TO
THEIR SEPARATE MOTIONS TO DISMISS**

Defendants Sergeant Mark Gottlieb and Investigator Benjamin Himan ("Sgt. Gottlieb" and "Inv. Himan") were the primary investigators for the Durham Police Department into Crystal Mangum's allegations that she was raped at an event sponsored by members of the Duke Lacrosse team. Each filed separate motions to dismiss and Plaintiffs filed oppositions to both. Sgt. Gottlieb and Inv. Himan now respectfully submit this Joint Reply as the legal issues to be addressed are identical.

## I.    CLAIMS ABANDONED BY PLAINTIFFS

Plaintiffs now acknowledge that their claims for Negligent Infliction of Emotional Distress (Count 29) and for Negligence (Count 30) against Sgt. Gottlieb and Inv. Himan in both their individual and official capacities fail to state a claim and should be dismissed completely as a matter of law. (Plaintiffs' Opposition to Gottlieb's Motion to Dismiss p. 11; Plaintiffs' Opposition to Himan and Wilson's Motion to Dismiss p. 12). Plaintiffs likewise admit that all their claims against Sgt. Gottlieb and Inv. Himan in their

Dockets.Justia.com

official capacities are, in fact, duplicative of their claims against the City and therefore should be dismissed. (Plaintiffs' Opposition to Gottlieb's Motion to Dismiss p. 8; Plaintiffs' Opposition to Himan and Wilson's Motion to Dismiss p. 12). *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004). This includes: Count 8 ("Fraud and Conspiracy to Defraud"); Count 10 ("Abuse of Process and Conspiracy to Abuse Process"); Count 20 ("Violation and Conspiracy to Violate Fourth Amendment Rights Under 42 U.S.C. § 1983 – Key Card Reports"); Count 21 ("Violation of and Conspiracy to Violate Fourth Amendment Rights Under 42 U.S.C. § 1983 – DNA Samples"), Count 22 ("Violation of and Conspiracy to Violate Fourteenth Amendment Rights Under 42 U.S.C. § 1983"); Count 25 ("False Public Statements in Violation of 42 U.S.C. § 1983"), Count 26 (Monell violation) and Count 28 ("Intentional Infliction of Emotional Distress"). *Id.*

Plaintiffs also state that Counts 29-31 may be dismissed against Sgt. Gottlieb in his official capacity, though Counts 29 and 30 are already dismissed entirely, and Sgt. Gottlieb is not named in Count 31. (Plaintiffs' Opposition to Gottlieb's Motion to Dismiss p. 8).

Given Plaintiffs' recognition that official capacity claims against Sgt. Gottlieb and Inv. Himan are subject to dismissal as redundant, their failure to explicitly acknowledge dismissal of their official capacity claims in Counts 23 ("Obstruction of and Conspiracy to Obstruct Public Justice") and Count 24 ("Deprivation of Property Without Due Process of Law in Violation of 42 U.S.C. § 1983") appears to be an oversight. As Plaintiffs have

explicitly sued Sgt. Gottlieb and Inv. Himan in both their official and individual capacities for those counts as well, they should be dismissed for the same reason.

## II. PLAINTIFFS' FEDERAL SECTION 1983 CLAIMS AGAINST INV. HIMAN AND SGT. GOTTLIEB FAIL TO STATE A CLAIM AND MUST BE DISMISSED

### A. The NTO Was Properly Requested and Granted Based On The Statements Of Crystal Mangum and the Corroborating Statements Of SANE Nurse Levicy and Plaintiffs' 21st Cause Of Action Must Be Dismissed

In their 21st Cause of Action, Plaintiffs contend that the affidavit in support of the March 23, 2006 Nontestimonial Identification Order ("NTO") was invalid because it was obtained by fraud. The Complaint expressly grounds this claim *entirely* on the contention that the NTO Application was tainted by "false and misleading information knowingly provided by Duke Hospital and defendant Levicy." (Compl. ¶ 629). Plaintiffs now argue that the NTO is invalid for two primary reasons: (a) because Inv. Himan and Sgt. Gottlieb allegedly *conspired* with Levicy in misrepresenting the medical information and (b) because the allegations of Crystal Mangum were not credible (Plaintiffs' Opposition to Himan's Mot. to Dismiss pp. 4-6; Plaintiffs' Opposition to Gottlieb's Motion to Dismiss pp. 6-8).[1] Because Sgt. Gottlieb and Inv. Himan were entitled to rely upon the information supplied to them by Levicy and Mangum, Plaintiffs 21st Cause of Action should be dismissed.

---

[1] Sgt. Gottlieb and Inv. Himan cannot be faulted for truthfully repeating information given to them by Mangum and Levicy unless they *knew* the information was false or were *recklessly indifferent* to that possibility. *See Miller v. Prince George's County*, 475 F.3d 621, 628, *cert. denied*, 128 S. Ct. 109, 169 L. Ed. 2d 24 (2007)(affidavit seeking warrant cannot be challenged unless affiant deliberately or recklessly made false statements).

The Complaint alleges that Sgt. Gottlieb and Inv. Himan truthfully repeated information they were given by Levicy in the March 23, 2006 NTO Application. According to the Complaint, Levicy told Inv. Himan on March 16, 2006 that "there were signs consistent with sexual assault during her test." (Compl. ¶ 150). Four days later, on March 21, 2006, Levicy informed Sgt. Gottlieb that her examination of Mangum "revealed physical evidence of 'blunt force trauma,' and that the blunt force trauma was 'consistent with the victim's statement' alleging a forcible gang rape by three men." (Compl. ¶ 185). In their March 23 NTO Application, Sgt. Gottlieb and Inv. Himan relied in large part upon these statements from Levicy. (Compl. ¶ 189).

The Complaint does not allege that Sgt. Gottlieb or Inv. Himan knew -- or had reason to suspect -- Levicy's statements were false. Rather, the Complaint goes to great lengths to affirm Levicy's credibility. According to the Complaint, the police initially did not consider Mangum's allegations credible until March 16, when "Duke Hospital's sexual assault examiner advised Durham police, in effect, that a rape had likely occurred." (Compl. ¶ 153). Levicy's proffered medical expertise gave Mangum's claim a "powerful aura of credibility." (Compl. ¶ 210). According to the Complaint, the police would have dropped the rape investigation if Levicy had advised police truthfully that the medical evidence was inconsistent with Mangum's story. (Compl. ¶ 211). Sgt. Gottlieb and Inv. Himan were in no position to challenge what they were told by Levicy because the "medical evidence" showing her claims to be false was sequestered "*in Duke's exclusive possession.*" (Compl. ¶ 206)(emphasis added).

Faced with this glaring hole in their Complaint, Plaintiffs attempt to manufacture an inference that Sgt. Gottlieb and Inv. Himan were in cahoots with Levicy by pointing out their allegations that the observations in Levicy's written SANE report do not provide medical justification for the conclusions she verbally reported to Sgt. Gottlieb and Inv. Himan. (Plaintiffs' Opposition to SANE Defendants' Motion to Dismiss p. 43). According to the Complaint, the written SANE report included observations that Mangum suffered from vaginal edema (or swelling), but this finding did not justify a medical conclusion that Mangum had been sexually assaulted because "diffuse" vaginal swelling "could have been explained by any of several commonplace causes, all of which applied to Mangum." (Compl. ¶ 187). The Complaint also alleges that the examination report did not justify Levicy's assertion that Mangum had suffered "blunt force trauma" because such a condition could only be diagnosed with a colposcope, which was not used. (Compl. ¶ 185).

Plaintiffs apparently want this Court to infer that Sgt. Gottlieb and Inv. Himan personally reviewed the written SANE report before March 23, 2006 and immediately recognized that the conclusions SANE Nurse Levicy reported to them a few days prior were not justified by the medical findings set forth in her written report. The Complaint, however, fails to explain how Sgt. Gottlieb or Inv. Himan – who are not alleged to have medical expertise concerning, for instance, the causes of vaginal edema or the uses of a colposcope – were qualified to second guess the conclusions reported to them by the medical expert who actually conducted the examination. Plaintiffs also expect the Court to infer – again without explanation or plausible basis – that Sgt. Gottlieb and Inv. Himan

5

repeated Levicy's oral statements in the NTO *while knowing those statements were false* as part of an unstated conspiracy to railroad innocent members of the Duke Lacrosse team. Nothing in the Complaint makes Plaintiffs' newly hatched conspiracy theory plausible, and it should be dismissed. *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

Indeed, any inference that a conspiracy existed when police applied for the NTO on March 23, 2006 is directly rebutted by the timeline in Plaintiffs' Complaint. The Complaint alleges that a conspiracy was hatched between Levicy and the Durham Investigators *"subsequent to her March 21 interview with Gottlieb"* when she "met or conversed multiple times with the Durham Investigators in the ensuing weeks and months, repeatedly adjusting or elaborating her testimony to rebut mounting evidence of innocence as it emerged." (Compl. ¶ 190) (emphasis added). Since the Complaint does not allege that any conversations or meetings took place between the time of the March 21 interview and the March 23 NTO Application, the Complaint itself rules out the claim that a conspiracy existed at the time of the NTO Application.

In addition to challenging Sgt. Gottlieb and Inv. Himan's reliance on medical expertise supplied by Tara Levicy, Plaintiffs also contend that Inv. Himan and Sgt. Gottlieb should not have conducted a rape investigation at all because Crystal Mangum allegedly was not a credible complainant. (Plaintiffs' Opposition to Inv. Himan's Motion to Dismiss p. 5). The Fourth Circuit in *Torchinsky v. Siwinski*, 942 F.2d 257 (4th Cir. 1991), however, made a compelling plea for courts to be modest when asked to second guess the determinations of police officers in the field who have to make decisions under

less than optimal circumstances. In their Opposition to Inv. Himan's memorandum, Plaintiffs ignore the point and significance of *Torchinsky,* contending that the complaining witness in that case "was, all things considered, credible." (*Id.*). Plaintiffs provide no real basis for their determination that the putative victim in *Torchinsky* was credible while Crystal Mangum was not. *See Torchinsky, supra,* at 259 (purported victim suffered from head trauma, was incoherent in interviews and gave two completely contradictory accounts of the incident).

Based on *Torchinsky,* this Court should refrain from second guessing the determination of Sgt. Gottlieb and Inv. Himan to seek DNA swabs from the Duke Lacrosse players to see if further information was available to confirm or refute rape allegations that had been corroborated by statements from a Duke University expert who had conducted a contemporaneous rape examination. This Court should dismiss Count 21 as to Sgt. Gottlieb and Inv. Himan.[2]

**B.    Plaintiffs' 20th Cause of Action Must Fail Because Plaintiffs Had No Expectation of Privacy in Records of When they Appeared in Duke's Common Areas**

---

[2] Plaintiffs also contend that the NTO Application was invalid because it included an allegedly fabricated allegation that Mangum was strangled. Plaintiffs, however, make no effort to explain how this allegation was, or could be, material to issuance of the NTO. The NTO Application described Crystal Mangum's claim that she was raped by three men and included corroborating medical information. The fact that Mangum was allegedly strangled was not material to the decision of the Superior Court Judge to issue the NTO, and cannot support Plaintiffs' Fourth Amendment claim. *See Miller v. Prince George's County, supra,* at 628 (fraudulent statement in warrant application must be necessary to the finding of probable cause [or reasonable suspicion] to invalidate warrant).

In their 20th Cause of Action, Plaintiffs claim that Sgt. Gottlieb and Inv. Himan conspired with others to obtain "key card data" in alleged violation of their Fourth Amendment rights.[3] This "key card" data showed when the Duke Lacrosse players came and went from various "common areas" on the Duke University campus. This data provided no information about what the players did in the privacy of their own rooms. According to the Complaint, Sgt. Gottlieb used this information as a cross check when he conducted the photo identification lineup procedure with Crystal Mangum, to make sure anyone Crystal Mangum identified in the lineup did not have an alibi for the evening of the alleged rape. (See Complaint ¶'s 324-30). While it would appear to be a matter of common sense for police investigators to use all data at their disposal to avoid the possibility of a mistaken identification, Plaintiffs characterize this activity as "rigging" the photo lineup. (Opposition to Gottlieb's Motion to Dismiss p. 7). In short, Plaintiffs apparently find it necessary to make routine police work appear sinister. Plaintiffs fail to explain how this activity -- which, sinister or not, led to identifications of three people who are not parties to this lawsuit -- injured them.

Even if the receipt of the key card data actually had some negative impact on Plaintiffs or was improper, it was not a constitutional violation. Plaintiffs' 20th Cause of Action depends on the assertion that receipt by the police of key card data voluntarily supplied by Duke somehow violated their Fourth Amendment rights. The case law

---

[3] The same key card data is also the subject of the 8th Cause of Action (fraud) and the 10th Cause of Action (abuse of process). These Causes of Action should be dismissed for reasons set forth in Sections I and II of the Reply Brief in Support of the City of Durham's Motion to Dismiss, which is adopted and fully incorporated herein.

indicates otherwise. In its initial Memorandum, the City of Durham demonstrated that there is no Fourth Amendment expectation of privacy in data concerning when and where Duke students swiped their key cards in common areas of the Duke campus (See City of Durham's Memorandum in Support of Motion to Dismiss pp. 17-19). The enactment of FERPA does not create an expectation of privacy for purposes of the Fourth Amendment because FERPA merely conditions the receipt of federal funds on a University's compliance with certain disclosure standards, but does not confer students with any enforceable rights. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 279, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002).

Plaintiffs rely on *Doe v. Broderick*, 225 F.3d 440 (4th Cir. 2000) for the proposition that a federal statute that makes access to records more difficult can serve as an indication that society recognizes an expectation of privacy that can give rise to a Fourth Amendment right. (Plaintiffs' Opposition to City of Durham's Motion to Dismiss p. 24). The underlying facts in *Doe v. Broderick* are readily distinguishable. The police in *Doe v. Broderick* searched a methadone clinic and seized records regarding the substance abuse treatment of several men. The justification was the fact that the clinic was located near a jewelry store that was robbed and the supposition that someone with a history of drug use might steal. *Id.* at 443-45. The Fourth Circuit held that an individual has a reasonable expectation of privacy in substance abuse treatment records. *Id.* at 450-51.

The Court based its finding of a reasonable expectation of privacy in part on the fact that substance abuse treatment records were protected as private by a federal statute

that imposed *criminal penalties*. *Id.* at 447, 450.  More importantly, however, the Court

recognized that individuals have a legitimate expectation that medical records will be

kept private for Fourth Amendment purposes because "medical treatment records contain

intimate and private details that people do not wish to have disclosed, expect will remain

private, and, as a result, believe are entitled to some measure of protection from

unfettered access by government officials." *Id.* at 451.

The contrast between the substance abuse records at issue in *Doe* and the key card

records at issue here is stark.  While the federal statute at issue in *Doe* provided criminal

penalties for persons who disclosed protected substance abuse records, 42 U.S.C. §

290dd-2(f), FERPA only provides that universities who release protected educational

records could lose federal funding.  20 U.S.C. § 1232(g)(b)(1).  Unlike the clear need for

privacy of substance abuse treatment records -- the release of which would destroy

doctor/patient confidentiality and clearly risk damage to a substance abuse patient's

reputation -- there is no support in either Fourth Amendment case law or common sense

for the notion that students' comings and goings from common areas at Duke University

should be kept private.   Plaintiffs' 20th Cause of Action fails to state a claim and must be

dismissed.

### C.  Plaintiffs' "Stigma Plus" Claims in their 24th and 25th Causes of Action Must Be Dismissed Because Plaintiffs Have Failed to Allege that Any Deprivation of Their Rights Was Caused by the Government

In their Oppositions, Plaintiffs acknowledge that injury to reputation alone is not

protected under the Fourth Amendment, but argue they have satisfied the "stigma plus"

test because Duke University cancelled the 2006 Duke Lacrosse season. (Plaintiffs' Opposition to City of Durham's Motion to Dismiss pp. 36-37). This is insufficient as a matter of law and Counts 24 and 25 of Plaintiffs Complaint must be dismissed.

The supposed "plus", the decision to cancel the 2006 lacrosse season, was made by Duke University, a private, nonprofit organization. (Compl. ¶ 47). To successfully pursue such a claim, Plaintiffs must demonstrate "some tangible and material *state-imposed* burden . . . in addition to the stigmatizing statement." *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (emphasis added). Plaintiffs' Complaint leaves no question that the decision to cancel the lacrosse season was made by Duke University. (See Compl. ¶¶ 355-65). In fact, Plaintiffs seek to hold the University liable for that precise reason. (See Compl. ¶¶ 355-65).

Plaintiffs argue that the "reputational injury and the deprivation that forms the plus in the stigma-plus formula can be imposed by different actors, *even if one of them is not a state actor* and therefore perhaps is not subject to suit." (Plaintiffs' Opposition to City of Durham's Motion to Dismiss p. 38)(emphasis added). The cases Plaintiffs cite for this proposition only support the notion that *different governmental actors* can impose the "stigma" and the "plus." Each of the cited cases involved a burden -- a "plus" -- imposed by the government. *See Velez v. Levy, supra*, ("stigma" imposed upon New York City school board member by fellow school board members; "plus" involved forced removal from public office); *Marrero v. Hialeah*, 625 F.2d 499, 519-20 (5th Cir. 1980) ("stigma" imposed by prosecutor making false allegations; "plus" imposed by law enforcement officers violating Fourth Amendment rights); *Owen v. Independence*, 445

U.S. 622, 100 S. Ct. 1398, 63 L.Ed.2d 673 (1980) ("stigma" imposed upon chief of police by city council and councilperson; "plus" was city manager firing police chief); *Ulrich v. City and County of San Francisco*, 308 F.3d 968 (9th Cir. 2002) ("stigma" imposed on doctor by public hospital's peer review committee; "plus" was failure of the public hospital to rehire him after he resigned); *Patterson v. City of Utica*, 370 F.3d 322 (2d Cir. 2004) ("stigma" imposed upon city employee by the city's mayor; "plus" was termination from city employment).

Even assuming that the cancellation of the lacrosse season somehow satisfies the "plus" part of the stigma plus test, Plaintiffs have failed to adequately allege that Sgt. Gottlieb or Inv. Himan made defamatory statements resulting in a due process violation. (See Plaintiffs' Opposition to Sgt. Gottlieb's Motion to Dismiss p. 19, Plaintiffs' Opposition to Inv. Himan's Motion to Dismiss pp. 26-27). Rather, Sgt. Gottlieb and Inv. Himan only stand accused of repeating -- in official court filings -- medical statements made to them concerning the physical condition of Crystal Mangum. (See Sgt. Gottlieb's Memorandum in Support of Motion to Dismiss p. 19; Inv. Himan's Memorandum in Support of Motion to Dismiss pp. 26-27). Plaintiffs have failed to provide any justification for a finding that their rights were violated by general statements in court filings about the medical condition of Crystal Mangum – statements that did not refer directly or indirectly to the culpability of Plaintiffs or anyone else.

In response to Inv. Himan's motion, Plaintiffs confirm that their "stigma plus" claim against him is based solely upon statements of Tara Levicy repeated in the NTO Application. (Plaintiffs' Opposition to Inv. Himan's Motion to Dismiss pp. 6-7).

Plaintiffs claim Inv. Himan could not rely on Levicy's statements because "he was *conspiring* with her." (Id.) (emphasis added). As demonstrated in Section II.A. of this Reply, however, the Complaint alleges that the Durham Investigators entered into a conspiracy with Levicy *after* the NTO Application was filed. The Complaint does not allege that Inv. Himan was conspiring with Levicy when the NTO Application was filed.

### D. Plaintiffs Have No Constitutional Right to Be Free From "Malicious Investigation" and Their 22nd Cause of Action Should Be Dismissed

Crystal Mangum claimed on March 14, 2006 that she had been raped by three men. On May 15, 2006, approximately two months later, District Attorney Nifong sought and obtained his third indictment arising from the Duke Lacrosse investigation, announcing at the time that this would be the last indictment based upon the evidence developed. (Complaint ¶ 432). None of the Plaintiffs was ever indicted, arrested, subjected to excessive force, or deprived of any other "property interest" that would justify a substantive due process claim against Sgt. Gottlieb or Inv. Himan. Indeed, the Complaint does not allege that Sgt. Gottlieb or Inv. Himan ever interrogated or even spoke with any of the Plaintiffs. The only actions Sgt. Gottlieb and Inv. Himan took that specifically involved these Plaintiffs were to obtain and test their DNA to compare against materials found in Mangum's rape kit, obtain their photos for identification purposes, and use information concerning their entry and exit from common areas of Duke's campus to reduce the possibility of a mistaken identification.

As explained in this Reply and in the initial memoranda of Sgt. Gottlieb and Inv. Himan, these actions (obtaining DNA swabs, reviewing key card records) did not violate

Plaintiffs' rights.[4] Plaintiffs nonetheless allege in their 22nd Cause of Action that their substantive due process rights were violated by a "malicious investigation". Plaintiffs rely on a string of cases which supposedly support the proposition that "the lower courts routinely recognize substantive due process claims based on malicious investigation." (Plaintiffs' Opposition to Durham Supervisors' Motion to Dismiss pp. 16-17, n. 9). In fact, these cases support Sgt. Gottlieb and Inv. Himan' arguments.

The cases cited by Plaintiffs demonstrate that a substantive due process claim cannot succeed unless the plaintiff can point to a specific and clear governmental deprivation of liberty or property. See, e.g., *Moran v. Clarke*, 296 F.3d 638, 641 (8th Cir. 2002) (substantive due process claim existed where police officer was suspended from the force without pay and was indicted and arrested after being wrongfully identified and framed as a scapegoat for police misconduct undertaken by others); *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008) (substantive due process clause applies to excessive force claims of pretrial detainee or arrestee); *Ward v. Anderson*, 494 F.3d 929, 938 (10th Cir. 2007) (summary judgment granted in favor of defendants on substantive due process claim because facts not found to "shock the conscience"; since the Court found the conduct was not shocking, the Court explicitly declined to rule on the question of "whether the Wards have alleged the type of [liberty or property] interest that triggers a substantive due process claim"); *Kottmyer v. Maas*, 436 F.3d 684, 691 (6th Cir. 2006)

---

[4] Sgt. Gottlieb's Memorandum in Support of Motion to Dismiss mistakenly failed to note that one of several cases cited on page 15 for the proposition that there is no constitutional right to be free of government investigation was subsequently reversed on other grounds. *United States v. Jacobson*, 916 F.2d 467 (8th Cir. 1990), *rev'd on other grounds,* 503 U.S. 540, 112 S. Ct. 1535, 118 L. Ed. 2d 174 (1992).

(complaint alleging improper child abuse investigation dismissed where "[t]here is no allegation that Arianna was removed from her parents's custody, either temporarily or permanently, or that the Ayer or Hamilton County in any way interfered with the Kottmyers's right to custody, control and companionship of their daughter"); *Omni Behavioral Health v. Miller*, 285 F.3d 646, 651-53 (8th Cir. 2002) (due process suit by company providing foster care services to State of Nebraska against detective for improper child abuse investigation dismissed on grounds that the plaintiff was not deprived of a protected liberty interest despite the fact that its contract with the State of Nebraska's housing agency was terminated and four of its staff members were arrested); *Hirsch v. Otsego County Dep't of Social Services*, No. 89-CV-054, 1992 U.S. Dist. LEXIS 3052 (N.D.N.Y. March 11, 1992) (summary judgment dismissing due process claim denied in suit alleging improper child abuse investigation -- plaintiff was arraigned on criminal child abuse charges and deprived of custody of her child for three months during the criminal proceedings). Here, no similar deprivation occurred. The mere fact that police officers conducted a criminal investigation and Plaintiffs were members of a group of people who were considered but then ruled out as potential suspects does not give rise to a substantive due process violation.

## III. ALL FEDERAL SECTION 1983 CLAIMS AGAINST INV. HIMAN AND SGT. GOTTLIEB SHOULD BE DISMISSED ON QUALIFIED IMMUNITY GROUNDS

Plaintiffs' creative efforts to articulate how their Constitutional rights were allegedly violated demonstrate, at the very least, that Sgt. Gottlieb and Inv. Himan are entitled to dismissal of the Section 1983 claims on qualified immunity grounds. *See*

*Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) (a finding of qualified immunity requires a finding of whether the individual in question violated a right guaranteed to the Plaintiffs under the U.S. Constitution and whether that right was *clearly established* at the time of the alleged violation).

Sgt. Gottlieb and Inv. Himan lose the protection of qualified immunity only if they violated a constitutional right that was "sufficiently particularized to put potential defendants on notice that their conduct probably is unlawful." *Gooden v. Howard County*, 954 F.2d 960, 968 (4th Cir. 1992). Ignoring this particularity requirement entirely, Plaintiffs broadly assert that Sgt. Gottlieb and Inv. Himan forfeited their qualified immunity because they should have known "that conspiring to frame innocent persons for a crime that never happened is wrong and a violation of the Constitution." (Plaintiffs' Opposition to Inv. Himan's Motion to Dismiss p. 10).

Consideration of the particular issues raised by Plaintiffs' complaint makes it clear Inv. Himan and Sgt. Gottlieb are entitled to qualified immunity. The particular issue raised by Plaintiff's 21st Cause of Action is whether Inv. Himan and Sgt. Gottlieb should have known on March 23, 2006 that the NTO Application violated the Fourth Amendment rights of the Plaintiffs. The guidance from established precedent at that time was that police officers are duty bound to investigate allegations of criminal wrongdoing by a complaining witness even when the witness gave conflicting explanations of the alleged crime. *See Torchinsky, supra.* Given that the allegations of Crystal Mangum were lent a "powerful aura of credibility" by the expert nurse who conducted a rape examination on the night of the alleged incident, (Compl. ¶ 210), Inv. Himan and Sgt.

Gottlieb had no reason to believe it would violate the constitutional rights of the Plaintiffs to seek the NTO.

The particular issue raised by Plaintiffs' 20th Cause of Action is whether Inv. Himan and Sgt. Gottlieb should have known in the Spring of 2006 that Plaintiffs had a constitutional expectation of privacy in the records showing when Plaintiffs entered and exited common areas at Duke University. No case law, clearly established or otherwise, has created such a constitutional right. Rather, by then the Supreme Court had specifically held that federal law confers no enforceable rights upon students in the privacy of their educational records. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 279 (2002).

The particular issue raised by Plaintiffs' 24th and 25th Causes of Action is whether the two public statements attributed to Sgt. Gottlieb and Inv. Himan -- both of which quoted information supplied by Tara Levicy and neither of which stated or implied that any the Plaintiffs did anything wrong, coupled with the decision of Duke University to cancel the 2006 lacrosse season -- could have violated any constitutional right of the Plaintiffs. Since there was no clearly established authority in 2006 for the proposition that a decision by a private university to cancel an extracurricular activity could form the basis for a "stigma plus" defamation claim under Section 1983, Sgt. Gottlieb and Inv. Himan are entitled to qualified immunity.

Finally, the particular issue raised by the Plaintiffs' 22nd Cause of Action is whether Sgt. Gottlieb and Inv. Himan should have known in 2006 that they were violating the Plaintiffs' constitutional rights through the mere fact of conducting an investigation into the claims of Crystal Mangum. Since no clearly established authority

makes police officers constitutionally responsible for a substantive due process violation based upon an alleged malicious investigation without some additional showing of a wrongful deprivation of liberty or property, Inv. Himan and Sgt. Gottlieb are entitled to qualified immunity on this claim.

## IV. PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER OF LAW AND SHOULD BE DISMISSED

### A. Public-Official Immunity Bars Plaintiffs Fraud, Obstruction of Justice And Intentional Infliction Of Emotional Distress Claims and their State Law Claims In Their 8th , 10th, 23rd, and 29th Causes Of Action Should Be Dismissed

Plaintiffs admit that their clams for negligence and negligent infliction of emotional distress are barred by public-official immunity, but nonetheless contend that their claims for fraud (Cause of Action 8), abuse of process (Cause of Action 10) obstruction of justice (Cause of Action 23) and intentional infliction of emotional distress (Cause of Action 28) are not, because Sgt. Gottlieb and Inv. Himan have violated "clearly established rights." *Bailey v. Kennedy*, 349 F.3d 731, 742 (4th Cir. 2003). This is a misstatement of North Carolina public-official immunity law. Public-official immunity applies because Plaintiffs do not identify any alleged conduct of Sgt. Gottlieb or Inv. Himan that evidenced an intent to cause them injury, that was corrupt (i.e., for their own, undue benefit), or that occurred outside the scope of their duties as investigators. *See Marlowe v. Piner*, 119 N.C. App. 125, 128, 458 S.E.2d 220, 223 (1995).

Plaintiffs detail a host of alleged improper actions, but none that creates a plausible inference that they were taken with the intent to harm Plaintiffs or were done outside of Sgt. Gottlieb and Inv. Himan's duties. *Marlowe*, 119 N.C. App. at 128, 458

S.E.2d at 222-23.  Plaintiffs' own allegations indicate that Sgt. Gottlieb and Inv. Himan provided all evidence they received to District Attorney Nifong.  Compl. ¶ 268.  Plaintiffs allege that Sgt. Gottlieb and Inv. Himan engaged in a conspiracy to request the keycard information, (Compl. §§ 325, 327), but the purpose was to aid the investigation to ensure that anyone identified in the April 4th photo identification procedure could have been present at the scene of the alleged crime.  (Compl. ¶ 326).  It was therefore done in the context of Sgt. Gottlieb and Inv. Himan's duties.  (Compl. § 655).

**B.    Plaintiffs' Allegations Are Insufficient To Support A Viable Claim For Obstruction Of Justice And The 23rd Cause Of Action Should Be Dismissed**

In their Oppositions, Plaintiffs note that the common law tort of obstruction of justice is broadly defined and assert that the investigation was, in their opinion, "an obscene burlesque of police procedure that generated not even a scintilla of credible evidence."  (Plaintiffs' Opposition to Sgt. Gottlieb's Motion to Dismiss p. 11).  Plaintiffs' colourful prose aside, the facts as alleged indicate that Sgt. Gottlieb and Inv. Himan had ample grounds for their investigation.

The statement of Crystal Mangum, made in the aftermath of what she described as a violent group assault (Compl. ¶¶ 101-02, 376, 461), and the information provided by Nurse Levicy provided a sufficient basis for investigating the claims and seeking all evidence.  (Compl. ¶ 150).  Sgt. Gottlieb and Inv. Himan fulfilled their duties by turning over all of evidence they uncovered to the District Attorney.  (Compl. ¶¶ 268, 306).  The only supposed "statements" come from their quoting of information provided by Nurse Levicy in the NTO Application.  (Compl. ¶ 274).  As police officers, Sgt. Gottlieb and

Inv. Himan were not in a position to overrule the decisions of the District Attorney regarding the timing and content of evidence disclosures to the Plaintiffs.

Because Plaintiffs were never accused, arrested, jailed or indicted for any crime, their claims fall outside of those situations where North Carolina Courts have found that plaintiffs have suffered from the perversion of the justice system or abuses of power. *Compare Reed v. Buckeye Fire Equip.*, 241 Fed. Appx. 917, 919 (4th Cir. 2007) (plaintiff was threatened with blackmail to prevent the filing of a civil suit); *Burgess v. Busby*, 142 N.C. App. 393, 544 S.E.2d 4, 12-13 (2001) (plaintiff's name was sent to health care providers as retaliation for finding against defendant-physician in earlier medical malpractice suit); *Jackson v. Blue Dolphin Communs. of N.C., LLC*, 226 F. Supp. 2d 785 (W.D.N.C. 2002) (plaintiff claimed to have been terminated for refusal to sign false affidavit); *Henry v. Deen*, 310 N.C. 75, 310 S.E.2d 326 (1984) (plaintiff alleged that defendants altered/created medical records to impede his investigation into potential malpractice); *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 33, 588 S.E.2d 20, 30 (N.C. Ct. App. 2003) (obstruction of justice claim fails where there was no evidence defendants' actions "in some way judicially prevented, obstructed, impeded or hindered" a separate civil case). *See also In re Kivett*, 309 N.C. 635, 309 S.E.2d 442 (1983) (efforts of Superior Court judge to prevent convening of grand jury constituted both willful misconduct in office and obstruction of justice).

C. **Plaintiffs' Allegations Regarding Intentional Infliction Of Emotional Distress Are Insufficient As A Matter Of Law and Count Twenty Eight Should Be Dismissed**

A *prima facie* claim for intentional infliction of emotional distress requires more than Plaintiff alleging a parade of horribles and asserting that Defendant was at fault. Plaintiff must also allege that this conduct is intended to cause, and does cause, severe and disabling emotional distress.[5] *Dickens v. Puryear*, 302 N.C. 437, 452-53, 276 S.E.2d 325, 335 (1981). Even if Plaintiffs assertions of a massive conspiracy involving Sgt. Gottlieb and Inv. Himan were consistent and had some factual basis, Plaintiffs have not alleged that this was done to cause them emotional distress and that this distress was sufficiently severe and disabling. *See Id.* For this reason, Plaintiffs' 28th Cause of Action against Sgt. Gottlieb and Inv. Himan must be dismissed.

While no comprehensive definition of "extreme and outrageous" conduct has been attempted by the courts, it is apparent that the acts must have been directed to the plaintiff, such as physical abuse, sexual harassment, threats, obscene gestures or cursing. *See Groves v. Travelers Ins. Co.*, 139 N.C. App. 795, 800-01, 535 S.E.2d 105, 108-09 (2000), *rev'd* 354 N.C. 206, 552 S.E.2d 141 (2001) (Opinion of McGee, J., concurring in part and dissenting in part). Objectionable conduct such as adultery, sexual battery and deception of a claimant's treating physician has been judged to be insufficient to rise to the level of conduct to find a claim of intentional infliction of emotional distress. *Id.*

The cases cited by Plaintiffs in their Oppositions involve situations with more severe facts that those alleged here and indications that the defendant knew of the harm he was causing, or was likely to cause, to the plaintiffs. They also involve evidence of

---

[5] An IIED claim may also exist where a defendant's actions indicate a "reckless indifference" to the likelihood that they will cause "severe emotional distress." *Dickens*, 302 N.C. at 452, 276 S.E.2d at 335.

some disabling harm. In *Hogan v. Forsyth Country Club*, the North Carolina Court of Appeals reversed summary judgment in favor of defendant employer, where the employer's supervisor allegedly touched and rubbed up against the plaintiff, shouted profanities at her when she refused his advances, and physically threatened her with a bodily injury, including threats with a knife. *See Hogan v. Forsyth Country Club Co., 79*, 79 N.C. App. 483, 340 S.E.2d 116, 121 (1986). The Plaintiff in *Hogan* specifically alleged "that she became very nervous, anxious, humiliated and depressed, to the extent that she was required to seek medical treatment for ulcers." *Id.* at 121.

Plaintiffs also cite *West v. King's Dept. Store, Inc.* to support their IIED claims, but the facts in *West* bear no relation to the facts alleged in this case. 321 N.C. 698, 705, 365 S.E.2d 621 (1988). Both plaintiffs in *West* suffered actual physical injury, which the responsible defendant knew he might cause at the time at the time of his alleged actions. *See West*, 321 N.C. at 705, 365 S.E.2d at 625 (the plaintiff husband "warned the manager that his wife was receiving out-patient treatment . . . and could not withstand a confrontation such as this"). "Both plaintiffs [in *West*] required medical treatment after the incident and Mrs. West's previous condition was exacerbated as a result". *Id.* at 705, 625-26. Although "neither physical injury nor foreseeability of injury is required for intentional infliction of emotional distress . . . both of these factors go to the outrageousness of the [alleged] conduct." *Id.*

Plaintiffs do not allege that they suffered any specific physical injuries, nor do they allege that Sgt. Gottlieb and Inv. Himan intentionally took actions against them with the knowledge that they might suffer some physical injury. *See West*, 321 N.C. at 705,

365 S.E.2d at 625-26. Indeed, Plaintiffs do not allege that Inv. Himan or Sgt. Gottlieb ever so much as spoke an unkind word to any of them. *Compare Watson v. Dixion*, 130 N.C. App. 47, 53 502 S.E.2d 15, 20 (1998) *aff'd* 352 N.C. 343, 532 S.E.2d 175 (2000) (behavior considered extreme and outrageous where defendant frightened and humiliated plaintiff with cruel practical jokes made ongoing obscene comments and threatened her physical safety).

In support of their argument that Plaintiffs suffered "severe emotional injury," Plaintiffs rely upon a quote from Duke President Brodhead expressing sympathy for students who had "lived through an ordeal the likes of which few have known." (Opp. to City of Durham's Mot. p. 48). One does not have to understate the difficulties facing individuals caught in the middle of a media circus, however, to recognize that these Plaintiffs have not alleged that they suffered severe emotional distress or physical injuries like those in other cases IIED allowed to go to a jury, or that Inv. Himan and Sgt. Gottlieb took action with the express intention to cause such severe distress or injury. *See, e.g., Hogan,* 340 S.E.2d 116-117 (plaintiff received medical treatment from ulcers); *West,* 321 N.C. at 705, 365 S.E.2d at 625 (both plaintiffs received medical treatment as a result of alleged conduct); *Watson,* 130 N.C. App. at 53, 502 S.E.2d at 20 (plaintiff suffered a nervous breakdown).

Finally, Plaintiffs contend that no decision should be made regarding the dismissal of this claim because summary judgment has not been reached. However, North Carolina courts have consistently held that "[i]t is a question of law for the court to determine, from the materials before it, whether the conduct complained of may reasonably be found

to be sufficiently outrageous as to permit recovery." *Hogan*, 79 N.C. App. at 490-91, 340 S.E.2d at 121 (citing Restatement (Second) of Torts, § 46, cmt (h) (1965)). As Plaintiffs have chosen to set out their allegations in extensive, painstaking detail, and these allegations must be taken as true for purposes of this Motion to Dismiss, the Court has everything it needs to determine whether this claim fails to state a claim for relief.

## CONCLUSION

For the foregoing reasons, Defendants Mark Gottlieb and Benjamin Himan respectfully request the Court to dismiss all claims asserted against them in the Complaint (Causes of Action 8, 10, 20-26, and 28-30) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This the 29th day of September, 2008.

**POYNER & SPRUILL LLP**

By: /s/Edwin M. Speas, Jr.
      Edwin M. Speas, Jr.
      North Carolina Bar #4112
      Eric P. Stevens
      North Carolina Bar # 17609
      P.O. Box 10096
      Raleigh, N.C. 27605-0096
      Tel.   (919) 783-6400
      Fax   (919) 783-1075
      Email  espeas@poynerspruill.com
      Email: estevens@poyners.com

*Attorneys for Defendant Mark Gottlieb*

**KENNON, CRAVER, BELO, CRAIG & MCKEE, PLLC**

By: /s/ Joel M. Craig
      Joel M. Craig
      North Carolina State Bar # 9179
      Henry W. Sappenfeld
      North Carolina State Bar # 37419
      4011 University Drive, Suite 300
      P.O. Box 51579
      Durham, NC 27717-1579
      (919) 490-0500

*Attorneys for Defendant Benjamin Himan*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned attorney hereby certifies that on September 29, 2008, I electronically filed the foregoing Motion to Dismiss with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Charles J. Cooper
David H. Thompson
Brian S. Koukoutchos
Nicole Jo Moss
Cooper & Kirk, PLLC
1523 New Hampshire Avenue, NW
Washington, DC 20036

Dan J. McLamb
Shirley M. Pruitt
T. Carlton Younger, III
Yates, McLamb & Weyher, L.L.P.
Post Office Box 2889
Raleigh, NC 27602

Attorneys for Defendants Duke University
Health System, Inc., Theresa Arico R.N.
And Tar Levicy, R.N.

William J. Thomas, II
Thomas, Ferguson & Mullins, L.L.P.
119 East Main Street
Durham, NC 27701

Attorney for Plaintiffs

J. Donald Cowan, Jr.
Dixie T. Wells
L. Cooper Harrell
Smith Moore LLP
Post Office Box 21927
Greensboro, NC 27420

William F. Lee
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA 02109

Jamie Gorelick
Jennifer M. O'Connor
Paul R.Q. Wolfson
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006

Attorneys for Defendants Duke University,
Richard H. Brodhead, Peter Lange,
Larry Moneta, John Burness, Tallman Trask,
Susanne Wasiolek, Matthew Drummond,
Aaron Graves, Robert Dean, Kate Hendricks
And Victor J. Dzau

Reginald B. Gillespie, Jr.
Faison & Gillespie
Post Office Box 51729
Durham, NC 27717-1729

Attorneys for City of Durham, NC


Henry W. Sappenfield
Kennon, Craver, Belo, Craig & McKee, PLLC
4011 University Drive, Suite 300
Post Office Box 51579
Durham, NC 27717-1579

Attorneys for Defendant Benjamin Himan


Linwood Wilson, Pro Se
Bahama, NC

James B. Maxwell
Maxwell, Freeman & Bowman, P.A.
Post Office Box 52396
Durham, NC 27717-2396

Attorneys for Defendant David Addison


Paul D. Coates
Kenneth Kyre, Jr.
Pinto Coasts Kyre & Brown, PLLC
Post Office Box 4848
Greensboro, NC 27404

Attorneys for Defendant J. Wesley Covington


Patricia P. Kerner
D. Martin Warf
Hannah G. Styron
Troutman Sanders LLP
434 Fayetteville Street, Suite 1900
Raleigh, NC 27601

Attorneys for Defendants Patrick Baker,
Steven Chalmers, Ronald Hodge,
Lee Russ, Stephen Mihaich,
Beverly Council, Jeff Lamb and
Michael Ripberger


This the 29th day of September, 2008.


/s/Edwin M. Speas, Jr.
Edwin M. Speas, Jr.

RALEIGH/568509v3