IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:08-cv-119

|  |  |
|---|---|
| **EDWARD CARRINGTON, et al.,** | ) <br> ) |
| **Plaintiffs,** | ) <br> ) |
| v. | ) <br> ) |
| **DUKE UNIVERSITY, et al.,** | ) <br> ) |
| **Defendants.** | ) <br> ) |

## PLAINTIFFS' OPPOSITION TO DEFENDANT CITY OF DURHAM'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### INTRODUCTION AND NATURE OF THE CASE[1]

The City of Durham moves for partial summary judgment on Plaintiffs' state-law claims under the North Carolina doctrine of governmental immunity. Durham concedes that a city may waive such immunity by purchasing liability insurance. Brief in Support of Defendant City of Durham, North Carolina's Motion for Partial Summary Judgment ("Durham Br.") at 9. Durham further concedes that it has at least "three consecutive annual excess liability policies that may potentially be implicated by the time period of conduct alleged in the Complaint." *Id.* at 10.[2] Durham contends that these policies do not waive the City's governmental immunity because: (1) two of the three policies (but not the third) contain a Governmental Immunity Endorsement providing that the policy is not intended to waive immunity; and (2) the policies are not triggered

---

[1] We limit this statement of the nature of the case to the motion to which this brief responds. For a more extensive statement of the nature of the case, *see* Pls.' Opp'n to Def. City of Durham's Mot. to Dismiss Pursuant to Rule 12(b)(6) (Doc. No. 100) Part I.

[2] Durham attaches the three policies and an affidavit averring that they are the extent of the City's insurance. Plaintiffs cannot verify that representation without discovery, such as deposing Darwin Laws—discovery that Durham, like the other Defendants, has opposed and that the Court has recently declined to compel. *See* Aff. of David Lehn (Ex. A); Order (Nov. 12, 2008) (Doc. No. 117).

unless and until Durham has exhausted the self-insured retention amount set in the policies by paying claims in that amount, and that cannot happen because Durham has not waived its governmental immunity for that portion of liability. *Id.* at 10-14. Neither of these arguments warrants summary judgment.

## STATEMENT OF FACTS[3]

According to the City of Durham, there are three and only three insurance policies that "potentially provide liability insurance coverage with respect to law enforcement operations and activities" between April 1, 2005, and April 1, 2008. Aff. of Darwin Laws (Doc. No. 114) ¶ 12. Two of these policies were issued by the Insurance Company of the State of Pennsylvania ("ICSOP"), which appears to be part of American Insurance Group ("AIG") – one in 2005 (Ex. 1, Doc. No. 114-2) and one in 2006 (Ex. 2, Doc. No. 114-3). The third policy was issued by Everest in 2007 (Ex. 3, Doc. No. 114-4).[4]

Each of the ICSOP policies contains a Governmental Immunity Endorsement, which provides:

> This policy is not intended by the insured to waive its governmental immunity as allowed by North Carolina Statutes Sec. 153A-435. Accordingly, subject to this policy and the Limits of Liability shown on the Declarations, this policy provides coverage only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable or for which, after the defense[] is asserted, a court of competent jurisdiction determines the defense of governmental immunity not to be applicable.

---

[3] We limit this statement of facts to the motion to which this brief responds. For a more extensive statement of facts, *see* Pls.' Opp'n to Def. City of Durham's Mot. to Dismiss Pursuant to Rule 12(b)(6) (Doc. No. 100) Part II.

[4] Copies of the policies are attached as exhibits to the Affidavit of Darwin Laws (Doc. No. 114), but Durham cites these documents merely with generic references to the exhibits, without benefit of page numbers. *See, e.g.,* Durham Br. 14. Because the pagination within the policies and their multiple endorsements is somewhat confusing, we will cite them according to the pagination superimposed by the Clerk of this Court (*e.g.*, "ICSOP 2005 Policy, Doc. 114-2 at page 38 of 57").

2

*See* ICSOP 2005 Policy, Doc. No. 114-2 at page 21 of 57; ICSOP 2006 Policy, Doc. No. 114-3 at page 21 of 58.

All three policies has a self-insured retained ("SIR") limit, which (much like a deductible) the City must exhaust before the policy is triggered. The SIR provisions provide:

> [The insurer's] duty to pay any sums that [the City] become[s] legally obligated to pay arises only after there has been a complete expenditure of [the City's] retained limit by means of payments for judgments, settlements, or defense costs.

ICSOP 2005 Policy, Doc. No. 114-2, at page 38 of 57; ICSOP 2006 Policy, Doc. No. 114-3, at page 41 of 58 (same); Everest 2007 Policy, Doc. No. 114-4, at page 12 of 37 ("We will pay any sums covered under this Policy only after [the City's] 'retained limit' has been exhausted by means of payments for judgments, settlements, defense costs."). The retained limit for the two ICSOP policies is $500,000 and for the Everest policy is $1,000,000. Durham Br. 12.

Finally, the policies state that the insurer "shall pay . . . the ultimate net loss, in excess of the retained limit*,* that the insured becomes legally obligated to pay …." ICSOP 2005 Policy, Doc. No. 114-2, at page 26 of 57; ICSOP 2006 Policy, Doc. No. 114-3, at page 29 of 58; Everest 2007 Policy, Doc. No. 114-4, at page 4 of 37 (insurer "will pay on behalf of the insured, the 'ultimate net loss', in excess of the 'retained limit', that the insured becomes legally obligated to pay . . . .").

## QUESTIONS PRESENTED

1) Whether the City of Durham has obtained insurance covering and thereby waiving its governmental immunity against Plaintiffs' state-law claims.

2) Whether the Governmental Immunity Endorsements in the City's insurance policies negate the City's waiver of immunity.

3) Whether the City's insurance coverage is triggered by the accumulation of defense costs and liability for federal claims.

4) Whether, on the present record, it would be premature to grant partial summary judgment against Plaintiffs.

**STANDARD OF REVIEW**

"Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 340-341 (4th Cir. 2000). "In determining whether a party is entitled to summary judgment, the evidence is viewed in the light most favorable to the nonmoving party." *Id*. at 341. In addition, because "the basis for the [City's] motion" – governmental immunity – "is an affirmative defense as to which [the City] would have the burden of persuasion at trial, the summary judgment burden is a correspondingly heavy one." *Gooden v. Howard County*, 954 F.2d 960, 971 (4th Cir. 1992). Finally, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986); *see also* FED. R. CIV. P. 56(f).

**ARGUMENT**[5]

**I. THE POLICIES' "GOVERNMENTAL IMMUNITY ENDORSEMENTS" DO NOT NEGATE DURHAM'S WAIVER OF IMMUNITY IN THE AMOUNT OF ITS INSURANCE POLICIES**

Durham contends that two of its insurance policies expressly limit coverage – and therefore the scope of the City's waiver of immunity – to those claims for which a defense of governmental immunity is not available, and that these policies state that they are "not intended by the insured to waive its governmental immunity as allowed by North Carolina Statutes Sec. 153A-435." Durham Br. 13 (quoting the policy; emphasis deleted). *See* ICSOP 2005 Policy, Doc. No. 114-2 at page 21 of 57; ICSOP 2006 Policy, Doc. No. 114-3 at page 21 of 58. Durham's argument has several independently fatal flaws.

---

[5] Plaintiffs hereby incorporate by reference the arguments developed in the brief filed today by the plaintiffs in *Evans v. City of Durham* (M.D.N.C. 07-739) in opposition to the City's motion for summary judgment.

First, as the City concedes, these Governmental Immunity Endorsements are found only in the ICSOP policies—there is no such provision in the Everest policy. Durham Br. 13. Defendant offers no argument and no evidence that the events pleaded in the Complaint implicate only the ICSOP policies and not the Everest policy. Indeed, Durham expressly concedes that the Everest policy, like the two ICSOP policies, provides "public entity excess liability insurance covering the time periods potentially at issue in the Complaint." Durham Br. 3. Without any effort by Durham itself to distinguish among its three policies in this respect, there is no way on this record for the Court to conclude that only the ICSOP policies (with their restrictive immunity endorsements) are relevant to the claims here. Therefore, summary judgment cannot issue even if we assume *arguendo* that two of the three policies do not waive Durham's governmental immunity.

Second, these endorsements are of dubious efficacy here because, as Durham concedes, *they invoke the wrong statute*. Durham Br. 14 n.10. The Governmental Endorsements state that the policies do not waive immunity "as allowed by North Carolina General Statutes Sec. 153A-435." ICSOP 2005 Policy, Doc. No. 114-2 at page 21of 57; ICSOP 2006 Policy, Doc. No. 114-3 at page 21of 58. But that statute applies only to *counties*. Defendant Durham is a municipality; the relevant statute is therefore Section 160A-485, which is not mentioned in the Endorsements. Thus, by their express and unambiguous terms, the two Government Immunity Endorsements *do not* address the City of Durham's waiver of immunity under North Carolina law and hence *do not* affect the scope of policy coverage. One might speculate as to whether this was an oversight by ICSOP that accrued to the benefit of Durham—an error that Durham was perhaps content to agree to when the insurance contract was signed but may now regret for tactical reasons. But it does not matter because the contract says what it says and must be construed against the

5

insurance company.  But Durham's own authorities confirm that, "[i]f the language in an exclusionary clause contained in a policy is ambiguous, the clause is to be *strictly construed in favor of coverage*."  *Patrick v. Wake County*, 655 S.E.2d 920, 924 (N.C. Ct. App. 2008) (citations and quotation marks omitted) (emphasis added).  *See also Kephart v. Pendergraph*, 507 S.E.2d 915, 922 (N.C. Ct. App. 1998) ("any ambiguity in meaning of policy provision to be resolved against insurance company"); *Maddox v. Insurance Co.*, 280 S.E.2d 907, 908 (N.C. 1981) (same).

And third, the endorsements by their terms say the opposite of what Durham claims they say.  The endorsements' non-waiver of governmental immunity is expressly made "subject to" the policies, which in turn provide insurance coverage for – and thereby waive governmental immunity against – liability arising out of, among other things, state-law claims of negligence, defamation, assault and battery, false arrest, malicious prosecution, and other "personal injury offenses."  *See* ICSOP 2005 Policy, Doc. No. 114-2 at page 35-36 of 57; ICSOP 2006 Policy, Doc. No. 114-3 at page 38-39 of 58.  Durham's reading of the endorsements ignores the "subject to" clause and renders the express inclusion of liability coverage for these various state-law claims a nullity.  *See also* Pls.' Br. Opposing the City of Durham's Mot. for Partial Summ. J. (Nov. 24, 2008), *Evans v. City of Durham* (M.D.N.C. 07-739), at 15-18.

More generally, these endorsements, standing alone, are not dispositive of the question of whether Durham has waived immunity.  This Court recently agreed "that the City may not rest on language in the insurance contract stating that '[t]his policy is not intended by the insured to waive its governmental immunity.'"  *Pettiford v. City of Greensboro*, 556 F.Supp.2d 512, 527 (M.D.N.C. 2008).  As the *Pettiford* opinion explained, although "true in the abstract, this argument ignores the real issue:  whether, and to what extent, does the excess liability insurance

6

policy indemnify the City from tort liability and, thus, constitute a waiver of its governmental immunity?" *Id.* As discussed below, Durham's policies clearly extend coverage to Plaintiffs' state-law claims.

## II. THE CITY'S INSURANCE COVERAGE IS TRIGGERED BY THE ACCUMULATION OF DEFENSE COSTS AND LIABILITY FOR FEDERAL CLAIMS

Durham's argument about the actual extent to which these policies indemnify Durham from tort liability, and thus constitute a waiver of its immunity, is nonsensical. Each of Durham's insurance policies has a deductible called a self-insured retained ("SIR") limit, which the City must exhaust before the policy is triggered. Durham contends that "the City's coverage under the policies is not triggered, because the City is immune as to, and thus not legally obligated to pay, any amount of its self-insured retention." Durham Br. 12, 14 n.10. As the North Carolina Court of Appeals has explained, however, "defendants' argument at bottom is basically circular, claiming defendants can never be liable on the SIR because of sovereign immunity and that the Policy does not apply until the SIR is exhausted." *Kephart*, 507 S.E.2d at 920. Moreover, as noted above, Durham's interpretation of these policies would render meaningless their express inclusion of coverage for various state-law liabilities, including negligence, defamation, assault and battery, false arrest, malicious prosecution, and other "personal injury offenses." *See* ICSOP 2005 Policy, Doc. No. 114-2 at page 35-36 of 57; ICSOP 2006 Policy, Doc. No. 114-3 at page 38-39 of 58; Everest 2007 Policy, Doc. No. 114-4, at page 16-17, 19-20, 22 of 37. Accordingly, Durham's reading of the policies must be rejected.

The circularity of Durham's interpretation of its policies rests on its misunderstanding of the operation of the SIR. Properly understood, the SIR may be satisfied by Durham's costs incurred defending this suit and by any liability Durham incurs under Plaintiffs' federal causes of action – neither of which is within the scope of Durham's governmental immunity.

7

Durham correctly notes that the policies provide that the insurance company has a duty to pay—and therefore the City has waived its immunity—" 'only after there has been a complete expenditure of [its] retained limit . . . .' " Durham Br. 12 (emphasis deleted) (quoting the two ICSOP policies); *see also id*. (" 'We will pay any sums covered under this Policy only after your 'retained limit' has been exhausted . . . .' " (quoting Everest policy)). But the problem—and Durham's error—lies in the language that Durham elides with its ellipses. All three policies expressly provide that the insurer's duty to pay "arises only after there has been a complete expenditure of your retained limit by means of payments for judgments, settlements, or *defense costs*." ICSOP 2005 Policy, Doc. No. 114-2, at page 38 of 57 (emphasis altered); ICSOP 2006 Policy, Doc. No. 114-3, at page 41 of 58 (same); Everest 2007 Policy, Doc. No. 114-4, at page 12 of 37 ("We will pay any sums covered under this Policy only after your 'retained limit' has been exhausted by means of payments for judgments, settlements, *defense costs*") (emphasis added).

This interpretation is bolstered by other provisions of these insurance contracts. For example, the policies expressly include "defense costs" within the expenditures that can exhaust the "retained limit" and thereby trigger policy coverage. *See* ICSOP 2005 Policy, Doc. No. 114-2, at page 27 of 57 (Sec. I.B.); ICSOP 2006 Policy, Doc. No. 114-3, at page 30 of 58 (same); Everest 2007 Policy, Doc. No. 114-4, at page 5 of 37 (same). The policies further provide that the insurers "will defend any claim or suit against you seeking damages under this Policy even if such claim or suit is groundless, false, or fraudulent." ICSOP 2005 Policy, Doc. No. 114-2, at page 27 of 57 (Sec. I.B.2.a.); ICSOP 2006 Policy, Doc. No. 114-3, at page 30 of 58 (same).

In addition, Durham has no governmental immunity from liability for violations of federal law. *See Williams v. Holsclaw*, 495 S.E.2d 166, 168 (N.C. Ct. App. 1998), *aff'd*, 504

S.E.2d 784 (N.C. 1998). Plaintiffs, of course, have asserted several federal claims against Durham. If judgment is rendered against Durham on any of those claims or if Durham settles any of those claims, Durham's federal liability would count toward its SIR.

Thus Durham could easily exhaust its SIR under each of the three policies without paying anyone a dime in damages or settlement compensation pursuant to a state-law claim: both Durham's "defense costs" and its federal liability must be counted toward the SIR. And once the "'retained limit' has been exhausted by means of payments for judgments, settlements [or] defense costs," the insurers "will then pay damages in excess of [Durham's] 'retained limit' up to [the insurers'] Limits of Insurance." Everest 2007 Policy, Doc. No. 114-4, at page 12 of 37; *see also* ICSOP 2005 Policy, Doc. No. 114-2, at page 38 of 57 (Sec. III.C.) ("We will then be liable only for that portion of damages in excess of your retained limit up to our Limits of Insurance."); ICSOP 2006 Policy, Doc. No. 114-3, at page 41 of 58 (same). And once the SIR is exhausted and the insurance coverage kicks in, Durham's governmental immunity from liability for Plaintiffs' state-law claims vanishes.

Durham invokes this Court's decision in *Pettiford v. City of Greensboro*, 556 F.Supp.2d 512 (M.D.N.C. 2008), and urges the Court to deem it controlling here. *See* Durham Br. 9-14. But the contract in *Pettiford* did not provide that the retained limit could be exhausted by defense costs. Rather, as the Court repeatedly stressed, coverage under the *Pettiford* policy was triggered only by the city's payment of actual "damages" in the amount of the retained limit. *See, e.g.,* 556 F.Supp.2d at 529 (referring to "damages" three times). Durham's other principal authority is inapposite for the same reason. *See Magana v. Charlotte-Mecklenburg Bd. of Educ.*, 645 S.E.2d 91, 92-93 (N.C. Ct. App. 2007) (quoting policy's reference to "damages" multiple times as sole basis for exhausting retained limit). This case, therefore, is more like *Kephart v. Pendergraph*,

507 S.E.2d 915, 921 (N.C. Ct. App. 1998), where the North Carolina Court of Appeals flatly rejected the defendant's argument that a government entity could not exhaust its retained limit through expenditures for what the policy described as "claim expenses." *See also id.* at 922 (same).

Durham's argument is also built on a second misreading of the policies. The City argues that the SIR must be satisfied by bills it is "legally obligated to pay." Durham Br. 11. From there, it reasons that, because it cannot be "legally obligated to pay" damages on claims against which it has governmental immunity, such liabilities cannot be used to satisfy the SIR and thus trigger the waiver of immunity. Durham Br. 11. The City's position is obviously wrong for the reasons already stated: it gives the policies a circular reading and ignores the fact that "defense costs" and federal liabilities – from which it has no immunity – count toward the SIR limit. The City's position is also wrong because it is simply not the case that the policies count only legally obligated payments toward the SIR. The policies state that the insurer "shall pay . . . the ultimate net loss, in excess of the retained limit, that the insured becomes legally obligated to pay …." ICSOP 2005 Policy, Doc. No. 114-2, at page 26 of 57; ICSOP 2006 Policy, Doc. No. 114-3, at page 29 of 58; Everest 2007 Policy, Doc. No. 114-4, at page 4 of 37 (insurer "will pay on behalf of the insured, the 'ultimate net loss', in excess of the 'retained limit', that the insured becomes legally obligated to pay . . . ."). In quoting the ICSOP policies, the City omits the crucial comma after the phrase "retained limit," and in reading the Everest policy it ignores the comma. Without that comma, it appears that the phrase "that the insured becomes legally obligated to pay" modifies (restrictively) "retained limit," but with that comma it is patent that the phrase "that the insured becomes legally obligated to pay" modifies the "ultimate net loss" that the

10

insurer will pay.⁶

### III. ON THE PRESENT RECORD, IT WOULD BE PREMATURE TO GRANT PARTIAL SUMMARY JUDGMENT AGAINST PLAINTIFFS

On the face of the documents, then, it is clear that Durham has waived its governmental immunity for at least part of the liability it may incur pursuant to Plaintiffs' state-law claims. Durham's motion for partial summary judgment should therefore be denied. But if the Court is inclined to conclude that these policies do not effect a waiver of immunity or if the Court is inclined to find that the SIRs have not been and will not be satisfied, it would be premature to grant Durham's motion for partial summary judgment under the circumstances for several reasons. First, Durham's liability under Plaintiffs' federal claims has not yet been determined, and may not be finally determined for some time.

Second, there are several factual issues into which Plaintiffs would need further discovery in order to adequately support their opposition to Durham's motion. One such issue is the amount of Durham's defense costs. Durham is still incurring and will continue to incur costs defending this suit. The American International Group (AIG), which is listed on the two ICSOP policies as holding the copyright for those policy documents, is apparently the real party in

---

⁶ Even if Durham's understanding of the SIR were correct, it would be irrelevant to the extent the City has separately waived its governmental immunity against Plaintiffs' state-law claims. Notably, the City has separately waived its governmental immunity for liability up to $500,000 to cover medical expenses and certain other types of damages resulting from the City's negligent infliction of personal injury. *See* City of Durham, Resolution #9200: Resolution to Adopt a Policy to Waive Governmental Immunity in Limited Circumstances, ¶ 2 (Dec. 20, 2004) (Ex. B); *see also, e.g.*, Compl. ¶¶ 141-47, 168-79, 196-204, 217, 225-28, 284-85, 316-21, 357, 472-81, 562 (describing some injuries sustained by Plaintiffs). Moreover, there appears to be other insurance coverage besides what is provided for in this resolution and the three policies attached to the City's motion for summary judgment. *See* Durham City Council, Meeting Minutes (June 20, 2005) 14-15 (discussing Inter-local Risk Financing Fund) (Ex. C); City of Durham, Comprehensive Annual Financial Report for the Fiscal Year Ended June 30, 2007 at 5-6, 21, 23, 45, 49, 119, 142-43 (Dec. 24, 2007) (discussing Risk Retention Fund), *available at* http://www.durhamnc.gov/departments/finance/pdf/cafr_07.pdf. It is clear, therefore, that discovery is needed in order to determine the complete scope and extent of the City's insurance coverage as it relates to Plaintiffs' claims. *See* Aff. of David Lehn.

interest under those policies. According to a local newspaper, one of whose sources was a City attorney, the City has already generated more than $1.2 million in legal fees defending against this case and the two related Duke lacrosse cases (of which it has already paid over $700,000) and AIG is covering all the fees in excess of $500,000 – that is, in excess of the SIR under the ICSOP policies. *See* Ray Gronberg, "Lacrosse Suits so Far Cost City $729,350," *Herald-Sun* (Sep. 23, 2008) (Ex. D). This article, therefore, confirms that defense costs count toward the SIR (as Plaintiffs showed above and contrary to the City's position in its brief) and indicates that the SIR limit has already been reached. At a minimum, Durham's defense are presumably approaching the limit of the SIRs and will likely reach those limits in the course of this litigation.

Another issue into which Plaintiffs would need discovery is the extent of the City's relevant insurance coverage. As noted above in footnote 6, Plaintiffs on their own have located evidence suggesting insurance coverage beyond the coverage stated in the three policies attached to the affidavit of Darwin Laws in support of the City's motion for summary judgment. Those documents suggest that the City has not produced all documents relating to all potentially relevant insurance coverage. *See* Aff. of David Lehn.

Plaintiffs have had no opportunity yet to take discovery into the extent of the costs that Durham has already incurred defending this suit or into whether the three insurance policies offered by Durham represent the totality of its relevant coverage. *See* Aff. of David Lehn. Durham has refused to permit discovery, and the Court recently denied Plaintiffs' motion to compel Defendants to begin permitting discovery. *See* Order (Nov. 12, 2008) (Doc. No. 117). Insofar as Durham's motion for partial summary judgment hinges on insurance contracts that make Durham's defense costs a material question, Plaintiffs are entitled to discovery before the motion is resolved by this Court. *See Kephart v. Pendergraph*, 507 S.E.2d at 922 (denying

partial summary judgment for defendant county because "[t]he trial court was confronted with a genuine issue of material fact as to whether some portion of the SIR . . . might become 'exhausted' by 'claim expenses'"); *Bassett Seamless Guttering, Inc. v. Gutterguard, LLC*, No. 05-184, 2007 U.S. Dist. LEXIS 51002, at *7 (M.D.N.C. July 13, 2007) (Ex. E) (document requests and depositions necessary in order for party to be able to "adequately defend" against claim that "insurance coverage would not extend to this type of lawsuit").  Accordingly, pursuant to Rule 56(f), the Court should either deny Durham's motion for summary judgment or order a continuance to enable Plaintiffs to take the necessary discovery. *See* Aff. of David Lehn.

## CONCLUSION

Plaintiffs submit that the Court should deny this motion for partial summary judgment or, in the alternative, defer decision on this motion until after the Court's resolution of Durham's (and the other Defendants') pending motions to dismiss and until after Plaintiffs have been afforded an opportunity to take the necessary the discovery.


November 24, 2008

**THOMAS, FERGUSON
& MULLINS, L.L.P.**

/s/ William J. Thomas
William J. Thomas, II
(N.C. Bar # 9004)
119 East Main Street
Durham, NC  27701
Tel. (919) 682-5648
Email: thomas@tfmattorneys.com

Respectfully submitted,

**COOPER & KIRK, PLLC**

/s/ Charles J. Cooper
Charles J. Cooper
Brian S. Koukoutchos
David H. Thompson
David Lehn
1523 New Hampshire Avenue, NW
Washington, DC  20036
Tel. (202) 220-9600
Email: ccooper@cooperkirk.com
Email: dthompson@cooperkirk.com
Email: bkoukoutchos@cooperkirk.com
Email: dlehn@cooperkirk.com

# CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2008, I electronically filed the foregoing Notice of Special Appearance with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel:

**TROUTMAN SANDERS LLP**
Patricia P. Kerner
N.C. State Bar No. 13005
Hannah Gray Styron
D. Martin Warf
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
Phone: (919) 835-4117
Fax: (919) 829-8714
Email: tricia.kerner@troutmansanders.com
Email: hannah.styron@troutmansanders.com
Email: martin.warf@troutmansanders.com
*Counsel for Defendants Steven Chalmers, Patrick Baker, Beverly Council, Ronald Hodge, Jeff Lamb, Stephen Mihaich, Michael Ripberger, and Lee Russ*

**FAISON & GILLESPIE**
Reginald B. Gillespie, Jr.
N.C. State Bar No. 10895
5517 Durham Chapel Hill Boulevard
Suite 2000
Durham, North Carolina 27727-1729
Phone: (919) 489-9001
Fax: (919) 489-5774
Email: rgillespie@faison-gillespie.com
*Counsel for Defendants City of Durham, North Carolina and Steven Chalmers*

**STEPTOE & JOHNSON LLP**
Roger E. Warin*
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Fax: (202) 429-3902
Email: rwarin@steptoe.com
*(Motion for Special Appearance to be filed)
*Counsel for Defendant City of Durham, North Carolina*

**ELLIS & WINTERS LLP**
J. Donald Cowan, Jr.
N.C. State Bar No. 0968
Dixie T. Wells
N.C. State Bar No. 26816
P.O. Box 21927 [27420]
100 N. Greene Street, Suite 102
Greensboro, North Carolina 27401
Phone: (336) 217-4197
Fax: (336) 217-4198
Email: don.cowan@elliswinters.com
Email: dixie.wells@elliswinters.com


**WILMER CUTLER PICKERING HALE AND DORR LLP**
Jamie Gorelick*
D.C. Bar No. 101370
Jennifer M. O'Connor
William F. Lee
Paul R.Q. Wolfson
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6500
Facsimile: (202) 663-6363
Email: Jamie.gorelick@wilmerhale.com
Email: Jennifer.oconnor@wilmerhale.com
Email: William.lee@wilmerhale.com
Email: Paul.Wolfson@wilmerhale.com
*Counsel for Defendants Duke University, Aaron Graves, Robert Dean, Richard H. Brodhead, Peter*

*Lange, Tallman Trask, III, John Burness, Larry Moneta, Victor J. Dzau, M.D., Allison Halton, Kemel Dawkins, Suzanne Wasiolek, Matthew Drummond,*

*Counsel for Duke University Health Systems, Inc., Theresa Arico, and Tara Levicy*
(\*motion for special appearance filed)

**YATES, McLAMB &WEYHER, L.L.P**
Dan Johnson McLamb
N.C. State Bar No. 6272
T. Carlton Younger, III
Shirley Marring Pruitt
POB 2889
RALEIGH, NC 27602-2889
919-835-0900
Fax: 919-835-0910
Email: dmclamb@ymwlaw.com
Email: cyounger@ymwlaw.com
Email: spruitt@ymwlaw.com
*Counsel for Duke University Health Systems, Inc., Theresa Arico, and Tara Levicy*


**POYNER & SPRUILL LLP**
Edwin M. Speas, Jr.
N.C. State Bar No. 4112
P.O. Box 1801
Raleigh, North Carolina 27602-1801
Phone: (919) 783-6400
Fax: (919) 783-1075
Email: espeas@poynerspruill.com
*Counsel for Defendant Mark Gottlieb*

**KENNON, CRAVER, BELO, CRAIG & MCKEE, PLLC**
Joel M. Craig
N.C. State Bar No. 9179
Henry W. Sappenfield
P.O. Box 51579
4011 University Drive, Suite 300
Durham, North Carolina 27717-1579
Phone: (919) 490-0500

Fax: (919) 490-0873
Email: jcraig@kennoncraver.com
Email: hsappenfield@kennoncraver.com
*Counsel for Defendant Benjamin Himan*

**MAXWELL FREEMAN & BOWMAN, P.A.**
James B. Maxwell
N.C. State Bar No. 2933
P.O. Box 52396
Raleigh, North Carolina 27717-2396
Phone: (919) 493-6464
Fax: (919) 493-1218
Email: jmaxwell@mfbpa.com
*Counsel for Defendant David Addison*

**PINTO COATES KYRE & BROWN, PLLC**
Kenneth Kyre Jr. (N.C. Bar # 7848)
Paul D. Coates (N.C. Bar # 9753)
P.O. Box 4848
Greensboro, NC 27404
Email: kkyre@pckb-law.com
Email: pcoates@pckb-law.com
*Counsel for J. Wesley Covington*
Linwood Wilson, *Pro Se*
6910 Innesbrook Way
Bahama, NC 27503-9700
Email: linwoodw@aol.com


/s/ David Lehn