# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| EDWARD CARRINGTON, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DUKE UNIVERSITY, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 1:08-CV-00119 <br> ) <br> ) <br> ) <br> ) <br> ) |

## AFFIDAVIT OF ARCHE L. McADOO

ARCHE L. McADOO, appearing before the undersigned notary public and being first duly sworn, deposes and says the following:

1. I am over eighteen years of age, suffer from no disability, and am competent to testify to the matters set forth herein, all of which are based upon personal knowledge and/or records of the City of Durham, North Carolina (the "City"), except for those matters stated to be based upon information and belief.

2. I am employed by the City as Assistant Finance Director/Treasurer. I have held this position for more than 4½ years.

3. Among other responsibilities, I oversee the City's Division of Risk Management. The Director of Risk Management, Mr. Darwin Laws, reports to me.

4. Although it is correct and a matter of public record that the Durham City Council (the "Council"), on December 20, 2004, adopted Resolution #9200, entitled "RESOLUTION TO ADOPT A POLICY TO WAIVE GOVERNMENTAL IMMUNITY

IN LIMITED CIRCUMSTANCES," and Resolution #9201, entitled "RESOLUTION TO ESTABLISH A FUNDED RESERVE TO PAY CLAIMS WHERE GOVERNMENTAL IMMUNITY HAS BEEN WAIVED," it is also correct and a matter of public record that both Resolution #9200 and Resolution #9201 were repealed by the Council on June 18, 2007, by Resolution #9468, entitled "A RESOLUTION TO ADOPT A UNIFORM TORT CLAIMS SETTLEMENT POLICY."

5. A true and certified copy of Resolution #9468 is attached hereto as Exhibit 1.

6. The reserve established by repealed Resolution #9201 was comprised solely of City funds, and in particular was comprised solely of general tax revenues of the City and water and sewer enterprise funds of the City.

7. The funds comprising the reserve established by repealed Resolution #9201 were segregated into a special, separate account, and while Resolution #9200 and Resolution #9201 were in effect, such funds could be used solely for, and were used solely for, the payment of claims with respect to which the City waived governmental immunity in accordance with Resolution #9200.

8. Since the repeal of Resolution #9200 and Resolution #9201, no funds in the separate, segregated account comprising the reserve established by repealed Resolution #9201 have been used to pay any tort claim asserted against the City after June 18, 2007.

9. At present, the balance of the funds in the separate, segregated account comprising the reserve established by repealed Resolution #9201 is $190,053.49. This amount has not changed since the end of the City's 2007 fiscal year on June 30, 2007.

10. Because Resolution #9200 and Resolution #9201 have been repealed, the funds in the separate, segregated account comprising the reserve established by repealed Resolution #9201 cannot be spent for any purpose. Instead, these funds will remain "fenced off" in this separate, segregated account until they are reallocated by or with the approval of the Council for expenditure for some other purpose.

11. In addition, the City reports two Internal Service Funds, for accounting, budgetary, and fiscal management purposes. One of these Internal Service Funds is designated as a "Risk Retention Fund."

12. Internal Service Funds are commonly are used for financial reporting with respect to various activities, including central garages and motor pools, duplicating and printing services, information systems, purchasing, and central stores. Using an internal service fund as a means of reporting a government's risk financing activities is consistent with generally accepted accounting principles applicable to governmental units in the United States of America.

13. The Internal Service Fund designated as "Risk Retention Fund" is simply a financial reporting tool that provides a source of funds for payment of the City's uninsured legal liabilities, including risks such as workers' compensation, automobiles, general operations (including sewer backup claims) and professional activities. Claim settlements, actuarial expenses, legal fees, administrative expenses and other professional services required for claim disposition are paid from this fund.

14. The Internal Service Fund designated as "Risk Retention Fund" has been used as a financial reporting tool, in the fashion described in the preceding paragraph, for

several years, and was in use prior to the adoption of Resolution #9200 and Resolution #9201 on December 20, 2004.

15. As such, the creation and use of the Internal Service Fund designated as "Risk Retention Fund" as described in the preceding paragraphs were not only prior to the adoption of Resolution #9200 and Resolution #9201, such creation and use were and are independent of and unrelated to the adoption of Resolution #9200 and Resolution #9201.

16. The Internal Service Fund designated as "Risk Retention Fund" is comprised solely of City funds, and in particular is comprised of general tax revenues of the City and water and sewer enterprise funds of the City.

This the 10th day of December, 2008.

_____
ARCHE L. McADOO

Sworn to and subscribed before me
this the 10th day of December, 2008.

_____
Notary Public
My commission expires: 11-01-09

(Official Stamp or Seal)

8838-34\P\015 Aff A McAdoo