# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# CIVIL ACTION NO. 1:08-CV-119

| | |
|---|---|
| **EDWARD CARRINGTON**, *et al.*, ) | |
| ) | **REPLY BRIEF IN SUPPORT** |
| **Plaintiffs,** ) | **OF DEFENDANT** |
| ) | **CITY OF DURHAM,** |
| **v.** ) | **NORTH CAROLINA'S** |
| ) | **MOTION FOR PARTIAL** |
| **DUKE UNIVERSITY**, *et al.*, ) | **SUMMARY JUDGMENT** |
| ) | **(GOVERNMENTAL** |
| **Defendants.** ) | **IMMUNITY**) |
| ) | |

Plaintiffs' arguments against summary judgment are based on a scrivener's error in the ICOP policies, a typo in the City's opening brief, and a fundamental misunderstanding of the City's insurance policies. But Plaintiffs have failed to raise any genuine issue of material fact concerning the City's governmental immunity. Summary judgment therefore should be granted to the City on all of Plaintiffs' state-law claims.

## I.    The Plain Language of the Governmental Immunity Endorsement Preserves the City's Immunity from State-Law Tort Claims.[1]

Plaintiffs' lead by reminding the Court that the Everest policy, which is effective April 1, 2007 through April 1, 2008, does not contain a Governmental Immunity Endorsement. Opp. 5. That is true, but Plaintiffs fail to note that the Everest policy at most covers only the last eleven days even mentioned in Plaintiffs' complaint (April 1-

---

[1] Plaintiffs purport to incorporate by reference the arguments made by the *Evans v. Durham* Plaintiffs in opposition to the City's motion for partial summary judgment in that case. Opp. 4 n.5. To the extent the Court deems such incorporation to be appropriate, the City therefore incorporates by reference its reply to the *Evans* opposition.

11, 2007), since charges against the three indicted lacrosse players (none of whom are plaintiffs in this case) were dismissed on April 11, 2007. This was long after the wrongful acts alleged in the Complaint took place.

Plaintiffs next emphasize that the governmental immunity endorsement in the ICOP policies references the wrong statute, as it cites the governmental immunity statute that applies to counties instead of the one that applies to cities. Opp. 5. This is also true, but the mistaken citation is a mere scrivener's error and thus does nothing to undermine the efficacy of the endorsement. Moreover, there is no requirement that a policy cite any particular statute in order to preserve governmental immunity. Rather, whether an insurance policy waives a city's immunity depends entirely on whether it covers the particular claims. The endorsement here plainly *preserves* the City's immunity by expressly limiting coverage "only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable." *See* ICOP 2005-06 Policy, End. No. 9 (Doc. # 79-2); ICOP 2006-07 Policy, End. No. 10. (Doc. # 79-3).

Nor can Plaintiffs invoke the doctrine of *contra proferentem*, which calls for construing any ambiguity in a policy in favor of coverage and against the insurer. Opp. 5-6. The endorsement is not ambiguous, despite the erroneous (but irrelevant) citation. Moreover, the *contra proferentem* doctrine applies only when an insured, who is presumed to be the less sophisticated party to the bargain, disputes the scope of coverage available against its insurer, who is presumed to have drafted the policy. It does not apply where a third party seeks to construe language in a manner that favors itself, and in a way that contravenes the intent of the actual parties to the contract.

Finally, Plaintiffs' misreading of the endorsement language (borrowed from the *Evans* plaintiffs) is thoroughly refuted in the City's Reply Brief in the *Evans* case (at pages 1-4). In short, the "subject to" language in the endorsement does not, as Plaintiffs would have it, negate the whole purpose of the endorsement, which is to preserve the City's governmental immunity. Rather, that language simply makes clear that coverage for claims for which the City is *not* immune is still subject to the limits stated in the policy.[2] It is for this reason that the North Carolina Court of Appeals found that the exact same endorsement language "unambiguously" preserved the defendant's governmental immunity in *Patrick v. Wake County Department of Human Services*, 655 S.E.2d 920, 924 (N.C. Ct. App. 2008)—a decision Plaintiffs conspicuously ignore.[3]

## II. None of the City's Policies Provides Coverage for State-Law Tort Claims, With or Without the Missing Comma.

Plaintiffs next contend that the City's argument for why none of the three policies' insurance coverage has been triggered is "circular," citing *Kephart ex rel. Tutwiler v. Pendergraph*, 507 S.E.2d 915 (N.C. Ct. App. 1998). Opp. 7. But this Court has already

---

[2] The relevant endorsement language states: "Accordingly, subject to this Policy and the Limits of Liability shown on the Declarations, this policy provides coverage only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable . . . ." *See* 2005-06 Policy, End. No. 9 (Doc. # 114-2); 2006-07 Policy, End. No. 10. (Doc. # 114-3).

[3] In addition, contrary to Plaintiffs argument (Opp. 6), the City here does not rely solely on language in the endorsement stating that the policy is not intended to waive its governmental immunity. It also relies on the explicit statement in the endorsement limiting coverage "only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable." *See Patrick*, 655 S.E.2d at 924 (finding that this language "unambiguously" preserved governmental immunity).

rejected the same argument in *Pettiford v. City of Greensboro*, 556 F. Supp. 2d 512 (M.D.N.C. 2008), where the Court distinguished *Kephart* on the ground that the policies in the two cases contained very different language. *See id.* at 527. The policy in *Kephart* provided coverage "'when damages together with 'claim expenses' exceed the Self Insured Retention' . . . regardless of whether the County is required to pay out SIR funds . . . ." *Kephart*, 507 S.E.2d at 921 (citation omitted). In contrast, the policy in *Pettiford*, provided that coverage was not triggered "unless and until the City has a legal obligation to pay . . . ." 556 F. Supp. 2d at 529. Accordingly, this Court in *Pettiford* found that the city had not waived its governmental immunity. Because Durham's policies are very similar to the one in *Pettiford*,[4] this Court should reach the same conclusion here.

Plaintiffs try to distinguish *Pettiford* by claiming that "the contract in *Pettiford* did not provide that the retained limit could be exhausted by defense costs," whereas the retained limits in this case can be so exhausted. Opp. 9. But, in fact, the policy in *Pettiford* also provided that defense costs would erode the city's retained limit. *See* DeLorenze Aff., Ex. 1 at Endorsement 5. Yet this did not affect this Court's analysis. Rather, the key to that decision was that insurance coverage there, as here, was not triggered under the policy unless the city had a "legal obligation" to pay. And since it

---

[4] *See* the ICOP policies (Docs. # 114-2 & 114-3) at Section I.A.2 ("We shall pay on behalf of the insured, the 'ultimate net loss', in excess of the 'retained limit', that the insured becomes *legally obligated to pay* to compensate others for loss . . . .") (emphasis added) and the Everest policy (Doc. # 114-4) at Section 1.A. (1-4) ("We shall pay you, or on your behalf, the ultimate net loss, in excess of the retained limit, that the insured becomes *legally obligated to pay* to compensate others for loss . . . .") (emphases in original deleted, and emphasis added).

had no obligation to pay *either* the amount of the retained limit or the ultimate net loss on state law claims because of the existence of governmental immunity, coverage was not triggered. *Pettiford*, 556 F. Supp. 2d at 529 (noting that the policy "disclaim[s] any right of indemnification until (1) the damages exceed a self-insured retention amount . . . ; (2) the insured has a *legal obligation* to pay those damages; and (3) the insured actually pays those damages to the claimant") (emphasis added). That the City's retained limits may be exhausted by defense costs or a judgment against it on federal claims is thus irrelevant.

Finally, Plaintiffs place great weight on the fact that the City mistakenly omitted a comma in quoting the pertinent language of the ICOP policies in its opening brief. *See* Opp. 10. (Plaintiffs neglect to mention that the City correctly includes the comma in its quotation of the Everest policy, which makes clear that the omission of the comma in the parenthetical quoting the ICOP policies was a simple typographical error. *See* City's Opening Br. 11). Plaintiffs contend that "with that comma it is patent that the phrase 'that the insured becomes legally obligated to pay' modifies the 'ultimate net loss' that the insurer will pay" and not the "retained limit." Opp. 10-11. But this hardly helps Plaintiffs' argument. Under Plaintiffs' own reading, the ICOP and Everest policies provide coverage only for the City's ultimate net loss *that it is legally obligated to pay*. But for the reasons stated by this Court in *Pettiford*, 556 F. Supp. 2d at 529, the City can never be legally obligated to pay on claims for which it has immunity. Accordingly, even

under Plaintiffs' own argument, the insurance coverage for the ultimate net loss on state law claims is never triggered here.[5]

Accordingly, the presence of the comma makes no difference. The City's insurance coverage for its "ultimate net loss" is triggered only when the City is "legally obligated" to pay something—either the amount of its retained limit, or the ultimate net loss, or both. But, as this Court recognized in *Pettiford*, the City cannot be legally obligated to pay any amount for Plaintiffs' state law claims because it has governmental immunity. Coverage therefore cannot be triggered on the policies at issue here.

## III. This Case Is Ripe for Summary Judgment on the State-Law Claims.

In a last-ditch attempt to stave off summary judgment, Plaintiffs argue that summary judgment would be premature until after Plaintiffs' federal claims are resolved. Opp. 11. But the resolution of Plaintiffs' *federal* claims is irrelevant to the question of whether the City is immune from liability on the *state-law* claims.

Plaintiffs next argue that discovery is needed on two factual issues before deciding the summary judgment motion: the amount of the City's defense costs and "the extent of the City's relevant insurance coverage." Opp. 11-12. But the amount of the City's

---

[5] Notably, the policy in *Pettiford* contained *no* commas in the applicable provision, which stated the city would be indemnified for "'ultimate net loss in excess of the retained limit which the Insured becomes legally obligated to pay.'" *Pettiford*, 556 F. Supp. 2d at 528 (citation omitted). With no comma following "ultimate net loss" *or* "retained limit," it is ambiguous whether "legally obligated to pay" modifies "ultimate net loss" or "retained limit." Although the better reading of that provision is that "legally obligated to pay" modifies "ultimate net loss," the issue is irrelevant because in either case, coverage would not have been triggered since the City of Greensboro had no legal obligation to pay either the ultimate net loss or the retained limit as a result of its governmental immunity.

defense costs is completely irrelevant to the purely legal question of whether the City has waived its governmental immunity, for the reasons discussed above. The City has never disputed that defense costs erode its retained limits. But this erosion has no bearing on the immunity question. Even if the City's retained limits had been fully exhausted, coverage on the insurance policies would still not be triggered because the City would not be "legally obligated to pay" Plaintiffs either the amount of the retained limit or the ultimate net loss because of its governmental immunity.[6]

In addition, "the extent of the City's relevant insurance coverage" is already known. Plaintiffs suggest that the City is hiding some other form of insurance. *See* Opp. 11 n.6, 12. But the City's insurance coverage is a matter of public record, as are all documents related to the City's transaction of public business. *See* N.C. Gen. Stat.

---

[6] That one of the City's insurers has begun to pay defense costs is also irrelevant. An insurer's duty to defend is triggered solely by the four corners of the complaint. "The [North Carolina] Supreme Court has established that if review of the pleadings in an underlying action gives rise even to 'a mere possibility' that the insured's potential liability is covered by the insurance policy, then the carrier has a duty to defend." *Crandell v. Am. Home Assurance Co.*, 644 S.E.2d 604, 605 (N.C. Ct. App. 2007) (citation omitted) *review denied* 361 N.C. 691, 654 S.E.2d 250 (2007); *see also St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co.*, 724 F. Supp. 1173, 1176 (M.D.N.C. 1989), *aff'd*, 919 F.2d 235 (4th Cir. 1990). This duty is triggered even where a portion of the alleged claims would not be covered by the policy, or where the claims turn out to be untrue. *See State Auto Prop. & Cas. Ins. Co. v. Travelers Indem. Co.*, 343 F.3d 249, 255 (4th Cir. 2003) ("[W]here a complaint alleges multiple claims and injuries, some of which are covered and some of which are not, an insurer is obligated to defend its insured against all claims made in the lawsuit."). In contrast, an insurer's duty to indemnify is limited to claims actually covered by the policy. *See, e.g., Wake Stone Corp. v. Aetna Cas. & Sur. Co.*, 995 F. Supp. 612, 615 (E.D.N.C. 1998); *Stanback v. Westchester Fire Ins. Co.*, 314 S.E.2d 775, 778 (N.C. Ct. App. 1984). Defense costs, by their very nature, do not constitute amounts that an insured is "legally obligated to pay," as they are not claims, judgments or settlements. Thus, the fact that an insurer's duty to defend is triggered says nothing about whether its indemnity obligation has been triggered.

§ 132-1(a). Moreover, the City's Risk Manager, Darwin Laws, has attested to the scope of insurance coverage potentially available to the City in this case. *See* Laws Aff.

None of the documents Plaintiffs refer to contradicts the sworn testimony of the City's Risk Manager, who has already identified the three potentially applicable insurance policies. The "Resolution to Adopt a Policy to Waive Governmental Immunity in Limited Circumstances" and the related "Resolution to Establish a Funded Reserve to Pay Claims Where Governmental Immunity Has Been Waived" cited by Plaintiffs (Opp. 11 n.6) were both repealed on June 18, 2007. *See* the accompanying McAdoo Aff. & Ex. 1 thereto.[7] In any event, neither resolution would have waived the City's immunity from Plaintiffs' claims because the types of damages at issue in this case were expressly not covered. *See* Opp. Ex. B ¶¶ 2 & 5 (limiting the categories of damages for which immunity would be waived).

Plaintiffs also cite City Council meeting minutes discussing the Interlocal Risk Financing Fund of North Carolina ("IRFFNC"). But the City has never contracted with IRFFNC for its risk pool services. Rather, the City has retained IRFFNC to perform claims adjustment services. Claims adjustment services do not involve any transfer of risk and are not a form of insurance or a risk pool of any kind. *See generally Blackwelder v. City of Winston-Salem*, 420 S.E.2d 432, 435 (N.C. 1992) ("One characteristic of an insurance contract is the shifting of a risk from the insured to the

---

[7] As Exhibit 1 to McAdoo's Affidavit makes clear, the repeal of these Resolutions was effective immediately and applied "to all claims pending on that date as well as claims that arise thereafter." *See* McAdoo Aff., Ex. 1, ¶¶ 8-9.

insurer. If no risk is shifted, there is not an insurance contract."). The City has simply delegated its claims handling duties to a third-party administrator. This does not waive its immunity.

Finally, the "Risk Retention Fund" cited by Plaintiffs is an internal financial reporting tool used by the city to pay uninsured legal liabilities out of City funds. It is not an insurance policy or risk pool of any sort. *See* McAdoo Affidavit at ¶¶ 11-16.

At the end of the day, "[t]he meaning of language used in an insurance contract is a question of law for the Court . . . ." *Daniel v. City of Morganton*, 479 S.E.2d 263, 267 (N.C. Ct. App. 1997) (granting summary judgment on ground that school board did not waive defense of government immunity by purchasing insurance) (citations omitted). Where an insurance contract is plain and unambiguous, courts do not permit a review of extrinsic evidence to interpret it. *See Metric Constructors, Inc. v. Industrial Risk Insurers*, 401 S.E.2d 126 (N.C. Ct. App. 1991), *aff'd*, 330 N.C. 439, 410 S.E.2d 392 (1991). Accordingly, no discovery is necessary for this Court to interpret the City's insurance policy and determine whether the City has waived its governmental immunity. *See, e.g.*, *Patrick*, 655 S.E.2d at 924.

Moreover, delaying resolution of the immunity issue until after discovery would defeat one of the principal purposes of governmental immunity, which is to protect governmental entities not only from the cost of civil judgments, but also to spare them the burden and distraction of discovery and trial proceedings. *See Smith v. Phillips*, 451 S.E.2d 309, 311 (N.C. Ct. App. 1994) ("[T]o force a defendant to proceed with a trial from which he should be immune would vitiate the doctrine of sovereign immunity.")

(citation omitted); *cf.*, *Fares v. I.N.S.*, 29 F. Supp. 2d 259, 265 (W.D.N.C.1998) (denying plaintiffs' request for discovery on qualified immunity in order to "prevent subjecting those individuals to unnecessary and burdensome discovery or trial proceedings").

**IV.     Conclusion.**

For all of the reasons discussed herein and in the City's Motion for Partial Summary Judgment (Governmental Immunity), summary judgment should be granted for the City on Plaintiffs' state-law claims.

This the 12th day of December, 2008.

| **FAISON & GILLESPIE** | **STEPTOE & JOHNSON LLP** |
|---|---|
| By: /s/ Reginald B. Gillespie, Jr. | By: /s/ Roger E. Warin |
| Reginald B. Gillespie, Jr. | Roger E. Warin* |
| North Carolina State Bar No. 10895 | Michael A. Vatis* |
| 5517 Chapel Hill Boulevard, Suite 2000 | Matthew J. Herrington* |
| Post Office Box. 51729 | John P. Nolan* |
| Durham, North Carolina 27717-1729 | Leah M. Quadrino* |
| Telephone: (919) 489-9001 | Steptoe & Johnson LLP |
| Fax: (919) 489-5774 | 1330 Connecticut Avenue, NW |
| E-Mail: rgillespie@faison-gillespie.com | Washington, DC 20036 |
| | Telephone: (202) 429-3000 |
| | Fax: (202) 429-3902 |
| | E-Mail: rwarin@steptoe.com |
| | *Motion for Special Appearance to be filed |

*Attorneys for Defendant City of Durham, North Carolina*

CERTIFICATE OF ELECTRONIC FILING AND SERVICE

The undersigned hereby certifies that, pursuant to Rule 5 of the Federal Rules of Civil Procedure and LR5.3 and LR5.4, MDNC, the foregoing pleading, motion, affidavit, notice, or other document/paper has been electronically filed with the Clerk of Court using the CM/ECF system, which system will automatically generate and send a Notice of Electronic Filing (NEF) to the undersigned filing user and registered users of record, and that the Court's electronic records show that each party to this action is represented by at least one registered user of record (or that the party is a registered user of record), to each of whom the NEF will be transmitted.

This the 12th day of December, 2008.

FAISON & GILLESPIE

By: /s/ Reginald B. Gillespie, Jr.
Reginald B. Gillespie, Jr.
North Carolina State Bar No. 10895