# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CIVIL ACTION NUMBER 1:08-CV-00119

| | |
|---|---|
| EDWARD CARRINGTON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DUKE UNIVERSITY, et al., <br><br> Defendants. | Joint Supplemental Brief of Duke University Defendants and Duke SANE Defendants Regarding *Ashcroft v. Iqbal* |

Pursuant to this Court's order of June 4, 2009, the Duke University Defendants and Duke SANE Defendants jointly submit this Supplemental Brief addressing the impact of the Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), on the resolution of the pending Motions to Dismiss.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court addressed the standard for determining whether the allegations in a federal civil complaint are sufficient to survive a motion to dismiss. In its recent *Iqbal* decision, the Court clarified and elaborated on this standard, explaining that factual allegations offered in support of a civil claim (a) may not be merely conclusory and (b) must establish a plausible basis for liability. Under *Iqbal*, many of Plaintiffs' claims are subject to dismissal because they do not plausibly allege non-conclusory facts sufficient to support them. Although Plaintiffs accuse a vast array of Duke officials and employees of

colluding with each other and with government investigators to fabricate evidence against them, suppress exculpatory evidence, and violate their constitutional rights, they have not alleged facts that would plausibly support such grave accusations.

**I.** ***Iqbal*** **Requires a Federal Civil Claim to Be Supported by Plausible, Non-Conclusory Factual Allegations**

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In *Twombly*, the Supreme Court held that, to survive a motion to dismiss, a complaint must allege sufficiently specific facts to "raise a right to relief above the speculative level," 550 U.S. at 555, such that the "claim … is plausible on its face," *id.* at 570. In *Iqbal*, the Court further clarified this pleading standard and held that plausible, non-conclusory factual allegations are required for a cause of action to survive a motion to dismiss[1]:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice…. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss…. [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

129 S. Ct. at 1949-1950 (citations omitted); *see also id.* at 1949 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

---

[1] *Iqbal* also made clear that the pleading requirements set forth in *Twombly* apply to all federal civil actions, not just antitrust cases. 129 S. Ct. at 1953.

line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

Thus, *Iqbal* confirms that not all allegations in a complaint are entitled to the presumption of truth for motion-to-dismiss purposes and sets forth a two-step test for determining whether a cause of action is sufficiently pled under Rule 8. First, mere conclusory statements or "[t]hreadbare recitals of the elements of a cause of action," *id.*, are not entitled to be presumed true. Therefore, if a claim only makes conclusory allegations or simply recites essential elements of a cause of action without supporting facts, it cannot survive a motion to dismiss. Second, courts should also examine the factual allegations in the complaint to determine whether they establish "more than the *mere possibility* of misconduct." *Id.* at 1950 (emphasis added). If the factual allegations are "merely consistent with," but do not plausibly indicate, unlawful action, then they are inadequate under Rule 8. *Id.* at 1949.[2]

---

[2] In *Twombly* and *Iqbal*, the Supreme Court applied these principles to require dismissal of the complaints. In *Twombly*, a civil antitrust action, the plaintiffs pled that the defendants "ha[d] entered into a contract, combination or conspiracy to prevent competitive entry … and ha[d] agreed not to compete with one another.'" 550 U.S. at 551. The Court held that the plaintiffs' allegation of an illegal agreement was a "legal conclusion and was therefore not entitled to the assumption of truth." *Id.* at 555. The Court also ruled that the plaintiffs' allegation of a "parallel course of conduct … to prevent competition" could not survive a motion to dismiss because mere "parallel conduct does not suggest conspiracy," and "could just as well be [legal] independent action." *Id.* at 557. In *Iqbal*, the plaintiff, a Pakistani national, alleged that Attorney General John Ashcroft and FBI Director Robert Mueller subjected him to harsh conditions of confinement in the wake of the September 11, 2001 attacks "solely on account of [his] religion, race, and/or national origin and for no legitimate penological

## II. *Iqbal* Mandates the Dismissal of Many of Plaintiffs' Claims Under Rule 8

Many of Plaintiffs' causes of action against the Duke defendants are subject to dismissal under *Iqbal*. Plaintiffs have failed to allege facts in support of those counts that (a) do more than recite elements of the causes of action and (b) plausibly suggest unlawful conduct on the part of the Duke defendants. *Iqbal* makes clear that Duke University and its employees should not be subjected to the costly burden of discovery based on Plaintiffs' conclusory and farfetched allegations.

### A. Plaintiffs' § 1983 Claims Against Duke Should Be Dismissed (Counts 20, 21, 22)

Plaintiffs' § 1983 claims against Duke and the individual Duke defendants rest fundamentally on the allegation that numerous Duke officials and employees engaged in a conspiracy, with each other and with the police and the prosecutor, to deprive the Plaintiffs of their constitutional rights. However, Plaintiffs allege only in conclusory terms that Duke employees acted under color of state law and "in concert with" Durham

---

interest." 129 S. Ct. at 1951. According to the Court, "[t]hese bare assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim" and were not entitled to be presumed true. *Id.* The plaintiff also alleged that the FBI, with the approval of Ashcroft and Mueller, subjected Muslims including Mr. Iqbal to harsh detention conditions. The Court concluded that although those allegations were "consistent with petitioners' purposefully designating detainees 'of high interest' because of their race, religion, or national origin," they were also consistent with other, lawful purposes for the detention policy—to detain people with links to the attack, which would naturally affect Arab Muslims disproportionately—and therefore did "not plausibly establish" illegal discrimination. *Id.* at 1951.

officials. (Compl. ¶¶ 622, 630, 636, 638.) These allegations are exactly the kind of implausible assertions that are subject to dismissal under *Iqbal*.[3]

### 1. Plaintiffs' "Malicious Investigation" Claim Fails to Allege a Plausible Conspiracy

Count 22 alleges that every single Duke defendant—including two nurses, a DukeCard office administrator, the head of Duke's hospital, and Duke's Vice-President for Student Affairs—actively conspired with Durham police to subject the players to a "malicious investigation." (Compl. ¶ 636.) Setting aside the fact that there is no Fourteenth Amendment cause of action for "malicious investigation" (Duke SANE Br., Docket #65, at 42-44), this Count is alleged only in the most conclusory terms—indeed, it does not even specify which Duke defendants took which actions in support of the alleged conspiracy (*see* Compl. ¶ 638)—and is therefore not entitled to the presumption of truth under *Iqbal*. As explained in Duke's prior briefing (Duke SANE Br., Docket #65, at 45), Plaintiffs allege that certain Duke defendants interacted with Durham officials at various points during the crisis, but they provide only conclusory assertions there were any agreements or meeting of the minds to take actions that would violate Plaintiffs' constitutional rights.

---

[3] *See, e.g.*, *Atherton v. District of Columbia Office of Mayor*, No. 07-5195, 2009 WL 1515373, at *13 (D.C. Cir., June 2, 2009) (rejecting § 1983 claim because complaint's "spare facts and allegations are not enough to survive a motion to dismiss under *Iqbal* and *Twombly*"); *Rounds v. Woodford*, No. CIV S-05-0555, 2009 WL 1657462, at *2-*4 (E.D. Cal., June 12, 2009) (same).

Insofar as Plaintiffs' allegations in Count 22 against Duke are not completely conclusory, they are still inadequate under *Iqbal*, because they are far more plausibly explained as having legitimate justifications rather than being rooted in a massive unlawful conspiracy. *See Iqbal*, 129 S. Ct. at 1949-1950. Plaintiffs assert, for example, that Duke employees "willfully provid[ed] false information to investigators," "ma[de], acquiesce[ed], and ratif[ied] false public statements maligning and defaming plaintiffs," and "suppress[ed] and discredit[ed] exculpatory evidence." (Compl. ¶ 638.) But the complaint does not allege facts that plausibly establish that Duke defendants ever reached an agreement with government officials to take such actions; the only assertions that there was such a conspiracy are totally conclusory. (*E.g.* Compl. ¶ 423 ("On information and belief, Duke police and other Duke officials conspired with the Durham Investigators and Durham Supervisors to suppress exculpatory information[.]").) The more plausible explanation is that Duke employees provided information to Durham investigators as any private citizen might do, and made public statements about the case as might be expected of Duke officials in the midst of a public controversy involving Duke students. However offensive Plaintiffs may have found those actions, they do not indicate that Duke was conspiring with Durham to violate their constitutional rights. Count 22 should therefore be dismissed as to all Duke University Defendants and Duke SANE Defendants.

### 2. Plaintiffs' Fourth Amendment Claim Against Duke Regarding DNA Samples Fails to Allege a Plausible Conspiracy

Count 21 alleges that Duke SANE Nurse Tara Levicy conspired with Durham police officers to obtain an allegedly unconstitutional non-testimonial identification order (NTID) for DNA samples from the lacrosse players. (Compl. ¶ 629-630.) Plaintiffs' conclusory allegation that Ms. Levicy was "acting under color of state law" and pursuant to "an agreement and meeting of the minds" with Durham officials are merely "[t]hreadbare recitals of the elements" of a § 1983 claim and are not entitled to be presumed true. *Iqbal*, 129 S. Ct. at 1949.

Further, the complaint's narrative description of Ms. Levicy's involvement in Durham's NTID application shows only (1) that she gave Durham police information about the examination, and (2) that the police then used this information in support of their application. (Compl. ¶¶ 150-154, 185-189.) The fact that Ms. Levicy, a young nurse, provided information to the Durham police does not plausibly establish that she was conspiring with the police to violate Plaintiffs' rights. Rather, the more plausible explanation is that she gave information to the police about the examination of Mangum in response to a police request, just as anyone with highly pertinent information about an alleged violent crime might have done. At most, her provision of information to the Durham police is "merely consistent with" the possibility of an unlawful agreement with

the police, *see Iqbal*, 129 S. Ct. at 1949, and does not reach the level of plausibility required to survive dismissal.[4]

### 3. Plaintiffs' Fourth Amendment Claim Against Duke Regarding DukeCard Information Fails to Allege a Plausible Conspiracy

Count 20 alleges that Duke employees violated the lacrosse players' Fourth Amendment rights when they gave information about the players' movements and purchases, as recorded by their electronic DukeCards, to Durham police. (Compl. ¶¶ 621-622.) These allegations are insufficient under *Iqbal*. The assertion that Duke employees provided information to the Durham police does not plausibly establish that Duke and Durham unlawfully conspired or engaged in concerted action. Giving information to police does not plausibly establish conspiracy with the police, nor does it convert a private person into a state actor. (*See* Duke SANE Br., Docket #65, at 34-35.)

Plaintiffs' alleged facts are, at most, "merely consistent with" a conspiracy rather than plausibly establishing one. *Iqbal*, 129 S. Ct. at 1949. The more plausible explanation is that Duke's employees were private actors giving information to Durham officers who were conducting an investigation. Therefore, under *Iqbal*, the complaint's

---

[4] Under *Iqbal*, Count 21 should also be dismissed against Theresa Arico because it alleges only that she "ratified and condoned" Levicy's actions. (Compl. ¶ 633.) Because the complaint does not allege that Arico personally conspired with (or even communicated with) Durham police, this amounts to a claim for supervisory liability. The *Iqbal* decision established that a plaintiff in a § 1983 action cannot hold supervising employees vicariously liable for the wrongful actions of their subordinates. *Iqbal*, 129 S. Ct. at 1949 ("In a section 1983 suit[,] where masters do not answer for the tort of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her misconduct.").

narrative, coupled with its conclusory assertion that Duke officials acted under color of law and in concert with Durham (Compl. ¶ 622), is not sufficient to establish the liability of Duke's employees under § 1983. Count 20 should therefore be dismissed as to all Duke defendants.

### B. Plaintiffs' Emotional Distress Claims Must Be Dismissed Because they Do Not Plausibly Allege Severe Emotional Distress (Counts 1, 2, 6, 7)

Under North Carolina law, an essential element of the cause of action of both intentional and negligent infliction of emotional distress is "severe emotional distress," which courts have defined as a "severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Waddle v. Sparks,* 331 N.C. 73, 83, 414 S.E.2d 22, 27 (1992); *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). Each of Plaintiffs' causes of action for intentional or negligent infliction of emotional distress against Duke defendants alleges simply that Plaintiffs have suffered "mental anguish and severe emotional distress." (Compl. ¶¶ 488, 495, 523, 529.) These are nothing more than "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 129 S. Ct. at 1949. They are therefore not entitled to the presumption of truth for motion-to-dismiss purposes. *See, e.g.*, *Oshop v. Tenn. Dept. of Children's Servs.*, No. 3:09-CV-0063, 2009 WL 1651479, at *9 (M.D. Tenn., June 10, 2009) (dismissing claim for negligent infliction of emotional distress because allegation of "infliction of severe emotional harm" and similar unspecified harms were simply "[t]hreadbare recitals of the elements

of a cause of action" and could not state a claim under *Iqbal* (citations omitted));
*DiPietro v. N.J. Family Support Payment Center*, No. 08-4761, 2009 WL 1635568, at *8 (D.N.J., June 10, 2009) (same).

The only part of Plaintiffs' complaint that even hints at their mental or emotional condition is a quotation of a professor discussing "the physiological toll of waking up every day with a pit in your stomach," followed by an allegation that this "summarized the ordeal that all the lacrosse players were still experiencing." (Compl. ¶ 474.) This colloquial description of anxiety does not come close to describing a "severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Waddle,* 331 N.C. at 83, 414 S.E.2d at 27. At the most, "waking up every morning with a pit in your stomach" is merely consistent with a diagnosable mental condition, but it is also consistent with someone who is experiencing "garden variety anxiety or concern," which is not enough to state a claim for severe emotional distress. *Pacheco v. Rogers and Breece, Inc.,* 157 N.C. App. 445, 449, 579 S.E.2d 505, 508 (2003). And allegations that are "merely consistent with" conditions giving rise to liability are insufficient to survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949.[5] Further, neither this passage nor any other part of the complaint

---

5   The inadequacy of this allegation is also highlighted by its unlikely suggestion that the exact same emotional condition was afflicting *every single one* of the player-plaintiffs. There are more than three dozen such plaintiffs, and their complaint does not distinguish in any way among them even though each plaintiff's individualized mental condition is a critical element in determining whether he has suffered from emotional

describes what kinds of mental conditions the nine *parent*-plaintiffs, as opposed to the players, were suffering.

Because Plaintiffs have failed to plead in plausible and non-conclusory terms that they have suffered severe emotional distress, Counts 1, 2, 6, and 7 should be dismissed.

## III.  Conclusion

For the reasons articulated herein, Counts 1, 2, 6, 7, 20, 21, and 22 against the Duke University Defendants and Duke SANE Defendants should be dismissed for failure to state a claim on which relief may be granted.[6] These reasons are in addition to those set forth in the Duke University Defendants and Duke SANE Defendants' prior briefs in support of their Motions to Dismiss, which explain why *all* claims against these defendants should be dismissed.

---

distress severe enough to warrant a finding of liability.

[6]  At this stage, Plaintiffs should not be allowed to amend their complaint to attempt to correct their pleading deficiencies. *Iqbal* did not create new pleading standards; it confirmed the pleading standards of Rule 8 that the Supreme Court had already articulated in *Twombly*, which was handed down well before Plaintiffs' complaint was filed. Furthermore, Plaintiffs' complaint is already 224 pages long, with 747 distinct allegations. It is unlikely that Plaintiffs are capable of inserting any more factual material that would cure the deficiencies in their claims. To allow them to amend their complaint, after extensive briefing has already been completed, would be a waste of both the parties' and the court's resources.

Respectfully submitted, this 24th day of June, 2009.

/s/ Jamie S. Gorelick

Jamie S. Gorelick
District of Columbia Bar No. 101370
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, D.C. 20006
Telephone: (202) 663-6500
Facsimile: (202) 663-6363
Email: jamie.gorelick@wilmerhale.com

*Counsel for Duke University Defendants and Duke SANE Defendants*

/s/ J. Donald Cowan, Jr.

J. Donald Cowan, Jr.
N.C. State Bar No. 0968
Ellis & Winters LLP
333 N. Greene Street, Suite 200
Greensboro, N.C. 27401
Telephone: (336) 217-4193
Facsimile: (336) 217-4198
Email: don.cowan@elliswinters.com

*Counsel for Duke University Defendants*

/s/ Dan J. McLamb

Dan J. McLamb
N.C. State Bar No. 6272
Yates, McLamb & Weyher, LLP
421 Fayetteville Street, Suite 1200
Raleigh, N.C. 27601
Telephone: (919) 835-0900
Facsimile: (919) 835-0910
Email: dmclamb@ymwlaw.com

*Counsel for Duke SANE Defendants*

# CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2009, I electronically filed the foregoing Joint Supplemental Brief of Duke University Defendants and Duke SANE Defendants Regarding *Ashcroft v. Iqbal* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

*Counsel for the Plaintiffs*
William J. Thomas, II
Email: thomas@tfmattorneys.com

Charles J. Cooper
Email: ccooper@cooperkirk.com

David H. Thompson
Email: dthompson@cooperkirk.com

David M. Lehn
Email: dlehn@cooperkirk.com

*Counsel for J. Wesley Covington*
Kenneth Kyre, Jr.
Email: kkyre@pckb-law.com

*Counsel for City of Durham*
Reginald B. Gillespie, Jr.
Email: rgillespie@faison-gillespie.com

*Counsel for Mark Gottlieb*
Eric P. Stevens
Email: estevens@poyners.com

David William Long
Email: dwlong@poynerspruill.com

*Counsel for Benjamin Himan*
Henry W. Sappenfield

Email: hsappenfield@kennoncraver.com

Joel Miller Craig
Email: jcraig@kennoncraver.com

*Counsel for Patrick Baker, Steven Chalmers, Ronald Hodge, Lee Russ, Stephen Mihaich, Beverly Council, Jeff Lamb, Michael Ripberger*
Patricia P. Kerner
Email: tricia.kerner@troutmansanders.com

D. Martin Warf
Email: martin.warf@troutmansanders.com

Hannah Gray Styron
Email: hannah.styron@troutmansanders.com

*Counsel for David Addison*
James B. Maxwell
Email: jmaxwell@mfbpa.com

*Linwood Wilson, pro se*
Email: redacted

This 24th day of June 2009.

/s/ Jamie S. Gorelick
Jamie S. Gorelick

Attorney for Duke University, Duke University Health System, Inc., Richard Brodhead, Peter Lange, Larry Moneta, John Burness, Tallman Trask, Suzanne Wasiolek, Matthew Drummond, Aaron Graves, Robert Dean, Tara Levicy, Theresa Arico, Kate Hendricks, Victor Dzau