IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

EDWARD CARRINGTON, *et al,*    )
    )
    Plaintiffs,    )
    )
v.    )    No. 1:08-CV-119
    )
DUKE UNIVERSITY, *et al,*    )
    )
    Defendants.    )

_____

**SUPPLEMENTAL BRIEF OF DEFENDANTS BAKER, CHALMERS, COUNCIL, HODGE, LAMB, MIHAICH, RIPBERGER, RUSS and ADDISON**
_____

## INTRODUCTION

It is now settled beyond legitimate debate that a plaintiff must do more than merely provide a recitation of the essential elements of a claim to satisfy the pleading requirements of Rule 8(a)(1) and to survive a motion to dismiss under Rule 12(b)(6).[1] *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). A well-pleaded complaint must contain some actual facts to support the claims for relief against each defendant. *Iqbal,* 129 S. Ct. at 1944, 1946. The *Iqbal* Court further confirmed "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits,

---

[1] Defendants, for the sake of brevity and in reliance on this Court's notice that the various Motions to Dismiss in all three related cases (*Evans v. City of Durham, et al* (1:07-CV-739), *McFadyen v. Duke University, et al,* (1:07-CV-953), and this case) will be decided simultaneously, will provide only a brief analysis of the Supreme Court's decision in *Ashcroft v. Iqbal,* herein, and refer the Court to the expanded discussion of *Ashcroft v. Iqbal* found in their Supplemental Brief in *Evans v. City of Durham.*

a plaintiff must plead that each Governmental-official defendant, *through the official's own individual actions, has violated the Constitution*." *Iqbal,* 129 S. Ct. at 1948 (emphasis added).

The Supreme Court has provided a "plausibility standard" to be applied to a complaint challenged by a motion to dismiss. The two step approach described by the *Iqbal* Court allows a court considering a motion to dismiss to disregard conclusory allegations in a complaint because they are not entitled to the assumption of the truth. *Iqbal*, 129 S. Ct. at 1950. After a court identifies and disregards the conclusory allegations, it then reviews the factual allegations in a complaint, taken as true, to "state a claim for relief that is plausible on its fact." *Id.* at 1949. When this two step approach is applied to the allegations against Defendants, it is clear that their conclusory nature and the absence of factual specificity require dismissal.

## ARGUMENT

### I.     "We begin our analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1951.

With regard to Defendants, Plaintiffs' Complaint consists primarily of allegations "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. Defendants Baker, Chalmers, Hodge, Russ, Mihaich, Council, Lamb, Ripberger, and Addison are placed into a group labeled as "Durham Supervisors." (Compl. ¶ 79.) Once collected in this manner, Plaintiffs then allege that the "Durham Supervisors" "were aware of," "were informed," "knew or should have known," "approved," "ratified," "participated in," "condoned," "agreed to," "had knowledge of,"

acted with "deliberate indifference to," and "disregard for" certain conduct of others. (*Id.* ¶¶ 110, 160, 167, 181-82, 195, 212, 218, 220, 269, 276, 295, 308, 312-13, 353, 377, 385, 404, 423, 429, 514, 521, 538, 547, 625, 633, 641, 647, 670, 672, 674, 676-79, 682, 685, 687-88, 690, 692, 697-99, 701-02, 706-08, 712, 714, 716, 718-19, 722, 727, 733, 740, 743-46.) The Complaint alleges no facts to support the conclusions that Defendants, or any one of them in particular, "knew of," "approved," or "participated in" the conduct described in these Paragraphs.

These allegations should not be considered as factual by this Court on the pending motions under *Iqbal, Twombly,* and Rule 8 for two reasons. First, nearly all of the allegations are merely a "formulaic recitation" of some of the elements of a supervisory liability claim under 42 U.S.C. §1983,[2] or other claims asserted against these or other Defendants in this action, such as the *Monell* claim against the City of Durham, the federal conspiracy claims, or the state law claims. Such allegations, similar to those in *Iqbal* that the "petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on

---

[2] The elements of this claim are "'(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices[]'; and (3) that there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.'" *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994).

account of [his] religion, race, and/or national origin'" are "conclusory and not entitled to be presumed true." 129 S. Ct. at 1951; *see also* Attachment I, *Iqbal* Compl. ¶ 96.

Second, Plaintiffs' technique of labeling each Defendant as one of the "Durham Supervisors," and ascribing knowledge or actions to that entire group, is inadequate to "plead that *each* Government-official defendant, through the official's *own individual* actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948 (emphasis added). Similar allegations were rejected by the *Iqbal* Court as conclusory. *Id.* at 1951. Finding only the allegations that named the petitioner's individually and described their individual conduct, to be well-pled, the Court disregarded sweeping allegations that all of the defendants, including the petitioners, had engaged in unlawful conduct. *Id.*; *see also* Attachment I, ¶¶ 96, 195, 198, 199, 232, 235, 238, 247, 250, 269.

The allegations cited above are merely conclusory, and are not entitled to the presumption of truth. They should not be considered by the Court on Defendants' Motions to Dismiss.

II. **"We next consider the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 129 S. Ct. at 1951.**

After the conclusory allegations are identified, Plaintiffs' Complaint in this case states few, if any, factual allegations against Defendants. Because Plaintiffs are seeking to impose individual liability on each of these Defendants, Defendants will address the claims alleged against them individually.

### A.       Patrick Baker

The Complaint contains three well-plead factual allegations concerning Defendant Patrick Baker.  (Compl. ¶¶ 70, 306, 417.)  He is alleged to have been the City Manager for the City of Durham, (*id.* ¶ 70), to have made comments on a report written by a Duke University police officer indicating that it was based on hearsay, (*id.* ¶ 417), and to have attended a meeting on March 28 or 29, 2006, along with other "officials," some named and some unnamed, where the investigators reported on the facts learned in the investigation.  (*Id.* ¶ 306.)

Baker can discern no claim against him based upon his alleged comments about the Duke officer's police report in the Complaint, and cannot conceive any claim that this remark could support.  Plaintiffs make no mention of this allegation in their opposition to Defendants' motion to dismiss.  Because its context in the Complaint, this allegation appears to have been included only as factual background.

The lone assertion that Baker attended a meeting where the investigation was discussed is insufficient to support any claim against him.  Perhaps Plaintiffs hope that the Court will infer that the continuation of the investigation after May 29 is consistent with their conclusion that each defendant wrongfully agreed to "prolong" a "malicious" investigation.[3]  (*See* Compl. ¶¶ 636, 645, 650, 724.)  Given other possible, and more likely explanations for continuing the investigation, this inference is not plausible.

---

[3] For the reasons argued in Defendants' prior briefs in support of their Motions to Dismiss, Plaintiffs' allegations that they should not have been investigated do not support

On the one hand, Plaintiffs allege that the attendees at the meeting were informed by the investigators that Mangum's accounts of the attack were inconsistent, that the SBI lab results had come back negative, and that Mangum had failed to identify any attackers in two photo arrays. (Compl. ¶ 306.) On the other hand, Plaintiffs also allege that by the time the meeting took place, the same investigators had been told by a nurse from Duke Medical Center "that the examination of Mangum had revealed physical evidence of 'blunt force trauma,' and that the blunt force trauma was 'consistent with the victim's statement' alleging a forcible gang rape by three men," (*id.* ¶ 185), that "the evidence corroborated Mangum's claim of both vaginal and anal rape," (*id.* ¶ 186), and that "Mangum 'had edema and tenderness to palpation both anally and vaginally.'" (*Id.*) While Plaintiffs may argue that it is possible that those present at the meeting "knew" that the allegations of rape were false, it is equally possible, and indeed, more likely, based on the facts alleged, that they were informed that the medical evidence corroborated that a rape had in fact occurred, although investigators had not yet been able to identify a perpetrator. In light of this evidence, continuation after that meeting was consistent with legitimate investigatory purposes.

When faced with similar allegations against Attorney General Ashcroft, the Supreme Court likewise rejected as plausible the inference that he "must have" engaged in unconstitutional conduct. *Iqbal*, 129 S. Ct. at 1951-52. The only "well-pleaded" factual allegation against Ashcroft was located in Paragraph 69 of that Complaint: "The

_____

a claim for a violation of their constitutional rights or for intentional infliction of

policy of holding post-September-11th detainees in highly restrictive conditions of confinement until they were "cleared" by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions after September 11, 2001." *Id.* at 1951; *see also* Attachment I, ¶ 69. The Supreme Court held that this allegation did not plausibly state a claim for discrimination:

> Accepting the truth of that allegation, the complaint does not show, or even intimate, that petitioners purposefully housed detainees in the ADMAX SHU due to their race, religion, or national origin. All it plausibly suggests is that the Nation's top law enforcement officers, in the aftermath of a devastating terrorist attack, sought to keep suspected terrorists in the most secure conditions available until the suspects could be cleared of terrorist activity. Respondent does not argue, nor can he, that such a motive would violate petitioners' constitutional obligations. He would need to allege more by way of factual content to "nudg[e]" his claim of purposeful discrimination "across the line from conceivable to plausible."

*Iqbal*, 129 S. Ct. at 1952 (citations omitted).

Similarly, Plaintiffs need some factual content to support their contention that everyone at the May 29 meeting engaged in wrongful conduct by allowing the investigation to continue. This is particularly true here, where the investigators possessed evidence, which Plaintiffs specifically allege gave the accusations credibility, (Compl. ¶ 210), that a rape had occurred.

Additionally, Plaintiffs fail to allege any specific wrongful conduct attributable to Baker based on knowledge he allegedly gained at that meeting. While Plaintiffs summarily allege "on information and belief" that a group consisting of "the Durham Investigators, the Durham Supervisors, and/or other Durham City officials" "agreed to

---

emotional distress under North Carolina law.

expedite the identifications and arrests of Duke lacrosse players," they fail to allege any facts plausibly showing that Baker, or any other particular person, directed the arrest of anyone. Further, Plaintiffs allege no facts showing that Baker, or anyone else, suggested at the meeting that someone should be arrested for the rape, unless the investigation led to a proper identification and probable cause for the arrest. Finally, Plaintiffs have failed to allege facts showing that any one of them was identified or arrested as a result of this meeting. Having failed to plausibly allege facts supporting their claim of supervisory liability under section 1983, it should be dismissed. The allegation of Baker's attendance at this meeting is insufficient to support liability for the claims alleged in the Complaint. His motion to dismiss should be allowed.

### B. Steven Chalmers

Two facts are alleged concerning Defendant Steven Chalmers. (Compl. ¶¶ 71, 306.) He is alleged to have been the Chief of Police of the Durham Police Department, (*id.* ¶ 71), and to have attended the meeting on March 28 or 29, 2006, along with Baker and numerous others. (*Id.* ¶ 306.) No additional facts are alleged against him. For the same reasons stated above with regard to Baker, these allegations fail to state a plausible claim against Chalmers. His motion to dismiss should be allowed.

### C. Beverly Council

Plaintiffs' Complaint contains no factual allegations against Defendant Beverly Council other than the statement of her rank with the Durham Police Department. (Compl. ¶ 75.) Clearly, and as argued in Defendants' initial memorandum in support of

her motion to dismiss, this single allegation is insufficient to hold Council liable for any claim alleged in the Complaint.  Her motion to dismiss should be allowed.

### D.    Ronald Hodge

Plaintiffs allege that Defendant Ronald Hodge was the Deputy Chief of Police for the Durham Police Department.  (*Id* ¶ 72.)  After identifying his rank, the next factual allegation mentioning him appears in Count Twenty-Six of the Complaint, the *Monell* claim seeking recovery from the City of Durham.[4]  There, Plaintiffs allege that Hodge made a single public statement: "that the Durham Police had a strong case against members of the Duke lacrosse team."  (*Id.* ¶ 693.)

While this factual allegation is repeated in Count Twenty-Seven, a supervisory liability claim arising under 42 U.S.C. §1983, it is included as factual background, rather that as a specific basis for liability against Hodge.  (Compl. ¶ 717.)  In that claim, Plaintiffs allege that the "Durham Supervisors" "knew or should have known" about "a series of inflammatory statements" made by Addison about the case, "but demonstrated reckless disregard or deliberate indifference by failing to take prompt and meaningful preventative or remedial action."  (*Id.* ¶¶ 715-16.)  Apparently in an effort to imply that the "supervisors" approved of Hodge's statements, Plaintiffs allege "[t]o the contrary, defendant Hodge publicly stated that the Durham Police had a strong case against

---

[4] In their Opposition to Defendants' Motion to Dismiss, Plaintiffs conceded that the claims against these Defendants in Count 26, which were asserted against them in their official capacity only, should be dismissed.  (Doc. # 93, pp. 2-3, 22.)

members of the Duke lacrosse team when he knew or should have known that such a statement was false." (*Id.* ¶ 717.)

This remark alone is insufficient to factually support the elements of a supervisory liability claim specifically against Hodge. While Plaintiffs have conclusorily alleged that the "Durham Supervisors," generally, knew of prior similar statements by Addison, (Compl.¶ 713), they have alleged no facts suggesting that Hodge in particular had such knowledge, or that he had any reason to know that Addison's conduct posed "a pervasive and unreasonable risk" of constitutional injury. Further, if Plaintiffs intended to link Hodge's comment to Addison by employing the phrase, "to the contrary," this attempt fails in the absence of any actual facts to suggest that his remark was a "response" to anything that Addison said. It is more likely that his comment was wholly unrelated to statements made by Addison in connection with his duties for Durham Crimestoppers. "Because vicarious liability is inapplicable to . . . §1983 suits," Plaintiffs were required to "plead that *each* Government-official defendant," including Hodge, "*through the official's own individual actions*, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948 (emphasis added). Because Plaintiffs fail to plead facts showing that Hodge, personally engaged in conduct that violated the Constitution, the claims against him should be dismissed.

Plaintiffs have not alleged claims arising out of this statement elsewhere in the Complaint. Unlike the plaintiffs in the *Evans* and *McFadyen* actions, Plaintiffs have not attempted to allege a claim for "false public statements" arising under 42 U.S.C. §1983

based upon that remark. Those claims are alleged to arise from statements attributed to Addison and Nifong. (Compl. ¶ 656.) Further, Plaintiffs have not relied on this statement in their claim for intentional infliction of emotional distress.[5]

Plaintiffs' Complaint lacks factual content to plausibly state any claim against Defendant Hodge. His motion to dismiss should be allowed.

### E. **Jeff Lamb**

Defendant Jeff Lamb is identified as the Commander of the District Two Uniform Patrol of the Durham Police Department. (Compl. ¶ 76.) Plaintiffs allege that Lamb "instructed Gottlieb and Himan that they should take direction from Nifong during the investigation, but that they should also report regularly to Durham police senior staff regarding the investigation." (*Id.* ¶¶ 222, 668.) No other facts are alleged about Lamb.

Plaintiffs allege this act as a basis for supervisory liability against the "Durham Supervisors" under Section 1983. (Compl. ¶ 698.) This factual allegation, without substantially more, cannot support this claim against Lamb, or anyone else included in the list of "Durham Supervisors." While Plaintiffs allege that "it was unprecedented for a district attorney to take play such an active role of a police investigation," (*id.* ¶ 220), they have not, and cannot, allege that a direction to work in conjunction with a prosecutor showed an indifference to a risk of constitutional injury. Indeed, police officers are immune from liability for taking direction from a prosecutor. *See Rhodes v. Smithers,*

---

[5] Hodge has not been alleged to have made a statement "condemning the plaintiffs for committing rape and hiding behind a conspiracy of silence" which is one basis alleged in support of this claim. (Compl. ¶ 724.)

939 F. Supp. 1256, 1274 (S.D. W. Va. 1995), *aff'd* 91 F.3d 132 (4th Cir. 1996). Further, although Plaintiffs allege that Nifong was running for election and that "it was clear" he would be able to exploit the "high-profile" case for his personal political gain, (Compl. ¶ 220), there are no facts alleged that plausibly suggest that Lamb, or anyone else, had any reason to believe that the involvement of Nifong, the District Attorney appointed to serve by the Governor, and with the broad Constitutional grant of authority and discretion to determine what cases to prosecute and what charges to bring against a particular defendant, *see, e.g.*, *State v. Ward*, 354 N.C. 231, 243, 555 S.E.2d 251, 260 (2001), would pose a substantial risk of unconstitutional injury.

While Plaintiffs may contend that it was possible that Lamb anticipated that Nifong would misuse the case to his own ends, this conclusion is not plausible. Plaintiffs have failed to allege factual content showing that Lamb, thorough his own individual actions, violated the Constitution. *See Iqbal,* 129 S. Ct. at 1948. Therefore, Lamb's motion to dismiss should be allowed.

F.     **Michael Ripberger**

Plaintiffs' Complaint contains no factual allegations against Defendant Michael Ripberger other than the statement of his rank with the Durham Police Department. (Compl. ¶ 75.) This single allegation is insufficient to hold Ripberger liable for any claim asserted in this Complaint. His motion to dismiss should be allowed.

### G.    Lee Russ

As with Council and Ripberger, Plaintiffs' Complaint contains no factual allegations against Defendant Lee Russ other than that he was a Lieutenant with the Durham Police Department. (Compl. ¶ 75.) This allegation is insufficient to state any claim against Russ. His motion to dismiss should be allowed

### H.    Stephen Mihaich

Again, Plaintiffs' only allegation concerning Defendant Stephen Mihaich is that he served as Commander of Investigative Services for the Durham Police Department. (Compl. ¶ 75.) Plaintiffs have made no effort to allege factual content to support any claim against him. Mihaich's motion to dismiss should be allowed.

### J.    David Addison

The Complaint alleges that Defendant David Addison was a Corporal employed by the Durham Police Department. (Compl. ¶¶ 78.) Addison is also alleged to have served as "official spokesman for the Durham Police Department," (*id.* ¶ 78, 711, 715), and as "coordinator of Durham Crimestoppers." (*Id.* ¶ 692, 711, 713, 715.)

The remaining factual allegations against Addison relate to alleged public statements he made concerning the investigation of the allegation of rape, (Compl. ¶¶ 274, 283, 655-56, 690-92, 715), and are focused on Count 25 of the Complaint – Plaintiffs' claim for false public statements in violation of section 1983.[6] Plaintiffs allege

---

[6] Plaintiffs include Addison in the list of the "Durham Supervisors." (Compl. ¶ 79.) Unlike the others in that group, however, there is no allegation in the Complaint that Addison served in a supervisory or policymaking role for either the City of Durham or

generally that Addison made false statements to the news media, (*id.* ¶ 248), and specifically, that on March 24, 2006, he told the Durham Herald-Sun that there was "really, really strong physical evidence of rape." (*Id.* ¶ 274.) Plaintiffs also allege that a poster Plaintiffs label as a "Vigilante Poster," was distributed by Duke faculty, students, and employees, contained a quote attributed to Addison that stated, "We're not saying that all 46 were involved. But we do know that some of the players inside that house on that evening knew what transpired and we need them to come forward." (*Id.* ¶ 283.)

Based on these allegations, Plaintiffs attempt to impose liability against Addison for "false public statements" made about Plaintiffs' lack of cooperation in the investigation and in the description of the criminal activity that had taken place. (*Id.* ¶¶ 690, 692, 715.) In support of their claims, Plaintiffs allege that these public statements "were intended to inflame the community against the plaintiffs," (*id.* ¶ 658), and that "as a result of these false public statements, plaintiffs continued to be subjected to a malicious investigation." (*Id.* ¶ 660.)

As in *Iqbal,* in determining whether these allegations plausibly state a claim, the Court must consider them in context. 129 S. Ct. at 1950. Plaintiffs allege that any statements Addison made concerning the investigation were made in his capacity as coordinator of Durham Crimestoppers. (Compl. ¶¶ 692, 711, 713, 715.) At the time Addison made the alleged March 24, 2006, statement that there was strong physical evidence of rape, the investigators had been told by a nurse from Duke Medical Center

the Durham Police Department. In fact, Addison did not serve in a supervisory or

"that the examination of Mangum had revealed physical evidence of 'blunt force trauma,' and that the blunt force trauma was 'consistent with the victim's statement' alleging a forcible gang rape by three men." (*Id.* ¶ 185.) Indeed, Plaintiffs specifically allege that this statement was based upon the evidence provided by the nurse. (*Id.* ¶ 274.)

As Addison has previously argued to this Court, these statements do give rise to a §1983 claim, because at most, Plaintiffs have merely alleged reputational damage, without the necessary constitutional "plus." (Doc. # 59, pp. 9-13.) As suggested by Addison in his initial brief, it appears that Plaintiffs are attempting to create a new claim by asserting that the alleged false statements "were intended to inflame the community against the plaintiffs" in order to deprive them of rights, where the actual deprivation never occurred. (*Id.* (citing Compl. ¶ 658).) To the extent that a claim for an unsuccessful attempt to violate Constitutional rights could exist, Plaintiffs' Complaint fails to plausibly allege it.

While Plaintiffs conclusorily allege that Addison intended to inflame the community and compromise any subsequent proceedings, (Compl. ¶ 658), this inference from his statements is not plausible. On the facts alleged, the more likely explanation for Addison's statements is that, as the coordinator of Durham Crimestoppers, he was attempting to encourage individuals with information, including members of the Duke lacrosse team, to contact the Durham Police Department with information about the alleged crime.

---

policymaking position.

When faced with similar suggestions of nefarious intent, the Supreme Court

observed:

> The September 11 attacks were perpetrated by 19 Arab Muslim hijackers
> who counted themselves members in good standing of al Qaeda, an Islamic
> fundamentalist group. Al Qaeda was headed by another Arab Muslim --
> Osama bin Laden -- and composed in large part of his Arab Muslim
> disciples. It should come as no surprise that a legitimate policy directing
> law enforcement to arrest and detain individuals because of their suspected
> link to the attacks would produce a disparate, incidental impact on Arab
> Muslims, even though the purpose of the policy was to target neither Arabs
> nor Muslims. On the facts respondent alleges the arrests Mueller oversaw
> were likely lawful and justified by his nondiscriminatory intent to detain
> aliens who were illegally present in the United States and who had potential
> connections to those who committed terrorist acts. As between that
> "obvious alternative explanation" for the arrests, *Twombly, supra*, at 567,
> 127 S. Ct. 1955, 167 L. Ed. 2d 929, and the purposeful, invidious
> discrimination respondent asks us to infer, discrimination is not a plausible
> conclusion.

129 S. Ct. at 1951-52.

All that Plaintiffs' Complaint plausibly suggests is that Addison was doing his job

as coordinator of Durham Crimestoppers – to attempt to encourage witnesses to come

forward.  His motion to dismiss should be allowed.

## CONCLUSION

Plaintiffs have failed to allege sufficient factual content to nudge their individual

liability claims against Defendants Baker, Chalmers, Council, Hodge, Lamb, Ripberger,

Russ, Mihaich, and Addison from the conceivable to the plausible.  For this reason, as

well as the reasons previously argued to the Court, the claims against these Defendants

should be dismissed.

Respectfully submitted, this the 24th day of June, 2009.

TROUTMAN SANDERS LLP

By: /s/ Patricia P. Kerner
    Patricia P. Kerner
N.C. State Bar No. 13005
    Hannah G. Styron
N.C. State Bar No. 28824
    D. Martin Warf
N.C. State Bar No. 32982
*Attorneys for Defendants Baker, Chalmers,*
*Council, Hodge, Mihaich, Lamb, Ripberger,*
*and Russ*
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
Telephone: (919) 835-4100
Facsimile: (919) 829-8714
tricia.kerner@troutmansanders.com
hannah.styron@troutmansanders.com
martin.warf@troutmansanders.com

MAXWELL, FREEMAN & BOWMAN, P.A.

By:/s/ James B. Maxwell
    James B. Maxwell
N.C. State Bar No. 2933
*Attorneys for David Addison*
P.O. Box 52396
Durham, North Carolina 27717
Telephone: (919) 493-6464
Facsimile:  (919) 493-1218
jmaxwell@mfbpa.com

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

EDWARD CARRINGTON, *et al,*     )
                                       )
       Plaintiffs,         )
                                       )
v.                                 )     No. 1:08-CV-119
                                       )
DUKE UNIVERSITY, *et al,*       )
                                       )
       Defendants.    )
_____

**CERTIFICATE OF SERVICE**
_____

I hereby certify that the foregoing was electronically filed with the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to the

following:

| | |
|---|---|
| Charles J. Cooper | William J. Thomas, II |
| David M. Lehn | THOMAS FERGUSON & MULLINS, LLP |
| David H. Thompson | 119 E. Main Street |
| COOPER & KIRK, PLLC | Durham, NC 27701 |
| 1523 New Hampshire Ave., N.W. | Thomas@tfmattorneys.com |
| Washington, D.C. 20036 | *Attorneys for Plaintiffs* |
| ccooper@cooperkirk.com | |
| dlehn@cooperkirk.com | |
| dthompson@cooperkirk.com | |
| *Attorneys for Plaintiffs* | |

James D. Cowan, Jr.
Dixie T. Wells
ELLIS & WINTERS, LLP
333 N. Greene Street, Suite 200
Greensboro, NC 27401
don.cowan@elliswinters.com
dixie.wells@elliswinters.com
*Attorneys for Defendants Duke
University, Duke University Health
System, Inc., Richard Brodhead,
Peter Lange, Larry Moneta,
John Burness, Tallman Trask,
Suzanne Wasiolek, Matthew
Drummond, Aaron Graves,
Robert Dean, Tara Levicy, Theresa
Arico, Kate Hendricks, Victor Dzau*

Jamie S. Gorelick
Jennifer M. O'Connor
Paul R.Q. Wolfson
William F. Lee
WILMER, CUTLER, PICKERING, HALES
   AND DORR, LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
jamie.gorelick@wilmerhale.com
jennifer.oconnor@wilmerhale.com
paul.wolfson@wilmerhale.com
william.lee@wilmerhale.com
*Attorneys for Defendants Duke
University, Duke University Health System,
Inc., Richard Brodhead,
Peter Lange, Larry Moneta,
John Burness, Tallman Trask,
Suzanne Wasiolek, Matthew
Drummond, Aaron Graves,
Robert Dean, Tara Levicy, Theresa
Arico, Kate Hendricks, Victor Dzau*

Dan J. McLamb
Shirley M. Pruitt
T. Carlton Younger, III
YATES, MCLAMB & WEYHER, LLP
P.O. Box 2889
Raleigh, NC 27602-2889
dmclamb@ymwlaw.com
spruitt@ymwlaw.com
cyounger@ymwlaw.com
*Attorneys for Defendants Duke
University Health Systems, Inc.,
Tara Levicy, and Theresa Arico*

Robert A. Saar
Nicholas J. Sanservino, Jr.
OGLETREE DEAKINS NASH SMOAK &
STEWART, PC
2301 Sugar Bush Rd., Suite 600
Raleigh, NC 27612
*Attorneys for DNA Security*

David W. Long
Eric P. Stevens
POYNER & SPRUILL, LLP
Post Office Box 1801
Raleigh, NC 27602-1801
*Attorneys for Defendant Gottlieb*

James A. Roberts, III
LEWIS & ROBERTS, PLLC
1305 Navaho Drive, Suite 400
Raleigh, NC 27605
*Attorneys for Brian Meehan*

James B. Maxwell
MAXWELL, FREEMAN & BOWMAN, P.A.
Post Office Box 52396
Durham, NC 27717
*Attorneys for Defendant Addison*

Reginald B. Gillespie, Jr.
FAISON & GILLESPIE
Post Office Box 51729
Durham, NC 27717
rgillespie@faison-gillespie.com
*Attorneys for Defendant City of Durham*

Kenneth Kyre, Jr.
PINTO COATES KYRE & BROWN, PLLC
POB 4848
Greensboro, NC 27404
kkyre@pckb-law.com
*Attorneys for J. Wesley Covington*

Joel M. Craig
Henry W. Sappenfield
KENNON, CRAVER, BELO, CRAIG & MCKEE,
PLLC
Post Office Box 51579
P.O. Box 51579
Durham, NC 27717-1579
*Attorneys for Defendant Himan*

Linwood Wilson
6910 Innesbrook Way
Bahama, NC 27503-9700
*Pro Se*

I further certify that a copy of the foregoing was served today upon each of the

following non CM/ECF participants by United States mail, postage prepaid, addressed as

follows:

Roger E. Warrin
Michael A. Vatis
John P. Nolan
Leah M. Quadrino
STEPTOE & JOHNSON, LLP
1330 Connecticut Ave. N.W.
Washington, DC 20036
*Attorneys for Defendant City of Durham*

This the 24th day of June, 2009.

Respectfully submitted,

By: /s/ Patrica P. Kerner
Patricia P. Kerner

N.C. State Bar No. 13005
*Attorneys for Defendants Baker, Chalmers,*
*Council, Evans, Hodge, Lamb, Mihiach,*
*Ripberger, and Russ*
434 Fayetteville Street, Suite 1900
Raleigh, North Carolina 27601
Telephone: (919) 835-4100
Facsimile: (919) 829-8714
<u>tricia.kerner@troutmansanders.com</u>