IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

No. 1:08-cv-119

_____ )
                                            )
EDWARD CARRINGTON *et al.*,                 )
                                            )
        Plaintiffs,                         )
                                            )
v.                                          )
                                            )
DUKE UNIVERSITY *et al.*,                   )
                                            )
        Defendants.                         )
_____ )

**PLAINTIFFS' OPPOSITION TO THE CITY OF DURHAM'S
SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION TO
DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

In the wake of the North Carolina Supreme Court's decision in *Craig v. New Hanover County*, 678 S.E.2d 351 (2009), Plaintiffs amended their Complaint to plead, in the alternative, claims under Article I, Section 19 of the North Carolina Constitution, to whatever extent Defendant Durham may prevail on its pending motion for summary judgment on the Plaintiffs' state-law claims on grounds of sovereign immunity. *See* Doc. 113 (City's Motion for Partial Summary Judgment). Durham now moves to dismiss Plaintiffs' state constitutional claims. *See* Doc. 154 (City of Durham's Motion to Dismiss Plaintiffs' First Amended Complaint); Doc.

1

155 (City of Durham's Supplemental Brief in Support of Its Motion to Dismiss Plaintiffs' First Amended Complaint). All of the City's authorities in support of that motion have, of course, been superseded by *Craig*, which held that common-law or statutory claims under North Carolina law are inadequate alternatives to direct claims under the State Constitution insofar as a government entity may be shielded from those state-law claims by the doctrine of governmental immunity. 678 S.E.2d at 355-56.

### I. PLAINTIFFS' CLAIMS UNDER *CRAIG* ARE NOT PRECLUDED BECAUSE DURHAM HAS NOT IDENTIFIED ANY ADEQUATE ALTERNATE REMEDY UNDER NORTH CAROLINA LAW

Durham contends that, notwithstanding the new *Craig* rule on governmental immunity, Plaintiffs have no direct claims under the North Carolina Constitution because "alternative remedies are available." Doc. 155 at 11. Durham proposes three alternate remedies, two of which it discusses only briefly in a single footnote—perhaps an indication of Durham's confidence in those arguments.

First, Durham contends that Plaintiffs have no direct claims against Durham under the North Carolina Constitution because they instead have a direct constitutional claim against the State of North Carolina. Doc 155 at 14 n.8. But the claims against Durham are based on *Durham's misconduct* during its investigation of the Duke Rape Hoax, not on any misconduct by the State. Indeed, it was the
2

State—in the form of Attorney General Cooper—that brought the first hints of justice to this sad affair when he seized control of the investigation from Durham (and its delegate, Nifong), condemned Durham's investigation as a travesty, and exonerated Plaintiffs. The Complaint avers that Durham delegated control of its investigation to Nifong, and that allegation must be taken as true—resolution of that factual issue is inappropriate on this dismissal motion. Durham is impermissibly fighting the facts averred in the Complaint and simply recycling prior arguments that Plaintiffs have already answered. *See* Doc. 100 (Plaintiffs' Opposition to City of Durham's Motion to Dismiss), at 11-19. Plaintiffs reincorporate all of their prior briefing here.

Second, Durham contends that Plaintiffs have no claims under the North Carolina Constitution because they have claims under the Federal Constitution. Doc. 155 at 8 n.14. Durham cites no authority whatsoever for this strange notion that the adequacy of remedies *under North Carolina law* can be judged by looking to the law of *other* jurisdictions. North Carolina law is to the contrary: a North Carolina constitutional claim is precluded only if "an adequate *state remedy* exists to redress this alleged constitutional injury." *Copper v. Denlinger*, 688 S.E.2d 426, 429 (N.C. 2010) (emphasis added); *see also id.* at 428 ("adequate *state* remedy exists") (emphasis added); *id.* at 430 ("an adequate remedy exists *at state law* to redress the alleged injury") (emphasis added); *id.* at 790 (plaintiffs "do not contend

3

that the *state* remedies provided ... are inadequate") (emphasis added); *Corum v. Univ. of North Carolina*, 413 S.E.2d 276, 289 (N.C. 1992) ("in the absence of an *adequate state remedy*, one whose constitutional rights have been abridged has a direct claim against the State under our Constitution") (emphasis added). This rule is a function of *North Carolina common law*. *See Corum*, 413 S.E.2d at 289-90.[1] Thus the Supreme Court of North Carolina recognized a direct right of action under the State's Constitution in *Corum* despite that Court's ruling that the plaintiff also had federal constitutional remedies under 42 U.S.C. § 1983. *See id.* at 282-84, 289, 293-94.[2]

Third, Durham contends that Plaintiffs have no state constitutional claims against the City because they have adequate remedies against individual police officers and other City agents. Doc. 155 at 13. Thus Durham throws its police and municipal officials under the bus in hopes of avoiding liability that exceeds the City's insurance policies. The obvious problem with Durham's argument is that *it*

---

[1] Durham's only supposed authorities for rewriting the rule of North Carolina common law announced in *Corum* and *Craig* are a case from Colorado and a case from California. *See* Doc. 155 at 14 n.8. Those foreign cases applied a completely different legal test for inferring, under their respective states' own laws, the existence of a private right of action. Therefore, they are inapposite.

[2] The *Corum* Court noted that plaintiff's right to sue Durham "under the State Constitution completes his remedies. Plaintiff is not required to elect now, at summary judgment, among his remedies." 413 S.E.2d at 294. Likewise, Plaintiffs here are not required to choose now, on Defendants' motions for dismissal, among their federal and state remedies.

4

*would be true in every case in which a plaintiff sued a governmental entity*. It is axiomatic that a state or municipal government "may only act through its duly elected and appointed officials." *Corum*, 413 S.E.2d 293. Therefore, if one has a claim against a city for unconstitutional conduct one always has a claim against some city officer as well. This does not preclude a direct claim against the government under the North Carolina Constitution.

Thus *Craig* held that the plaintiff had a claim under the North Carolina Constitution against the defendant school board insofar as his tort claims were barred by governmental immunity, despite the fact that the plaintiff could also have brought—and, in fact, had brought—tort claims against the individual school principal. 678 S.E.2d at 353-54 & n.2, 355-56. If Durham were correct that a claim against an individual city official were an adequate alternative to a claim against a city cloaked in governmental immunity, the North Carolina Supreme Court in *Craig* would not have held that Craig was entitled to sue the school board under the state constitution insofar as his tort claims against the board were barred by immunity.[3] Similarly, *Coram* held that the plaintiff had an official-capacity claim

---

[3] Craig's claims against the school principal had been dismissed on non-immunity grounds but, as Durham itself contends, what matters under its theory is whether an adequate alternate remedy exists, not whether the claim has "merit—or is defective for other (non-immunity-based) reasons." Doc. 155 at 12. Therefore the fact that Craig had acquiesced in the dismissal of his claims against the individual official made no difference.

5

against a state agency, Appalachian State University, through its officer, Vice Chancellor Dr. Harvey Durham: "Under the State Constitution, plaintiff has a direct cause of action against defendant Durham sued in his official capacity." 413 S.E.2d at 293. This state constitutional claim against the State existed even though the plaintiff also had, as the Court explained in the very same breath, federal causes of action for "(1). Equitable relief against defendant [Vice-Chancellor] Durham sued in his official capacity; and (2). Monetary damages against defendant Durham sued in his *individual* capacity." *Id.* (original emphasis). "Therefore, plaintiff's right to sue Durham in his official capacity under the State Constitution completes his remedies." *Id*. at 294.[4]

Durham manages to reach a different conclusion only by misconstruing North Carolina law. Ignoring the North Carolina Supreme Court's controlling decisions in *Craig* and *Corum*, Durham relies instead on North Carolina lower court decisions that were decided long before *Craig*. *See* Doc. 155 at 12-14 (citing, *e.g.*, *Alt v. Parker*, 435 S.E.2d 773 (N.C. Ct. App. 1993); *Rousselo v. Starling*, 495 S.E.2d 725 (N.C. Ct. App. 1998); *Glenn-Robinson v. Acker*, 538 S.E.2d 601 (N.C. Ct. App. 2000)). Durham quotes at length from *Rousselo*, *see* Doc. 155 at 12, 14

---

[4] Durham concedes that damages claims against its officers in their "official capacity" are, obviously, the same thing as claims against the City itself. *See, e.g.*, Durham's Brief in Support of Motion to Dismiss, Doc. 73 at 5 n.2; 46 & n. 33.

6

n.7, but that decision was predicated upon the very rule that was unanimously repudiated in *Craig*: "Because common law immunity would defeat any common law tort claim that he brought against the State, [plaintiff] argues there is no adequate state law remedy for his claim and therefore he is entitled to bring a claim under the North Carolina Constitution. We find no merit to this argument." *Rousselo*, 495 S.E.2d at 731. This passage—omitted from Durham's brief—preceded that which Durham block quoted from the discredited lower-court opinion in *Rousselo*.[5] Durham also relies on federal district court decisions that, again, pre-date *Craig*. *See* Doc 155 at 12-13 (citing *Iglasias v. Wolford*, 539 F.Supp.2d 831 (E.D.N.C. 2008), *Cooper v. Brunswick County*, 2009 U.S. Dist. LEXIS 45010 (E.D.N.C. May 26, 2009), and *Seaton v. Owens*, 2003 U.S. Dist. LEXIS 22298 (M.D.N.C. Dec. 8, 2003)). In fact, Durham's federal cases rely on

---

[5] Durham's other state-court authority, *Alt v. Parker*, was likewise relied upon in the *Rousello*, 495 S.E.2d at 731, and lower-court *Craig* decisions, 648 S.E.2d 923, 926 (N.C. Ct. App. 2007), on the very ground subsequently overruled by the North Carolina Supreme Court. This leaves only *Glenn-Robinson v. Acker*, which presented no question of whether a plaintiff may sue a municipality under the North Carolina Constitution even if she had tort claims against officers in their individual capacity, because the plaintiff there "ha[d] not brought suit against the City for these [state tort] claims" and had, in fact, "concede[d] as much in her brief, noting that only if this Court should find plaintiff 'has no common law cause of action against ... [officer] Acker in his individual capacity' should her claims arising under Article I, §§ 19-21, 35, and 36, stand." 538 S.E.2d at 615, 619. Plaintiffs here make no such concession and bring state-law tort and constitutional claims both against Durham's officers in their individual capacity and against Durham itself.

7

the lower court decision in *Craig* that the North Carolina Supreme Court *unanimously reversed*. Indeed, Durham's outdated authorities cite the very pages where the lower court in *Craig* erred. *See, e.g.*, *Iglasias,* 539 F. Supp. 2d at 838-39 (citing *Craig v. Hanover County*, 648 S.E.2d 923, 926-27 (N.C. Ct. App. 2007) (holding that state-law claim was adequate even though it would, "in the end, be fruitless because the state retains immunity to such a claim")); *Cooper*, 2009 U.S. Dist. LEXIS 45010 at *9-12 (citing *Iglesias* and the lower court in *Craig* and holding that plaintiff had no state constitutional claims because state tort claims were "adequate"—even though said "state law tort claims" were barred by "governmental immunity").

Durham's theory of "adequate alternative state remedies" is thus predicated on outdated lower-court precedents and has been repudiated by North Carolina's Supreme Court. Therefore, under *Craig v. Hanover County*, Plaintiffs may plead state constitutional claims in the alternative and Durham's motion to dismiss should be denied.

## II. DURHAM'S REMAINING OBJECTIONS TO PLAINTIFFS' DIRECT CLAIMS UNDER THE NORTH CAROLINA CONSTITUTION MERELY REPEAT LEGAL ARGUMENTS THAT PLAINTIFFS HAVE ALREADY ANSWERED

In this, the most recent of Durham's multiple "supplemental" briefs, Durham recycles many of the legal arguments that it has already asserted—and that

Plaintiffs have already answered. *See, e.g.*, Doc. 155 at 1, 4-6, 9-10. Durham contends that this walk down well-traveled ground is appropriate because the state constitutional claims that Plaintiffs now plead in the alternative in the First Amended Complaint are legally insufficient for the same reasons that Plaintiffs' federal due process claims were supposedly insufficient in the original Complaint. *See* Doc. 155 at 3-6, 8. The "law of the land" clause in Article I, § 19 of the North Carolina Constitution, we are told, employs the same "shock[] the conscience" standard as the federal doctrine of substantive due process. Doc. 155 at 8. We have two responses.

First, Durham is mistaken in assuming that Article 1, § 19 encompasses only claims analogous to federal substantive-due-process claims. It is well-settled that the "law of the land" clause is broader, conferring rights against the denial of procedural due process and against improper searches. *See, e.g.*, *North Carolina v. Wiley*, 565 S.E.2d 22, 32 (N.C. 2002); *North Carolina v. Williams*, 447 S.E.2d 817, 819 (N.C. Ct. App. 1994); *North Carolina v. Robinson*, 658 S.E.2d 501, 504 (N.C. Ct. App. 2008). Accordingly, the federal analogs of these state constitutional rights are the subject not only of the malicious investigation claim in Count 22, but also of the substantive-due-process, procedural-due-process, and Fourth Amendment claims in Counts 20, 21, 24, 25 and 26. Plaintiffs bring a wide variety of common-law claims against Durham for its abuses, including Counts 8 (conspiracy to defraud), 10 (abuse of process), 23 (obstruction

9

of public justice), 28 and 29 (infliction of emotional distress) and 30 and 31 (negligence). These are the state-law claims for which *Craig* guarantees a state constitutional alternative if governmental immunity renders the common-law claims inadequate. Therefore all of these counts, not just those that would remedy Durham's malicious investigation, are the measure of the direct claims that Plaintiffs now plead (in the alternative) under Art. I, § 19 of the North Carolina Constitution. Durham does not deny that such claims have been adequately pleaded under Section 19.[6]

Second, assuming *arguendo* that Durham is correct that the exclusive measure of the alternate state constitutional claims is the federal substantive-due-process standard underlying Count 22, then the same analysis presented by Plaintiffs in their previous briefs is likewise sufficient to explain why the First Amended Complaint adequately pleads claims under the North Carolina Constitution's guarantee of due process. Rather than recite all of those arguments once again, Plaintiffs hereby incorporate all of their prior briefing in opposition to the Defendants' motions to dismiss, in which Durham's arguments have already been rebutted.

North Carolina's "law of the land," like the federal due process doctrine, is violated when the government coerces witnesses to lie, manufactures evidence, and frames innocent parties for a crime that never took place. "If any concept is

---

[6] Even if illegal-search claims could be pleaded only under Article 1, § 20 of the North Carolina Constitution, the appropriate action would be to afford Plaintiffs leave to amend their complaint to assert claims under that section rather than to dismiss.

fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit. ... Actions taken in contravention of this prohibition necessarily violate due process." *Limone v. Condon*, 372 F.3d 39, 44-45 (1st Cir. 2004); *see also Moran v. Clarke*, 296 F.3d 638, 645, 654 (8th Cir. 2002) (*en banc*) (concluding that evidence that plaintiff "was investigated, prosecuted, suspended without pay, demoted and stigmatized by falsely-created evidence and other defamatory actions of the defendants" is "conscience-shocking misconduct [that] establishes a substantive due process violation"); *see also id.* at 647 ("Accordingly, we are prompted to weigh Moran's constitutionally important liberty interests against evidence that officials purposely conspired to manufacture evidence in order to make him an innocent scapegoat for a devastating travesty that embarrassed the police department and its managers.").

This legal principle is not a novel concept. *See also* Doc. 100 (Plaintiffs' Opposition to Durham's Motion to Dismiss), at 25-35; Doc. 93 (Plaintiffs' Opposition to the Durham Supervisors' Motion to Dismiss), at 10-19 & n. 9. The right that Plaintiffs have asserted under both federal due process and, now, the North Carolina Declaration of Rights, has been recognized by the Fourth Circuit: it is "the right not to be deprived of liberty or property based on the *deliberate* use of evidence *fabricated by* or *known to be false* to a law enforcement official. We have

11

recognized that an officer who violates this right may be subject to civil liability.
… This claim is rooted in substantive due process." *White v. Wright*, 150 Fed.
Appx. 193, 198 (4th Cir. 2005) (original emphasis).[7] Such a claim has been
adequately pleaded in the First Amended Complaint. Durham's motion to dismiss
should therefore be denied.

### III. DURHAM'S REPETITION OF THE PLEADING OBJECTIONS MADE IN ITS PRIOR SUPPLEMENTAL BRIEF ON *IQBAL* IS LIKEWISE INSUFFICIENT TO JUSTIFY DISMISSAL

Finally, Durham rehashes its objection that the allegations of the First
Amended Complaint, like those of the original Complaint, are impermissibly
conclusory. Doc. 155 at 9-11. The principal argument is a reiteration of Durham's
misguided belief that *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), imposed a
*probability* rather than a mere *plausibility* requirement, and that a claim is
insufficiently pled if the defendant can imagine any possible innocent explanation
of the facts alleged. As the Court is aware, Durham's misapprehension of *Iqbal* and
the requirements of Rule 8 was demonstrated in Plaintiffs' own supplemental brief
on *Iqbal*. *See* Doc. 137. Plaintiffs incorporate those arguments here.

Finally, Durham accuses Plaintiffs of using conclusory allegations. Durham

---

[7] Durham asserts that enforcement of this right is foreclosed by the Supreme Court's decision in *Albright v. Oliver*, 510 U.S. 266 (1994). *See* Doc. 155 at 8. As Plaintiffs have previously explained in great detail, Durham and the other defendants simply misapprehend that decision. *See* Doc. 93 at 10-15.

12

claims that all that Plaintiffs really have is the gripe, "commonplace" among all those who "feel[]" they were "wrongly targeted," that "City investigators should have taken less time investigating." Doc. 155 at 10. Durham asserts that, if this Court finds Plaintiffs' state and federal due process claims sufficiently pleaded to survive dismissal, then the Court will be inviting constitutional claims by "anyone who feels unfairly entangled in a criminal investigation." *Id.* at 2.

But Durham's misconduct during the Duke Rape Hoax is pleaded in elaborate detail in the First Amended Complaint. When Attorney General Cooper exonerated the Plaintiffs, excoriated Durham's investigation, and cataloged the abuses of power by Durham's agents, he did not see this as a routine case of citizens "feel[ing] unfairly entangled" in a police investigation. Durham's hand-picked lead investigator, Mike Nifong, was disbarred by North Carolina and jailed for criminal contempt—these are not the indicia of a "commonplace" police investigation. Durham's case for dismissing the Complaint is thus built on deliberate and willful ignorance of the investigatory atrocity that Plaintiffs have alleged in exhaustive detail. It is little wonder that Durham is desperate to avoid trial on these allegations. Durham's motion should be denied.

## CONCLUSION

For the foregoing reasons, the City of Durham's motion to dismiss should be

13

denied.

April 5, 2010                                           Respectfully submitted,

THOMAS, FERGUSON                    COOPER & KIRK, PLLC
& MULLINS, L.L.P.                   /s/ Charles J. Cooper
                                    Charles J. Cooper
/s/ William J. Thomas               Brian S. Koukoutchos
William J. Thomas, II               David H. Thompson
(N.C. Bar # 9004)                   Nicole Jo Moss
119 East Main Street                (N.C. Bar # 31958)
Durham, NC 27701                    David Lehn
Tel. (919) 682-5648                 1523 New Hampshire Avenue, NW
Email: thomas@tfmattorneys.com      Washington, DC 20036
                                    Tel. (202) 220-9600
                                    Email: ccooper@cooperkirk.com
                                    Email: dthompson@cooperkirk.com
                                    Email: nmoss@cooperkirk.com

*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel:

*Counsel for J. Wesley Covington*
	Kenneth Kyre, Jr.
	Email: kkyre@pckb-law.com

*Counsel for City of Durham*
	Reginald B. Gillespie, Jr.
	Email: rgillespie@faison-gillespie.com

*Counsel for Mark Gottlieb*
	David William Long
	Email: dwlong@poynerspruill.com

*Counsel for Benjamin Himan*
	Joel Miller Craig
	Email: jcraig@kennoncraver.com

*Counsel for Patrick Baker, Steven Chalmers, Ronald Hodge, Lee Russ, Stephen Mihaich, Beverly Council, Jeff Lamb, Michael Ripberger*
	Patricia P. Kerner
	Email: tricia.kerner@troutmansanders.com

*Counsel for David Addison*
	James B. Maxwell
	Email: jmaxwell@mfbpa.com

*Linwood Wilson, pro se*
	Email: LinwoodW@aol.com

*Counsel for Duke University Defendants and Duke SANE Defendants*
    Jamie S. Gorelick
    Email: jamie.gorelick@wilmerhale.com

                                         /s/ David Lehn